1  Richard N. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  Shirley S. Cho (CA Bar No. 192616)
   Pachulski Stang Ziehl & Jones LLP
3  10100 Santa Monica Blvd. 11th Floor
   Los Angeles, California 90067-4100
4  Telephone: (310) 277-6910
   Facsimile: (310) 201-0760
5
   -and-
6
   Edward Soto, Esq. (*admitted pro hac vice*)
7  Shai Waisman, Esq. (*admitted pro hac vice*)
   WEIL, GOTSHAL & MANGES LLP
8  767 Fifth Avenue
   New York, New York 10153-0119
9  Telephone: (212) 310-8000
   Facsimile: (212) 310-8007
10
   ATTORNEYS FOR DEFENDANTS
11 LEHMAN ALI, INC., LEHMAN COMMERCIAL PAPER INC.,
   OVC HOLDINGS, LLC, NORTHLAKE HOLDINGS, LLC,
12 LBREP II/SUNCAL LAND FUND MEMBER, LLC,
   SCLV OAK VALLEY, LLC, SCLV NORTHLAKE, LLC,
13 and LB/L-DUC III MASTER LLC

14              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
15                      **SANTA ANA DIVISION**

16

17 In re                              **CASE NO. 8:08-bk-17206-ES**
                                      Jointly Administered with Case Nos.
18 PALMDALE HILLS PROPERTY, LLC,      8:08-bk-17209-ES; 8:08-bk-17224-ES;
   AND ITS RELATED DEBTORS,           8:08-bk-17225-ES; 8:08-bk-17227-ES
19      Jointly Administered Debtors and  8:08-bk-17230-ES; 8:08-bk-17231-ES
        Debtors-in-Possession          8:08-bk-17236-ES; 8:08-bk-17240-ES
20                                      8:08-bk-17242-ES; 8:08-bk-17245-ES
   _____  8:08-bk-17246-ES; 8:08-bk-17548-ES
   Affects:                            8:08-bk-17549-ES; 8:08-bk-17404-ES
21 ⊠ All Debtors                       8:08-bk-17407-ES; 8:08-bk-17408-ES;
   ☐ Palmdale Hills Property, LLC      8:08-bk-17409-ES; 8:08-bk-17458-ES;
22 ☐ SunCal Beaumont Heights, LLC      8:08-bk-17465-ES; 8:08-bk-17470-ES;
   ☐ SCC/Palmdale, LLC                 8:08-bk-17472-ES; 8:08-bk-17573-ES;
23 ☐ SunCal Johannson Ranch, LLC       8:08-bk-17574-ES; 8:08-bk-17575-ES;
   ☐ SunCal Summit Valley, LLC         8:08-bk-17588-ES;
24 ☐ SunCal Emerald Meadows, LLC
   ☐ SunCal Bickford Ranch, LLC
25 ☐ Acton Estates, LLC                **Adversary No. 8:09-bk-01005-ES**
   ☐ Seven Brothers, LLC
26 ☐ SJD Partners, Ltd.                **MEMORANDUM OF POINTS AND**
   ☐ SJD Development Corp.             **AUTHORITIES IN SUPPORT OF**
27 ☐ Kirby Estates, LLC                **MOTION TO DISMISS THE**
   ☐ SunCal Communities I, LLC         **SECOND AMENDED COMPLAINT**
28

| | |
|---|---|
| 1 | ☐ SunCal Communities III, LLC |
| | ☐ SCC Communities LLC |
| 2 | ☐ North Orange Del Rio Land, LLC |
| | ☐ Tesoro SF, LLC |
| 3 | ☐ LB-L-SunCal Oak Valley, LLC |
| | ☐ SunCal Heartland, LLC |
| 4 | ☐ LB-L-SunCal Northlake, LLC |
| | ☐ SunCal Marblehead, LLC |
| 5 | ☐ SunCal Century City, LLC |
| | ☐ SunCal PSV, LLC |
| 6 | ☐ Delta Coves Venture, LLC |
| | ☐ SunCal Torrance, LLC |
| 7 | ☐ SunCal Oak Knoll, LLC |

**ADVERSARY PROCEEDING**

**<u>Debtor-in-Possession Plaintiffs</u>:**
PALMDALE HILLS PROPERTY, LLC, a Delaware limited liability company; SUNCAL BEAUMONT HEIGHTS, LLC, a Delaware limited liability company; SCC/PALMDALE, LLC, a Delaware limited liability company; JOHANNSON RANCH, LLC, a Delaware limited liability company; SUNCAL SUMMIT VALLEY, LLC, a Delaware limited liability company; SUNCAL EMERALD MEADOWS, LLC, a Delaware limited liability company; SUNCAL BICKFORD RANCH, LLC, a Delaware limited liability company; ACTON ESTATES, LLC, a Delaware limited liability company; SEVEN BROTHERS, LLC, a Delaware limited liability company; SJD DEVELOPMENT CORP., a Delaware corporation; KIRBY ESTATES, LLC, a Delaware limited liability company; NORTH ORANGE DEL RIO LAND, LLC, a Delaware limited liability company; TESORO SF, LLC, a Delaware limited liability company; SCC COMMUNITIES, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES I, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES III, LLC, a Delaware limited liability company;

**<u>Trustee Plaintiff</u>:**
STEVEN SPEIER, Chapter 11 Trustee, on behalf of LB-L-SUNCAL OAK VALLEY, LLC, a Delaware limited liability company; SUNCAL HEARTLAND, LLC, a Delaware limited

1  liability company; LB-L-SUNCAL
   NORTHLAKE, LLC, a Delaware limited
2  liability company; SUNCAL
   MARBLEHEAD, LLC, a Delaware
3  limited liability company; SUNCAL
   CENTURY CITY, LLC, a Delaware
4  limited liability company; SUNCAL
   PSV, LLC, a Delaware limited liability
5  company; DELTA COVES VENTURE,
   LLC, a Delaware limited liability
6  company; SUNCAL TORRANCE, LLC,
   a Delaware limited liability company;
7  and SUNCAL OAK KNOLL, LLC, a
   Delaware limited liability company,
8
            Plaintiffs,
9
   v.
10
   **Lehman Lender Defendants:**
11 LEHMAN ALI, INC., a Delaware
   corporation; LEHMAN COMMERCIAL
12 PAPER, INC., a Delaware corporation;
   OVC HOLDINGS, LLC, a Delaware
13 limited company; NORTHLAKE
   HOLDINGS, LLC, a Delaware limited
14 liability company;

15 **Lehman Equity Member Defendants:**
   LBREP II/SUNCAL LAND FUND
16 MEMBER, LLC, a Delaware limited
   liability company; SCLV OAK
17 VALLEY, LLC, a Delaware limited
   liability company; SCLV
18 NORTHLAKE, LLC, a Delaware limited
   liability company; LB/L-DUC III
19 MASTER LLC, a Delaware limited
   liability company;
20
   and DOES 1 through 50, inclusive,
21
            Defendants.
22
   _____
23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................. iii

PRELIMINARY STATEMENT ........................................... 1

OVERVIEW OF THE SAC AND PARTIES ......................... 3

STANDARD OF REVIEW ................................................. 5

ARGUMENT ................................................................... 7

   I.   THE ACTION MUST BE DISMISSED BECAUSE IT IS UNRIPE ....................... 7

   II.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR EQUITABLE SUBORDINATION ........................................... 10

      A.   Equitable Subordination Is an Unusual Remedy That Applies Only in Limited Circumstances ................................................... 10

      B.   Plaintiffs Fail to Adequately Allege That the Lehman Lenders Are Insiders ................................................................. 11

          1.  The Lehman Lenders Are Not Statutory Insiders ....................... 12

          2.  The Lehman Lenders Are Not Otherwise Insiders ..................... 15

      C.   Plaintiffs Fail to Satisfy the Elevated Pleading Standard Applicable to Their Claim Against the Lehman Lenders .................................... 15

      D.   Plaintiffs Fail to Allege Any Basis for Subordinating the Lehman Equity Members' Interests ............................................... 19

   III.  THE SAC FAILS TO COMPLY WITH FRCP 9(b) ........................... 19

      A.   The SAC Is Governed by FRCP 9(b) ................................... 20

      B.   Plaintiffs Fail to Plead Their Equitable Subordination Claim Against any Defendant With Particularity ................................. 21

          1.  Plaintiffs Fail To Adequately Plead Lehman ALI and LCPI Made "Numerous Misrepresentations" ............................... 22

          2.  Plaintiffs Improperly Lump Defendants Together ..................... 25

          3.  Plaintiffs Fail to Adequately Plead a Conspiracy ..................... 26

          4.  Plaintiffs' Remaining Allegations Also Fail to Satisfy FRCP 9(b) ............ 27

   IV.  THE SAC VIOLATES THE AUTOMATIC STAY RIGHTS OF LCPI ............... 28

## <u>TABLE OF AUTHORITIES</u>

### CASES

*ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.),*
    210 B.R. 508 (Bankr. S.D.N.Y. 1997) ............................................................... 12

*Adelphia Recovery Trust v. Bank of America, N.A.,*
    390 B.R. 80 (S.D.N.Y. 2008) ................................................................................ 7

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) .......................................................................................... 5

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ............................................................................ 24

*Clinton v. Acequia, Inc.,*
    94 F.3d 568 (9th Cir. 1996) ............................................................................ 2, 9

*Desmond v. ASR Acquisition Corp. (In re Desmond),*
    334 B.R. 78 (D. N.H. 2005) ................................................................................ 20

*Edwards v. Marin Park, Inc.,*
    356 F.3d 1058 (9th Cir. 2004) ............................................................. 6, 22, 23, 25

*Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle),*
    353 B.R. 892 (Bankr. D. Idaho 2006) ................................................................ 14

*Falkowski v. Imation Corp.,*
    309 F.3d 1123 (9th Cir. 2002) ............................................................................ 24

*Feder v. Lazar (In re Lazar),*
    83 F.3d 306 (9th Cir. 1996) ................................................................................ 11

*Ford v. Feldman, M.D., P.A.,*
    177 B.R. 374 (Bankr. M.D. Fla. 1994) .............................................................. 10

*Fox v. Ponce Nicasio Broadcasting, Inc. (In re Ponce Nicasio Broadcasting, LP),*
    2008 WL 361081 (Bankr. E.D. Cal. Aug. 21, 2007) ............................................ 7

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman),*
    126 B.R. 63 (BAP 9th Cir. 1991) ....................................................................... 11

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.),*
    471 F.3d 977 (9th Cir. 2006) ......................................................... 11, 12, 15, 16

*Herzog v. Leighton Holdings, Ltd.,*
    239 B.R. 497 (N.D. Ill. 1999) ............................................................................ 17

*Impac Warehouse Lending Group v. Credit Suisse First Boston LLC,*
    270 Fed.Appx. 570 (9th Cir. 2008) .................................................................... 26

*In re After Six, Inc.,*
    177 B.R. 219 (Bankr. E.D. Pa. 1995) ................................................................ 18

*In re Bonham,*
    229 F.3d 750 (9th Cir. 2002).................................................................................. 8

*In re Central European Indus. Devel. Co.,*
    288 B.R. 572 (Bankr. N.D. Cal. 2005)..................................................................... 9

*In re Coffey,*
    348 B.R. 775 (Bankr. E.D. Tenn. 2006) .................................................................. 9

*In re Daou Sys., Inc.,*
    411 F.3d 1006 (9th Cir. 2005)................................................................................ 20

*In re Gilead Sciences Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008)................................................................................. 5

*In re GlenFed Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994)............................................................................ 6, 25

*In re Heartland Chemicals, Inc.,*
    136 B.R. 503 (Bankr. C.D. Ill. 1992).................................................................. 7, 18

*In re Kids Creek Partners, L.P.,*
    212 B.R. 898 (Bankr. N.D. Ill. 1997)................................................................ 17, 18

*In re Kimmel,*
    2008 WL 5076380 (9th Cir. Nov. 25, 2008)......................................................... 24

*In re Owens Corning,*
    419 F.3d 195 (3d Cir. 2005).................................................................................... 8

*In re M. Paolella & Sons, Inc.,*
    161 B.R. 107 (E.D. Pa. 1993) ............................................................................... 18

*In re Rath Packing Co.,*
    38 B.R. 552 (Bankr. N.D. Iowa 1984) .................................................................... 9

*In re Silicon Graphics, Inc.,*
    970 F.Supp. 746 (N.D. Cal. 1997) .......................................................................... 6

*In re Teltronics Servs., Inc.,*
    29 B.R. 139 (Bankr. E.D.N.Y. 1983) .................................................................... 16

*In re Westgate California Corp.,*
    642 F.2d 1174 (9th Cir. 1981).................................................................................. 2

*Kenney v. Bear Stearns & Co., Inc. (In re Daisy/Cadnetix, Inc.),*
    1993 WL 491309 (N.D. Cal. Feb. 3, 1993) .......................................................... 18

*Kotoshirodo v. Dorland & Assocs., Inc. (In re Lull),*
    2008 WL 3895561 (Bankr. D. Haw. Aug. 22, 2008).............................................. 14

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991)................................................................. 5, 22, 23, 26

iii

*Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. (In re S.M. Acquisition Co.)*,
   2006 WL 2290990 (N.D. Ill. Aug. 7, 2006)...................................................... 20

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
   2007 WL 2206946 (S.D. Cal. July 27, 2007) .................................................. 23

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
   2007 WL 3047093 (S.D. Cal. Oct. 16, 2007) .................................................. 27

*Meadowbrook Estates v. McElvany, Inc. (In re Meadowbrook Estates)*,
   246 B.R. 898 (Bankr. E.D. Cal. 2000) ............................................................ 10

*Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.)*,
   319 B.R. 626 (BAP 9th Cir. 2004)................................................................... 14

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ..................................................................... 6, 23

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 Fed.Appx. 621 (9th Cir. 2008) ........................................................... 23, 26

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993)................................................................. 6, 22, 24

*Papasan v. Allain*,
   478 U.S. 265 (1986) ......................................................................................... 5

*Pinetree Partners, Ltd. v. OTR (In re Pine Tree Partners Ltd.)*,
   87 B.R. 481 (N.D. Ohio 1988) ................................................................. 15, 16

*Poland v. Stewart*,
   117 F.3d 1094 (9th Cir. 1997).......................................................................... 9

*Spacek v. Thomen (In re Universal Farming Indus.)*,
   873 F.2d 1334 (9th Cir. 1989) ....................................................................... 11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)............................................................................ 5

*Stoombus v. Kilimark*,
   988 F.2d 949 (9th Cir. 1993)............................................................................ 7

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)............................................................... 25, 26, 27

*Trone v. Smith (In re Westgate-Cal. Corp.)*,
   642 F.2d 1174 (9th Cir. 1981).......................................................................... 11

*United State ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001)................................................................... 23, 24

*Unsecured Creditors' Comms. v. Pioneer Commercial Funding Corp.*
*(In re Pacific Express, Inc.)*,
   69 B.R. 112 (BAP 9th Cir. 1986)..................................................................... 16

iv

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................ 6, 20, 21, 22, 23, 24, 26

*Yourish v. Cal. Amplifier,*
    191 F.3d 983 (9th Cir. 1999) ........................................................................ 6, 25

**STATUTES**

11 U.S.C. § 101 ........................................................................ 12, 13, 14

11 U.S.C. § 362 ........................................................................ 28

11 U.S.C. § 510 ........................................................................ 7, 10, 11

**RULES**

FED. R. BANKR. P. 7009 ........................................................................ 1, 5

FED. R. BANKR. P. 7012 ........................................................................ 1, 5

FED. R. CIV. P. 9(b) ........................................................................ passim

FED. R. CIV. P. 12(b)(6) ........................................................................ 1, 3, 5, 11, 18, 19

**MISCELLANEOUS**

4 Collier on Bankruptcy § 510.01 (15th ed. Rev. 1996) ........................................................ 10

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc. ("LCPI"), OVC Holdings, LLC ("OVC"), Northlake Holdings, LLC ("Northlake"), LBREP II/SunCal Land Fund Member, LLC, SCLV Oak Valley, LLC, SCLV Northlake, LLC, and LB/L-DUC III Master LLC (collectively, the "Defendants") hereby file their Motion to Dismiss the Second Amended Complaint (the "Motion") pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b) and 12(b)(6), made applicable in adversary proceedings under Federal Rules of Bankruptcy Procedure ("FRBP") 7009 and 7012, and respectfully represent as follows:

## PRELIMINARY STATEMENT

Lehman ALI and LCPI[1] loaned billions of dollars to Debtors[2] and are currently owed in excess of $1.7 billion. Debtors spent the money to acquire and/or develop real estate projects throughout California (collectively, the "Projects"). After receiving billions of dollars of Lehman ALI's and LCPI's money in the form of secured loans, Debtors failed to repay the loans in accordance with their terms; instead, they sought bankruptcy protection. The Projects, which are the collateral for the loans, are now worth less than $600 million (much less, according to Plaintiffs). The Lehman Lenders[3] will lose well over $1 billion on these loans. "Equity" cannot justify further exacerbating these losses.

The Second Amended Complaint (the "SAC") is Plaintiffs' latest attempt to eviscerate the Lehman Lenders' rights under their loan agreements and preclude them from exercising the remedies available to them as holders of claims that are now greatly undersecured. This equitable subordination action is brought "[b]y the Debtors In Possession against Lehman ALI and LCPI;

---

[1]    LCPI is a debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, pending as Case No. 08-13555 (JMP).

[2]    Debtors consist of DIP Plaintiffs and Trustee Debtors, as defined in the next section.

[3]    The term "Lehman Lenders" is defined *infra*.

by the Trustee on Behalf of the Trustee Debtors Against Lehman ALI and the Lehman Equity Members, and on Behalf of SunCal Oak Valley against OVC Holdings and SunCal Northlake Against Northlake Holdings." SAC at p. 25. Plaintiffs ask the Court to strip the Lehman Lenders' liens from each Project, transfer the liens to the bankruptcy estates, and subordinate the Lehman Lenders' claims to the claims of *all* unsecured creditors of *all* of the bankruptcy estates, including the claims of Plaintiffs' principals.

As a matter of law, such blanket relief is unavailable. It is well established that equitable subordination is a fact-specific, creditor-specific remedy, "applied only to the extent necessary to offset the specific harm caused by the inequitable conduct." *In re Westgate California Corp.*, 642 F.2d 1174, 1178 (9th Cir. 1981). It is not and cannot be applied to subordinate a claim to entire classes of creditors, without regard to the particular harm suffered by particular creditors of particular debtors. Yet that is precisely the relief sought in the SAC.

Plaintiffs apparently believe they can circumvent these restrictions through substantive consolidation of the bankruptcy estates, thereby eliminating boundaries between groups of creditors. While there is no legitimate basis for substantive consolidation, and while it cannot achieve the effect Plaintiffs desire in any event, reliance upon this contingency raises a threshold barrier to further proceedings herein. Unless and until substantive consolidation happens, this action is simply not justiciable, and must be dismissed for that reason alone. As the Ninth Circuit has held, "a federal court normally ought not resolve issues 'involv[ing] contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996). As a matter of jurisprudence, the dispute is not ripe. As a practical matter, it makes no sense to go through a long and costly litigation when such a significant contingency is unresolved.

The SAC also fails to state a claim upon which relief can be granted. Beyond the fact that

the blanket relief Plaintiffs request is unavailable by law, equitable subordination is an extraordinary remedy that generally applies only in limited circumstances, and almost never applies where the creditor is not a fiduciary or insider of a debtor. Plaintiffs have failed to sufficiently allege that the Lehman Lenders are insiders (or fiduciaries) of Debtors, and have failed to sufficiently allege that the Lehman Lenders engaged in the gross and egregious conduct that would be required to subordinate their claims under controlling law. Moreover, Plaintiffs fail to identify any inequitable conduct by the Lehman Equity Members.[4] According, the SAC must be dismissed for failure to state a claim under FRCP 12(b)(6).

Dismissal also is required under FRCP 9(b). The gravamen of this action is alleged misrepresentations by the Lehman Lenders regarding future funding that Plaintiffs say induced creditors to supply goods and services for the Projects. FRCP 9(b) requires that such allegations be pled with particularity, and controlling authority is clear that this includes the time, place and manner of the alleged misrepresentations, and the role of each defendant in the alleged misrepresentations. This requirement carries particular import where, as here, the remedy of equitable subordination is inherently fact-specific and creditor-specific. The SAC does not come close to meeting this requirement.

## OVERVIEW OF THE SAC AND PARTIES

The SAC is brought by two groups of Plaintiffs: (1) the "DIP Plaintiffs" (or "Debtors-in-Possession Plaintiffs")[5] and (2) the Trustee Plaintiff, Steven Speier, on behalf of the "Trustee

---

[4] The term "Lehman Equity Members" is defined *infra*.

[5] The DIP Plaintiffs are Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers, LLC, SJD Development Corp., SJD Partners, Ltd., Kirby Estates, LLC, North Orange Del Rio Land, LLC, Tesoro SF, LLC, SCC Communities, LLC, SunCal Communities I, LLC, and SunCal Communities III, LLC.

Debtors."[6] According to the SAC, the DIP Plaintiffs were "able to file voluntary bankruptcies in the first instance (on November 6 and 7, 2008) because their operating agreements did not require Lehman consents to filing." SAC ¶ 76.

The SAC defines "Lehman" as "Lehman Brothers" (SAC ¶ 1) and alleges that "Lehman undertook to loan or otherwise provide various entities affiliated with the SunCal Companies ('SunCal'), a California-based land developer, approximately $2 billion for the acquisition and development of master-planned communities located throughout California . . . ." SAC ¶ 2. "Lehman Brothers," however, is not a defendant in this Adversary Proceeding.

The SAC names two groups of Defendants: (1) the "Lehman Lenders"[7] and (2) the "Lehman Equity Members."[8] According to Plaintiffs, "[t]he funding for the purchase and development of the subject property of each project was made through a Lehman entity, ALI or LCPI; and the respective lending entities obtained liens on each property as security for its loan and/or obtained pledges of equity interests in the entities owning such properties." SAC ¶ 67. The SAC alleges Lehman ALI "was—or purported to be—the holder of first deeds of trust and/or pledged interests on all the subject properties in this action." SAC ¶ 57. Plaintiffs maintain LCPI "purports to be the holder of first deeds of trust and/or pledged interests on a number of the subject properties in this action." SAC ¶ 58. Finally, Plaintiffs contend that OVC "purports to be the assignee of Lehman ALI's loan on the Oak Valley project," and Northlake "purports to be the assignee of Lehman ALI's loan on the Northlake project." SAC ¶¶ 59-60.

---

[6] The Trustee Debtors are SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance Properties, LLC, LB-L SunCal Oak Valley LLC, and SunCal Oak Knoll, LLC. The SAC alleges that "all of the Trustee Projects were initiated as involuntary bankruptcies (on November 12, 14, and 19, 2008)" and that "[o]n or about January 8, 2009, this Court entered orders for relief in the involuntary bankruptcy cases." SAC ¶¶ 73, 74.

[7] The Lehman Lenders are Lehman ALI, LCPI, OVC, and Northlake.

[8] The Lehman Equity Members are LBREP II/SunCal Land Fund Member, LLC, SCLV Oak Valley, LLC, SCLV Northlake, LLC, and LB/L-DUC III Master LLC.

As to the Lehman Equity Members, the SAC alleges that LBREP II/SunCal Land Fund Member, LLC "is the Lehman member in the Lehman SunCal Real Estate Fund, LLC, parent of four 'trustee' debtors: SunCal Century City, SunCal Palm Springs Village, SunCal Torrance (Del Amo), and SunCal Oak Knoll," SAC ¶ 61; SCLV Oak Valley, LLC "is purported to be the Lehman member in the SunCal Oak Valley 'trustee' debtor," SAC ¶ 62; and SCLV Northlake, LLC "is purported to be the Lehman member in the SunCal Northlake 'trustee' debtor," SAC ¶ 63. Finally, the SAC alleges that LB/L-DUC III Master LLC "is the Lehman member in Delta Coves Master JV LLC, the parent of the SunCal Delta Coves 'trustee' debtor." SAC ¶ 64.

## STANDARD OF REVIEW

FRBP 7012(b) provides that FRCP 12(b)(6) applies in adversary proceedings. Under FRCP 12(b)(6), it is "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. The court is not "'required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

FRBP 7009 provides that FRCP 9 applies in adversary proceedings. FRCP 9(b) provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b). FRCP 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of *each act of fraud*, plus the role of

each defendant in *each* scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (emphasis added); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'"); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-1066 (9th Cir. 2004) ("To avoid dismissal for inadequacy under Rule 9(b), Edwards's complaint would need to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'"); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540-541 (9th Cir. 1989) (FRCP 9(b) requires the pleader to state the "specific content of the false representations as well as the identities of the parties to the misrepresentation"). "[M]ere conclusory allegations of fraud are insufficient." *Id.* at 540. Additionally, to comply with FRCP 9(b), "a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds as stated in In re Silicon Graphics, Inc.*, 970 F.Supp. 746, 754 (N.D. Cal. 1997); *see also Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (the complaint must "set forth what is false or misleading about a statement, and why it is false.").

## ARGUMENT

## I.     THE ACTION MUST BE DISMISSED BECAUSE IT IS UNRIPE

It is well established that "[a] claim will be [equitably] subordinated only to the claims of creditors whom the inequitable conduct has disadvantaged." *Stoombus v. Kilimark*, 988 F.2d 949, 960 (9th Cir. 1993). A court therefore cannot subordinate claims based on inequitable conduct harming creditors of Debtor A to creditors of Debtor B because such conduct did not disadvantage the creditors of Debtor B as a matter of law. *See In re Heartland Chemicals, Inc.*, 136 B.R. 503 (Bankr. C.D. Ill. 1992) (secured creditor's claim could only be subordinated to extent of actual harm suffered by individual trade creditors as a result of secured creditor's alleged inequitable conduct; actual harm suffered by debtor's trade creditors could only be measured by amount of inventory actually shipped by trade creditors in reliance on secured creditor's purported misrepresentations). As the Court held in *Adelphia Recovery Trust v. Bank of America, N.A.*, based on "judicial and legislative interpretations of the statute [11 U.S.C. § 510(c)] . . . the 'other creditors' whose welfare is the primary focus of equitable subordination law must be *creditors of the same debtor* . . . ." 390 B.R. 80, 99 (S.D.N.Y. 2008) (emphasis added).

Despite these requirements, Plaintiffs make no effort in the SAC to relate alleged misconduct by the Lehman Lenders to specific Debtors or, more significantly, to disadvantages suffered by specific creditors of specific Debtors. Instead, they lump all of the many participants in all of the many Projects together, and contend that the Court can subordinate "all claims held" by the Lehman Lenders to all of the unsecured creditors of all Debtors. SAC Prayer for Relief. This is impermissible. Plaintiffs are separate debtors, with separate assets, separate creditors, separate facts, and separate liens by the Defendants. *See*, *e.g.*, *Fox v. Ponce Nicasio Broadcasting, Inc.* (*In re Ponce Nicasio Broadcasting, LP*), No. 04-26256-B-7, 2008 WL

361081, *10 (Bankr. E.D. Cal. 2007) (holding that it was legally insufficient for plaintiff to lump two entities together and refer to them as "Debtors" where the debtor entities "are separate entities in separate bankruptcy cases. No substantive consolidation of the cases has occurred."). While the SAC alleges there are "approximately 450 creditors" of the Debtors,[9] it does not and cannot allege that each Debtor has the same creditors or, obviously, that each creditor of each Debtor was harmed by each alleged misrepresentation.

Implicit in Plaintiffs' SAC—made explicit in Plaintiffs' other filings in this Court—is the (erroneous) notion that they will be able to rely on the doctrine of substantive consolidation to extinguish the distinctions between which creditors are owed money by which Debtors and thereby avoid having to plead and prove which creditors were disadvantaged by Defendants' alleged conduct. But Plaintiffs do not request such consolidation in the SAC, and have not otherwise commenced a proceeding in these cases to seek substantive consolidation. While not presently at issue, it should be noted that if and when they do, the effort will not succeed. Plaintiffs do not allege and cannot possibly satisfy the exacting requirements for substantive consolidation in this circuit and elsewhere. Substantive consolidation is only available where "(i) creditors dealt with the [debtor] entities as a single economic unit and did not rely on their separate identity in extending credit; or (ii) the affairs of the debtors are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d 750, 771 (9th Cir. 2002).[10] Plaintiffs cannot and do not allege that creditors—including the 450 creditors referenced in the SAC (¶¶ 13, 81, 106)—dealt with Debtors as a single unit and ignored the separate identity of

---

[9]    SAC ¶ 13.

[10]    *See also In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) ("In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they [debtors] disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their [debtors'] assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.").

Debtors when extending credit. Nor can they allege that Debtors' assets and liabilities are so entangled that they cannot be readily separated when, *inter alia*, all of the Debtors were separately organized for separate Projects, separately audited and prepared separate schedules of assets and liabilities.

For present purposes, what matters is that Plaintiffs are relying upon substantive consolidation to prop up their theory of liability, such a determination is a major contingency, and resolution of that contingency is not a part of this action or, for that matter, any other pending proceeding. This uncertainty constitutes a bar to further proceedings in this matter. In short, the action is unripe. The Ninth Circuit has held that "a federal court normally ought not resolve issues 'involv[ing] contingent future events that may *not occur as anticipated, or indeed may not occur at all.*'" *Clinton*, 94 F.3d at 572 (emphasis added); *see also Poland v. Stewart*, 117 F.3d 1094, 1104 (9th Cir. 1997) (issues are not ripe for review "where the existence of the dispute itself hangs on future contingencies that may or may not occur."); *In re Rath Packing Co.*, 38 B.R. 552, 563 (Bankr. N.D. Iowa 1984) (dismissing equitable subordination claim that was premised on the outcome of a labor dispute hearing that had not yet been held); *In re Coffey*, 348 B.R. 775, 782 (Bankr. E.D. Tenn. 2006) (A claim should be dismissed where it involves "hypothetical questions based on contingencies that are impossible to predict or events that may never occur.").

Because the claim alleged in the SAC, as currently pled, cannot be resolved unless and until a contingent future event occurs, that claim should be dismissed pending the event (a ruling on substantive consolidation). If substantive consolidation is denied, as it should be, Plaintiffs will then have to pursue their equitable subordination claims, if any remain, on a Debtor-by-Debtor basis. *Cf. In re Central European Indus. Devel. Co.*, 288 B.R. 572, 576 (Bankr. N.D. Cal. 2005) ("[S]ubstantive consolidation is one of 'the bankruptcy court's general equitable

powers . . .' and it would not be equitable for this court to ignore the prepetition wishes of Lehman and the Debtors by disregarding the corporate structure the parties so carefully created by agreement.  The fact that other unsecured creditors may lose their ability to be paid is neither equitable nor inequitable.  It is the natural consequence of what might happen . . . ." (citation and emphasis omitted)).

## II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR EQUITABLE SUBORDINATION

Plaintiffs ask this Court to equitably subordinate the Lehman Lenders' undisputed claims for approximately $1.7 billion, in principal alone, owed on secured loans made to Debtors, and to subordinate the Lehman Equity Members' undisputed interests in the Trustee Debtors.  Equitable subordination is an extraordinary remedy that applies only in limited circumstances, and almost never applies where the creditor is not a fiduciary or insider of the debtor.  In this case, Plaintiffs' equitable subordination claim against Defendants must be dismissed because Plaintiffs have failed to allege sufficient facts, under the applicable pleading standard, that (a) the Lehman Lenders are insiders (or fiduciaries) of Debtors, (b) the Lehman Lenders engaged in gross and egregious conduct as would be required to subordinate their claims under applicable law, or (c) the Lehman Equity Members engaged in any inequitable conduct.

### A.   Equitable Subordination Is an Unusual Remedy That Applies Only in Limited Circumstances

Section 510(c)(1) of the Bankruptcy Code provides that "after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."  11 U.S.C. § 510(c)(1).  Section 510(c) authorizes a bankruptcy court "to subordinate claims[11] where subordination will promote a

---

[11]    By its terms, section 510(c) applies only to "allowed" claims.  § 510(c)(1); *see also Meadowbrook*

just and equitable distribution of the bankrupt estate." *Trone v. Smith* (*In re Westgate-Cal. Corp.*), 642 F.2d 1174, 1177 (9th Cir. 1981).

It is well established that "equitable subordination is an unusual remedy which should be applied only in limited circumstances." *Feder v. Lazar* (*In re Lazar*), 83 F.3d 306, 309 (9th Cir. 1996). The Ninth Circuit has instructed that the "subordination of claims based on equitable considerations generally requires three findings: '(1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code.'" *Henry v. Lehman Commercial Paper, Inc.* (*In re First Alliance Mortgage Co.*), 471 F.3d 977, 1006 (9th Cir. 2006) (quoting *In re Lazar*, 83 F.3d at 309; *see also Spacek v. Thomen* (*In re Universal Farming Indus.*), 873 F.2d 1334, 1337 (9th Cir. 1989) (same). For a court "to justify equitable subordination," it must "make specific findings and conclusions with respect to each of the requirements." *In re Lazar*, 83 F.3d at 309. The "burden of establishing all the elements of subordination by a preponderance of the evidence is on the objecting party." *Friedman v. Sheila Plotsky Brokers, Inc.* (*In re Friedman*), 126 B.R. 63, 71 (BAP 9th Cir. 1991).

**B.      Plaintiffs Fail to Adequately Allege That the Lehman Lenders Are Insiders**

The first issue the Court needs to address in deciding whether Plaintiffs have stated a claim for equitable subordination against the Lehman Lenders under FRCP 12(b)(6) is whether Plaintiffs have adequately alleged that the Lehman Lenders are "insiders" of Debtors.[12] "Where

---

*Estates v. McElvany, Inc.* (*In re Meadowbrook Estates*), 246 B.R. 898, 905 (Bankr. E.D. Cal. 2000) ("[a] predicate to relief under section 510(c), then, is an allowed claim"). Thus, subordination under section 510(c) "presupposes that the claim is allowed but for equitable reasons must be subordinated to the other allowed claims." *Ford v. Feldman, M.D., P.A.* (*In re Fla. Bay Trading Co.*), 177 B.R. 374, 383 (Bankr. M.D. Fla. 1994); *see also* 4 COLLIER ON BANKRUPTCY § 510.01 (15th ed. Rev. 1996) ("subordination under section 510 involves valid claims").

[12]      As discussed in Section II.D, *infra*, the Court does not need to address whether the Lehman Equity Members are insiders because the SAC does not allege that the Lehman Equity Members engaged in any kind of inequitable conduct.

non-insider, non-fiduciary claims are involved . . ., the level of *pleading and proof* is elevated: gross and egregious conduct will be required before a court will equitably subordinate a claim." *In re First Alliance*, 471 F.3d at 1006 (emphasis added). While "equitable subordination can apply to the ordinary creditor, the circumstances are 'few and far between.'" *Id.* (quoting *ABF Capital Mgmt. v. Kidder Peabody & Co.* (*In re Granite Partners, L.P.*), 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997)). In this case, Plaintiffs do not allege that the Lehman Lenders are fiduciaries of Debtors, and they have failed to adequately allege that the Lehman Lenders are insiders of Debtors. Thus, the Court must apply the elevated level of pleading to the SAC.

### 1.     The Lehman Lenders Are Not Statutory Insiders

Plaintiffs first attempt to avoid the elevated pleading standard by making conclusory allegations that the Lehman Lenders are statutory insiders of the Trustee Debtors (but not the DIP Plaintiffs) within the meaning of Bankruptcy Code § 101(31). *See* SAC ¶¶ 122, 128. These allegations are wholly irrelevant to LCPI, because Plaintiffs do not allege that LCPI was a lender to any Trustee Debtor. To the contrary, Plaintiffs allege that "Lehman ALI was the lender for each of the Trustee Projects." SAC ¶ 69. The Court therefore must hold that LCPI is not pled to be a statutory insider.

As to Plaintiffs' contention that the Lehman Lenders other than LCPI are statutory insiders of the Trustee Debtors, Plaintiffs appear to be relying on Bankruptcy Code section 101(31)(E). This section defines an insider of a corporate debtor as an "affiliate or insider of an affiliate as if such affiliate were the debtor." § 101(31)(E); *see also Friedman*, 126 B.R. at 69 (discussing the statutory definition of insiders). Plaintiffs allege that the Lehman Lenders are insiders of an affiliate of the Trustee Debtors because Lehman Brothers Holdings Inc. ("LBHI") "has a controlling interest, directly or indirectly, in Lehman ALI and LCPI, on the one hand, and in the Lehman Equity Members, on the other, which themselves have a majority stake in the

Trustee Debtors and are therefore insiders of the Trustee Debtors." *Id*. at ¶ 122. Plaintiffs allege the same ownership structure as the basis for concluding that OVC Holdings and Northlake Holdings are statutory insiders. *Id*. at ¶ 128. In short, Plaintiffs contend that the Lehman Lenders are affiliates of affiliates (the Lehman Equity Members) of the Trustee Debtors, and therefore "insiders."

These allegations are insufficient to establish that the Lehman Lenders are statutory insiders as a matter of law. The term "affiliate" is defined in Bankruptcy Code section 101, in pertinent part, as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor," as well as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." § 101(2)(A)-(B).[13] Plaintiffs fail to allege that any Lehman Lender "directly or indirectly owns . . . 20 percent or more of the outstanding voting securities of" any Lehman Equity Member that in turn is an insider of a Trustee Debtor. § 101(2)(A). Similarly, Plaintiffs do not allege that any Lehman Equity Member owns 20 percent or more of any Lehman

---

[13] The definition of an "affiliate" under section 101(2)(A)-(B) is:

(A) [an] entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(B) [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote; . . . .

Lender. Instead, Plaintiffs merely allege that LBHI "has a controlling interest in" both the Lehman Lenders and the Lehman Equity Members. SAC ¶ 122.

Based on the plain language of section 101(2), this alleged common parent is not enough to make the Lehman Lenders affiliates of the Lehman Equity Members (and therefore not affiliates of any purported insider of the Trustee Debtors). This is particularly true because the Lehman Equity Members are LLCs. *See* SAC ¶¶ 61-64. Plaintiffs do not allege that LBHI's purported "controlling interest" in the Lehman Equity Members is in the form of a security. Hence, there is no basis in the SAC for the conclusion that it owns "20 percent or more of the outstanding voting securities" of the Lehman Equity Members. § 101(2)(B).

This result is confirmed by the fact that section 101(31) does not expressly provide that a corporation can be considered an insider of a debtor merely because it may share an ultimate parent with an LLC. The Ninth Circuit BAP has instructed that "[t]here is no justification for expanding the definition of *per se* insider beyond what is plainly contained in the statute." *Miller Ave. Prof'l & Promotional Servs. v. Brady* (*In re Enter. Acquisition Partners, Inc.*), 319 B.R. 626, 632 (BAP 9th Cir. 2004). Bankruptcy courts in the Ninth Circuit have heeded this instruction with respect to LLCs and held that an LLC is not "sufficiently analogous to a corporation to permit a court to apply the corporate provisions of § 101(31) to an LLC." *Kotoshirodo v. Dorland & Assocs., Inc.* (*In re Lull*), Adversary No. 08-90001, 2008 WL 3895561, *8-9 (Bankr. D. Haw. Aug. 22, 2008) (holding that an LLC was not an affiliate of a debtor); *see also Elsaesser v. Cougar Crest Lodge, LLC* (*In re Weddle*), 353 B.R. 892, 897 (Bankr. D. Idaho 2006) (holding that LLC was not statutory insider of debtors, who were members in a LLC).

Lastly, there are no allegations in the SAC—deficient or otherwise—that the Lehman Lenders are statutory insiders of any DIP Plaintiff. Accordingly, Plaintiffs have failed to adequately allege that the Lehman Lenders are statutory insiders of any Debtor.

## 2.    The Lehman Lenders Are Not Otherwise Insiders

Plaintiffs also allege in the SAC that Lehman ALI and LCPI are non-statutory insiders because they allegedly "exerted actual control over all of the Debtors" as their lenders. SAC ¶ 123. According to Plaintiffs, Lehman ALI and LCPI held such control because they were the "primary source of credit" of Debtors, and had the authority to "decide if and when to advance funds." SAC ¶¶ 4, 123. These general allegations of control are not a sufficient basis for a finding that Lehman ALI and LCPI are non-statutory insiders of Debtors.

Plaintiffs cannot point to any Ninth Circuit authority to support the proposition that a lender becomes an insider of a borrower simply by exerting control over loan advancements or taking any of the other actions alleged in the SAC. In fact, just over two years ago, the Ninth Circuit in *In re First Alliance* affirmed a district court's ruling that LCPI and Lehman Brothers, Inc. were *not* insiders of a debtor even though they had become became the debtor's "sole source of warehouse funding and underwriting" after other lenders withdrew financing due to the "mounting scrutiny and litigation against" the debtor. 471 F.3d at 986-87. Plaintiffs have alleged that in the later part of their lending relationship, the Lehman Lenders became more restrictive in extending credit to Debtors and entered into a restructuring agreement after Debtors had defaulted on their loans, but such allegations again cannot transform the Lehman Lenders into insiders of Debtors. *See Pinetree Partners, Ltd. v. OTR* (*In re Pine Tree Partners Ltd.*), 87 B.R. 481, 489 (N.D. Ohio 1988) (lender-borrower relationship "did not transcend that of debtor and creditor" even though lender was alleged to have exerted control over debtor by, *inter alia*, controlling the amount of financing and closely monitoring its loan).

## C.    Plaintiffs Fail to Satisfy the Elevated Pleading Standard Applicable to Their Claim Against the Lehman Lenders

Because Plaintiffs have failed to sufficiently allege the Lehman Lenders are insiders (or fiduciaries) of Debtors, they are required to show, at a "level of pleading" that "is elevated," that

the Lehman Lenders engaged in "gross and egregious conduct" if they hope to subordinate the Lehman Lenders' claims arising from Debtors' failure to repay the nearly $2.0 billion they owe under their secured loans. *In re First Alliance*, 471 F.3d at 1006-07; s*ee also Unsecured Creditors' Comms. v. Pioneer Commercial Funding Corp.* (*In re Pacific Express, Inc.*), 69 B.R. 112, 116 (BAP 9th Cir. 1986) ("'[w]here the claimant is a non-insider, egregious conduct must be proven with particularity'") (quoting *In re Teltronics Servs., Inc.*, 29 B.R. 139, 169 (Bankr. E.D.N.Y. 1983)). Under this elevated standard, "'[i]t is insufficient for the [party seeking equitable subordination] merely to establish sharp dealing; rather, he must prove that the claimant is guilty of gross misconduct tantamount to 'fraud, overreaching or spoliation to the detriment of others.'" *Id.* (holding that the unsecured creditors' committee had failed to satisfy its burden of proving gross conduct on the part of non-insider loan participants even though the loan participation agreement "may have placed the loan participants in a better position than other unsecured creditors").

The SAC does not contain any specific allegations of gross and egregious conduct by any Lehman Lender. Instead, to the extent Plaintiffs provide specifics, those allegations simply reflect that the Lehman Lenders acted as other cautious lenders would when faced with troubled loans. According to the SAC, in "mid-2007, as the real estate market experienced a downturn, . . . many of the Projects declined in value." SAC ¶ 80. Plaintiffs allege that as result, the Lehman Lenders "became much more 'hands on' in scrutinizing—and approving—budgets and expenses" before making further loan advances. *Id.* Plaintiffs repeat the allegation that the Lehman Lenders exerted more control over the disbursements to Debtors throughout the SAC. *See id.* at ¶¶ 4, 5, 80, 81, 123. Plaintiffs fail, however, to explain how this conduct was inequitable, let alone gross and egregious. *See*, *e.g*., *In re Pine Tree Partners Ltd.*, 87 B.R. at 490 (lender's refusal to extend additional financing to debtor at the time the debtor was in substantial

default of the original loan "can only be construed to be cautious, not egregious, conduct").

Similarly, Plaintiffs devote a significant portion of the SAC to the May 23, 2008 Restructuring Agreement that certain Debtors entered into with "LBHI, Lehman ALI and other Lehman-controlled entities." SAC ¶ 82. Plaintiffs allege that "Lehman threatened" Debtors into entering the Restructuring Agreement, but do not allege that any Defendant made a false statement to induce their consent. SAC ¶ 9. Indeed, Plaintiffs' allegations that Debtors were threatened to enter the Restructuring Agreement are odd given that they rely on the Restructuring Agreement to support their general allegations that the Lehman Lenders promised funding that they never delivered. *See* SAC ¶¶ 10, 84, 124. Even as to these allegations, however, Plaintiffs do not identify any "gross and egregious" violations of the Restructuring Agreement. Similar allegations of actions by the Lehman Lenders that on their face are not improper, let alone fraudulent, permeate the SAC.[14]

Plaintiffs do not dispute in the SAC that they owe the Lehman Lenders more than $1.7 billion in principal alone. They do not dispute that they defaulted on these loans and that the Projects were subject to foreclosure. Instead, Plaintiffs' basic complaint is that the Lehman Lenders restricted the funding available to Debtors when the Projects' value began to plummet, and eventually ceased funding and pursued their contractual rights to foreclose on the Projects. This is not a basis for equitable subordination as a matter of law. *See*, *e.g.*, *Herzog v. Leighton Holdings, Ltd.*, 239 B.R. 497, 508 (N.D. Ill. 1999) (no equitable subordination where lender

---

[14]  For example, Plaintiffs allege that Lehman ALI withdrew money from certain accounts "that were to be used for the needs of the Marblehead and Heartland Projects," but do not allege that Lehman ALI was not authorized to make such withdrawals or that such action breached any contract. SAC ¶ 105; *see also id.* at ¶ 15. Similarly, Plaintiffs allege that Lehman ALI transferred its interests in certain loans to OVC and Northlake without contending that those transfers were fraudulent or even inappropriate. *See id.* at ¶ 97. Plaintiffs allege that Lehman ALI transferred first deeds of trust on some of the Projects to LCPI in August 2008, but do not contend that this was anything other than a return of the deeds of trust to LCPI as their original holder. *Id.* at ¶ 94. Plaintiffs allege that "Lehman arranged for a third party, Radco, to settle outstanding contractor payables" and that this arrangement eventually ceased. *Id.* at ¶ 86. There is no contention in the SAC that the arrangement Radco was improper or that the Lehman Lenders had no right to discontinue the arrangement.

exercised its contractual right to curtail funding for real estate development project based on debtor's admitted acts of default); *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 931 (Bankr. N.D. Ill. 1997) (a "creditor has a right to call a loan when due and to lawfully enforce collection. He may refuse an extension for any cause which may seem proper to him, or even without any cause. The law provides certain means for the enforcement of claims by creditors. The exercise of those rights is not inherently wrongful."); *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 121 (E.D. Pa. 1993) (no equitable subordination where lender "refuse[s] to supply further funds at a propitious moment on a loan that is in default"); *In re Heartland Chemicals, Inc.*, 136 B.R. 503, 519 (Bankr. C.D. Ill. 1992) (no equitable subordination where lending relationship between creditor and debtor "was governed by a financing agreement negotiated at arm's length between two sophisticated commercial parties with advice of counsel" and creditor had no duty to finance debtor beyond expiration of agreement); *In re After Six, Inc.*, 177 B.R. 219, 232 (Bankr. E.D. Pa. 1995) ("In a vast majority of the refusal-to-lend cases which we have found, the courts have held that the lender's refusal to lend or continue lending, although devastating for the debtor, is not inequitable.").

Plaintiffs' failure to allege a clear factual basis for finding that the Lehman Lenders engaged in gross and egregious conduct requires dismissal under FRCP 12(b)(6). In *Kenney v. Bear Stearns & Co., Inc.* (*In re Daisy/Cadnetix, Inc.*), the Northern District of California granted a motion to dismiss an equitable subordination claim where there was an "insufficient evidentiary basis for the allegations that support any claim that [the defendant] committed gross misconduct in its relationship with [the debtor.]" No. C-92-1845-DLJ, 1993 WL 491309, *7 (N.D. Cal. 1993). The *In re Daisy* plaintiff alleged that the defendant, which was hired to advise on a potential merger, negligently misrepresented that long-term financing would be available for the proposed merger. *Id.* The court held that the allegations were "not sufficient to meet the

substantial misconduct or overreaching standard for non-fiduciary equitable subordination claims." *Id*. Similarly, this Court should dismiss the SAC because its allegations are not sufficient to meet the elevated pleading standard applicable to the Lehman Lenders as non-insiders of Debtors.

        **D.**     **Plaintiffs Fail to Allege Any Basis for Subordinating the Lehman Equity Members' Interests**

Plaintiffs allege even less of a basis for subordinating the Lehman Equity Members' interests. Plaintiffs do not allege that the Lehman Equity Members made any lending promises to Debtors, as they were not the lenders. Plaintiffs resort to alleging that the Lehman Equity Members refused to consent to voluntary bankruptcies by the Trustee Debtors, SAC ¶ 128; "did nothing to cure the purported defaults on the Projects," *id*., and did not offer to inject more capital into the Trustee Debtors even though they could have been called upon to make a "capital commitment for $600 million," *id.* at ¶ 109. These allegations do not come close to identifying the kind of egregious inequitable conduct required to maintain an equitable subordination claim under any standard. Plaintiffs do not allege that the Lehman Equity Members were required to consent to voluntary bankruptcies. Nor do they allege that the Lehman Equity Members had any duty to cure the Trustee Debtors' defaults or that they took any action to prevent the Trustee Debtors from curing their defaults. Finally, Plaintiffs do not allege that the Trustee Debtors made a capital call or that the Lehman Equity Members breached any agreement to provide capital. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted against the Lehman Equity Members.

**III.**     **THE SAC FAILS TO COMPLY WITH FRCP 9(b)**

Plaintiffs have failed to state a claim under FRCP 12(b)(6) as to all Defendants even if the elevated pleading standard for non-insiders as described above did not apply to Plaintiffs' claim against at least the Lehman Lenders. That is because Plaintiffs were also required to plead their

19

claim with particularity under FRCP 9(b). The SAC does not satisfy the FRCP 9(b) pleading standard, and thus should be dismissed.

### A. The SAC Is Governed by FRCP 9(b)

Ninth Circuit law is clear that where a plaintiff alleges in the complaint "that the defendant has engaged in fraudulent conduct, . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of [FCRP] 9(b)." *Vess*, 317 F.3d at 1103-1104. This is true even if fraud "is not a necessary element of a claim . . . ." *Id.*; *see also In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005) (holding that complaint sounded in fraud and therefore was governed by FRCP 9(b) where it sought "damages *resulting from a fraudulent scheme and course of business by defendants*, which harmed [such] purchasers"). Moreover, federal courts have applied FRCP 9(b) to equitable subordination claims founded on fraud allegations. *See*, *e.g.*, *Desmond v. ASR Acquisition Corp.* (*In re Desmond*), 334 B.R. 78, 85-86 (D. N.H. 2005) (dismissing complaint for failure to plead equitable subordination claim with particularity under FRCP 9(b)); *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.* (*In re S.M. Acquisition Co.*), No. 05 C 7076, 2006 WL 2290990, *3, n.3 (N.D. Ill. Aug. 7, 2006) ("[c]ourts may require parties to satisfy Rule 9(b) *if they allege fraud or misrepresentation as the inequitable conduct underlying the equitable subordination defense . . . .*").

In this case, Plaintiffs base their equitable subordination claim on general fraud allegations. In the first paragraph of the SAC, Plaintiffs allege that "Lehman perpetrated a fraud on creditors." SAC ¶ 1. Subsequent allegations state "this adversary proceeding deals with a fraudulent scheme by Lehman" and negotiations occurred "long enough for Lehman to achieve the fraudulent scheme described herein." SAC ¶¶ 29, 90. The SAC fully incorporates these fraud allegations into the equitable subordination claim. *See* SAC ¶ 120. The equitable subordination

claim therefore sounds in fraud.  Accordingly, the SAC must satisfy the heightened pleading standard set out in FRCP 9(b).  *See*, *e.g.*, *Vess*, 317 F.3d at 1106 ("The entirety of Vess's complaint against the APA is comprised of allegations of a unified fraudulent course of conduct.  Each of his claims against the APA is therefore 'grounded in fraud' . . . and the complaint as a whole must satisfy the heightened pleading requirements of Rule 9(b).").

### B.    Plaintiffs Fail to Plead Their Equitable Subordination Claim Against any Defendant With Particularity

Plaintiffs have failed to plead their equitable subordination claim against any Defendant with sufficient particularity under FRCP 9(b).  Plaintiffs' failure to plead with particularity is evident from their repeated resort to attacking "Lehman" or "Lehman Brothers," based entirely on such conclusory allegations as that this entity engaged in "fraud," made unspecified funding promises that it failed to perform, "orchestrat[ed] . . . a squeeze play:  to foreclose on its liens and usurp the properties for itself," and embarked upon a "self-serving scheme" that harmed other "creditors including the Plaintiffs herein."  SAC ¶¶ 1, 15-17.

None of these allegations rise above the level of general and incendiary accusations, and all are specifically directed at an entity that is not even a party to the instant action.  Plaintiffs briefly and cavalierly allege that "representations made by 'Lehman' were being made on behalf of both Lehman ALI and LCPI" (SAC ¶ 78), but provide no particularized allegations to justify or support this blanket assertion.  Plaintiffs may believe they have free license to hurl insults and attacks at anyone associated with the Lehman Lenders and that cobbling together such insults and attacks without any details in a document styled as a "complaint" permits them to proceed on their equitable subordination claim.  FRCP 9(b) plainly prohibits such an approach.

Plaintiffs' violations of FRCP 9(b) are numerous and include the following:

## 1. Plaintiffs Fail To Adequately Plead Lehman ALI and LCPI Made "Numerous Misrepresentations"

Plaintiffs allege "Lehman ALI and/or LCPI" failed "willfully to make required advances despite repeated representations that they would do so." SAC ¶ 124. In support, however, Plaintiffs admit that, in their own words, they offer "just one example" of such a representation:

> As just one example of the numerous misrepresentations regarding payment of creditors that Lehman made between at least the fall of 2007 and the weeks after Lehman filed for bankruptcy in September 2008, in the Spring of 2008, Lehman agreed to pay the bills of Voss Cook & Thell, LLP ("VCT"), a law firm that Lehman wanted to continue to defend various Project-related litigation. Specifically, Lehman promised to pay one-half of the outstanding amount around the time the Restructuring Agreement was signed (May 2008) and one-half 30 days later. When the 30 days were up and VCT asked for payment, Lehman's Gilhool told SunCal's Cook to tell VCT not to worry, that they would get paid. When time continued to go by and VCT complained, Gilhool did pay for the time billed by VCT on its Lehman-related litigation for the month of May 2008 only, and promised the rest shortly. Gilhool again told Cook: "They will be paid." They never were.

SAC ¶ 125.

Focusing just on this lone example from the SAC, it does not comply with the mandate of FRCP 9(b). It fails to specify the date of the alleged communications between Mr. Gilhool and Mr. Cook, and it only generally identifies the alleged "Lehman promis[e]" as occurring sometime "in the Spring of 2008." *See, e.g.*, *Vess*, 317 F.3d at 1106 (Rule 9(b) requires the time, place, and date of the alleged misrepresentation to be plead with specificity); *Edwards*, 356 F.3d at 1065-66 (same); *Neubronner*, 6 F.3d at 672 (same); *Lancaster*, 940 F.2d at 405 (same) ("[T]he applicable time period 'from 1986 up through the present' is listed. This is insufficient [for Rule 9(b)]."). Furthermore, the above allegation only states that the alleged misrepresentations were made to "SunCal's Cook," with the SAC defining "SunCal" as the "SunCal Companies," which are not parties to this Adversary Proceeding. Accordingly, the allegation fails to tie the alleged misrepresentation to any Debtor's reliance, or to specify which Debtor or Debtors engaged or was responsible for the bills of VCT.

Moving beyond the "just one example" relating to the VCT law firm, the SAC contains no further specific examples of alleged fraud or of alleged misrepresentations that induced other creditors to extend credit to Debtors.[15] Thus, putting aside the sole example that Plaintiffs cite, Plaintiffs' claims of misconduct are not accompanied by the "who, what, when, where, and how of the misconduct charged," *Vess*, 317 F.3d 1097 at 1106, and therefore the SAC fails entirely on the requirement to plead such details.[16] *See Lancaster*, 940 F.2d at 405; *Edwards*, 356 F.3d at 1065-1066; *Moore*, 885 F.2d at 541; *see also Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912-IEG (BLM), 2007 WL 2206946, at *5 (S.D. Cal. July 27, 2007) ("Corporations speak through agents and, therefore plaintiffs must identify the agent who made the fraudulent statement, their authority to speak, and to whom the agent spoke. General allegations that a corporation committed fraud, such as here, are insufficient under Rule 9(b)'s pleading requirement."). On this basis alone, the SAC must be dismissed.[17] *See, e.g., Vess*, 317 F.3d at 1107 ("[plaintiff] alleges that the APA misrepresented its connection to Novartis, but he does not identify any specific misrepresentations or specify when and where they occurred. These allegations are not particular enough to satisfy Rule 9(b)."); *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 Fed.Appx. 621, 624 (9th Cir. 2008) ("The plaintiffs' RICO cause of action fails to meet Rule 9(b)'s heightened pleading standard. Most of the alleged predicate acts are general

---

[15]    Plaintiffs do specifically allege that "[b]etween October 9 and November 4, 2008, SunCal's general counsel Cook sent Lehman's Robert Brusco nearly two dozen letters" asking "Lehman" to provide funding, SAC ¶ 102, but they do not allege any fraudulent statements in the letters.

[16]    Plaintiffs make a passing reference that creditors "relied" on the Restructuring Agreement, SAC ¶ 12, but never identify these phantom creditors.

[17]    The equitable subordination claims against OVC and Northlake are premised on allegations that they "purport to have received Lehman ALI's loan and liens on the Oak Valley and Northlake Projects, respectively," and thus "hold claims that are equally subject to equitable subordination, and their liens equally subject to transfer to the estates." SAC ¶ 128. As discussed herein, Plaintiffs have failed to adequately state a claim under FRCP 9(b) against Lehman ALI, so the "loan and liens" that OVC and Northlake allegedly received from Lehman ALI are not subject to equitable subordination and the claims against them must be dismissed as well.

statements about actions committed by the defendants that fail to identify the 'who, what, when, where and how' of the misconduct charged."); *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (holding broad allegation that the defendant "knowingly . . . changed control numbers [on various tests] to wrongfully represent that the laboratory results fell within an acceptable standard of error," where the plaintiff did not specify the "types of tests implicated in the alleged fraud, identify the [defendant's] employees who performed the tests, or provide any dates, times, or places the tests were conducted," did not satisfy Rule 9(b)).[18]

Along the same lines, the SAC must also be dismissed because it fails to provide Defendants with "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner,* 6 F.3d at 671. The SAC simply does not sufficiently allege specific facts demonstrating wrongdoing which Defendants could address and rebut, which Rule 9(b) requires. *See, e.g., Neubronner,* 6 F.3d at 672 ("Neubronner *does not* allege specifically what information Milken obtained, when and from whom he obtained it, and how he used it for his own advantage. It is difficult to imagine how Milken could respond to the complaint other than by generally denying that he ever obtained any material, adverse nonpublic information about Gibralter which he then used to trade Gibralter securities for his own benefit. The complaint offers no specific facts demonstrating wrongdoing which Milken could deny or otherwise controvert.") (emphasis

---

[18]    *See also In re Kimmel*, No. 07-15155, 2008 WL 5076380 (9th Cir. Nov. 25, 2008) ("Rooz's description of the Kimmels' 'fraudulent scheme' fails to allege who committed the fraud or when and where the fraud occurred. Accordingly, the Fourth Amended Complaint does not plead fraud with the particularity required."); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ("Bly-Magee's first amended complaint does not satisfy Rule 9(b). Bly-Magee alleged that 'Lungren concealed the fraudulent submission of false claims . . . to avoid repayment of funds to the United States' and that Lungren conspired with the CDR and the OAG to 'defraud the United States by obtaining payment of fraudulent claims.' These broad allegations included no particularized supporting detail."); *Falkowski v. Imation Corp*., 309 F.3d 1123, 1134 (9th Cir. 2002) ("Again the complaint alleges that Imation's prospectus 'contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and concealed and failed to disclose material facts.' These are textbook examples of conclusory allegations that fail to satisfy the particularity requirements of Rule 9(b).").

in original).[19]  The SAC also fails to "set forth what is false or misleading about [the purported] statement[s], and why [they are] false."[20]  *In re GlenFed*, 42 F.3d at 1548; *Yourish*, 191 F.3d at 993.  In other words, Plaintiffs' fail to "set forth an explanation as to why the [purported] statement[s] . . . complained of [were] false or misleading."  *Id*.; *see also, e.g.*, *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (failure to provide the "specific contents" of purportedly fraudulent notices warrants dismissal under Rule 9(b)); *In re GlenFed*, 42 F.3d at 1548; *Yourish*, 191 F.3d at 993.

### 2.  **Plaintiffs Improperly Lump Defendants Together**

Consistent with their failure to provide details to support their attacks on Defendants, Plaintiffs also hurl their attacks against groups of Defendants, or against all Defendants collectively.  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together" but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'"  *Id*.  The SAC fails to satisfy this standard.

In connection with their claims of fraud and misconduct by the Lehman Lenders,

---

[19]     *See also Vess*, 317 F.3d at 1108 ("Vess does allege that CHADD received $748,000 from Novartis between 1991 and 1994, but that is where the detail both begins and ends.  Vess does not explain how CHADD 'deliberately attempted to increase the sales of Ritalin,' and he identifies no specific 'misinformation' distributed by CHADD.  Vess's conclusory allegations simply are not 'specific enough to give [CHADD] notice of the particular misconduct . . . so that [it] can defend against the charge and not just deny that [it has] done anything wrong.'").

[20]     Plaintiffs allege an unnamed "Lehman" representative stated that "SunCal would be exposed to undue tax liability and that Bruce Elieff, SunCal's CEO and owner, would be 'hung out' on bonds . . . if SunCal refused to enter into the restructuring agreement."  SAC ¶ 9.  In addition to Plaintiffs' failure to identify the purported "Lehman" representative and the date of the alleged statement, Plaintiffs also fail to explain what is false about the alleged statement.  The loans were in default, so if there was no restructuring agreement, the Properties could have been foreclosed upon and "SunCal" and Mr. Elieff could have faced these precise consequences.

Plaintiffs repeatedly refuse to differentiate between, and address separately, Lehman ALI versus LCPI, and Plaintiffs likewise treat the Lehman Equity Members as a group without specifying the alleged specific conduct of each Member. Such an approach violates Rule 9(b)'s requirement to explain "with particularity the time, place, and manner of *each act of fraud*, plus the role of each defendant in *each* scheme." *Lancaster*, 940 F.2d at 405 (emphasis added); *see also Mostowfi*, 269 Fed.Appx. at 624 (plaintiffs failed to satisfy FRCP 9(b) because they "lump together the defendants without identifying the particular acts or omissions that each defendant committed.").

### 3. **Plaintiffs Fail to Adequately Plead a Conspiracy**

Plaintiffs cannot escape the requirement of specifically pleading how, where and when each Defendant allegedly misled them by simply asserting that all Defendants were in a conspiracy, along with "their Lehman parent entity." SAC ¶ 124 ("Lehman ALI and/or LCPI" "conspire[d] with their Lehman parent entity, affiliated lender entities, and even equity partners on the Projects to foreclose on the properties"). A plaintiff who wants to charge that a group of defendants participated in a conspiracy to defraud must still comply with FRCP 9(b), including by "provid[ing] the particulars of when, where, or how the alleged conspiracy occurred." *Vess*, 317 F.3d at 1106; *see also Swartz*, 476 F.3d at 765 (allegation that defendants were "'active participants in the conspiracy' without any stated factual basis are insufficient as a matter of law."); *Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, 270 Fed.Appx. 570, 572 (9th Cir. 2008) ("The complaint states that defendants 'knowingly, and willfully agreed and conspired' to engage in fraudulent conduct, but provides no facts supporting the existence of an agreement outside of defendants' purchase of loans from General Mortgage pursuant to a contract signed nearly two years before the alleged conversion of funds occurred. Such conclusory allegations are insufficient even under the notice pleading of [FRCP] 8(a) . . . much less the heightened standard of [FRCP] 9(b) which applies to the conspiracy to commit fraud claim.").

Plaintiffs have steadfastly refused to provide such particulars, and their refusal dooms their reliance on any alleged conspiracy among Defendants.[21]

### 4. Plaintiffs' Remaining Allegations Also Fail to Satisfy FRCP 9(b)

Plaintiffs make sweeping reference to "hundreds of contractors" who purportedly worked on Projects as a result of "Lehman's" representations. SAC ¶ 81; *see also* ¶ 13. But Plaintiffs do not identify the creditors with which Debtors contracted, the dates of their work or the projects they undertook in reliance on or as a result of "Lehman's" purported representations. In fact, it appears that most of the 450 creditors referenced in the SAC did work for Debtors before the alleged "Lehman" representations were even made.

Plaintiffs allege "Lehman ALI and/or LCPI"[22] "transferr[ed] deeds of trust between Lehman ALI to an affiliate, LCPI, mere weeks before LCPI filed for bankruptcy, for the purpose of assisting Lehman in using its impending bankruptcy to impede successful reorganization of the Projects." SAC ¶ 124. Plaintiffs have pled no facts that make plausible their spurious and irresponsible allegation that Lehman ALI and LCPI knew LCPI would file for bankruptcy "weeks" before it did or that these Defendants were taking action "for the purpose" of impeding Debtors' reorganizations.

Plaintiffs also allege Lehman ALI "improperly record[ed] notices of default against five Projects . . . that were not yet in bankruptcy." SAC ¶ 108. Once again, however, Plaintiffs simply do not specify anything false or misleading in the notices of default or their recordation.

---

[21]     *See also Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912-IEG (BLM), 2007 WL 3047093, at *4 (S.D. Cal. Oct. 16, 2007) (allegation that co-defendants are "one and the same" does not satisfy FRCP 9(b)'s requirements because plaintiffs failed to provide a factual basis for allegation).

[22]     As discussed in section III.B.2 *infra*, Plaintiffs' use of the "and/or" connection between Lehman ALI and LCPI runs afoul of FRCP 9(b)'s requirement that plaintiffs "differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-765. The "and/or" connection deprives Lehman ALI and LCPI of notice of the particular misconduct Plaintiffs allege these separate Defendants committed and fails to inform Lehman ALI and LCPI of the allegations surrounding each entity's supposed participation in a fraud.

IV.  THE SAC VIOLATES THE AUTOMATIC STAY RIGHTS OF LCPI

LCPI recognizes that the Court has already ruled that Plaintiffs could file the SAC without violating the automatic stay that is in effect in LCPI's chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York pursuant to 11 U.S.C. § 362.  LCPI, however, respectfully disagrees with the Court's ruling for the reasons stated previously, and LCPI has appealed the Court's ruling that Plaintiffs may pursue an equitable subordination claim against it.  If LCPI prevails on its appeal, Plaintiffs' equitable subordination claim against it must be dismissed as a violation of the automatic stay applicable to LCPI.

Dated:    April 27, 2009                    PACHULSKI STANG ZIEHL & JONES LLP


                                            /s/ Dean A. Ziehl
                                            Richard M. Pachulski (CA Bar No. 90073)
                                            Dean A. Ziehl (CA Bar No. 84529)
                                            10100 Santa Monica Blvd., Suite 1100
                                            Los Angeles, CA 90067-4100
                                            Telephone:  (310) 277-6910
                                            Facsimile:  (310) 201-0760

                                            -and-

                                            WEIL, GOTSHAL & MANGES LLP
                                            Edward Soto (admitted *pro hac vice*)
                                            Shai Waisman (admitted *pro hac vice*)
                                            767 Fifth Avenue
                                            New York, NY  10153-0119
                                            Telephone:  (212) 310-8000
                                            Facsimile:  (212) 310-8007

                                            Attorneys for Lehman Commercial Paper, Inc.,
                                            Lehman ALI, Inc., Northlake Holdings, LLC
                                            and OVC Holdings, LLC