LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
MARTIN PRITIKIN, State Bar. No. 210845
mpritikin@millerbarondess.com
BRIAN PROCEL, State Bar No. 218657
bprocel@millerbarondess.com
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 552-4400
Facsimile:     (310) 552-8400

[Proposed] Special Litigation Counsel for the Jointly Administered Debtors in Possession
and Steven M. Speier, the Chapter 11 Trustee, and Counsel for All Other Plaintiffs

PAUL J. COUCHOT, State Bar No. 131934
pcouchot@winthropcouchot.com
PETER W. LIANIDES, State Bar No. 160517
plianides@winthropcouchot.com
**WINTHROP COUCHOT, P.C.**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone:     (949) 720-4165
Facsimile:     (949) 720-4111

General Insolvency Counsel for the Jointly Administered Debtors in Possession and
[Proposed] General Insolvency Counsel for Steven M. Speier, the Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION

| | |
|---|---|
| In re <br><br> PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS, <br><br>          Jointly Administered Debtors and <br>          Debtors-in-Possession <br><br> **ADVERSARY PROCEEDING** <br><br> PALMDALE HILLS PROPERTY, LLC, et al., <br><br>          Plaintiffs, <br><br> v. <br><br> LEHMAN ALI, INC., et al., <br><br>          Defendants. | **CASE NO. 8:08-bk-17206-ES** <br> Jointly Administered With Case Nos. <br>    8:08-bk-17209-ES; 8:08-bk-17240-ES; <br>    8:08-bk-17224-ES; 8:08-bk-17242-ES; <br>    8:08-bk-17225-ES; 8:08-bk-17245-ES; <br>    8:08-bk-17227-ES; 8:08-bk-17246-ES; <br>    8:08-bk-17230-ES; 8:08-bk-17231-ES; <br>    8:08-bk-17236-ES; 8:08-bk-17248-ES; <br>    8:08-bk-17249-ES; 8:08-bk-17573 ES; <br>    8:08-bk-17574-ES; 8:08-bk-17575 ES; <br>    8:08-bk-17404-ES; 8:08-bk-17407-ES; <br>    8:08-bk-17408-ES; 8:08-bk-17409-ES; <br>    8:08-bk-17458-ES; 8:08-bk-17465-ES; <br>    8:08-bk-17470-ES; 8:08-bk-17472-ES; <br>    8:08-bk-17588-ES <br> **Adversary No. 8:09-ap-01005-ES** <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## **TABLE OF CONTENTS**

Page

INTRODUCTION..................................................................................................1

LEGAL STANDARD.............................................................................................3

ARGUMENT..........................................................................................................3

I. Substantive Consolidation Is A Red Herring..................................................3

    A. The SAC Is Not Premised on Substantive Consolidation........................3

    B. The SAC Would Suffice Even If It Sought Relief That Depends on
        Consolidation ..........................................................................................5

    C. Plaintiffs Need Not Allege Their Damages With Specificity ..................5

II. The SAC States a Claim for Equitable Subordination......................................6

    A. The SAC States A Claim for Equitable Subordination Against the Lehman
        Lenders ....................................................................................................7

        1. The SAC Alleges the Lehman Lenders Are Insiders.......................7

            a. *Per Se* Insiders..........................................................7

            b. Non-Statutory Insiders...............................................9

                i. The *Winstar* Case..............................................9

                ii. Other cases...................................................13

        2. The SAC Alleges the Lehman Lenders Engaged in Inequitable
            Conduct.......................................................................................14

            a. The SAC Adequately Pleads Inequitable Conduct
               Against Insiders...........................................................14

            b. Defendants' "Refusal to Lend" Cases Are Inapposite...............15

            c. Defendants Mischaracterize the Allegations in the SAC...........15

            d. The SAC Alleges the Lehman Lenders Engaged in Inequitable
                Conduct Even As Non-Insiders.............................18

    B. The SAC States A Claim Against the Successor Lenders ......................19

    C. The SAC States A Claim Against the Lehman Equity Members ...........20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

III. The SAC Does Not Violate Rule 9(b) ............................................................................21

    A.    Plaintiffs' Equitable Subordination Claim Does Not Need to Satisfy Rule 9(b)...21

    B.    To the Extent Rule 9(b) is Applicable, the SAC Satisfies It...................................23

        1.    The SAC Alleges Fraud With the Requisite Particularity .........................24

            a.    Rule 9(b) Is Applied Less Stringently With Ongoing Frauds......24

            b.    The SAC Contains Sufficiently Detailed Fraud Allegations.......25

        2.    The SAC Does Not Impermissibly Lump Defendants Together ...............27

CONCLUSION.............................................................................................................28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

# TABLE OF AUTHORITIES

Page

**Cases**

*604 Columbus Ave. Realty Trust v. Capitol Bank & Trust Co. (In re 604 Columbus Ave. Realty Trust)*, 119 B.R. 350 (Bankr.D.Mass.1990)
aff'd in part and vacated in part on other grounds, 968 F.2d 1332 (1st Cir.1992)..........................18

*Bale v. Dean Witter Reynolds, Inc.*, 627 F. Supp. 650 (D.Minn. 1986) ............................................24

*Bank of New Richmond v. Production Credit Ass'n (In re Osborne)*,
42 B.R. 988 (W.D. Wis. 1984) ............................................................................................ 16, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................3

*Christidis v. First Penn. Mtg. Trust*, 717 F.2d 96 (3d Cir. 1983) ..................................................23

*Cinicola v. Scharffenberger*, 248 F.3d 110 (3d Cir. 2001) ............................................................20

*Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) ......................................................................4

*Conley v. Gibson*, 355 U.S. 41 (1957) ..............................................................................................3

*De la Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978) ..........................................................................3

*Doss. v. South Central Bell Tel. Co.*, 834 F.2d 421 (5th Cir. 1988) ................................................5

*Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle)*, 353 B.R. 892 (Bankr. D. Iadho 2006) ..........9

*Folsom v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*,
633 F. Supp. 178 (N.D. Ill. 1986)................................................................................... 24, 26

*Fox v. Ponce Nicasio Broadcasting, Inc. (In re Ponce Nicasio Broadcasting, LP)*,
2008 WL 361081 (Bankr. E.D. Cal. 2007)..................................................................... 4, 5

*Freeport Transit, Inc. v. McNulty*, 239 F.Supp.2d 102 (D. Me. 2003)................................................4

*General Accident Ins. Co. of America v. Fidelity & Deposit Co. of Md.*,
598 F. Supp. 1223 (E.D. Pa. 1984) ..................................................................................24

*Herzog v. Leighton Holdings, Ltd.*, 239 B.R. 497 (N.D. Ill. 1999) ................................................15

*In re 80 Nassau Associates*, 169 B.R. 832 (Bankr. S.D.N.Y. 1994)..............................................7, 23

*In re After Six, Inc.*, 177 B.R. 219, 233 (Bank. E.D. Pa. 1995) ......................................................15

*In re Aluminum Mills Corp.*, 132 B.R. 869 (Bankr. N.D. Ill. 1991)............................... 13, 14, 16, 18

*In re Ambassador Riverside Investment Grp.*, 62 B.R. 147 (Bankr. M.D. La. 1986)........................14

*In re American Lumber Co.*, 5 B.R. 470 (D.C. Minn. 1980)....................................................... 13, 14

*In re CEP Holdings, LLC*, 2006 WL 3422665 (Bankr. N.D. Ohio Nov. 28, 2006) ............................9

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

iii

1    *In re Coffee*, 348 B.R. 775 (Bankr. E.D. Tenn 2006) ................................................................. 4

2    *In re Delphi Corp.*, 2008 WL 5146952 (Bankr.S.D.N.Y. 2008) ....................................... 22

3    *In re Derivium Capital, LLC*, 380 B.R. 407 (Bankr.D.S.C. 2006) ................................ 21-22

4    *In re El Commandante Mgmt. Co. LLC*, 388 B.R. 469 (D. P.R. 2008) ............................ 8

5    *In re Enron Corp.*, 333 B.R. 205 (Bankr.S.D.N.Y. 2005) ............................................. 19

6    *In re Enron Corp.*, 379 B.R. 425 (S.D.N.Y. 2007) ..................................................... 20

7    *In re Enterprise Acquisition Partners, Inc.*, 319 B.R. 626 (9th Cir.BAP 2004) .................................. 9

8    *In re Exide Technologies, Inc.*, 299 B.R.. 732 (Bankr. D.Del. 2003) ................................ 20

9    *In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ................................ 6, 12, 20

10   *In re Fortune Natural Resources Corp.*, 350 B.R. 693 (Bankr.E.D.La. 2006) .................................. 9

11   *In re Heartland Chemicals*, 103 B.R. 1012 (Bankr. C.D. Ill. 1989) ................................ 16, 17, 18, 19

12   *In re Heartland Chemicals, Inc.*, 136 B.R. 503 (Bankr. C.D. Ill. 1992) ................................ 15, 19

13   *In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292 (10th Cir. 2004) .................................. 20

14   *In re Just For the Fun of It of Tennessee, Inc.*, 7 B.R. 166 (Bankr. E.D. Tenn. 1980) ...................... 18

15   *In re KDI Holdings, Inc.*, 277 B.R. 493 (S.D.N.Y. 1999) ........................................... 13, 14

16   *In re Kelton Motors Inc.*, 121 B.R. 166 (Bankr.D.Vt. 1990) ................................ 13-14, 18, 22

17   *In re Kids Creek Partners, L.P.*, 200 B.R. 996 (Bankr. N.D. Ill. 1996) ............................. 19

18   *In re Kids Creek Partners, L.P.*, 212 B.R. 898 (Bankr. N.D. Ill. 1997) ......................... 15, 18

19   *In re M. Paolella & Sons, Inc.*, 161 B.R. 107 (E.D. Pa. 1993) ................................... 15

20   *In re Matter of Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1991) ................................... 7, 8

21   *In re Mobile Steel Co.*, 563 F.2d, 692 (5th Cir. 1977) ................................................. 7

22   *In re Pacific Express, Inc.*, 69 B.R. 112 (BAP 9th Cir. 1986) ...................................... 6, 7

23   *In re Rath Packing Co.*, 38 B.R. 552 (Bankr. N. D. Iowa 1984) ................................... 4

24   *In re Reichmann Petroleum Corp.*, 364 B.R. 916 (Bankr. E.D. Tex. 2007) ........................... 8

25   *In re T.E. Mercer Trucking Co.*, 16 B.R. 176 (Bankr. Tex. 1981) ............................... 7, 13

26   *In re Universal Farming Industries*, 873 F.2d 1334 (9th Cir. 1989) ................................ 6

27   *In re Winstar Communications Inc.*, 554 F.3d 382 (3rd Cir. 2009) ............................... passim

28   *Kendall v. Visa USA, Inc.*, 518 F.3d 1042 (9th Cir. 2008) ........................................... 3

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

*Kimmel v. Peterson*, 565 F. Supp. 476 (E.D. Pa. 1983)..........................................................23, 24, 26

*Kotoshirodo v. Dorland & Assocs., Inc. (In re Lull),*
2008 WL 3895561 (Bankr. D. Haw., Aug. 22, 2008) .......................................................... 9

*Liberty Mut. Ins. Co. v. Leroy Holding Co., Inc. (In re Fort Ann Express, Inc.),* 226 B.R. 746
(N.D.N.Y. 1998) ....................................................................................................................... 6

*Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.),*
319 B.R. 626 (BAP 9th Cir. 2004) ........................................................................................ 8, 9

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) .......................................................................... 26

*New Jersey Steel Corp. v. Bank of New York*, 1997 WL 716911 (S.D.N.Y. 1997)........................... 22

*O'Connell v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101 (Bankr. S.D.N.Y. 2005) .......... 9, 21

*Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438 (S.D.N.Y. 1994) ............................................ 10

*People v. Kinder Morgan Energy Partners, L.P.*, 569 F.Supp.2d 1073 (S.D. Cal. 2008)................... 5

*Poland v. Stewart*, 117 F.3d 1094 (9th Cir. 1997)............................................................................ 4

*Reaves v. Comerica Bank-Calif. (In re GTI Capital Holdings, LLC),*
2007 WL 2493671 (Bankr. D. Ariz. 2007)............................................................................ 18

*Shubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.)*, 348 B.R. 234
(Bankr.D.Del.2005) .......................................................................................................... 10, 11

*Solomon v. Barman (In re Barman)*, 237 B.R. 342 (Bankr. E.D. Mich. 1999) .................................. 9

*Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir. 1993) ...................................................................... 14

*Sunbird Air Servs. v. Beech Aircraft Corp.*, 789 F. Supp. 364 (D.Kan. 1992) ................................ 24

*Sunset Financial Resources Inc. v. Redevelopment Group V, LLC*, 417 F.Supp.2d 632
(D.N.J. 2006) ......................................................................................................................... 25

*Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002)............................................................................. 3

*Trinity Nat'l Bank v. Bobby Boggs, Inc. (Matter of Bobby Boggs, Inc.)*, 819 F.2d (5th Cir. 1987)...... 7

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir.1981)............................................... 17

*United States v. Hempfling*, 431 F. Supp. 2d 1069 (E.D. Cal. 2006) ............................................... 24

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir.1987)....................................................... 3, 4, 6

*Vess v. CIBA-Geicy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...................................................... 23

*Youngberg v. Bekins Co.*, 930 F. Supp. 1396 (E.D. Cal. 1996)................................................... 8, 20

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**Statutes**

11 U.S.C. § 101 .............................................................................................. 8, 9

11 U.S.C. § 101(2) .............................................................................................. 8

11 U.S.C. § 101(31) ................................................................................. 7, 8, 9, 20

11 U.S.C. § 101(31)(E) ....................................................................................... 8


**Federal Rules of Civil Procedure**
Rule 8 ................................................................................................................. 1, 2
Rule 8(a) ................................................................................................................. 5
Rule 8(a)(2) ........................................................................................................... 23
Rule 12(b)(6) ........................................................................................... 3, 21, 22
Rule 9(b) ......................................................................................................... passim

**Treatises**
5A C. Wright & A. Miller, *Fed. Practice and Proc.* § 1298, at 407 (1969) ....................................... 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

Defendants face a steep uphill battle in seeking to have their Motion ("Motion") to Dismiss the Second Amended Complaint ("SAC") granted.[1]  It is a battle they cannot win.

Defendants' lead argument, in which they oppose substantive consolidation, is raised against the shadow of a straw man—they tackle a position that is not just artificially weak, but nonexistent. Contrary to Defendants' assumption, the SAC is *not* "premised on" substantive consolidation.  It currently states a valid cause of action for equitable subordination of the claims or interests of the applicable Lehman Lender or Equity Member of each of the twenty-six Debtors to the Debtors' respective unsecured creditors, regardless whether substantive consolidation is ever granted. Defendants concede that substantive consolidation is "not presently at issue," and that "Plaintiffs do not request such consolidation in the SAC," but contend that consolidation is "[i]mplicit in Plaintiffs' SAC."  However, the sufficiency of the SAC must be judged against what is *actually alleged*, not what Defendant self-servingly *assume* has been or may be alleged.

Defendants decry that Plaintiffs have not identified every one of the *hundreds* of unsecured creditors, or categorized them according to which Project(s) they worked on.  Yet Defendants point to no authority that Plaintiffs are required to do so at this stage.  Indeed, had Plaintiffs done what Defendants apparently seek, the complaint would be a tangled web running hundreds of pages, and Defendants would no doubt be alleging a violation of Fed. R. Civ. P. 8's requirement of a "short and plain statement."

Defendants' first *substantive* argument—that the SAC supposedly fails to state a claim for equitable subordination—similarly depends on wishful thinking or selective quotation of the SAC, rather than facing head-on what the complaint actually alleges.  Plaintiffs allege that Lehman (the parent of all Defendants) was the partner of SunCal (the parent of all the Debtors) in a years-long joint venture, and that Lehman agreed to continue funding development of the Debtors' real estate

---

[1] As set forth in Plaintiffs' Supplemental Unilateral Status Report Re Lehman's Standing In This Action filed on May 8, 2009, there is a serious question whether some or all of the Defendants are the real parties in interest and have standing to assert rights in the liens/loans at issue in this case. Plaintiffs reserve all rights and arguments with respect to this critical threshold issue.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

projects (the "Projects"), then pulled the plug after Debtors—in reliance on the promised funding—incurred millions of dollars in debt to third parties (now Debtors' unsecured creditors).

Although Defendants may take issue with whether Plaintiffs will ultimately be able to *prove* their allegations that Defendants are insiders, those allegations—which must be accepted as true for purposes of a motion to dismiss—are plainly sufficient to survive Defendants' threshold challenge. Given that Defendants are alleged to be insiders, Plaintiffs' burden to plead inequitable conduct is lower. The fraudulent scheme, breaches of contract, threats, and breaches of fiduciary duty alleged in the SAC easily satisfy that burden. Indeed, the allegations here are enough to satisfy the "gross and egregious" conduct standard even if any of the Defendants were not alleged to be insiders.

As to Defendants' Rule 9(b) challenge on grounds of insufficient particularity, they put the cart before the horse. Plaintiffs need not prove fraud to state a claim for equitable subordination (whether against insiders or non-insiders), and so need not satisfy Rule 9(b). The allegations of inequitable conduct apart from fraud are more than sufficient.

Even if Rule 9(b) were to apply, the SAC would satisfy it. Plaintiffs have identified the particular agents who made the misrepresentations; to whom they were made; the substance of the representations, and what was false about them; the time period over which they were made; and the medium and frequency with which they were made. Defendants take the position that this is not enough, because Plaintiffs have not identified the *exact date* of *each and every* one of the numerous representations. Ironically, Defendants are seeking to use the enormity of their wrongdoing *against* Plaintiffs by arguing that the SAC must catalogue in detail all of the myriad instances of their fraud.

Defendants ignore that Rule 9(b) must be balanced against Rule 8's requirement for a short and plain statement. Plaintiffs have alleged an ongoing course of misrepresentations occurring over a period of a year or more. In such circumstances, the particularity requirement is relaxed. The full details can and will be obtained in discovery.

Defendants' Rule 9(b) challenge is a classic example of elevating form over substance. The purpose of the heightened pleading requirement is to prevent spurious claims of fraud, and to put defendants on notice of what is being alleged against them. The SAC is grounded in extensive facts, and provides Defendants more than enough detail to know what to defend against.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LEGAL STANDARD

Motions to dismiss for failure to state a claim are "viewed with disfavor in the federal courts." *De la Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). The Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987).[2]

## ARGUMENT

### I.    Substantive Consolidation Is A Red Herring

On a challenge to the sufficiency of a complaint, a court is to consider only the pleadings, and not extraneous matter. *Thompson v. Davis*, 295 F.3d 890, 896 n.3 (9th Cir. 2002). Defendants acknowledge that there are no express allegations in the SAC that make Plaintiffs' entitlement to relief contingent upon substantive consolidation being granted. Motion at 8:13 ("Plaintiffs do not seek such consolidation in the SAC."). Yet Defendants argue that it is *"[i]mplicit* in Plaintiffs' SAC—made explicit in Plaintiffs' *other filings* in this Court"—that substantive consolidation must be granted for Plaintiffs to be entitled to relief. Motion at 8:8-9 (emphasis added).

### A.    The SAC Is Not Premised on Substantive Consolidation

Defendants' lead argument—that this adversary proceeding is unripe because the SAC is premised on substantive consolidation—is a nonstarter. The SAC is *not* premised on substantive consolidation, as Defendants themselves acknowledge.[3]

---

[2] In *Conley v. Gibson*, the Supreme Court ruled that a court may not grant a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Defendants cite *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), an antirust case which purportedly abrogated *Conley*'s "no set of facts" rule. Motion at 5:11-23. However, Ninth Circuit precedent since *Bell Atlantic* has suggested that the scope of that holding is limited. *See Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1047 & n.5 (9th Cir. 2008) (noting special considerations in antitrust cases, and stating that, "[a]t least for the purposes of adequate pleading *in antitrust cases*, the Court specifically abrogated the usual 'notice pleading' rule . . . .") (emphasis added); *see Bell Atlantic*, 550 U.S. at 554-55 ("This case presents the antecedent question of what a plaintiff must plead in order to state a claim *under § 1 of the Sherman Act*.") (emphasis added). In any event, *Bell Atlantic* reaffirmed that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 555-56.

[3] Defendants' argument is disingenuous. Their objection to Debtors' Plan of Confirmation acknowledges Debtors' intention that "General Unsecured Creditors . . . shall be paid in full from net sale proceeds from their *respective* estate if substantive consolidation is *not* granted." Objection at

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

1     Not only does Defendants' argument violate the rule against considering extraneous matter

2     on a motion to dismiss, it also violates the well-established principle that the Court must draw all

3     inferences favorable to the Plaintiffs. *Usher*, 828 F.2d at 561. Defendants rely on the fact that in the

4     prayer for relief, the SAC asks for "[e]quitable subordination to the unsecured creditors of all claims

5     held by the Defendants." Motion at 7:19-26. This requests subordination of the *respective*

6     Defendants' claims to the *respective* unsecured creditors of each Debtor.[4]

7           The cases that Defendants cite are thus inapplicable, as they all involve claims that are

8     *necessarily* contingent on future events. *See* Motion at 9 (citing cases).[5] In *Clinton v. Acequia, Inc.*,

9     94 F.3d 568 (9th Cir. 1996), the court found that the plaintiff's breach of contract claim was unripe

10    where "[t]he parties agree[d] that, if an agreement . . . even exists, [defendant] has until 1997 to

11    perform its obligation." *Id.* at 572. In *Poland v. Stewart*, 117 F.3d 1094 (9th Cir. 1997), the

12    defendant's Eight Amendment challenge to lethal gas as a cruel and unusual method of execution

13    was held not to be ripe, where he had not yet elected to be executed by that method, and a different

14    method would be applied unless he elected that method. *Id.* at 1104. In *In re Rath Packing Co.*, 38

15    B.R. 552 (Bankr. N. D. Iowa 1984), the debtor sought to subordinate the claims of entities that

16    would have claims to subordinate, if at all, *only* following a labor dispute hearing that had not yet

17    occurred. *Id.* at 557; *see also In re Coffee*, 348 B.R. 775, 781 (Bankr. E.D. Tenn 2006) (finding

18    claim unripe where "*everything* depends on whether the state court makes an award to the defendant

19    and, if so, how it fashions that award.") (emphasis added).[6]

20

21    8:23-26 (citing Plan at 29-30) (emphasis added).

22    [4] The Debtors' cases are jointly administered, and Plaintiffs allege that "[t]he same course of conduct applied to all Projects." SAC ¶ 83. Thus, Plaintiffs have a legal and factual basis for making group allegations.

23

24    [5] Defendants not only argue that the SAC is premised on substantive consolidation, they argue that consolidation itself should not be granted. *See* Motion at 8:14-9:4. Even if the SAC were read to raise substantive consolidation, this clearly violates the rule that the likelihood of succeeding on the merits is not relevant to a motion to dismiss. *Freeport Transit, Inc. v. McNulty*, 239 F.Supp.2d 102, 108 (D. Me. 2003) ("Rule 12(b)(6) does not provide an avenue for defendants to challenge the underlying merits of a case."). Accordingly, Plaintiffs will not address the merits here.

25

26

27    [6] Defendants also cite *Fox v. Ponce Nicasio Broadcasting, Inc. (In re Ponce Nicasio Broadcasting, LP)*, No. 04-26256-B-7, 2008 WL 361081, *10 (Bankr. E.D. Cal. 2007) for the proposition that it was "legally insufficient for plaintiff [*sic*] to lump two entities together and refer to them as 'Debtors' where the debtor entities 'are separate entities in separate bankruptcy cases. No

28

Here, regardless whether or when substantive consolidation is granted, under the allegations in the SAC, the creditors of each Debtor would *currently* be entitled to subordinate the claims or interests of the respective Lehman Lender and/or Equity Member for that Debtor.

**B.  The SAC Would Suffice Even If It Sought Relief That Depends on Consolidation**

Even if the SAC is read to seek relief to which Plaintiffs are not currently entitled (i.e., subordination of the claim of a lender to Debtor A to the claims of creditors of Debtor B), *"demand of an improper remedy is not fatal* to a party's pleading if the statement of the claim is otherwise sufficient to show entitlement to a different form of relief." *Doss. v. South Central Bell Tel. Co.*, 834 F.2d 421, 424 n.3 (5th Cir. 1988) (emphasis added). Since the SAC is sufficient to show entitlement to equitable subordination on a Debtor-by-Debtor basis, the fact that the Court may be unable to subordinate claims across Debtors unless and until substantive consolidation is granted is irrelevant for purposes of this Motion. *People v. Kinder Morgan Energy Partners, L.P.*, 569 F.Supp.2d 1073, 1082 n.2 (S.D. Cal. 2008) ("The fact that by the prayer of the complaint, plaintiffs ask relief beyond the power of the court to award them, does not detract from the sufficiency of the complaint to state a cause of action . . . .") (quotation omitted).

**C.  Plaintiffs Need Not Allege Their Damages With Specificity**

What Defendants are really trying to do is hold Plaintiffs to a pleading burden that doesn't exist. Defendants take the position that Plaintiffs are relying on substantive consolidation to "avoid having to *plead* and prove which creditors were disadvantaged by Defendants' alleged conduct." Motion at 8:10-12 (emphasis added). But defendants cite to no authority that Plaintiffs are required in their complaint to plead in detail which of the hundreds of creditors have claims against which of the twenty-six Debtor entities. If the SAC had gone into such detail, it would have run into hundreds of pages, and run afoul of Fed. R. Civ. P. 8(a)'s requirement of a "short and plain statement."

---

substantive consolidation of the cases has occurred.'"). Motion at 7:27-8:3. Defendants overlook that in *Fox*, the defendants' motion for *summary judgment* on the fraudulent transfer claims against them was denied because, due to their lumping the two debtors together, they "fail[ed] to show evidence *establishing* the source of the transfers they admit they received." *Id.* at *10 (emphasis added). What is sufficient to prove that a plaintiff cannot make out a claim for purposes of summary judgment is an entirely separate issue from what is sufficient for a plaintiff to adequately *plead* a claim, where all reasonable inference must be granted in the plaintiff's favor.

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    Moreover, Plaintiffs are alleging that essentially *all* of their unsecured debt is the result of

2    Defendants' inequitable conduct. *See* SAC ¶ 13; Prayer for Relief. They *could not* have included in

3    their SAC all the detail that Defendants demand, as the deadline to file proofs of claim was not until

4    March 31, 2009—*after* the SAC was filed on March 26, 2009. If Plaintiffs listed less than all the

5    creditors, they would be required to amend their pleading as new creditor claims were filed.

6    Defendants would no doubt oppose such amendments, and/or try to hold any omissions of creditor

7    identification strictly against Plaintiffs.

8        In short, Plaintiffs need not prove up each component of their damages at the pleading stage.

9    That is for discovery and trial. *Usher*, 828 F.2d at 561 ("The issue is not whether the plaintiff

10   ultimately will prevail, but whether he is entitled to offer evidence to support his claim.").

## II.    The SAC States a Claim for Equitable Subordination

12       It is well-settled that "bankruptcy courts exercise broad equitable power to subordinate

13   claims." *See In re Universal Farming Industries*, 873 F.2d 1334, 1337 (9th Cir. 1989). Equitable

14   subordination requires the three following findings: "(1) that the claimant engaged in some type of

15   inequitable conduct; (2) that the misconduct injured creditors or conferred unfair advantage on the

16   claimant; and (3) that the subordination would not be inconsistent with the Bankruptcy Code." *In re*

17   *First Alliance Mortg. Co.*, 471 F.3d 977, 1007 (9th Cir. 2006).

18       Defendants' Motion does not dispute that the allegations in the SAC are sufficient regarding

19   the second and third prongs—injury to creditors/unfair advantage to claimant, and consistency with

20   the Bankruptcy Code. Rather, Defendants take issue only with the sufficiency of the allegations

21   regarding "inequitable conduct." The standard of inequitable conduct that must be shown depends

22   on whether the creditor is an insider of the debtor. "Determining who should be considered an

23   insider for purposes of this analysis presents a highly fact sensitive question." *Liberty Mut. Ins. Co.*

24   *v. Leroy Holding Co., Inc. (In re Fort Ann Express, Inc.)*, 226 B.R. 746, 755 (N.D.N.Y. 1998).

25       When an equitable subordination defendant is alleged to be an insider of the debtor, the

26   plaintiff's burden of pleading and proving inequitable conduct is lower. *In re Pacific Express, Inc.*,

27   69 B.R. 112, 116 (BAP 9th Cir. 1986) ("Where the claimant is an insider, his dealings with the debtor

28   will be subjected to more exacting scrutiny. If the objectant comes forward with sufficient

6

substantiations of misconduct on the part of the insider claimant, the burden will shift to the insider to establish that each of his challenged transactions with the debtor had all the earmarks of an arm's length bargain.") (quotation omitted); *In re Matter of Fabricators, Inc.*, 926 F.2d 1458, 1465 (5th Cir. 1991) ("A claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts.").

As Defendants themselves concede, even where the defendant is not an insider, equitable subordination may still be premised on "gross misconduct tantamount to fraud, overreaching or spoliation to the detriment of others." Motion at 16:10-12 (quoting *In re Pacific Express*, 69 B.R. at 116 (quotation omitted)). Moreover, proving outright fraud may be sufficient, but is not necessary. *In re T.E. Mercer Trucking Co.*, 16 B.R. 176, 189 (Bankr. Tex. 1981) ("Actual fraud need not be established."). A non-insider's claim will be subordinated if he

> committed some breach of an existing, legally recognized duty arising under *contract, tort or other area of law*. In commercial cases, the proponent must demonstrate a *substantial breach of contract and advantage-taking* by the creditor.

*In re 80 Nassau Associates*, 169 B.R. 832, 840 (Bankr. S.D.N.Y. 1994) (emphasis added). Even aside from a breach of contract, promissory estoppel can support equitable subordination. *Trinity Nat'l Bank v. Bobby Boggs, Inc. (Matter of Bobby Boggs, Inc.)*, 819 F.2d, 574, 579 (5th Cir. 1987); *see generally In re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1977) (the inequitable conduct may be "unrelated to the acquisition or assertion of the particular claim whose status [is] at issue.").

A. **The SAC States A Claim for Equitable Subordination Against the Lehman Lenders**

1. **The SAC Alleges the Lehman Lenders Are Insiders**

a. ***Per Se* Insiders**

Bankruptcy Code section 101(31) includes a non-exclusive list of categories of insiders, known as "*per se*" insiders. Here, Lehman ALI, OVC and Northlake Holdings are alleged to be *per se* insiders of the Trustee Debtors, because they are "affiliates" of the Lehman Equity Members, which—as Defendants concede—are themselves alleged to be insiders of the Trustee Debtors. *See* SAC ¶¶ 122, 128 (alleging Equity Members' insider status, and Lehman Lenders' affiliation); *see*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    *also* 11 U.S.C. § 101(31)(E) (*per se* insider includes an "affiliate, or insider of an affiliate as if such

2    affiliate were the debtor"); 11 U.S.C. § 101(2) (defining "affiliate").

3         Lehman Brothers Holdings, Inc. ("LBHI") is alleged to have a controlling interest in both

4    these Lehman Lenders and the Lehman Equity Members in the Trustee Debtors.  SAC ¶¶ 122, 128.

5    Bankruptcy courts have found "sibling" affiliates that are "horizontally" related to a debtor through a

6    common direct or indirect parent to meet the statutory definition of an "insider" under 11 U.S.C. §

7    101(31).  *See In re Reichmann Petroleum Corp.*, 364 B.R. 916 (Bankr. E.D. Tex. 2007).

8         Defendants argue that the allegation that LBHI has a "controlling interest" in each of the

9    "sibling" entities is insufficient, because there is no specific allegation that LBHI owns "20 percent

10   or more of the outstanding voting securities" of the Lehman Equity Members.  Motion at 13:7-14:10

11   (quoting 11 U.S.C. § 101(2)).  But it is at least a reasonable inference that an entity that has a

12   "controlling interest" owns more than 20% of the voting rights.  *See Youngberg v. Bekins Co.*, 930 F.

13   Supp. 1396, 1398-99 (E.D. Cal. 1996) ("[T]he plaintiff need not necessarily plead a particular fact if

14   that fact is a reasonable inference from facts properly alleged.").

15        Moreover, even boilerplate allegations of *per se* insider status are accepted at the pleading

16   stage.  *See, e.g., In re El Commandante Mgmt. Co. LLC*, 388 B.R. 469, 474 (D. P.R. 2008)

17   (allegation that "[defendant] was an insider because he was either Director of the Debtors, officer of

18   the Debtors or a person in control of the Debtors. . . . satisfies the liberal pleading requirement of

19   Rule 8(a).").  Ultimately, whether Defendants are statutory *or* non-statutory insiders is a factual issue

20   that cannot be resolved in Defendants' favor now.  *Matter of Fabricators*, 926 F.2d at 1466 ("A

21   determination of insider status is a question of fact . . . .").

22        Defendants further argue that the requisite affiliate relationship for *per se* insider status under

23   11 U.S.C. § 101 cannot be established when one of the sibling entities is an LLC.  Motion at 14:11-

24   24.  They cite to *Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition*

25   *Partners, Inc.)*, 319 B.R. 626, 632 (BAP 9th Cir. 2004), which stated that "[t]here is no justification

26   for expanding the definition of *per se* insider beyond what is plainly contained in the statute."

27   Motion at 14:14-17.  However, the *Miller* court was *not* concerned with whether LLCs count as

28   corporations for purposes of fitting within the insider categories provided for under statute, and other

8

courts have applied the insider provisions of section § 101 to LLCs. *See O'Connell v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 110-11 (Bankr. S.D.N.Y. 2005); *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 348-49 (Bankr. E.D. Mich. 1999) (same); *In re CEP Holdings, LLC*, 2006 WL 3422665, at *1 n.1 (Bankr. N.D. Ohio Nov. 28, 2006).[7]

### b.    Non-Statutory Insiders

As noted above, section 101(31)'s list of categories of insiders is by no means exclusive. Indeed, "[b]ankruptcy law recognizes two types of insiders: those specifically identified in § 101(31), commonly referred to as 'per se' insiders, and those not so identified but who have a sufficiently close relationship with the debtor to be insiders, commonly referred to as 'non-statutory' insiders." *In re Fortune Natural Resources Corp.*, 350 B.R. 693, 695 (Bankr.E.D.La. 2006) (citing *In re Enterprise Acquisition Partners, Inc.*, 319 B.R. 626, 631 (9th Cir.BAP 2004)). Here, regardless whether any of the Lehman Lenders are per se insiders, the SAC alleges that Lehman ALI and LCPI are non-statutory insiders based on their exertion of control over the Debtors.

### i.    The *Winstar* Case

In the recent case of *In re Winstar Communications Inc.*, 554 F.3d 382 (3rd Cir. 2009) ["*Winstar II*"], the Third Circuit affirmed the bankruptcy court's ruling equitably subordinating the claims of Lucent Technologies (Lucent), the primary secured lender to the debtor (Winstar), based on a finding that it was a non-statutory insider of Winstar. The facts of *Winstar II* are uncannily similar to those alleged in the SAC here, and in many respects, this case is even more egregious.

The relationship between Winstar and Lucent began as a "strategic partnership" in which "Lucent essentially agreed to help finance and construct Winstar's global broadband telecommunications network." *Winstar II*, 554 F.3d at 391. Here, Plaintiffs allege the existence of a joint venture that began several years ago, in which "Lehman provided financing to, and determined

---

[7] Defendants cite to *Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle)*, 353 B.R. 892 (Bankr. D. Iadho 2006) and *Kotoshirodo v. Dorland & Assocs., Inc. (In re Lull)*, Adv. No. 08-90001, 2008 WL 3895561 (Bankr. D. Haw., Aug. 22, 2008), which declined to analogize LLC's to corporations. Motion at 14:19-24. *In re Weddle* applied *Miller* without analysis. *See In re Weddle*. 353 B.R. at at 897. In turn, *In re Lull* simply relied on *In re Weddle*. *See In re Lull*, 2008 WL 3895561, at *8-9. Thus, no court within the Ninth Circuit has addressed *why* LLCs should not be treated like corporations for purposes of insider analysis.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

the financial structure of, the Projects, and SunCal brought real estate development expertise to the venture." SAC ¶ 2; *see id.* ¶ 3 ("For years, the practice under SunCal and Lehman's *joint venture* was for Lehman to fund the Projects, and for SunCal to control and manage the development process . . . .") (emphasis added); *id.* ¶ 123 ("Lehman ALI and/or LCPI and Lehman-related entities *were partners* with SunCal and related entities for many years. Lehman ALI and LCPI were and are Debtors' primary source of credit.") (emphasis added); *see also Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 500 (S.D.N.Y. 1994) (factors which support finding of insider status include whether creditor "generally acted as a joint venturer or prospective partner with the debtor rather than an arms-length creditor").

Lucent extended a $2 billion line of credit to Winstar, for which "Lucent received a security interest in the borrowing subsidiaries' assets." *Winstar II*, 554 F.3d at 392. Here, Lehman loaned approximately $2 billion to SunCal and/or its affiliates or subsidiaries for the acquisition and development of various properties (SAC ¶ 2), and "the respective lending entities [Lehman ALI and/or LCPI] obtained liens on each property as security for its loan and/or obtained pledges of equity interests in the entities owning such properties." SAC ¶ 67.

Lucent was "interested in ensuring that its financial records show a rosy picture. To this end, it focused on the quarterly reports that it reported publicly and to financial authorities." *Winstar II*, 554 F.3d at 397. Accordingly, Lucent entered into transactions with Winstar that "enabled Lucent to report more revenue and appear more profitable in its quarterly reports than it really was." *Id.* (quoting *Shubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.)*, 348 B.R. 234, 255 (Bankr.D.Del.2005) (["*Winstar I*"])). The court found that

> [w]hat began as a "strategic partnership" to benefit both parties quickly degenerated into a relationship in which the much larger company [Lucent] bullied and threatened the smaller [Winstar] into taking actions that were designed to benefit the larger at the expense of the smaller.

*Id.* at 392-93 (quoting *Winstar I*, 348 B.R. at 251).

Here, Plaintiffs allege that "[f]or several years prior to 2007, the SunCal-Lehman partnership thrived, and the parties prospered in their venture together." SAC ¶ 79. However, when the real estate market suffered a downturn in or around mid-2007, the relationship changed:

10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1        Lehman became much more 'hands on' in scrutinizing—and approving—budgets and

2    expenses. . . . Lehman would unilaterally dictate what future work would proceed, and also

    decided what payables were "urgent" and what other payables could be deferred.  Lehamn

3    thereby effectively took over not only financial control of the Projects, but ultimate
    management control as well.

4    SAC ¶ 80.  The SAC further alleges that Lehman, much like Lucent, threatened SunCal into moving

5    forward with a restructuring of the Projects on Lehman's terms, for Lehman's own benefit:

6        Unbeknownst to SunCal, Lehman had its own agenda for taking financial control.  On
    information and belief, in order to mask the decline in value of the Projects—and to

7        minimize write-downs that would have further weakened its own declining financial
    position—Lehman wanted to, and did, create the appearance that it would recoup all, or a

8        substantial portion, of its multi-billion dollar investment in the SunCal projects.

9        On information and belief, *Lehman sought to minimize to the outside world the*
    *Projects' decline in value,* keep SunCal and the other creditors on the hook and make it

10       appear that the Projects were viable, being supported and would continue going forward.
    *This was done to prop up Lehman's weakening stock price for the benefit of the securities*

11       *markets and to entice potential investors Lehman was pursuing to fortify its faltering*
    *finances.*

12
    *In furtherance of this scheme, Lehman threatened SunCal in an effort to obtain its*

13       *consent to a restructuring agreement.*  For instance, Lehman stated it would ensure that
    SunCal would be exposed to undue tax liability and that Bruce Elieff, SunCal's CEO and

14       owner, would be "hung out" on bonds posted in connection with the Projects if SunCal
    refused to enter into the restructuring agreement.

15
    In May 2008, *faced with no other option, SunCal agreed* to Lehman's supposed

16       restructuring agreement ("Restructuring Agreement").  Under the terms of the Restructuring
    Agreement, *Lehman would* act as both lender and equity partner and *recoup its investment*

17       *plus interest and more.*

18   SAC ¶¶ 7-10 (emphasis added).

19       Lucent "used its position as Winstar's lender to ensure Winstar's cooperation by repeated

20   threats to stop both the funding of Winstar's draw requests and the payment of Wireless' invoices for

21   services already performed."  *Id.* at 393 (quoting *Winstar I*, 348 B.R. at 251).  Here, Plaintiffs

22   entered into the Restructuring Agreement, in part, because Defendants promised to

23       (1) make advances under existing loans to fund the continuing costs necessary to preserve the
    value of the Projects; (2) move forward to resolve the accrued outstanding subcontractor

24       payables, i.e., to make sure that the Projects' creditors were paid for their work; and (3) to
    close the transaction, whereby . . . new Lehman/SunCal entities would assume Plaintiffs'

25       debt obligations to Lehman, assume bond obligations previously owed by SunCal and its
    affiliates, and provide indemnifications to SunCal and the Plaintiffs.

26

27   SAC ¶ 84.  Thus, without entering into this agreement, Plaintiffs would be "hung out" to pay these

28   debts—even though Lehman was the one who induced Plaintiffs to incur them.  See SAC ¶¶ 80-81.

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    Lucent argued that "in order for a creditor to constitute an 'insider' either as a 'person in

2   control' [under 11 U.S.C. § 101(31)(B)(iii)] or as a non-statutory insider, the creditor must exercise

3   'actual managerial control over the debtors' day-to-day operations.'" *Winstar II*, 554 F.3d at 395

4   (quoting Lucent's brief). However, the Third Circuit held that such actual control "is not necessary

5   for an entity to be a non-statutory insider," for "[t]o hold otherwise would render meaningless

6   Congress' decision to provide a *non-exhaustive* list of insider in 11 U.S.C. § 101(31)(B) because the

7   'person in control' category would function as a determinative test." *Id.* at 396 (emphasis added).

8   Rather, the test for a non-statutory insider is "whether there is a close relationship [between debtor

9   and creditor] and . . . anything other than closeness to suggest that any transactions were not

10   conducted at arm's length." *Id.* at 396-97 (quotation omitted). The *Winstar II* court rejected

11   "Lucent's contention that it was merely driving a hard bargain and exercising its contractual rights,"

12   *id.* at 398-99, and affirmed the finding that Lucent was a non-statutory insider. *Id.* at 400.

13    Just as Lucent was found to be an insider, so, too, should Lehman ALI and LCPI. Plaintiffs

14   allege that Lehman was their years-long partner and primary source of credit (through Defendants

15   Lehman ALI and/or LCPI). SAC ¶¶ 2- 4, 9, 67, 79, 123. Lehman induced Plaintiffs to move

16   forward with development of the Projects despite the downturn and incur millions of dollars of debt

17   in third-party work through promises of payment for that work. SAC ¶¶ 5-6, 12, 81, 91, 112-13.

18   Lehman induced Plaintiffs to enter into the Restructuring Agreement on terms favorable to Lehman

19   by threatening not to pay for work it had induced Plaintiffs to incur, in order to mask the Projects'

20   devaluation and conceal its own faltering finances. SAC ¶¶ 7-10, 82, 90. Lehman ultimately

21   refused to provide Plaintiffs with the benefit of the very bargain it had coerced Plaintiffs into

22   entering. SAC ¶¶ 13, 89, 102-07. These allegations of Lehman's non-statutory insider status are

23   more than sufficient to survive a motion to dismiss.[8]

---

25   [8] Defendants contend that in *In re First Alliance*, the Ninth Circuit "affirmed a district court's
ruling that LCPI and Lehman Brothers, Inc. were *not* insiders of a debtor even though they had
26   become the debtor's "sole source of warehouse funding and underwriting." Motion at 15:11-16
(quoting *In re First Alliance Mortgage Co.*, 471 F.3d 977, 986-87 (9th Cir. 2006). But it does not
27   appear that the trustee in that case even alleged that Lehman was insider, so the court did not
consider the issue. In any event, there were no allegations that Lehman breached any agreements,
28   committed fraud, or threatened or otherwise manipulated the debtor, as Plaintiffs allege here.

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
33171.7

Other cases are in accord with *Winstar II* in finding a lender to be an insider for purposes

equitable subordination when it exercised the type of dominion or control alleged here. *See*

*generally In re T.E. Mercer Trucking Co.*, 16 B.R. 176, 189-90 (Bankr. Tex. 1981) (control

allegations against lender sufficient to survive summary judgment).

Plaintiffs allege that Lehman micro-managed all the projects through, among other things,

weekly conference calls with SunCal, in which Lehman's approval for every vendor expenditure was

required before any work could proceed. SAC ¶ 80. Lehman also unilaterally decided which

creditors would or would not get paid. *Id.*; *compare In re Aluminum Mills Corp.*, 132 B.R. 869, 895

(Bankr. N.D. Ill. 1991) (alleging lender used its power to control "the right and ability of the debtor

to make investments, enter into contracts, borrow money, lease property, and compensate its

officers, directors, and employees"); *In re American Lumber Co.*, 5 B.R. 470, 478-79 (D.C. Minn.

1980) (Bank "determined which of [debtor's]'s creditors would be paid and made sure that the only

accounts paid were those which it felt would enhance its position").

Because the Debtors had no other source of funding, they had no choice but to acquiesce to

Lehman's taking control. SAC ¶¶ 9, 123. *Compare In re KDI Holdings, Inc.*, 277 B.R. 493, 512

(S.D.N.Y. 1999) (insider factors include "whether the lender is the debtors sole source of credit";

allegations of insider status sufficient); *In re American Lumber*, 5 B.R. at 478-79 (Bank's "decision

not to honor [debtor's] payroll checks clearly placed ALC within the coercive power of the Bank").

Lehman actually exercised this control to the Debtors' and creditors' detriment in refusing to

pay creditors in derogation of its promises. SAC ¶¶ 89, 104, 107. *Compare In re Aluminum Mills*,

132 B.R. at 895 ("the Committee has alleged both a source of power and alleged instances in which

power was exercised."). Lehman even bypassed Plaintiffs in some instances and dealt with their

creditors directly. SAC ¶ 123. *Compare In re American Lumber Co.*, 5 B.R. at 478-79 ("What the

Bank did was not an attempt to save ALC from failure, or even to legitimately cover its own losses.

It sought to perpetuate a fraud upon the general unsecured creditors of ALC.").

Taking these allegations in the light most favorable to Plaintiffs—as the Court must on this

Motion—they are more than sufficient to allege that the Lehman Lenders are insiders. *See, e.g.*, *In*

*re Kelton Motors Inc.*, 121 B.R. 166, 190 (Bankr.D.Vt. 1990) ("While Trustee does not expressly allege Defendants are fiduciaries, Trustee's Equitable Subordination claim, cast in a light most favorable to it, contains allegations of the type of dominion, control, interference with prospective contractual relations, and substitution of judgment that may very well elevate Defendants from mere lenders and competitors to fiduciaries and thereby require less stringent factual allegations or evidence of wrong doing.").

        **2.**     **The SAC Alleges the Lehman Lenders Engaged in Inequitable Conduct**

             **a.**     **The SAC Adequately Pleads Inequitable Conduct Against Insiders**

It is undeniable that inequitable conduct has been adequately pleaded. The Lehman Lenders are alleged to have made numerous promises of funding, which induced the Debtors to incur hundreds of millions of dollars of third-party work. They bullied Debtors into signing the Restructuring Agreement, and then breached the promises they made under that Agreement—including the promise to pay for the work they approved. They did so to benefit Lehman at the expense of the Debtors and their creditors, and strung Debtors along to the point of insolvency.

In *Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir. 1993), the Ninth Circuit reversed the district court's ruling affirming the bankruptcy court's decision not to subordinate the claim of an insider, where he "placed his own interests before those of [debtor], and acted to the detriment of other creditors."). *Id.* at 959. The insider, a secured lender, induced the debtor to built up its trade debt, and even made assurances to debtors' suppliers to persuade them to do business with the debtor, in order to increase the value of debtor's assets when he foreclosed. *Id.*

Other cases are in accord with *Stoumbos. See, e.g.*, *In re American Lumber*, 5 B.R. at 478-79 (affirming equitable subordination of insider-lender's claim); *In re KDI Holdings*, 277 B.R. at 512-14 (denying motion to dismiss, where "reasonable inferences" of insider status and inequitable conduct could be drawn); *In re Aluminum Mills*, 132 B.R. at 894-96 (denying motion to dismiss; inequitable conduct against insider adequately pleaded); *In re Ambassador Riverside Investment Grp.*, 62 B.R. 147, 153-55 (Bankr. M.D. La. 1986) (lender claim subordinated when it agreed to provide loan knowing it would not do so, resulting in detriment to debtor and creditors).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

Defendants cite numerous cases that stand for the proposition that a lender may "exercise[]" its contractual rights to curtail funding," "call a loan when due," "refuse[] to supply further funds at a propitious moment," or refuse to "finance debtor beyond expiration of agreement." *See* Motion at 17:20-18:17. But in each of these cases where courts refused to equitably subordinate a (*non-insider*) lender's claims for refusal to fund, there was neither a breach of a binding promise to fund, nor fraud. *See Herzog v. Leighton Holdings, Ltd.*, 239 B.R. 497, 506-09 (N.D. Ill. 1999) (no fraud, breach of contract to fund, or advantage-taking); *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 930-31 (Bankr. N.D. Ill. 1997) ("the evidence showed that [lender] did not breach, but rather exercised its rights under the contract to cease funding"); *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 120 (E.D. Pa. 1993) (lender "acted within its contractual rights . . . in ceasing to advance funds," and "there was no reliance by any creditor that [lender] would continue funding"); *In re Heartland Chemicals, Inc.*, 136 B.R. 503, 519 (Bankr. C.D. Ill. 1992) ("The Bank did not breach the terms of the financing agreement with Heartland. . . . [and] did not make misrepresentations of existing fact to any of Heartland's trade suppliers"); *In re After Six, Inc.*, 177 B.R. 219, 233, 234 (Bank. E.D. Pa. 1995) ("[T]here has been no allegation that [lender] misled the Debtor. . . . [Lender] decided not to extend financing to [Debtor] *before* it was obligated to do so.") (original emphasis).

Here, Plaintiffs are *not* alleging that the Lehman Lenders merely exercised a contractual *right* to extend financing, or merely declined to extend gratuitous funding. Rather, Plaintiffs allege that they repeatedly *breached promises to fund*, including work they specifically authorized, to the detriment of Debtors and their unsecured creditors. *See* SAC ¶¶ 5-6, 9, 12-14, 81-84, 89, 91, 100-07, 112-13. *Compare Winstar II*, 554 F.3d at 412 (Lucent's conduct was "egregious," where it was not "merely . . . exercising its bargained-for contractual rights," but rather used its financial leverage to induce the debtor to enter unfavorable agreements with threats of refusal to provide funding).

c.    **Defendants Mischaracterize the Allegations in the SAC**

Defendant's characterization—that "Plaintiffs' basic complaint is that the Lehman Lenders restricted the funding available to Debtors when the Projects' value began to plummet, and eventually ceased funding and pursued their contractual rights to foreclose on the Projects (Motion at

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    17:16-19)—is fundamentally incorrect. Plaintiffs' "basic complaint" is that the Lehman Lenders

2    *could have* ceased funding a year earlier, but instead strung the Debtors along with promises of

3    funding, which they then breached, thereby saddling Debtors with hundreds of millions of dollars in

4    additional unsecured debt. *See* SAC ¶ 126. This is classic inequitable conduct. *See In re Aluminum*

5    *Mills*, 132 B.R. at 894 (equitable subordination properly pleaded where lender "used its control to

6    keep the debtor in business while it was insolvent"); *In re Heartland Chemicals*, 103 B.R. 1012,

7    1014 (Bankr. C.D. Ill. 1989) (sufficient allegations of "gross misconduct" included "scheme to shift

8    its credit risks to [debtor]'s trade creditors"); *Bank of New Richmond v. Production Credit Ass'n (In*

9    *re Osborne)*, 42 B.R. 988, 999 (W.D. Wis. 1984) (equitable subordination proper where lender

10   participated in scheme to misrepresent debtor's financial situation to another creditor so that the

11   other creditor would continue to give debtor credit).

12           In a desperate effort to argue that there are no allegations of inequitable conduct, Defendants

13   take numerous allegations out of context. They argue that "Plaintiffs allege that Lehman ALI

14   withdrew money from certain accounts 'that were to be used for the needs of the Marblehead and

15   Heartland Projects,' but do not allege that Lehman ALI was not authorized to make such

16   withdrawals or that such actions breached any contract." Motion at 17 n.4 (quoting SAC ¶ 105).

17   However, in the very next sentence, Plaintiffs allege that these withdrawals occurred "precisely

18   when Plaintiffs were begging that Lehman provide *promised funding*." SAC ¶ 105 (emphasis

19   added). Regardless whether the withdrawal from the accounts was a breach of any accountholder

20   contract, the fact remains that Defendants were pulling money *away* from these Projects when they

21   had contractual obligations under the Restructuring Agreement to *fund* these Projects.

22           Defendants note Plaintiffs' allegation that "Lehman ALI transferred first deeds of trust on

23   some of the Projects to LCPI in August 2008," but argue that Plaintiffs "do not contend that this was

24   anything other than a return of the deeds of trust to LCPI as their original holder." Motion at 17 n.4

25   (citing SAC ¶ 94). Defendants fail to mention the paragraphs that follow, which allege that

26           Lehman ALI selectively transferred deeds of trust to LCPI on Projects that did not have a
             Lehman Equity Member that could block the Projects' SPEs from filing bankruptcy. . . . so
27           that LCPI could use the automatic stay in its own impending bankruptcy to impede a
             successful reorganization of the Projects . . . .

28

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

SAC ¶¶ 95-96. Defendants likewise ignore the allegations that Plaintiffs were relying on the fact

that Lehman ALI, as the signatory to the Restructuring Agreement, was the entity that held the loans,

and that these transfers were secretly made days before the signing of the restructuring settlement

documents. *Id.* ¶¶ 85, 94. If Defendants want to offer evidence of a supposedly innocent explanation

for the transfers, that is for summary judgment or trial, not a 12(b)(6) motion. *United States v. City*

*of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981) ("[E]ven if the face of the pleadings indicate that

recovery is very remote, the claimant is still entitled to offer evidence to support its claims.").

Defendants also point to the allegation that "Lehman arranged for a third party, Radco, to

settle outstanding contractor payables' and that this arrangement eventually ceased," and argue that

"[t]here is no contention in the SAC that the arrangement [with] Radco was improper or that the

Lehman lenders had no right to discontinue the arrangement." Motion at 17 n.4 (quoting SAC ¶ 86).

But Plaintiffs do not merely allege that Radco's negotiations "eventually ceased." Rather, they

allege that Lehman halted Radco's negotiations shortly before its September 2008 bankruptcy, and

that Lehman had arranged for these negotiations to occur in the first place "for the secret purpose of

staving off creditors from filing involuntary bankruptcies against the Debtors, long enough for

Lehman to achieve its fraudulent scheme" of "shor[ing] up Lehman's position in anticipation of a

possible bankruptcy." SAC ¶¶ 87, 89. *Compare In re Heartland Chemicals*, 103 B.R. at 1014

(creditor's "scheme to shift its credit risks to [debtor]'s trade creditors" was "gross misconduct").

Incredibly, Defendants argue: "Plaintiffs allege that 'Lehman threatened' Debtors into

entering the Restructuring Agreement, but do not allege that any Defendant made a false statement

to induce their consent." Motion at 17:4-6. This is wrong: Plaintiffs allege that "SunCal continued

to work with Lehman and develop the Projects in reliance on a promised overall restructuring of the

Projects and of the loans and/or liens held by Lehman," and that Lehman failed to fulfill its

obligations under that agreement, and ultimately repudiated it altogether, once maintaining the

façade of a good-faith attempt to restructure no longer served its scheme. SAC ¶¶ 82, 98, 106-07.

Moreover, it is no less inequitable to *threaten* rather than *trick* a debtor into enter an

unfavorable deal. *See Winstar II*, 554 F.3d at 412. Defendants further argue that Plaintiffs'

allegation of the threats to enter the Restructuring Agreement "are odd given that they rely on the

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    Restructuring Agreement to support their general allegations that the Lehman Lenders promised
2    funding that they never delivered" (Motion at 17:7-10)[9]—as if the threat somehow neutralizes the
3    subsequent breach.  To the contrary, the inequitable conduct is *compounded* by the presence of these
4    two factors:  Lehman forced the Restructuring Agreement down Plaintiffs' throat, and then didn't
5    even have the decency to make good on the few protections that the Agreement provided Plaintiffs.

d.    **The SAC Alleges the Lehman Lenders Engaged in Inequitable**
      **Conduct Even As Non-Insiders**

8         Even assuming, *arguendo*, that the Lehman Lenders were not alleged to be insiders, the
9    allegations of egregious conduct in the SAC are still sufficient. .Numerous cases have upheld
10   equitable subordination—or at least denied a motion to dismiss—where non-insider creditors were
11   found to have engaged in fraud, threats, breaches of conduct, or other wrongful advantage-taking, as
12   Plaintiffs allege here. *See, e.g.*, *604 Columbus Ave. Realty Trust v. Capitol Bank & Trust Co. (In re*
13   *604 Columbus Ave. Realty Trust)*, 119 B.R. 350, 377 (Bankr.D.Mass.1990) *aff'd in part and vacated*
14   *in part on other grounds*, 968 F.2d 1332 (1st Cir.1992); *In re Heartland Chemicals*, 103 B.R. at
15   1014; *In re Aluminum Mills*, 132 B.R. at 894-96; *In re Osborne*, 42 B.R. at 999; *In re Kelton Motors*,
16   121 B.R. at 190; *Reaves v. Comerica Bank-Calif. (In re GTI Capital Holdings, LLC)*, 2007 WL
17   2493671, *16-19 (Bankr. D. Ariz. 2007).  Even conduct by non-insiders that was less egregious than
18   that alleged here has warranted equitable subordination. *See In re Just For the Fun of It of*
19   *Tennessee, Inc.*, 7 B.R. 166, 180-81 (Bankr. E.D. Tenn. 1980) (subordinating non-insider's claim
20   where its conduct in "filing the notice of completion as general contractor and later repudiating the
21   assertion"—even in the absence of fraudulent intent—harmed other creditors who relied thereon).
22         Notably, in some of the very cases cited by Defendants in which equitable subordination of a
23   non-insider's claim was not ultimately proven at trial, those same facts were held to be sufficient to
24   survive an earlier motion to dismiss or even a motion for summary judgment. *Compare In re Kids*
25   *Creek Partners*, 212 B.R. at 931 (cited in Motion at 18:2-7) (granting defendants' motion for

27
28        [9] Plaintiffs' allegations of unfulfilled promises of funding by Lehman are by no means
     confined to breaches of the Restructuring Agreement itself. *See, e.g.*, SAC ¶¶ 5-6, 12, 83, 91, 124.

18

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1 | judgment on partial findings after trial) *with In re Kids Creek Partners, L.P.*, 200 B.R. 996, 1015-

2 | 1019 (Bankr. N.D. Ill. 1996) (denying defendant's motion for summary judgment where there was

3 | "at least a question of material fact as to whether [lender] had sufficient control over the Debtor to

4 | warrant finding that [lender] was an insider or a fiduciary" and as to inequitable conduct); *compare*

5 | *In re Heartland Chemicals*, 136 B.R. at 520 (cited in Motion at 18:9-14) (finding, after trial, no

6 | inequitable conduct by secured lender of debtor) *with In re Heartland Chemicals, Inc.*, 103 B.R. at

7 | 1014 (denying motion to dismiss claim for equitable subordination of lender's claim where

8 | "complaint alleges both control and gross misconduct by the Bank").

9 | ### B. The SAC States A Claim Against the Successor Lenders

10 | As to OVC and Northlake Holdings, Defendants argue that "Plaintiffs allege that Lehman

11 | ALI transferred its interests in certain loans to OVC and Northlake without contending that those

12 | transfers were fraudulent or even inappropriate." Motion at 17 n.4 (citing SAC ¶ 97).

13 | First, Defendants flatly ignore the allegations that these transferees are "participant[s] in the

14 | intra-Lehman scheme to wrongfully foreclose on the Projects and stiff SunCal and the myriad

15 | creditors who did work at Lehman's behest" (SAC ¶ 70); that they "accepted these transfers[] as part

16 | of the Lehman scheme to usurp the Projects, and in knowing violation of the rights of Plaintiffs

17 | and/or their creditors" (SAC ¶ 97); and that they "became successors to Lehman ALI's liens and

18 | loans with knowledge of the former's inequitable conduct, and as part of a conspiracy for purposes

19 | of promoting Lehman's scheme" (SAC ¶ 128).

20 | Second Plaintiffs need not allege that Lehman ALI's transfer of the liens/loans to OVC or

21 | Northlake was fraudulent or inappropriate in order to subordination their claims. In *In re Enron*

22 | *Corp.*, 333 B.R. 205 (Bankr.S.D.N.Y. 2005), the court held that the transfer of a claim subject to

23 | equitable subordination does not free such claim from subordination in the hands of a transferee,

24 | *even if the transferee itself did not engage in any inequitable conduct. Enron*, 333 B.R. at 210, 223.

25 | Plaintiffs allege that Lehman ALI transferred its interests in the Oak Valley and Northlake

26 | Projects to OVC and Northlake Holdings "subsequent to its agreement with Plaintiffs." SAC ¶ 70.

27 |

28 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

The mere fact that OVC and Northlake are successors to Lehman ALI, which itself is alleged to have engaged in inequitable conduct, is enough to subject their claims to equitable subordination.[10]

## C. The SAC States A Claim Against the Lehman Equity Members

Defendants argue that the equitable subordination allegations against the Lehman Equity Members are insufficient, but gloss over the fact that the Equity Members are alleged to be insiders and fiduciaries of the Trustee Debtors, and thus the lower pleading burden applies. *See* Motion at 11:22-12:1 (quoting *In re First Alliance*, 471 F.3d at 1006 ("Where non-insider, non-fiduciary claims are involved . . . , the level of pleading and proof is elevated."); *see also In re Exide Technologies, Inc.*, 299 B.R.. 732, 744 (Bankr. D.Del. 2003) ("When the defendant is an insider, the standard for finding inequitable conduct is less exacting.").

Defendants themselves quote the allegation in the SAC that "the Lehman Equity Members . . . have a majority stake in the Trustee Debtors and are therefore insiders of the Trustee Debtors." Motion at 12:28-13:1 (quoting SAC ¶ 122). Defendants cannot and do not dispute that these entities are alleged to be statutory insiders. *See* 11 U.S.C. §101(31) ("insider" of a corporate or partnership debtor includes "general partner in the debtor" or "person in control of the debtor"); *see also* SAC ¶ 73 (alleging facts regarding Lehman Equity Members' control of the Trustee Debtors). Defendants therefore cannot dispute that the lower pleading standard for insiders applies, and that under this standard the equitable subordination allegations are sufficient. *In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292, 1301 (10th Cir. 2004) (requiring only "some unfair conduct").

---

[10] In *In re Enron Corp.*, 379 B.R. 425 (S.D.N.Y. 2007) ("*Enron II*") the court distinguished between sales and assignments, holding that assignees take subject to defenses against the assignor, where purchasers under a sale do not. *Enron II*, 379 B.R. at 435-436. Even if the Court were to follow *Enron II*, the allegations against the successor lenders would still be sufficient to survive this Motion, as all inferences must be resolved in Plaintiffs' favor, and a "transfer" could refer to an assignment, not a sale. *See Youngberg*, 930 F. Supp. at 1398 ("The court is bound to give the plaintiff the benefit of every reasonable inference that can be drawn from the 'well-pleaded' allegations of the complaint."); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 124 n.15 (3d Cir. 2001) (noting the "synonymous definitions of assignment and sale").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

Here, the SAC makes numerous allegations that the Lehman Equity Members acted unfairly in violating their fiduciary duties of loyalty, by acting in the interests of the Lehman Lenders, and not the Trustee Debtors or their creditors:

> The Lehman Equity Members, *as insiders*, have sought to block the Projects' reorganizations *in violation of their duties of loyalty* to the Trustee Debtors. The Lehman Equity Members did so in an effort to facilitate a Lehman foreclosure and to avoid payment of Plaintiffs' creditors as part of the scheme. They also did nothing to try to cure the purported defaults on the Projects and failed to provide promised funding. Their actions have harmed the creditors of the Trustee Debtors. SAC ¶ 129 (emphasis added).

The SAC further alleges specific facts that explain how the Equity Members came to be disloyal to the Debtors and their creditors. Even prior to Lehman's bankruptcy, the Lehman Lenders asserted control over the Equity Members for each of the Trustee Debtors. SAC ¶ 88. They are now controlled by an entity—Alvarez & Marsal ("A & M")—that is more interested in promoting Lehman's interest as a lender than its interest as an equity holder in the Projects, and that the actions taken by the Lehman Equity Members were taken specifically to further the lenders' interest at the expense of the equity interest. SAC ¶¶ 20-21, 118.

What is alleged is more than sufficient. *See In re Die Fliedermaus LLC*, 323 B.R. at 110 (on motion to dismiss, court cannot determine "factual issues regarding the extent to which Victor or PSP was in control of the Debtor (if at all) and the extent of any fiduciary duty Victor may have had. As insiders, the Victor Defendants at least had a *prima facie* fiduciary duty.").

## III.   The SAC Does Not Violate Rule 9(b)

### A.   Plaintiffs' Equitable Subordination Claim Does Not Need to Satisfy Rule 9(b)

Defendants contend that the SAC fails to state a claim under Rule 12(b)(6) "even if the elevated pleading standard for non-insiders . . . did not apply to Plaintiffs' claim against at least the Lehman Lenders[11] . . . because Plaintiffs were also required to plead their claim with particularity under Rule 9(b)." Motion at 19:26-20:1. Defendants are incorrect, for several reasons.

First, courts have held that where equitable subordination is alleged against an insider, fraud or similar conduct need not be proven, so Rule 9(b) does *not* apply. In *In re Derivium Capital, LLC*,

---

[11] This statement is itself a tacit admission that the lower pleading standard for insiders applies to at least the other defendants, i.e., the Lehman Equity Members. See supra, Part II.C.

33171.7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

380 B.R. 407 (Bankr.D.S.C. 2006), the debtor LLC sought to equitably subordinate the claims of

several of its members ("Movants"). Although the equitable subordination claim sounded in fraud,

the court noted that "[v]irtually any conduct which causes an insider to gain an advantage over other

creditors is inequitable conduct for purposes of 11 U.S.C. § 510(c). The pleading of fraud or

wrongful conduct is not necessary for a claim of equitable subordination." *Derivium Capital*, 380

B.R. at 426 (citations omitted). Accordingly, the court held that

> although Plaintiff's allegations are insufficient for an allegation of fraud under Fed.R.Civ.P. 9(b), Plaintiff has sufficiently pled that Movants engaged in inequitable conduct pursuant to the more liberal standard of Fed.R.Civ.P. 8(a). Plaintiff's allegations, if true, would indicate that Movants gained an unfair advantage over other creditors by diverting Debtor's assets to the detriment of Debtor's creditors . . . .

*Id.*; *see also New Jersey Steel Corp. v. Bank of New York*, 1997 WL 716911, *6 (S.D.N.Y. 1997)

("[D]efendant need not state a claim for fraud when it has alleged that plaintiff was an insider . . . .

Therefore, there is no reason for defendant to meet the standards described in [Rule] 9(b).").

Here, Plaintiffs are not alleging a cause of action for fraud; they are only alleging equitable

subordination. The SAC further alleges that all Defendants are insiders. Defendants do not dispute

that the Lehman Equity Members are insiders; and although they take issue with the allegations that

the Lehman Lenders are insiders, as discussed above, those allegations must be taken as true on a

motion to dismiss. Rule 9(b) simply does not apply.

Second, even where equitable subordination is alleged against creditors who are not

necessarily insiders, courts have held that Rule 9(b) does not apply. *See In re Kelton Motors*, 121

B.R. at 190 & 194 (even where defendant may not be an insider, "[e]quitable subordination does not

require fraud . . . thus, § 510(c) is not subject to the specificity requirements of Fed.R.Civ.P. Rule

9(b)."); *In re Delphi Corp.*, 2008 WL 5146952, *5-6 (Bankr.S.D.N.Y. 2008) (same). Accordingly,

Plaintiffs need not satisfy Rule 9(b) even to allege equitable subordination against a non-insider.

Third, even if Rule 9(b) did apply to a claim for equitable subordination that included fraud

allegations, the SAC states a sufficient claim *regardless* of the adequacy of the fraud allegations.

Defendants assert that Plaintiffs' equitable subordination claim is "grounded in fraud" because it

alleges a fraudulent scheme, and therefore fails to state a claim under Rule 12(b)(6) if it fails to

satisfy Rule 9(b). Motion at 20:3-21:5. However, the Ninth Circuit has held that a claim is

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

"grounded in fraud" where plaintiffs "allege a unified course of fraudulent conduct and rely *entirely* on that course of conduct as the basis of a claim." *Vess v. CIBA-Geicy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (emphasis added). However, where

> fraud is not an essential element of the claim, and where allegations of both fraudulent and non-fraudulent conduct are made in the complaint. . . . an inadequate averment of fraud does not mean that not claim has been stated. The proper route is to *disregard* averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.

*Vess*, 317 F.3d at 1104-05 (original emphasis; quotation omitted).

The SAC alleges fraudulent conduct, but it also alleges various non-fraudulent inequitable conduct. This includes: threatening Plaintiffs to induce them to enter the Restructuring Agreement (SAC ¶ 9); breaching the terms of the Restructuring Agreement by failing to pay for outstanding payables or approved work, and failing to close under the Agreement (SAC ¶¶ 84, 89, 98, 107); improperly filing notices of default (SAC ¶ 108); using their bankruptcies or otherwise acting to impede reorganization and development of the projects, in violation of duties of loyalty to the Debtors and their creditors, and conspiring together for that purpose (SAC ¶¶ 109-111, 114-18).

Thus, even if the Court were to disregard the averments of fraud, the remaining allegations are more than sufficient to state a claim for equitable subordination. *See In re 80 Nassau Associates*, 169 B.R. at 840 (substantial breach of contract and advantage taking is inequitable conduct).

**B.    To the Extent Rule 9(b) is Applicable, the SAC Satisfies It**

Rule 8(a)(2) sets forth the pleading standard in federal court, and requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 9(b) provides that the "circumstances constituting fraud" must be "state[d] with particularity," courts have made clear that "this rule should not be applied with draconian strictness. . . . Rule 9(b) must be read in conjunction with the liberal pleading rules, which eschew technicalities." *Kimmel v. Peterson*, 565 F. Supp. 476, 481 (E.D. Pa. 1983) (quotations omitted). "Focusing exclusively on Rule 9(b)'s 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated' by the Federal Rules of Civil Procedure." *Christidis v. First Penn. Mtg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5A C. Wright & A. Miller, *Fed. Practice and Proc.* § 1298, at 407 (1969)).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

23

## 1. The SAC Alleges Fraud With the Requisite Particularity

### a. Rule 9(b) Is Applied Less Stringently With Ongoing Frauds

The sensible balance of Rule 9(b)'s particularity and Rule 8(a)'s generality and flexible is particularly important where, as here, there is alleged to be an ongoing fraudulent scheme, rather than one or a few isolated misrepresentations.

Where "the fraud allegedly occurred over a period of time. . . . Rule 9(b)'s particularity requirement is less stringently applied." *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006) (rejecting argument that the complaint "only contains some very general time-frames (month and year)," where complaint "allege[d] generally that the fraudulent conduct occurred between 2003 and 2005, and set[] forth specific dates on which [defendant] conducted [fraudulent] seminars."); *Sunbird Air Servs. v. Beech Aircraft Corp.*, 789 F. Supp. 364, 366 (D.Kan. 1992); *Bale v. Dean Witter Reynolds, Inc.*, 627 F. Supp. 650, 652 (D.Minn. 1986); *Folsom v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 633 F. Supp. 178, 186 (N.D. Ill. 1986); *General Accident Ins. Co. of Amer. v. Fidelity & Deposit Co. of Md.*, 598 F. Supp. 1223, 1232 (E.D. Pa. 1984).

In *Kimmel v. Peterson*, the court rejected a Rule 9(b) challenge, even though the complaint did not allege the particulars of each misrepresentation in an ongoing multi-year fraudulent scheme:

> As defendant points out, the complaint does fail to describe each of the alleged transactions by date, name of stock, amount and purchase price. *Defendant fears that the complaint "encompasses every single stock transaction engaged in by Kimmel from 1978 to August 1981."* . . . *This may well be the case. Yet, dismissal is not warranted. This case does not involve one or two or even ten isolated allegations of fraud, but rather over two years of continued fraudulent securities transactions.* The complaint contains more than mere conclusory allegations of wrongdoing. . . . Concerns over frivolous assertions of fraud, which originally prompted the enactment of Rule 9(b), do not apply here. Plaintiff has alleged far more than boilerplate claims of misrepresentation.

*Kimmel*, 565 F. Supp. at 481 (emphasis added).

Similarly, Plaintiffs allege a course of misrepresentation that lasted for more than one year, from mid-2007 to late 2008, in which Lehman would approve specific work and represent to Suncal that it would pay for the work it approved on weekly conference calls. These promises are alleged to have been made to induce SunCal to continue to develop the Projects and incur millions in debt to third-party vendors, so that Lehman could conceal the Projects' decline in value for its own benefit.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

### b. The SAC Contains Sufficiently Detailed Fraud Allegations

Although the SAC does not recount all of the particulars of those dozens of phone calls, it is replete with detailed information. It identifies the purpose of the scheme; the substance of the representations made pursuant to the scheme; the particular agents of Defendants who made the representations; their authority to speak; to whom the representations were made; the duration, frequency, and medium by which the representations were made; and identifies at least some of the numerous representations or concealments that occurred. The following summarizes the allegations:

- Beginning in mid-2007, SunCal would submit weekly budgets to Lehman, and the parties would have weekly conference calls, during which Lehman would dictate what specific work could proceed, and which specific creditors would get paid. (SAC ¶¶ 4, 80)

- From mid-2007 to late 2008, SunCal's Bruce Cook and/or Frank Faye participated in numerous calls with Frank Gilhool, Lehman's Managing Director of Global Real Estate, in which Gilhool assured SunCal that Lehman was committed to funding the obligations of the Projects, including the work Lehman specifically authorized. SunCal and its contractors worked on the Projects in reliance on these promises. (SAC ¶¶ 5-6, 10, 12, 81-82, 91)

- One example of these representations was a promise by Gilhool to Cook, on a Spring 2008 call, to pay for the legal bills of a law firm, VCT, that was handling various Project-related litigation. Gilhool stalled for payment at least twice; despite repeatedly promising unequivocally that "they will be paid," they never were. (SAC ¶ 125)[12]

- Unbeknownst to SunCal, Lehman sought to mask the Projects' decline in value in order to minimize write-downs, so as to prop up Lehman's weakening stock price and entice potential investors Lehman was pursuing to fortify its own faltering finances. (SAC ¶¶ 7-8)

- As part of its scheme, Lehman induced SunCal to sign the May 2008 Restructuring Agreement—which Gilhool signed on behalf of the various Lehman entities—in which Lehman agreed to pay Debtors' creditors for their work. (SAC ¶¶ 9, 82, 84).

- By the summer of 2008, Lehman was aware that it might file for bankruptcy. But rather than inform SunCal, it continued to encourage SunCal to move forward. (SAC ¶ 87)

- Lehman arranged for Radco to settle outstanding contractor payables, for the secret purpose of staving off creditors from filing involuntary bankruptcies against the Debtors. In the weeks before Lehman's bankruptcy, it revoked Radco's authority. (SAC ¶¶ 86-90).

---

[12] Defendants assert that even this is insufficient, as it "fails to specify the date of the alleged communication between Mr. Gilhool and Mr. Cook, and it only generally identifies the alleged 'Lehman promis[e]' as occurring sometime "in the Spring of 2008." Motion at 22:17-19. *But see Sunset Financial Resources Inc. v. Redevelopment Group V, LLC,* 417 F.Supp.2d 632, 644 (D.N.J. 2006) (allegation that misrepresentation occurred "[i]n the Spring of 2004" was sufficient).

Defendants' further argument—that the misrepresentations were made to "SunCal's Cook," and that SunCal itself is not a party to the adversary proceeding (Motion at 22:23-26)—is specious. The SAC alleges that the Debtors were all subsidiaries of SunCal, and that all of Debtors' dealings with Defendants were effectively dealings between SunCal and Lehman. *See* SAC ¶¶ 2-3, 66-67, 71.

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

33171.7

• In August 2008, days before the Restructuring Agreement was to close, Lehman ALI secretly transferred deeds of trust on select Projects to LCPI. The deed transfers were signed by Gilhool and by Lehman's Robert Brusco as Senior Vice President of both entities. LCPI filed for bankruptcy soon after. These transfers occurred so that LCPI could use its own bankruptcy stay to block a reorganization. (SAC ¶¶ 94-96)

• Even after Lehman filed for bankruptcy in September 2008, Gilhool was still assuring SunCal that payment would be forthcoming, and encouraging SunCal to move forward. Despite Lehman's repeated promises and SunCal's repeated requests for funds for critical Project needs, Lehman ultimately sent letters in November 2008 stating that it was unwilling to fund and repudiated the Restructuring Agreement. (SAC ¶¶ 99-07).

The SAC contains far more than "mere conclusory allegations of wrongdoing," and "[c]oncerns over frivolous assertions of fraud, which originally prompted the enactment of Rule 9(b), do not apply here." *Kimmel*, 565 F. Supp. at 481 (emphasis added).

Defendants cannot plausibly contend that they do not understand the nature of the claim against them or cannot "defend against the charge." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Lehman ALI and LCPI know they participated in those weekly phone calls with Plaintiffs in which they discussed Lehman's approvals of work and payment therefore, and know when the calls occurred. Plaintiffs should not have to weigh down their SAC with all of that detail. *Folsom*, 633 F. Supp. at 186 ("Count III essentially alleges that Bank knew about construction defects at the Colonies and failed to disclose the defects to purchasers. . . . As a participant in the development and sale of the Colonies units, Bank should already be aware of specific sale dates and places. Little would be gained by requiring Plaintiffs to plead that information.").

It should not be overlooked that the SAC alleges that Defendants' conduct has harmed *hundreds* of Debtors' creditors in amounts running in the hundreds of millions of dollars. SAC ¶ 13. Essentially, Defendants are trying to take the very enormity of the wrongs that they perpetrated and use that *against* Plaintiffs, by arguing that the allegations of Defendants' massive fraud are insufficiently particular unless they capture all of the myriad details of that fraud. To adopt Defendants' position would not only impose upon Plaintiffs a pleading burden that the Rules do not require; it would effectively be rewarding Defendants for the grand scale of their wrongdoing.

## 2. The SAC Does Not Impermissibly Lump Defendants Together

Defendants argue that "Plaintiffs repeatedly refuse to differentiate between, and address separately, Lehman ALI versus LCPI." Motion at 26:1-2. Where such distinctions are relevant, the SAC makes them. *See* SAC ¶¶ 19, 24, 58, 77, 94-96. However, the SAC clearly alleges that Lehman itself generally failed to distinguish between these two entities:

> In its dealings with SunCal regarding the Projects, Lehman generally made no distinction between Projects financed by Lehman ALI and Projects financed by LCPI. SunCal dealt simply with representatives of "Lehman," not Lehman ALI or LCPI. Thus, representations made by "Lehman" were being made on behalf of both Lehman ALI and LCPI.

SAC ¶78; *see id.* ¶ 85 ("[E]ven after the Restructuring Agreement was signed, Lehman continued to make no distinction between LCPI-financed Projects and Lehman ALI-financed projects, and continued promises of financing emanated from the same Lehman representatives."). Plaintiffs should not be expected to make distinctions that Defendants themselves failed to make.

Similarly, Defendants complain that Plaintiffs "treat the Lehman Equity Members as a group without specifying the alleged specific conduct of each Member." Motion 26:2-3. First, the SAC alleges specific facts regarding the Lehman Lenders consolidating their control of each of the Lehman Equity Members even prior to the parent Lehman entity's bankruptcy. *See* SAC ¶ 88.

Second, where all of the Lehman Equity Members are alleged to have engaged in similar conduct, nothing would be gained by identifying each of them by name with regard to each wrongful act. The SAC alleges that A & M, Lehman's restructuring firm and the entity that has been in charge of Lehman since September 2008, is in control of both the bankrupt and non-bankrupt Lehman Lenders, as well as "all" of the Lehman Equity Members. SAC ¶ 115-116. The SAC alleges that A & M's Jeff Fitts sent letters on November 18, 2008 on behalf of *all* the Lehman Equity Members instructing the SunCal Equity Members not to move forward with bankruptcies for the relevant Debtors. *Id.* Each of the Lehman Equity Members is also alleged to have failed to offer any funding to preserve the Projects' value and avoid bankruptcies and/or defaults. SAC ¶ 109. These acts were alleged to have been done further Lehman's lending interest at the expense of the equity interest, and were alleged to be a violation of all of the Lehman Equity Members' fiduciary duties to the respective Trustee Debtors and their creditors. SAC ¶¶ 20-21, 129.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.7

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion be dismissed in its entirety.

DATED:  May 11, 2009                    MILLER BARONDESS, LLP

By: _____
     Louis R. Miller
     Attorneys for Plaintiffs

**OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

33171.6