1   Richard N. Pachulski (CA Bar No. 90073)
    Dean A. Ziehl (CA Bar No. 84529)
2   Shirley S. Cho (CA Bar No. 192616)
    Pachulski Stang Ziehl & Jones LLP
3   10100 Santa Monica Blvd. 11th Floor
    Los Angeles, California 90067-4100
4   Telephone: (310) 277-6910
    Facsimile: (310) 201-0760
5
    -and-
6
    Edward Soto, Esq. (*admitted pro hac vice*)
7   Shai Waisman, Esq. (*admitted pro hac vice*)
    WEIL, GOTSHAL & MANGES LLP
8   767 Fifth Avenue
    New York, New York 10153-0119
9   Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
10
    ATTORNEYS FOR DEFENDANTS
11  LEHMAN ALI, INC., LEHMAN COMMERCIAL PAPER INC.,
    OVC HOLDINGS, LLC, NORTHLAKE HOLDINGS, LLC,
12  LBREP II/SUNCAL LAND FUND MEMBER, LLC,
    SCLV OAK VALLEY, LLC, SCLV NORTHLAKE, LLC,
13  and LB/L-DUC III MASTER LLC

14              **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
15                    **SANTA ANA DIVISION**

16

| 17 | In re | **CASE NO. 8:08-bk-17206-ES** |
| | | Jointly Administered with Case Nos. |
| 18 | PALMDALE HILLS PROPERTY, LLC, | 8:08-bk-17209-ES; 8:08-bk-17224-ES; |
| | AND ITS RELATED DEBTORS, | 8:08-bk-17225-ES; 8:08-bk-17227-ES |
| 19 | Jointly Administered Debtors and | 8:08-bk-17230-ES; 8:08-bk-17231-ES |
| | Debtors-in-Possession | 8:08-bk-17236-ES; 8:08-bk-17240-ES |
| 20 | | 8:08-bk-17242-ES; 8:08-bk-17245-ES |
| | _____ | 8:08-bk-17246-ES; 8:08-bk-17548-ES |
| 21 | Affects: | 8:08-bk-17549-ES; 8:08-bk-17404-ES |
| | ☒ All Debtors | 8:08-bk-17407-ES; 8:08-bk-17408-ES; |
| | ☐ Palmdale Hills Property, LLC | 8:08-bk-17409-ES; 8:08-bk-17458-ES; |
| 22 | ☐ SunCal Beaumont Heights, LLC | 8:08-bk-17465-ES; 8:08-bk-17470-ES; |
| | ☐ SCC/Palmdale, LLC | 8:08-bk-17472-ES; 8:08-bk-17573-ES; |
| 23 | ☐ SunCal Johannson Ranch, LLC | 8:08-bk-17574-ES; 8:08-bk-17575-ES; |
| | ☐ SunCal Summit Valley, LLC | 8:08-bk-17588-ES; |
| 24 | ☐ SunCal Emerald Meadows, LLC | |
| | ☐ SunCal Bickford Ranch, LLC | |
| 25 | ☐ Acton Estates, LLC | **Adversary No. 8:09-bk-01005-ES** |
| | ☐ Seven Brothers, LLC | |
| 26 | ☐ SJD Partners, Ltd. | **DEFENDANTS' REPLY** |
| | ☐ SJD Development Corp. | **MEMORANDUM IN SUPPORT OF THE** |
| 27 | ☐ Kirby Estates, LLC | **MOTION TO DISMISS THE** |
| | ☐ SunCal Communities I, LLC | **SECOND AMENDED COMPLAINT** |
| 28 | | |

| 1 | ☐ SunCal Communities III, LLC |
|---|---|
|   | ☐ SCC Communities LLC |
| 2 | ☐ North Orange Del Rio Land, LLC |
|   | ☐ Tesoro SF, LLC |
| 3 | ☐ LB-L-SunCal Oak Valley, LLC |
|   | ☐ SunCal Heartland, LLC |
| 4 | ☐ LB-L-SunCal Northlake, LLC |
|   | ☐ SunCal Marblehead, LLC |
| 5 | ☐ SunCal Century City, LLC |
|   | ☐ SunCal PSV, LLC |
| 6 | ☐ Delta Coves Venture, LLC |
|   | ☐ SunCal Torrance, LLC |
| 7 | ☐ SunCal Oak Knoll, LLC |

**ADVERSARY PROCEEDING**

**Debtor-in-Possession Plaintiffs**:
PALMDALE HILLS PROPERTY, LLC, a Delaware limited liability company; SUNCAL BEAUMONT HEIGHTS, LLC, a Delaware limited liability company; SCC/PALMDALE, LLC, a Delaware limited liability company; JOHANNSON RANCH, LLC, a Delaware limited liability company; SUNCAL SUMMIT VALLEY, LLC, a Delaware limited liability company; SUNCAL EMERALD MEADOWS, LLC, a Delaware limited liability company; SUNCAL BICKFORD RANCH, LLC, a Delaware limited liability company; ACTON ESTATES, LLC, a Delaware limited liability company; SEVEN BROTHERS, LLC, a Delaware limited liability company; SJD DEVELOPMENT CORP., a Delaware corporation; KIRBY ESTATES, LLC, a Delaware limited liability company; NORTH ORANGE DEL RIO LAND, LLC, a Delaware limited liability company; TESORO SF, LLC, a Delaware limited liability company; SCC COMMUNITIES, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES I, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES III, LLC, a Delaware limited liability company;

**Trustee Plaintiff:**
STEVEN SPEIER, Chapter 11 Trustee, on behalf of LB-L-SUNCAL OAK VALLEY, LLC, a Delaware limited liability company; SUNCAL HEARTLAND, LLC, a Delaware limited

liability company; LB-L-SUNCAL
NORTHLAKE, LLC, a Delaware limited
liability company; SUNCAL
MARBLEHEAD, LLC, a Delaware
limited liability company; SUNCAL
CENTURY CITY, LLC, a Delaware
limited liability company; SUNCAL
PSV, LLC, a Delaware limited liability
company; DELTA COVES VENTURE,
LLC, a Delaware limited liability
company; SUNCAL TORRANCE, LLC,
a Delaware limited liability company;
and SUNCAL OAK KNOLL, LLC, a
Delaware limited liability company,

      Plaintiffs,

v.

**Lehman Lender Defendants:**
LEHMAN ALI, INC., a Delaware
corporation; LEHMAN COMMERCIAL
PAPER, INC., a Delaware corporation;
OVC HOLDINGS, LLC, a Delaware
limited company; NORTHLAKE
HOLDINGS, LLC, a Delaware limited
liability company;

**Lehman Equity Member Defendants:**
LBREP II/SUNCAL LAND FUND
MEMBER, LLC, a Delaware limited
liability company; SCLV OAK
VALLEY, LLC, a Delaware limited
liability company; SCLV
NORTHLAKE, LLC, a Delaware limited
liability company; LB/L-DUC III
MASTER LLC, a Delaware limited
liability company;

and DOES 1 through 50, inclusive,

      Defendants.

_____

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I. ABSENT SUBSTANTIVE CONSOLIDATION, PLAINTIFFS' ALLEGATIONS ARE CLEARLY DEFICIENT BECAUSE PLAINTIFFS MAKE NO EFFORT TO IDENTIFY HOW EACH DEBTOR'S CREDITORS WERE DISADVANTAGED ........................................................................................ 3

    II. PLAINTIFFS FAIL TO REFUTE THAT THE SAC SHOULD BE DISMISSED UNDER FRCP 12(b)(6)........................................................................ 6

        A.   Plaintiffs Have Not Sufficiently Alleged That Defendants Are Insiders ........... 7

            1. Plaintiffs Do Not Even Contend That LCPI Is a Statutory Insider, or That any Lehman Entity Is a Statutory Insider of the DIP Plaintiffs............. 7

            2. The Other Defendants Are Not Statutory Insiders ......................................... 7

            3. Defendants Are Not Otherwise Insiders ....................................................... 9

        B.   Plaintiffs Fail to Sufficiently Plead the Elements of Equitable Subordination ........................................................................................... 14

    III. PLAINTIFFS FAIL TO EXPLAIN HOW THE SAC COMPLIES WITH FRCP 9(b) ....................................................................................................... 17

        A.   The SAC Is Governed by FRCP 9(b)................................................................ 18

        B.   Plaintiffs Fail to Plead Their Equitable Subordination Claim Against any Defendant With Particularity........................................................................ 19

            1. The Opposition Confirms Plaintiffs' Failure to Plead Lehman ALI and LCPI Made "Numerous Misrepresentations"........................................ 19

            2. Plaintiffs Cannot Rely on Discovery to Supply the Details They Omitted from the SAC .......................................................................... 22

            3. FRCP 9(b) Does Not Apply "Less Stringently" to Plaintiffs....................... 23

            4. Plaintiffs Continue to Improperly Lump Defendants Together ................... 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Ackerman v. Landes,*
112 A.D.2d 1081 (N.Y. 2d Dept. 1985).................................................................. 14

*Adelphia Recovery Trust v. Bank of America, N.A.,*
390 B.R. 80 (S.D. N.Y. 2008)............................................................................... 6

*Arboireau v. Adidas-Salomon AG,*
2001 WL 1471748 (D. Or. July 25, 2001) ........................................................... 22

*Badger Freightways, Inc. v. Continental Ill. Nat'l Bank (In re Badger Freightways, Inc.),*
106 B.R. 971 (Bankr. N.D. Ill. 1989)............................................................... 10, 11

*Bale v. Dean Witter Reynolds, Inc.,*
627 F. Supp. 650 (D. Minn. 1986) ....................................................................... 23

*Bell Atl. Corp. v. Twombly,*
127 S. Ct. 1955 (2007)................................................................................... 6, 15

*Bergquist v. First National Bank (In re American Lumber Co.),*
5 B.R. 470 (D. Minn. 1980) ................................................................................ 13

*Burner v. Sec. State Bank (In re Burner),*
109 B.R. 216 (Bankr. W.D. Tex. 1989) ............................................................ 10, 11

*Citicorp Venture Capital, Ltd. v. Comm. of Unsecured Creditors Holding Unsecured
Claims (In re Papercraft),* 160 F.3d 982 (3d Cir. 1998)........................................... 4

*Connor v. Great Western Sav. & Loan Ass'n,*
69 Ca. 2d 850 (1968).......................................................................................... 14

*Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle),*
353 B.R. 892 (Bankr. D. Idaho 2006) ................................................................... 9

*Feder v. Lazar (In re Lazar),*
83 F.3d 306 (9th Cir. 1996)................................................................................. 17

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman),*
126 B.R. 63  (BAP 9th Cir. 1991)................................................................... 10, 11

*Freuhauf Corp. v. T.E. Trucking Co. (In re T.E. Mercer Trucking Co.),*
16 B.R. 176 (Bankr. N.D. Tex. 1981) ................................................................... 12

*Gen.  Accident Ins. Co. of Am. v. Fid. & Deposit Co. of Md.,*
598 F. Supp. 1223 (E.D. Pa. 1984)16 B.R. 176 ..................................................... 23

*Glinka v. Darmouth Banking Co. (In re Kelton Motors Inc.),*
121 B.R. 166 (Bankr. D. Vt. 1990) ...................................................................... 13

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.),*
471 F.3d 977 (9th Cir. 2006)............................................................ 3, 7, 13, 15, 17, 19

ii

*In re 80 Nassau Associates,*
    169 B.R. 832 (Bankr. S.D. N.Y. 1994) .......................................................................... 15

*In re After Six, Inc.,*
    177 B.R. 219 (Bankr. E.D. Pa. 1995) .............................................................................. 16

*In re Calpine Corp. ERISA Litigation,*
    2005 WL 3288469 (N.D. Cal. Dec. 5, 2005) .................................................................. 22

*In re Daou Sys., Inc.,*
    411 F.3d 1006 (9th Cir. 2005) ......................................................................................... 19

*In re GlenFed Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994) ........................................................................................... 17

*In re Silicon Graphics, Inc.,*
    970 F.Supp. 746 (N.D. Cal. 1997) .................................................................................. 17

*In re Winstar Communs., Inc.,*
    554 F.3d 382 (3d Cir. 2009) ............................................................................................ 11

*Johnson v. NBD Park Ridge Bank (In re Octagon Roofing),*
    124 B.R. 522 (Bankr. N.D. Ill. 1991) .............................................................................. 12

*Kaufman v. Torkan,*
    51 A.D. 3d 977 (N.Y. 2d Dept. 2008) ............................................................................ 14

*Kimmel v. Peterson,*
    565 F. Supp. 481 (E.D. Pa. 1983) .................................................................................. 24

*Kotoshirodo v. Dorland & Assocs., Inc. (In re Lull),*
    2008 WL 3895561 (Bankr. D. Haw. Aug. 22, 2008) ................................................... 8, 9

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ......................................................................................... 5, 6

*Madison. v. First Magnus Fina. Corp.,*
    2009 WL 751603 (D. Ariz. Mar. 19, 2009) ................................................................ 6, 24

*Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.),*
    319 B.R. 626 (BAP 9th Cir. 2004) .................................................................................... 9

*O'Connell v. Shallo (In re Die Fliedermaus LLC),*
    323 B.R. 101 (Bankr. S.D. N.Y. 2005) ........................................................................... 16

*Official Unsecured Creditors Committee v. Citicorp North America, Inc.,*
    132 B.R. 869 (Bankr. N.D. Ill. 1991) .............................................................................. 12

*Prophet v. Clark,*
    2009 WL 499344 (E.D. Cal. Feb 26, 2009) ..................................................................... 6

*Reaves v. Comerica Bank Cal. (In re GTI Capital Holdings, LLC),*
    2007 WL 2493671 (Bankr. D. Ariz. Aug. 30, 2007) ...................................................... 15

iii

*Resolution Trust Corp. v. BVS Dev.,*
    42 F.3d 1206 (9th Cir. 1994)................................................................................ 14

*Shubert v. Lucent Techs., Inc. (In re Winstar Communs., Inc.),*
    348 B.R. 234 (Bankr. D. Del. 2005) ................................................................. 11

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001)................................................................................ 14

*Stoumbos v. Kilimnik,*
    988 F.2d 949 (9th Cir. 1993)........................................................................... 3, 16

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007)......................................................................... 23, 24

*The Official Committee of Unsecured Creditors v. KDI Specialty Foods, Inc.*
*(In re KDI Holdings, Inc.),*
    277 B.R. 493 (Bankr. S.D. N.Y. 1999) ........................................................ 12, 13

*Tidwell. v. Amsouth Bank, N.A. (In re Cavalier Homes of Ga., Inc.),*
    102 B.R. 878 (M.D. Ga. 1989).......................................................................... 9, 13

*Townsend v. Chase Bank USA N.A.,*
    2009 WL 426393 (C.D. Cal. Feb. 15, 2009).................................................... 22

*United States ex rel. Bledsoe v. Cmty. Health Sys.,*
    501 F.3d 493 (6th Cir. 2007).............................................................................. 24

*United States v. Hempfling,*
    431 F. Supp. 2d 1069 (C.D. Cal. 2006)............................................................ 23

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)...................................................................... 18, 19

*Wang & Wang LLP v. Banco Do Brasil, S.A.,*
    2007 WL 915232 (E.D. Cal. March 26, 2007)................................................. 22

**RULES**

FED. R. CIV. P. 8 ............................................................................................. 17, 24

FED. R. CIV. P. 9 ................................................................................ 2, 6, 7, 18, 23

FED. R. CIV. P. 12 ...................................................................... 5, 6, 7, 14, 18, 19

iv

DOCS_LA:202410.1

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THE
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendants Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc.

("LCPI"), OVC Holdings, LLC ("OVC"), Northlake Holdings, LLC ("Northlake"), LBREP

II/SunCal Land Fund Member, LLC, SCLV Oak Valley, LLC, SCLV Northlake, LLC, and LB/L-

DUC III Master LLC (collectively, the "Defendants") hereby file this reply memorandum in

support of their Motion to Dismiss the Second Amended Complaint,[1] and in response to

Plaintiffs' opposing memorandum (the "Opposition").

**PRELIMINARY STATEMENT**

Plaintiffs have alleged a single count of equitable subordination against eight Defendants,

and have alleged that these Defendants injured the creditors of 26 separate Debtors.  As described

in the Motion, the claim for equitable subordination is alleged in the broadest of terms against all

Defendants as a group, on behalf of all creditors as a group.  Those 26 Debtors represent 26

development projects scattered throughout California.  Although the unidentified alleged false

funding promises are vaguely said to relate back to the Restructuring Agreement, not all of those

projects, Debtors or Defendants were part of that agreement.  Contractors in San Clemente

obviously did not rely on alleged promises made to contractors in Oakland.  For that matter, no

creditor could be presumed to have relied on a promise to another, unless Plaintiffs were to allege

that the purported falsehoods were broadcast (which they do not).  The SAC does not disclose

whether promises were made to each unsecured creditor to which Plaintiffs request Defendants'

liens be subordinated.  Nor does it allege how this would have been accomplished.  The SAC is

silent on the alleged funding promises except for one that itself is not alleged with sufficient

particularity.  In the 130 paragraphs of the SAC, there is not one mention of a single creditor that

---

[1]     Defendants' Memorandum of Points and Authorities in Support of the Motion to Dismiss the
Second Amended Complaint is referred to in this brief as "Motion" or "Mot."  Capitalized terms not
otherwise defined in this brief have the same meaning ascribed to them in the Motion.

was allegedly injured by any specific conduct. Instead, Plaintiffs have pled an equitable subordination claim that treats all Defendants as a single claimant, all Debtors as a single debtor, and all unsecured creditors of Debtors as a single class of creditors.

Plaintiffs' basic response in the Opposition is that they do not have to detail the funding promises that were allegedly breached, or identify the creditors that were allegedly injured. There is no merit to this response. The missing information is an essential element of their claim. It is the inequitable conduct. Elaborate allegations about motivation cannot substitute for facts that would support a claim for relief. To paint their claim with this broad a brush is to hope that the Court will ignore the law of equitable subordination, which is an extraordinary remedy that is applied only to the extent needed to compensate for specific harm suffered by specific creditors as a result of specific inequitable conduct. The SAC cannot be deemed to state a claim for relief when it contains none of the information that would permit Defendants to frame a defense under the law applicable to the claim, rather than the law as Plaintiffs wish it to be. That requirement cannot be avoided by resort to substantive consolidation, and if it could, the action would still be subject to dismissal because it is clearly unripe. Achieving substantive consolidation is a pie-in-the-sky contingency that Plaintiffs have not even commenced to undertake. Because the SAC fails to allege the slightest information required to establish the claim, and because any attempt to circumvent such requirement by substantive consolidation is unripe, the SAC must be dismissed for lack of jurisdiction or for failure to satisfy either FRCP 12(b)(6) or 9(b).

2

## ARGUMENT

### I. ABSENT SUBSTANTIVE CONSOLIDATION, PLAINTIFFS' ALLEGATIONS ARE CLEARLY DEFICIENT BECAUSE PLAINTIFFS MAKE NO EFFORT TO IDENTIFY HOW EACH DEBTOR'S CREDITORS WERE DISADVANTAGED

Plaintiffs argue that the SAC is not premised on this Court's ordering substantive consolidation of Debtors' estates and treating Debtors as a single entity, and the creditors of each Debtor as a single class of Debtors. *See* Opp. at 3. The allegations in the SAC refute this argument. There are 17 DIP Plaintiffs and nine Trustee Debtors claiming equitable subordination. To state a claim for equitable subordination, Plaintiffs must allege, at a minimum, that a Defendant (or Defendants) acquired a claim against each of the 26 Debtors and "engaged in some type of inequitable conduct" relating to that Debtor. *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.)*, 471 F.3d 977, 1006 (9th Cir. 2006). As explained in the Motion, the SAC does not specify which Defendant or Defendants engaged in inequitable conduct as to each Debtor; instead the SAC groups Defendants together or refers to alleged conduct by "Lehman," an entity that is not a party to this action. *See* Mot. at 25-26.

Moreover, Plaintiffs must establish that Defendants' alleged "misconduct injured creditors [of each of the 26 Debtors] or conferred unfair advantage on the claimant" over the other creditors of each Debtor. *In re First Alliance*, 471 F.3d at 1006. As stated in the Motion, a court can subordinate a claim "only to the claims of creditors whom the inequitable conduct has disadvantaged." *Stoumbos v. Kilimnik*, 988 F.2d 949, 960 (9th Cir. 1993); Mot. at 7. This means each Plaintiff can seek to subordinate Defendants' claims only to those creditors of a given Debtor that were injured by the alleged inequitable conduct, and cannot seek to subordinate Defendants' claims to creditors of other Debtors. Despite this well-established law, Plaintiffs make no attempt whatsoever to tie creditors of specific Debtors to alleged inequitable conduct. For example, Acton Estates, LLC does not identify a single one of its creditors that has been

3

disadvantaged by a Defendant, or make any attempt to distinguish its creditors from the creditors of the other Debtors. Contrary to the representations in the Opposition, Defendants are not contending that Plaintiffs must allege *each* creditor of each Debtor or *each* claim of that creditor that was disadvantaged. But that does not mean that Plaintiffs can get away with wholly ignoring the separateness (absent substantive consolidation) of each Debtor's creditors. Plaintiffs have to allege at least enough facts to show how the creditors for each Debtor were purportedly disadvantaged, and to distinguish one Debtor's class of creditors from another. *See* Mot. at 7-10; *Citicorp Venture Capital, Ltd. v. Comm. of Unsecured Creditors Holding Unsecured Claims (In re Papercraft)*, 160 F.3d 982, 991-92 (3d Cir. 1998) (finding that injury to the note sellers could not support the application of equitable subordination that benefited only the non-selling creditors).

Plaintiffs' argument that the SAC could be construed to request "subordination of the respective Defendants' claims to the respective unsecured creditors of each Debtor" is contradicted by the SAC itself. Opp. at 4. The relief requested in the SAC is "[f]or equitable subordination to *the unsecured creditors of all claims held by the Defendants*" and "equitable subordination *to other equity holders of all interests held by the Defendants* . . . ." SAC, Prayer for Relief (emphasis added). Along with the general sweeping allegations in the SAC, this request confirms that Plaintiffs have premised the SAC on treating Defendants as a single claimant, and the creditors of all Debtors as a single class of creditors—that is, they have premised the SAC on substantive consolidation.

This conclusion is further bolstered by Plaintiffs' heavy reliance in the SAC on the May 28, 2008 Restructuring Agreement. *See* SAC ¶¶ 10, 84, 124. Several Debtors, including SCC Communities, LLC, Tesoro SF, LLC, and SunCal Century City LLC, were not even parties to this

4

agreement.[2] Nevertheless, the allegations in the SAC do not distinguish these Debtors from the Debtors that were parties to this agreement. Moreover, Debtors consistently have represented to this Court that they are seeking to subordinate all claims and interests of Defendants to all unsecured creditors of Debtors, so to contend otherwise now is disingenuous (let alone unsupported by the allegations in the SAC).[3]

Finally, in recognition that they have offered nothing to identify how each Debtor's non-Lehman creditors were disadvantaged, Plaintiffs argue that they are not required to allege damages with specificity. Opp. at 5. But the Motion does not contend that damages must be pled with specificity; it contends, instead, simply that Plaintiffs must plead each element of their equitable subordination claim under FRCP 12(b)(6) with supporting facts instead of "labels and conclusions," *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007), and with particularity under FRCP 9(b)). This includes the element of injury to creditors. *See, e.g., Prophet v. Clark*, No. 1:08-cv-01748-SMS PC, 2009 WL 499344, *2 (E.D. Cal. Feb. 26, 2009) (holding that plaintiff's "allegations [did] not support a claim that the defendants were responsible for causing him to suffer an actual injury") (citing *Twombly*, 127 S.Ct. at 1965-66). Plaintiffs cannot rely on

---

[2] *See* Declaration of Bruce Cook in Support of Debtors' Omnibus Opposition to Motions for Relief From the Automatic Stay Filed by Lehman Commercial Paper Inc. and Lehman ALI, Inc. dated Feb. 6, 2009 (Docket No. 104, "Cook Decl.") at Ex. 3. This Court may consider the Restructuring Agreement under FRCP 12(b)(6) because "the document['s] 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on" it. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

[3] *See* Cook Decl. at ¶ 25 ("On behalf of all twenty-six Debtors, the Plan provides for the following: Equitable subordination of Lehman's claims to the claims of unsecured creditors and the transfer of Lehman liens to the Debtors' estates . . . . Substantive consolidation of all twenty six (26) of the Debtors' estates; and Payment of the claims of all of the Debtors' creditors from the sales proceeds."); Debtors' Omnibus Opposition to Motions for Relief From the Automatic Stay Filed by Lehman Commercial Paper Inc. and Lehman ALI, Inc. (Docket No. 98) at 1 ("As to all of the Lehman Loans forming the basis of Lehman's Motion [For Relief From the Automatic Stay], Lehman's inequitable conduct entitles the Debtors to completely subordinate Lehman's claims and cause Lehman's liens to be transferred to the Debtors' estates."); *id.* at 2 ("The Plan seeks to equitable subordinate the Lehman claims to those of the Debtors' unsecured creditors, transfer Lehman's liens to the Debtors [sic] estates, substantively consolidate all of the Debtors' estates, and sell all of the subject real properties for the benefit of all of the Debtors' creditors.").

5

sweeping generalizations of harm to undifferentiated creditors; they have to connect specific Defendants' conduct to specific injury suffered by other creditors. *See Madison v. First Magnus Fin. Corp.*, Case No. 08-cv-1562-PHX-GMS, 2009 WL 751603,*4 (D. Ariz. Mar. 19, 2009) (plaintiff must allege "a sufficient factual context under Twombly to give the defendant notice of what conduct or omission gives rise to the violation (including how the defendant's conduct or omission is connected to the violation of the Plaintiff's rights), and the specific injury Plaintiff suffered because of that defendant's conduct or omission").

In sum, Plaintiffs cannot proceed with the SAC as currently alleged because, absent substantive consolidation, it is patently deficient. *See Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 80, 99 (S.D. N.Y. 2008) (On motion to dismiss equitable subordination claims under FRCP 12(b)(6), "[t]he Court agrees with the Lenders that their claims against the Obligor Debtors cannot be subordinated to claims of creditors represented by the [Adelphia Recovery Trust] because the Lenders' claims have not been substantively consolidated with the estate represented by the [Adelphia Recovery Trust].") As discussed in the Motion, if the relief in the SAC relies on substantive consolidation (as it does), that renders this action unripe under well-established principles of jurisprudence. As is also discussed in the Motion and further below, this same flaw—relying on conclusory allegations and consciously avoiding Debtor- or creditor-specific facts—requires dismissal under FRCP 12(b)(6) and FRCP 9(b).

## II. PLAINTIFFS FAIL TO REFUTE THAT THE SAC SHOULD BE DISMISSED UNDER FRCP 12(b)(6)

Plaintiffs concede that they must satisfy an elevated pleading standard to state an equitable subordination claim against any non-insider Defendant. *See* Opp. at 7. They argue, however, that this standard does not apply because the SAC alleges that the Defendants are either statutory or non-statutory insiders. As discussed in the Motion and further below, Defendants are not statutory insiders as a matter of law because the Bankruptcy Code does not expressly provide that

6

members of LLCs—as opposed to shareholders of corporations—are insiders. Defendants are not otherwise insiders based on the conclusory allegations in the SAC, which, if presumed to be true, establish only that Defendants exercised financial control incident to a creditor-debtor relationship. The elevated pleading standard therefore applies to the SAC, which does not allege facts demonstrating that each Defendant engaged in "gross and egregious conduct" as to each Debtor. *In re First Alliance*, 471 F.3d at 1006. In addition, the SAC does not adequately plead harm to the creditors of each Debtor (notwithstanding Plaintiffs' obviously erroneous contention that Defendants left this element uncontested). *See* Opp. at 6.

### A.    Plaintiffs Have Not Sufficiently Alleged That Defendants Are Insiders

#### 1.    Plaintiffs Do Not Even Contend That LCPI Is a Statutory Insider, or That any Lehman Entity Is a Statutory Insider of the DIP Plaintiffs

Plaintiffs do not contend in their Opposition that LCPI is a statutory insider of any Debtor, or that any Defendant is a statutory insider of any of the DIP Plaintiffs. *See* Opp. at 7. As discussed in the Motion, Plaintiffs allege that Defendants are statutory insiders of only the Trustee Debtors, and do not allege that LCPI was a lender to those Debtors. *See* Mot. at 12. Therefore, the Trustee Debtors cannot state any equitable subordination claim against LCPI, while the DIP Plaintiffs cannot rely on the statutory insider allegations in the SAC to justify their failure to satisfy the elevated pleading standard as to LCPI or Lehman ALI (the only Defendants alleged to have lent money to the DIP Plaintiffs).

#### 2.    The Other Defendants Are Not Statutory Insiders

Plaintiffs argue that Defendants other than LCPI are statutory insiders of the Trustee Debtors because (a) the Lehman Equity Members are allegedly affiliates, and therefore insiders, of the Trustee Debtors, all of whom are alleged to be LLCs, and (b) Lehman ALI, Northlake and OVC are affiliates of the Lehman Equity Members, all of which are also alleged to be LLCs. *See* Opp. at 7-8. Plaintiffs argue further that whether Defendants are statutory insiders "is a factual

7

issue that cannot be resolved in Defendants' favor now." Opp. at 8. The statutory insider issue Defendants raised in the Motion, however, is purely a matter of statutory interpretation: this Court must decide whether the corporate insider provisions in section 101(31) of the Bankruptcy Code apply to LLCs (specifically, whether an entity with a membership interest in an LLC can be an affiliate of the LLC). Plaintiffs do not dispute that if the insider provisions do not apply to LLCs, then their statutory insider allegations fail as a matter of law.

The decisions in the Ninth Circuit support the conclusion that the insider provisions do not apply to LLCs. As the Bankruptcy Court for the District of Hawaii recently observed, while "[s]ome courts have found that an LLC is sufficiently analogous to a corporation to permit a court to apply the corporate provisions of § 101(31) to an LLC, . . . [n]o published decision in the Ninth Circuit adopts this view." *Kotoshirodo v. Dorland & Assocs., Inc. (In re Lull)*, Adversary No. 08-90001, 2008 WL 3895561, *8 (Bankr. D. Haw. Aug. 22, 2008). Plaintiffs cite some of these out-of-circuit decisions in their Opposition, but fail to cite a single case in the Ninth Circuit that supports their position. *See* Opp. at 8-9.

Moreover, Plaintiffs do not have an adequate response to the decisions in the Ninth Circuit that Defendants cited in the Motion refuting Plaintiffs' position. *See* Mot. at 14 (citing *In re Lull* and *Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle)*, 353 B.R. 892, 897 (Bankr. D. Idaho 2006)). Plaintiffs argue in a footnote that these cases did not address "why LLCs should not be treated like corporations for purposes of insider analysis," Opp. at 9, n.7, which is simply a backhanded way of Plaintiffs' admitting that they cannot square their position with the holdings of *In re Lull* or *In re Weddle*. In any event, the courts in these cases do explain their reasoning— *i.e.*, that they are following the Ninth Circuit BAP's clear instruction that a court should not "expand[] the definition of *per se* insider beyond what is plainly contained in the statute." *Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626,

632 (BAP 9th Cir. 2004). In this case, Plaintiffs ask this Court to expand the definition of statutory insider not only to include an LLC that allegedly has a membership interest in an LLC debtor (the Lehman Equity Members), but all the way to reach a creditor indirectly related to an LLC with a membership interest in an LLC debtor (the Lehman Lenders excluding LCPI).[4] As such relationships are not "plainly contained in the statute" within the listing of insiders in section 101(31), Defendants cannot be *statutory* insiders as a matter of law. *Id.*

### 3. Defendants Are Not Otherwise Insiders

Plaintiffs' conclusory allegations that Defendants are non-statutory insiders also fail. Plaintiffs argue in the Opposition that "regardless whether any of the Lehman Lenders are statutory insiders, the SAC alleges that Lehman ALI and LCPI are non-statutory insiders based on their exertion of control over the Debtors." Opp. at 9. While the Ninth Circuit has not expressly articulated a specific standard for determining whether a lender is an insider of a debtor, courts in other circuits have consistently ruled that "[t]he exercise of financial control of a creditor over a debtor incident to a creditor-debtor relationship does not make the creditor an insider . . . ." *Tidwell v. Amsouth Bank, N.A. (In re Cavalier Homes of Ga., Inc.)*, 102 B.R. 878, 883-84 (M.D. Ga. 1989).

To the contrary, "[t]he control element necessary to qualify a [lender] bank as an insider must be such that the debtor was the mere alter ego or instrumentality of the bank . . . ." *Burner v. Sec. State Bank (In re Burner)*, 109 B.R. 216, 226 (Bankr. W.D. Tex. 1989); *see also Badger Freightways, Inc. v. Continental Ill. Nat'l Bank (In re Badger Freightways, Inc.)*, 106 B.R. 971, 982 (Bankr. N.D. Ill. 1989) ("[w]hen describing the requisite level of influence the lender must have to be an insider, courts have used terminology such as having a 'stranglehold' over the debtor, having 'complete domination' of the debtor, rendering the debtor a 'mere instrumentality

---

[4] LCPI is excluded here because Plaintiffs do not even allege that LCPI was a creditor of any Debtor that had, as a member, one of the Lehman Equity Members.

or alter ego' of the lender or 'powerless to act independently'") (citations omitted). This approach, of course, is perfectly aligned with the general standard in this Circuit that parties will not be labeled non-statutory insiders unless they are "entities or relatives of the debtor, or of person in control of a related entity, *whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment* by the debtor," or they have "a professional or business relationship with the debtor . . . [that was] close enough to gain an *advantage attributable simply to affinity* rather than to the course of business dealings between the parties." *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 69 (BAP 9th Cir. 1991) (emphasis added).

As discussed in the Motion, the SAC merely alleges that Lehman ALI and LCPI exercised control "incident to a creditor-debtor relationship . . . ." *In re Cavalier Homes*, 102 B.R. at 884; *see* Mot. at 15. Plaintiffs reinforce this point in the discussion of the control allegations in the SAC. They cite their allegations that Lehman ALI and LCPI (a) loaned approximately $2 billion to Debtors (SAC ¶ 2); (b) "obtained liens on each property as security for" the loans (SAC ¶ 67); (c) "became much more 'hands on' in scrutinizing—and approving—budgets and expenses" after the collapse of the California real estate market (SAC ¶ 80); and (d) entered into a restructuring agreement with some of Debtors (after they defaulted on their loans) (SAC ¶ 10). *See* Opp. at 10-11. None of these allegations come close to showing that Lehman ALI and LCPI exercised "complete domination" over Debtors, *In re Badger Freightways*, 106 B.R. at 982 (citation omitted), or treated Debtors as a "mere alter ego or instrumentality" of Lehman ALI and LCPI, *In re Burner*, 109 B.R. at 226. Nor do they come close to showing that Lehman ALI or LCPI "gain[ed] an advantage attributable simply to affinity rather than to the course of business dealings between the parties." *In re Friedman*, 126 B.R. at 69.

Plaintiffs' reliance on the Third Circuit's decision in *In re Winstar Communs., Inc.*, 554

10

F.3d 382 (3d Cir. 2009), is misplaced. Contrary to the instant case, the creditor in *In Re Winstar* not only financed the debtor, but directly sold products and services to the debtor. *See id.* at 391-392. Plaintiffs omit this fact in their lengthy discussion of *In re Winstar*; they also omit most of the bankruptcy court's "extensive findings" on which the Third Circuit relied in holding that the creditor was a non-statutory insider. *Id.* at 397. The bankruptcy court found that the creditor "'forced the 'purchase' of its goods well before the equipment was needed and in many instances . . . never needed at all;' 'treated [the debtor] as a captive buyer for [the debtor's] goods;' and used [the debtor] as 'a means for [the creditor] to inflate its own revenue.'" *Id.* (quoting *Shubert v. Lucent Techs., Inc. (In re Winstar Communs., Inc.)*, 348 B.R. 234, 280 (Bankr. D. Del. 2005)). The bankruptcy court "also found that '[the creditor's] ability to involve [the debtor's] employees in [certain improper transactions that benefited the creditor] is further evidence of [the creditor's] control.'" *Id.*

Plaintiffs' allegations in the SAC do not resemble the facts on which the creditor in *In re Winstar* was held to be a non-statutory insider. Plaintiffs do not and cannot allege that Lehman ALI and LCPI treated Debtors as "captive buyers," forced them to purchase unnecessary goods, or used their employees to facilitate fraudulent transactions. Instead, their allegations more closely resemble the case that the Third Circuit cited in *In re Winstar* as an "instructive contrast," *Johnson v. NBD Park Ridge Bank (In re Octagon Roofing)*, 124 B.R. 522, 530 (Bankr. N.D. Ill. 1991). The court in *In re Octagon Roofing* held that a lender did not become an insider of the debtor by requiring it to provide a mortgage to prevent the creditor from "shut[ting] down the Debtor's operations," reasoning that "it is well established that the exercise of financial control . . . incident to the creditor-debtor relationship does not make the creditor an insider." *Id.* As the only allegations of control alleged in the SAC are of financial control incident to the creditor-relationship, Lehman ALI and LCPI are not non-statutory insiders as a matter of law.

11

The other non-Ninth Circuit cases cited on pages 13 and 14 of the Opposition are factually distinguishable and do not help Plaintiffs. For example, Plaintiffs cite *Freuhauf Corp. v. T.E. Trucking Co. (In re T.E. Mercer Trucking Co.)*, 16 B.R. 176 (Bankr. N.D. Tex. 1981), which stated that the evidence "suggest[ed]" that the lender was an insider where the lender had the rights to "place its designee on the Board of Directors of the Debtors," to "have one of its employees participate in the day-to-day operations of the Debtor's premises with complete veto powers on any items or matters whatsoever," to "set salaries of officers and directors," and to have the lender's management make a final determination "in the event of a dispute between the [Debtors'] management and the [lender's] monitoring agent." *Id.* at 189-90. Plaintiffs do not allege any facts demonstrating that Lehman ALI or LCPI had similar control over Debtors' management. The control allegations in the SAC also differ markedly from those in *Official Unsecured Creditors Committee v. Citicorp North America, Inc.*, which involved allegations that the "lender used its power to control a variety of key decisions made by the debtor's management including: the termination and replacement of the debtor's president and other executive officers" and "the ability of the debtor's shareholders to sell or convey their stock in the company . . . ." 132 B.R. 869, 895 (Bankr. N.D. Ill. 1991). *The Official Committee of Unsecured Creditors v. KDI Specialty Foods, Inc. (In re KDI Holdings, Inc.)* listed four factors for determining whether a lender sufficiently controlled a debtor to be an insider, but Plaintiffs cite only one of them: "whether the lender is the debtors [sic] sole source of credit," 277 B.R. 493, 512 (Bankr. S.D. N.Y. 1999), which they know is plainly insufficient under controlling Ninth Circuit precedent. *See In re First Alliance*, 471 F.3d at 986-87. Plaintiffs omit the other factors listed in *In re KDI*, which are "(1) control over the debtors [sic] voting stock; (2) managerial control, including personnel decisions and decisions as to which creditors should be paid; [and] (3) whether the relationship between the debtor and lender was the result of an arms-length transaction." *Id.*

12

Plaintiffs do not allege any of these factors in the SAC, and, as to the third factor, essentially concede that the relationship between the Lehman Lenders and Debtors was the result of an arms-length transaction. *See* SAC ¶ 2.[5]

The lender cases cited by both Defendants and Plaintiffs establish that a lender is not an insider of a debtor simply because it exercises strict financial control incident to a creditor-debtor relationship. *See In re Cavalier Homes*, 102 B.R. at 883-84 ("[t]he exercise of financial control of a creditor over a debtor incident to a creditor-debtor relationship does not make the creditor an insider . . . ."); *In re KDI Holdings*, 277 B.R. at 511 ("the allegations must establish something more than the monitoring of a debtor's operations" or "threat[s] to withhold future loans"). Plaintiffs cannot overcome the fact that the SAC does not allege any factors of control that are outside the creditor-debtor relationship.

Finally, there is no merit to Plaintiffs' argument that their conclusory allegations that Lehman ALI and LCPI were in a "joint venture" or were "partners" with Debtors are sufficient to confer insider status on Lehman ALI and LCPI. SAC at ¶¶ 3, 79. As stated in the Motion, this Court is not "required to accept as true allegations that are merely conclusory" on a motion to dismiss under FRCP 12(b)(6). *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In addition, under both New York and California law, a joint venture requires "an agreement manifesting the intent of the parties to be associated as joint venturers; ... some degree of joint proprietorship and control over the enterprise; and a provision for the sharing of profits

---

[5]     Plaintiffs' reliance on *Bergquist v. First National Bank (In re American Lumber Co.)*, 5 B.R. 470 (D. Minn. 1980) and *Glinka v. Darmouth Banking Co. (In re Kelton Motors Inc.)*, 121 B.R. 166 (Bankr. D. Vt. 1990) is similarly misplaced. In *In re American Lumber*, the court held that the bank was an insider where it had "absolute control" over the debtor, which included holding a controlling interest in debtor's stock, failing to honor debtor's payroll checks, and forcing the termination of the debtor's employees. 5 B.R. at 477-78. Plaintiffs do not allege such "absolute control" in the SAC. Meanwhile, *In re Kelton Motors* simply reinforces the "general rule [that] lenders are not fiduciaries when it comes to collection on their claims," and the narrow exception "where lender exerts dominion and control over its borrower and substitutes its judgment for that of the corporate borrower . . . ." 121 B.R. at 191.

13

and losses." *Ackerman v. Landes*, 112 A.D.2d 1081, 1082 (N.Y. 2d Dept. 1985); *see also, Resolution Trust Corp. v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("A joint venture exists when there is an 'agreement between the parties under which they have a community of interest . . . in a common business undertaking, and understanding as to the sharing of profits and losses, and a right of joint control.'") (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Ca. 2d 850, 863 (1968)). No such agreement or relationship is alleged in the SAC. Courts in New York and California have also consistently held that a debtor-creditor relationship does not give rise to a joint venture because the parties do not share in the profits and losses of the enterprise. *See BVS Dev.*, 42 F.3d at 1214 (concluding that no joint venture existed where party was "merely a lender whose interest in the business extend[ed] only as far as its interest in timely repayment and the value of its security"); *Kaufman v. Torkan*, 51 A.D. 3d 977, 979 (NY 2d Dept. 2008) (no joint venture agreement existed because the parties' relationship "was that of lender and borrower, with the former at no risk of suffering any losses"). Accordingly, Plaintiffs' conclusory allegation that the Lehman Lenders were in joint venture with Debtors is insufficient to confer insider status on the Lehman Lenders.

## B. Plaintiffs Fail to Sufficiently Plead the Elements of Equitable Subordination

Because Defendants are not insiders as a matter of law, Plaintiffs must satisfy the "elevated" level of pleading to state a claim for subordination. *In re First Alliance*, 471 F.3d at 1006. As explained in the Motion, there are no factual allegations in the SAC that demonstrate that any Defendant engaged in "gross and inequitable conduct" that "injured creditors [of any Plaintiff] or conferred unfair advantage on" that Defendant. *Id.*;[6] *see* Mot. at 15-19. While

---

[6] Plaintiffs cite the out-of-jurisdiction case of *In re 80 Nassau Associates* for its statement that "[i]n commercial cases," a plaintiff can establish equitable subordination by "demonstrate[ing] a substantial breach of contract and advantage-taking by the creditor." 169 B.R. 832, 840 (Bankr. S.D. N.Y. 1994). This is not the Ninth Circuit standard applicable to claims against non-insiders. Instead, as explained in the Motion, the standard is "gross and egregious conduct," *In re First Alliance*, 471 F.3d at 1006, which some courts have described as conduct that "'shocks the conscience of the court,'" *Reaves v. Comerica*

14

Plaintiffs allege the conclusion that Lehman ALI and LCPI engaged in "egregious" conduct, they do not allege facts that support and justify this conclusion. SAC ¶ 125; *see also Twombly*, 127 S.Ct. at 1966 (a plaintiff cannot rely on conclusory allegations of a violation but must provide "factual enhancement" of how the alleged violation occurred to support its claims).

Plaintiffs argue in the Opposition that the crux of their equitable subordination claim "is that the Lehman Lenders *could have* ceased funding a year earlier, but instead strung the Debtors along with promises of funding, which they then breached . . . ." Opp. at 16. Plaintiffs' admission that the Lehman Lenders "could have ceased funding" defeats their allegations that Defendants acted inequitably by allegedly "forc[ing] the Restructuring Agreement down Plaintiffs' throat . . . ." Opp. at 18. Plaintiffs have conceded that the Restructuring Agreement was executed after the loans became troubled and the Lehman Lenders had the right to stop further funding. *See id.* at 16; *see also* SAC at ¶¶ 4, 6, 9. As with the insider analysis, the parties' negotiation of the Restructuring Agreement constitutes conduct that is an accepted component of the creditor-debtor relationship when the debtor has defaulted on its obligations, and therefore is not actionable. *See, e.g., In re After Six, Inc.*, 177 B.R. 219, 232 (Bankr. E.D. Pa. 1995). That is the point of the cases cited in the Motion that rejected equitable subordination claims against lenders (Mot. at 17-18), which Plaintiffs incorrectly dismiss as "inapposite." Opp. at 15.

As for the allegation that the Lehman Lenders breached promises to provide additional funding to Debtors, Plaintiffs fail to cite any Ninth Circuit law establishing that such breaches are sufficient to constitute "gross and egregious conduct" (or, as demonstrated in the next Section, to

---

*Bank Cal. (In re GTI Capital Holdings, LLC)*, Case No. 07-00031, 2007 WL 2493671, *15 (Bankr. D. Ariz. Aug. 30, 2007) (citation omitted). For example, the Ninth Circuit in *In re First Alliance* rejected the trustee's argument that a finding that Lehman had aided and abetted a fraud was sufficient to satisfy the standard for equitable subordination of Lehman's claims: "the success of this argument requires us to treat the standard for holding Lehman liable for aiding and abetting First Alliance's fraud . . . as a stand-in for inequitable conduct under the test for equitable subordination of bankruptcy claims. This we cannot do. No authority supports the Trustee's claim that independently tortious conduct is 'egregious' as a matter of law." 471 F.3d at 1007.

plead the specifics of these allegedly false promises). Moreover, as described in Section I above and more fully in Section III below, Plaintiffs do not plead enough facts to state an equitable claim against by each Debtor against each Defendant, including failing to adequately allege harm to the creditors for each Debtor. The law is clear that "[a] claim will be subordinated only to the claims of creditors whom the inequitable conduct has disadvantaged," *Stoumbos*, 988 F.2d at 960, and yet throughout the entire SAC, Plaintiffs identify only one creditor who was allegedly disadvantaged; otherwise, they entirely ignore any specifics as to which creditors were disadvantaged, which Defendant(s) allegedly harmed that creditor, or when or how such harm occurred. Plaintiffs cannot rely on generalized allegations of false (oral) promises "to fund[] the debts and obligations of the projects," SAC ¶ 91, to state a claim for subordinating claims of different Defendants to the claims of different groups of unsecured creditors of different Debtors. These allegations do not satisfy the elevated pleading standard applicable to non-insiders any more than they satisfy the heightened pleading standard under FRCP 9(b).[7]

As stated in the Motion, "equitable subordination is an unusual remedy which should be applied only in limited circumstances," *Feder v. Lazar (In re Lazar)*, 83 F.3d 306, 309 (9th Cir. 1996), and, where the creditor is a lender, "the circumstances are 'few and far between,'" *In re First Alliance*, 471 F.3d at 1006 (citation omitted). Plaintiffs have not alleged the rare circumstances that are necessary to subordinate Defendants' claims in this case (let alone to subordinate them categorically), and therefore the SAC should be dismissed.

---

[7] Plaintiffs argue that they have stated a claim against the Lehman Equity Members—which are not alleged to have made funding promises—because the Lehman Equity Members allegedly "acted unfairly in violating their fiduciary duties of loyalty" and "acting in the interests of the Lehman Lenders . . . ." Opp. at 21. Plaintiffs cite as support *O'Connell v. Shallo (In re Die Fliedermaus LLC)*, but that case involved a manager of an LLC that was alleged to have a statutory fiduciary duty. 323 B.R. 101, 110 (Bankr. S.D. N.Y. 2005). Plaintiffs do not allege that the Lehman Equity Members were statutory managers of the Trustee Debtors.

### III. PLAINTIFFS FAIL TO EXPLAIN HOW THE SAC COMPLIES WITH FRCP 9(b)

Plaintiffs' Opposition presents the classic response of the litigant who fears having to plead more than conclusions and generalizations because doing so will reveal the fatal flaws and shortcomings of its case. Plaintiffs suggest, without offering any support, that they could provide more detail in the SAC, but doing so would violate FRCP 8(a)(2)'s requirement of presenting only a "short and plain statement of the[ir] claim" if they had to detail all of the alleged misrepresentations on which their equitable subordination claim is based, along with which Defendants made the misrepresentations and which creditors were disadvantaged by the misrepresentations.[8] Opp. at 23. Accordingly, Plaintiffs believe they can get away with offering only one limited example of an allegedly harmed creditor, and even then not identify to which Debtors that creditor extended credit.

Plaintiffs' argument that they do not have to allege everything, so therefore they can allege virtually nothing, is wholly untenable. The details that are necessary to plead Plaintiffs' equitable subordination claim, if they existed, would be in Plaintiffs' possession: They would have to know what Defendants allegedly told Debtors, when and where those alleged misrepresentations were made, and which creditors were harmed as a result of Defendants' alleged misrepresentations to Debtors. Given Plaintiffs' voluntary election to omit these details

---

[8] Plaintiffs reference to the pleading standards of FRCP 8(a) overlooks the Ninth Circuit's holding in *In re GlenFed Sec. Litig.*, where the court made it clear that FRCP 9(b) imposes a much higher pleading standard:

> Plaintiffs argue essentially that the only function of Rule 9(b) is to furnish defendants with notice. Plaintiffs thereby collapse Rule 9(b) into Rule 8(a) . . . But Rule 9(b) clearly imposes an additional obligation on plaintiffs: the statement of the claim must also aver with particularity the circumstances constituting the fraud. . . . Rule 9(b) would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is already required by Rule 8(a).

42 F.3d 1541, 1547 (9th Cir. 1994), *superseded by statute on other grounds as stated in In re Silicon Graphics, Inc.*, 970 F.Supp. 746, 754 (N.D. Cal. 1997).

17

1  in the SAC, this Court should grant the Motion and dismiss the SAC pursuant to FRCP 12(b)(6)

2  and 9(b).

3  ### A.   The SAC Is Governed by FRCP 9(b)

4      As with the elevated pleading standard for claims against non-insiders, Plaintiffs argue

5  that this Court should not apply the heightened pleading standard under FRCP 9(b) to their

6

7  equitable subordination claim. There is no merit to this argument, which relies solely on a select

8  few cases from outside the Ninth Circuit. *See* Opp. at 21-22. As stated in the Motion, the law in

9  the Ninth Circuit is that where a plaintiffs alleges "in the complaint that the defendant has

10 engaged in fraudulent conduct. . . . the claim is said to be 'grounded in fraud' or to 'sound in

11 fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule

12
   9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Plaintiffs attempt
13
   to distinguish this case by citing its language that "where allegations of both fraudulent and non-
14
15 fraudulent conduct are made in the complaint . . . [t]he proper route is to disregard averments of

16 fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Id.* at

17 1104-05. This language does not help Plaintiffs, because they clearly premise their equitable

18 subordination claim on allegations of fraudulent conduct. *See* SAC ¶¶ 1 (alleging that "Lehman

19 perpetrated a fraud on creditors"); 29 ("this adversary proceeding deals with a fraudulent scheme

20
   by Lehman"); 90 (same). Plaintiffs confirm this in a prior section of the Opposition, where they
21
22 state that their "basic complaint" is that the Lehman Lenders made false "promises of funding."

23 Opp. at 16. Accordingly, Plaintiffs' equitable subordination claim sounds in fraud and therefore

24 is governed by FRCP 9(b). *See also In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005).[9]

25

26 ---
   [9]    Even if the Court were to follow the alternative approach of disregarding all of the fraud
   allegations that do not satisfy FRCP 9(b) and then considering whether the remaining allegations state a
27 claim for equitable subordination under FRCP 12(b)(6), the result would be the same: Plaintiffs have not
   stated a claim for equitable subordination and therefore the SAC must be dismissed. All that would be left
28 in the SAC would be allegations that (a) the Lehman Lenders breached an agreement to close a settlement
   agreement (SAC ¶ 98); (b) Lehman ALI recorded notices of default that Plaintiffs contend were improper

18

**B.** **Plaintiffs Fail to Plead Their Equitable Subordination Claim Against any Defendant With Particularity**

Plaintiffs do not cite any Ninth Circuit precedent in support of their argument that they satisfied FRCP 9(b). Moreover, they do not address the elements of equitable subordination that must be alleged with particularity as to each Defendant or explain how these elements are alleged with particularity in the SAC. As stated in the Motion, Plaintiffs must allege with particularity that (1) each Defendant "engaged in inequitable conduct," which, based on the general fraud allegations in the SAC, means that each Defendant made false promises of funding, and (2) the alleged false funding promises injured the creditors of each Debtor. *See In re First Alliance*, 471 F.3d at 1006. Plaintiffs do not plead either of these elements with the requisite "who, what, when, where, and how of the misconduct charged," *Vess*, 317 F.3d at 1106, and therefore the SAC must be dismissed.

1. **The Opposition Confirms Plaintiffs' Failure to Plead Lehman ALI and LCPI Made "Numerous Misrepresentations"**

Plaintiffs fail to refute the fact that the SAC includes "just one example" of an alleged false funding promise (involving payment to a law firm). SAC ¶ 125. Moreover, while Plaintiffs purport to identify allegations of "repeated representations" in their Opposition, none of these allegations are of specific misrepresentations.

For example, Plaintiffs allege that "[f]rom mid-2007 to late 2008, SunCal's Bruce Cook and/or Frank Faye participated in numerous calls with Frank Gilhool, Lehman's Managing Director of Global Real Estate, in which Gilhool assured SunCal that Lehman was committed to

---

without explanation (*id.* ¶ 108); (c) Lehman ALI transferred first deeds of trust on some of the Projects to LCPI, the original owner (*id.* ¶ 94); (d) "Lehman" withdrew money from accounts that Plaintiffs do not dispute belonged to it; (e) "Lehman" withdrew settlement authority from Radco (id. ¶ 89); and (f) the Lehman Equity Members refused to vote for voluntary bankruptcy of the Trustee Debtors (*id.* ¶ 129). None of these allegations constitute "gross and egregious" conduct. Further, as to the scant allegations that Plaintiffs argue are non-fraudulent, Plaintiffs' failure to connect these allegations to creditors of specific Debtors is even more pronounced.

19

funding the obligations of the Projects, including the work Lehman specifically authorized. SunCal and its contractors worked on the Projects in reliance on these promises." Opp. at 25. They further contend that "[e]ven after Lehman filed for bankruptcy in September 2008, Gilhool was still assuring SunCal that payment would be forthcoming, and encouraging SunCal to move forward." Opp. at 25. These allegations clearly do not satisfy FRCP 9(b). Plaintiffs have failed to detail "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540-541 (9th Cir. 1989) (FRCP 9(b) requires the pleader to state the "specific content of the false representations as well as the identities of the parties to the misrepresentation").

As explained in the Motion, Plaintiffs allege that "Lehman" engaged in high volume of oral communications with "SunCal," but the way the SAC is pled, Defendants have no way of knowing the dates, times, specific content, and parties to the allegedly fraudulent conversations (which are conveniently pled by SunCal to be oral conversations and thus without a written record). Defendants are entitled to have "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner*, 6 F.3d at 671. The SAC simply does not sufficiently allege specific facts demonstrating wrongdoing which Defendants could address and rebut, which Rule 9(b) requires. Plaintiffs also make sweeping reference to contractors who purportedly worked on Projects as a result of "Lehman's" representations. But Plaintiffs do not identify the creditors with which Debtors contracted, the dates of their work, or the projects they undertook in reliance on or as a result of "Lehman's" purported representations.

Plaintiffs cite in their Opposition to the allegation that "[b]eginning in mid-2007, SunCal would submit weekly budgets to Lehman, and the parties would have weekly conference calls,

20

1   during which Lehman would dictate what specific work could proceed, and which specific

2   creditors would get paid." Opp. at 25. Plaintiffs fail to explain how this conduct was inequitable,

3   let alone gross and egregious, or how this allegation amounts to a misrepresentation that satisfied

4   FRCP 9(b). Furthermore, Plaintiffs do not offer any instances of a creditor discussed on a

5   specific weekly conference call whom "Lehman" agreed should be paid but as to whom

6

7   "Lehman" later refused to advance funds to a Debtor for payment.

8       Plaintiffs also cite their allegation that "[u]nbeknownst to SunCal, Lehman sought to mask

9   the Projects' decline in value in order to minimize write-downs, so as to prop up Lehman's

10  weakening stock price and entice potential investors Lehman was pursuing to fortify its own

11  faltering finances." Opp. at 25. Plaintiffs have pled no facts that make this allegation plausible; it

12  is simply a bald accusation. In any event, Plaintiffs fail to explain how this accusation involved a

13

14  misrepresentation to a Debtor or other creditor of the Debtor to its disadvantage.

15      Plaintiffs allege that "[a]s part of its scheme, Lehman induced SunCal to sign the May

16  2008 Restructuring Agreement-which Gilhool signed on behalf of the various Lehman entities-in

17  which Lehman agreed to pay Debtors' creditors for their work." Opp. at 25. Plaintiffs have

18  failed to plead their allegation that "Lehman" fraudulently "induced" SunCal to sign the

19  Restructuring Agreement with specificity, providing nothing under FRCP 9(b) to put "Lehman"

20

21  on notice of the conduct that constitutes the alleged fraud or how this allegedly fraudulent

22  inducement occurred. Plaintiffs have also failed to identify any specific provision in the

23  Restructuring Agreement which required "Lehman" to pay any specific creditor for any specific

24  work.

25      Plaintiffs argue that they specifically alleged that "Lehman arranged for Radco to settle

26  outstanding contactor payables, for the secret purpose of staving off creditors from filing

27  involuntary bankruptcies against the Debtors. In the weeks before Lehman's bankruptcy, it

28

21

revoked Radco's authority." Opp. at 25. Once again, Plaintiffs have offered no support for their accusation. There is no contention in the SAC that other creditors were threatening to place certain Debtors into bankruptcy, that the arrangement with Radco was improper, or that the Lehman Lenders were not well within their rights to discontinue the arrangement.

Plaintiffs also cite their allegation that "[i]n August 2008, days before the Restructuring Agreement was to close, Lehman ALI secretly transferred deeds of trust on select Projects to LCPI . . . . LCPI filed for bankruptcy soon after. These transfers occurred so that LCPI could use its own bankruptcy stay to block a reorganization." Opp. at 26. As noted in the Motion, Plaintiffs do not allege that this was anything other than a return of the deeds of trust to LCPI as their original holder. Moreover, Plaintiffs offer no explanation, plausible or otherwise, of how this action disadvantaged any known creditor of a Debtor; it is simply a disconnected charge of misconduct divorced from any harm to Debtors' creditors.

### 2. Plaintiffs Cannot Rely on Discovery to Supply the Details They Omitted from the SAC

Plaintiffs contend the defects in the SAC can be remedied through discovery. Opp. at 2. But even if this were appropriate in some circumstances, courts have consistently rejected attempts by plaintiffs to avoid their pleading obligations in alleged misrepresentation cases where the plaintiffs were parties to the alleged communications and therefore, if their allegations were truthful, could provide details of the communications. *See, e.g., Wang & Wang LLP v. Banco Do Brasil, S.A.*, No. Civ. S-06-00761 DFL KJM, 2007 WL 915232, at *2 (E.D. Cal. March 26, 2007) ("It would be inappropriate to relax the particularity requirement here, however, because the necessary details Wang fails to include in its complaint are directly known to Wang. There is no excuse for Wang's failure to plead with particularity the details of conversations to which it was a party."); *Townsend v. Chase Bank USA N.A.*, No. SACV08-00527 AG (ANx), 2009 WL 426393, *4 (C.D. Cal. Feb. 15, 2009) ("Plaintiff should know when and where the allegedly fraudulent

22

representations were made to him."); *In re Calpine Corp. ERISA Litigation*, No. C 03-1685 SBA, 2005 WL 3288469, at *8 (N.D. Cal. Dec. 5, 2005) ("since Plaintiff has alleged that, as a plan participant, he was the recipient of the allegedly misleading statements, then Plaintiff should, at the very least, be able to identify with specificity: (1) the particular statements that Calpine and the Committee Defendants made that were misleading; (2) the medium used to communicate the statements; (3) when the statements were made and by whom; and (4) how they were misleading."); *Arboireau v. Adidas-Salomon AG*, No. CV-01-105-ST, 2001 WL 1471748, at *5 (D. Or. July 25, 2001) (plaintiffs "undoubtedly know who made the alleged representations to them and in what manner and should be able to approximate when those alleged misrepresentations took place. . . . [Plaintiffs] are capable of meeting FRCP 9(b)'s pleading requirements and must do so.").

### 3. FRCP 9(b) Does Not Apply "Less Stringently" to Plaintiffs

Plaintiffs also suggest that FRCP 9(b) is applied "less stringently" to frauds that allegedly occurred over a period of time. Plaintiffs have not cited any Ninth Circuit authority in support of their argument. Instead, Plaintiffs rely on out of district cases, with the exception of *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (C.D. Cal. 2006), which itself relies on out of district cases.[10] In any event, even under those cases (all of which are pre-*Twombly*), plaintiffs are not permitted to pled fraud based on blanket assertions of misrepresentations without offering any details of the misrepresentations. Instead, the courts merely excused the plaintiffs from having to "recite, in detail, the fact of each transaction" involved in the fraud. *Bale v. Dean Witter Reynolds, Inc.*, 627 F. Supp. 650, 652 (D. Minn. 1986); *Gen. Accident Ins. Co. of Am. v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 1223, 1232 (E.D. Pa. 1984). Forgiving a plaintiff for not reciting every allegedly fraudulent transaction in detail, however, is a far cry from permitting

---

[10] As Plaintiffs acknowledge, in *Hempfling*, the complaint set forth the specific dates on which the defendant conducted fraudulent seminars. Opp. at 24.

23

Plaintiffs to go forward on a fraud-based claim that they claim is far-reaching but as to which they can offer "just one example," SAC ¶ 125, and a poor example at that. In fact, Plaintiffs hold out *Kimmel v. Peterson*, 565 F. Supp. 481 (E.D. Pa. 1983), as an exemplar of the lower FRCP 9(b) standard for pleading "ongoing frauds," and quote a passage from that case. What Plaintiffs ignore are the two sentences immediately proceeding their selected passage, which state that in the plaintiff's complaint, "Dr. Kimmel's request for safe investments is emphasized and the repeated breaches of his trust are detailed. Specific acts of knowing misrepresentation and omissions are alleged." *Id.* at 481 (emphasis added). "Detail" and "specific acts" are precisely what the SAC lacks.[11]

### 4. Plaintiffs Continue to Improperly Lump Defendants Together

As stated in the Motion, Plaintiffs improperly group Defendants together, refer to Lehman ALI and LPCI with the "and/or" connector, and describe conduct by "Lehman," which is not a party to this action. These allegations clearly violate FRCP 9(b)'s requirement that plaintiffs "differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007). Plaintiffs attempt to justify this shortcoming by briefly and cavalierly alleging that "representations made by 'Lehman' were being made on behalf of both Lehman ALI and LCPI" (SAC ¶ 78). *See* Opp. at 27. However, Plaintiffs provide no particularized allegations to justify or support this blanket assertion.

Plaintiffs claim that "nothing would be gained by identifying each of the [Lehman Equity Members] by name with regard to each wrongful act." Opp. at 27. In fact, "[i]n the context of a

---

[11] As the Sixth Circuit explained recently, even if a plaintiff does not have to allege every instance of fraud when an allegedly fraud scheme involved many instances over a substantial period of time, the plaintiff must at least plead the fraudulent scheme with particularity and plead several representative examples of the fraudulent instances "with specificity, . . .including general time frame, substantive content, and relation to the allegedly fraudulent scheme." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510-11 (6th Cir. 2007).

24

fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz*, 476 F.3d at 765; *see also Madison*, 2009 WL 751603, at *3 (holding that "aggregation of all Defendants" in a complaint not only is inadequate under FRCP 8(b), but further "violates [FRCP] 10(b)'s mandate that '[a] party state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances'"). Plaintiffs' treatment of the Lehman Equity Members as a group without specifying the alleged specific conduct of each Member therefore violates well settled Ninth Circuit precedent.

## CONCLUSION

For the reasons stated in the Motion and in this reply, Defendants respectfully request that this Court dismiss the SAC.

Dated: May 15, 2009        PACHULSKI STANG ZIEHL & JONES LLP

/s/ Dean A. Ziehl
Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067-4100
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

-and-

WEIL, GOTSHAL & MANGES LLP
Edward Soto (admitted *pro hac vice*)
Shai Waisman (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Commercial Paper, Inc.,
Lehman ALI, Inc., Northlake Holdings, LLC
and OVC Holdings, LLC, LBREP II/SunCal Land
Fund Member, LLC, SCLV Oak Valley, LLC,
SCLV Northlake, LLC, and LB/L-DUC III Master
LLC

25

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

The foregoing document described **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___May 15, 2009___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ___May 15, 2009___ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Overnight Mail satisfies *all* service conditions]

The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Building and
United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___May 15, 2009___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method,) by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

pcouchot@winthropcouchot.com
wlobel@thelobelfirm.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 15, 2009 | Melisa DesJardien | /s/ Melisa DesJardien |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
52063-001\DOCS_LA:202353.2

**F 9013-1.1**

American LegalNet, Inc.
www.FormsWorkflow.com

## I. SERVED BY NEF

Joseph A Eisenberg for Defendant LB/L-Duc III Master LLC
jae@jmbm.com

Christopher W Keegan for Interested Party Courtesy NEF
ckeegan@kirkland.com, emilee@kirkland.com; alevin@kirkland.com

James M Miller for Plaintiff Palmdale Hills Property LLC
jmiller@millerbarondess.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

## II. SERVED BY U.S. MAIL

Mark E. McKane, Esq.
Kirkland & Ellis LLP
555 California St
San Francisco, CA 94104

Louis R. Miller, Esq.
Brian A. Procel, Esq.
Miller Barondess, LLP
1999 Ave of the Stars, Ste. 1000
Los Angeles, CA 90067

Edward Soto, Esq.
Shai Waisman, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
52063-001\DOCS_LA:202353.2

**F 9013-1.1**

American LegalNet, Inc.
www.FormsWorkflow.com