1  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
2  MARTIN PRITIKIN, State Bar. No. 210845
   mpritikin@millerbarondess.com
3  BRIAN PROCEL, State Bar No. 218657
   bprocel@millerbarondess.com
4  **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone: (310) 552-4400
6  Facsimile: (310) 552-8400

7  Special Litigation Counsel for
   Jointly Administered Debtors in Possession and
8  Chapter 11 Trustee

9  WILLIAM N. LOBEL, State Bar No. 93202
   wlobel@thelobelfirm.com
10 MIKE D. NEUE, State Bar No. 179303
   mneue@thelobelfirm.com
11 **THE LOBEL FIRM, LLP**
   840 Newport Center Drive, Suite 750
12 Newport Beach, CA 92660
   Telephone: (949) 999-2860
13 Facsimile: (949) 999-2870
   Attorneys for Chapter 11 Trustee, Steven M.
14 Speier

PAUL J. COUCHOT, State Bar No. 131934
pcouchot@winthropcouchot.com
SEAN A. O'KEEFE, State Bar No. 122417
sokeefe@ winthropcouchot.com
PETER W. LIANIDES, State Bar No. 16057
plianides@ winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4165
Facsimile: (949) 720-4111

General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession and SCC
Acquisitions, Inc.

15 **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION**

16 In re

17 PALMDALE HILLS PROPERTY, LLC, AND ITS
18 RELATED DEBTORS,
          Jointly Administered Debtors and
19          Debtors-in-Possession

20 **ADVERSARY PROCEEDING**

21 PALMDALE HILLS PROPERTY, LLC, et al.,

22          Plaintiffs,

23 v.

24 LEHMAN ALI, INC., et al.,

25          Defendants.

**CASE NO. 8:08-bk-17206-ES**
Jointly Administered With Case Nos.
    8:08-bk-17209-ES; 8:08-bk-17240-ES;
    8:08-bk-17224-ES; 8:08-bk-17242-ES;
    8:08-bk-17225-ES; 8:08-bk-17245-ES;
    8:08-bk-17227-ES; 8:08-bk-17246-ES;
    8:08-bk-17230-ES; 8:08-bk-17231-ES;
    8:08-bk-17236-ES; 8:08-bk-17248-ES;
    8:08-bk-17249-ES; 8:08-bk-17573 ES;
    8:08-bk-17574-ES; 8:08-bk-17575 ES;
    8:08-bk-17404-ES; 8:08-bk-17407-ES;
    8:08-bk-17408-ES; 8:08-bk-17409-ES;
    8:08-bk-17458-ES; 8:08-bk-17465-ES;
    8:08-bk-17470-ES; 8:08-bk-17472-ES;
    8:08-bk-17588-ES

**Adversary No. 8:09-ap-01005-ES**

**PLAINTIFFS' OPPOSITION TO**
**FENWAY CAPITAL, LLC'S MOTION**
**TO DISMISS THE THIRD AMENDED**
**COMPLAINT**

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

---

OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

58918.1

1

## TABLE OF CONTENTS

2   INTRODUCTION ..................................................................................................................1

3   SUMMARY OF ALLEGATIONS ........................................................................................2

4   ARGUMENT.........................................................................................................................4

5   I.    The TAC States a Claim for Equitable Subordination Against Fenway ...........................4

6       A.    Fenway's Liability as Successor........................................................................4

7       B.    Fenway's Liability As Principal .......................................................................8

8           1.    Vicarious Liability for Post-Repo, Pre-Petition Conduct ..........................8

9           2.    Vicarious Liability for Post-Petition Conduct .............................................9

10  II.   The TAC States a Fraudulent Transfer Claims Against Fenway......................................10

11  III.  The TAC States a Preferential Transfer Claim Against Fenway .....................................11

12      A.    Transfers to Fenway May Be Alleged Hypothetically ..........................................11

13      B.    The TAC Adequately Pleads Fenway's Lack of Good Faith ................................13

14      C.    The TAC Need Not Plead the Preferential Transfers with Particularity ..............13

15      D.    Fenway, As Subsequent Transferee, Need Not Be An Insider .............................14

16  IV.   The TAC States a Claim for Section 506(d) Transfer Against Fenway ...........................16

17      A.    The TAC Alleges the Count Seven Liens Were Transferred to Fenway...............16

18      B.    Lien Stripping is Permissible in Chapter 11 Cases.............................................17

19      C.    Section 506(d) Does Not Require the Disallowance of the Claim. ......................18

20  V.    Count Eight States a Claim under Section 502(d) Transfer Against Fenway....................19

21  CONCLUSION.....................................................................................................................19

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

i

# TABLE OF AUTHORITIES

**Cases**

*ABC-NACO, Inc. v. Bank of America N.A.*, 402 B.R. 816 (N.D.Ill. 2009)..............................15

*Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519 (6th Cir. 2000) ....................6

*Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612 (2nd Cir. 1998)..............5

*American Exp. Travel Related Services Co., Inc. v. SM Zako, Inc.*,
22 Misc.3d 1126(A) (N.Y. Supp. 2009) .......................................................................5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...........................................................13, 14

*Bell Atlantic Corp.  v. Twombly*, 550 U.S. 544 (2007) ............................................13, 14

*Charles Rubenstein, Inc. v. Columbia Pictures Corp.*, 14 F.R.D. 401 (D.Minn. 1953)..........13

*Davis v. Elite Mortg. Services, Inc.*, 592 F.Supp.2d 1052 (N.D.Ill. 2009) ......................5

*Dewsnup v. Timm*, 502 U.S. 410 (1992) ...........................................................17, 18

*Evergreen Marine Corp. v. Division Sales, Inc.*,
2003 WL 1127759, *3 (N.D.Ill., Mar. 12, 2003) ..........................................................6

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................................................6

*Gaglia v. First Federal Sav. & Loan Ass'n*, 889 F.2d 1304 (3rd Cir. 1989)
*abrogated on other grounds, Dewsnup*, 502 U.S. 410 (1992) ......................................18

*General Acquisition, Inc. v. GenCorp Inc.*, 766 F.Supp. 1460 (S.D.Ohio 1991) .................13

*Gold v. Nova Industries*, 376 B.R. 194 (Bankr. E.D.Mich.2007)....................................14

*Hammelburger v. Foursome Inn Corp.*, 446 N.Y.S.2d 917 (1981) ....................................4

*In re 1441 Veteran Street Co.*, 144 F.3d 1288 (9th Cir. 1998) ..............................17, 18

*In re 848 Brickell Ltd.*, 243 B.R. 142 (S.D.Fla. 1998)................................................9

*In re ABC-Naco, Inc.*, 331 B.R. 773 (Bankr.N.D.Ill. 2005) .........................................16

*In re Adler, Coleman Clearing Corp.*, 277 B.R. 520 (Bankr.S.D.N.Y. 2002) ........................8

*In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528 (9th Cir. 1990)........6

*In re Akram*, 259 B.R. 371 (Bankr.C.D.Cal. 2001) ...................................................18

*In re Boyer*, 104 B.R. 497 (Bankr.S.D.Fla. 1989) ...................................................10

*In re Community Associates, Inc.*, 173 B.R. 824 (D.Conn. 1994).....................................10

*In re Conner Home Sales Corp.*, 190 B.R. 255 (E.D.N.C. 1995).....................................15

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

1   *In re Dever*, 164 B.R. 132 (Bankr.C.D.Cal. 1994) .................................................. 17

2   *In re Enron Corp.*, 333 B.R. 205 (Bankr.S.D.N.Y. 2005) .................................. 4, 6

3   *In re Enron Corp.*, 379 B.R. 425 (S.D.N.Y. 2007) ........................................... 4, 5

4   *In re Enron Corp.*, No. 05-01025, 2007 WL 278-394 (S.D.N.Y., Sept. 24, 2007) .......... 5

5   *In re Estate of Pokrass*, 105 A.D.2d 659, 661 481 N.Y.S.2d 861 (1984) ................. 5

6   *In re Golden Triangle Capital, Inc.*, 171 B.R. 79 (9th Cir. BAP 1994) ............... 10

7   *In re Hardway Restaurant, Inc.*, 31 B.R. 322 (Bankr.S.D.N.Y.1983) ..................... 6

8   *In re Ice Cream Liquidation*, 319 B.R. 324 (Bankr. D.Conn. 2005) ...................... 14

9   *In re Image Worldwide,* 139 F.3d 574 (7th Cir.1998) ..................................... 10

10  *In re Jones*, 152 B.R. 155 (Bankr. E.D.Mich. 1993) ..................................... 18

11  *In re Lomas Fin. Corp.*, 1999 WL 33742299 (Bankr.D.Del. 1999) ..................... 14

12  *In re Marquis Prods.*, 150 B.R. 487 (Bankr.D.Me.1993) ................................. 10

13  *In re NM Holdings Co., LLC*, 407 B.R. 232 (Bankr. E.D.Mich. 2009) ............... 14

14  *In re Nutri/System of Florida Associates*, 178 B.R. 645 (E.D.Pa. 1995) ............... 9

15  *In re Papercraft Corp.*, 247 B.R. 625 (Bankr.W.D.Pa. 2000) ............................ 9

16  *In re Pourtless*, 93 B.R. 23 (Bankr.W.D.N.Y.1988) ....................................... 18

17  *In re Richardson*, 121 B.R. 546 (Bankr.S.D.Ill. 1990) ................................. 18

18  *In re Sunrise Securities Litigation*, 793 F.Supp. 1306 (E.D.Pa. 1992) ............... 13

19  *In re The IT Group*, 313 B.R. 370 (Bankr.D.Del. 2004) ................................. 14

20  *In re TW, Inc.*, 2005 WL 2296902 (Bankr.D.Del. 2005) ................................. 14

21  *In re V.N. Deprizio Constr. Co.*, 874 F.2d 1186 (7th Cir.1989) ....................... 15

22  *In re Valley Media*, 288 B.R. 189 (Bankr. D. Del. 2003) ............................... 14

23  *In re Warde Elec. Contracting, Inc.*, 308 B.R. 659 (S.D.N.Y. 2004) ................. 10

24  *In re Webvan Group*, 2004 WL 483580 (Bankr.D.Del. 2004) ........................... 14

25  *In re Weinstein*, 227 B.R. 284 (9th Cir.BAP 1998) ..................................... 17

26  *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002) ........................................... 17

27  *Lapis Enterprises, Inc. v. Int'l Blimpie Corp.*, 445 N.Y.S.2d 574 (1981) ........... 4

28  *Lexicon, Inc. v. Ace American Ins.*, 2009 WL 5207538 (E.D.Ark., Dec. 31, 2009) ...... 13

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

iii

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Lomas Mortgage U.S.A. v. Wiese*, 980 F.2d 1279 (9th Cir.1992),
   *vacated and remanded on other grounds*, 508 U.S. 958 (1993) ................................ 17-18

*Losner v. Cashline, L.P.*, 757 N.Y.S.2d 91 (2003) ............................................. 5

*Miller v. Webber*, 1997 WL 299447 (E.D.Pa. 1997) ........................................... 13

*Natural Resources, Inc. v. Wineberg*, 349 F.2d 685 (9th Cir.1965) .......................... 5

*Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101 (C.D. Cal. 2003) ............ 6

*New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*,
   2009 WL 1515696 (S.D.N.Y. Jun. 1, 2009) ................................................ 13

*Oakdale Vill. Group v. Fong*, 43 Cal.App. 4th 539, 50 Cal.Rptr.2d 810 (1996) ............... 6

*Smith v. Amer. Founders Fin. Corp.*, 365 B.R. 647 (S.D.Tex. 2007) ......................... 10

*Smith v. Computer Task Group*, 568 F.Supp.2d 603 (M.D.N.C. 2008) .......................... 13

*Taylerson v. American Airlines, Inc.*, 183 F.Supp. 882 (S.D.N.Y. 1960) .................... 13

*Trans-Resources, Inc. v. Nausch Hogan and Murray*,
   298 A.D.2d 27, 746 N.Y.S.2d 701 (2002) ................................................. 5

*Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488 (N.D.Ill. 1988) ..................... 5

**Statutes**

11 U.S.C.
   Section 502(d) ......................................................................... 19
   Section 506 ............................................................................ 18
   Section 506(d) ............................................................. 16, 17, 18, 19
   Section 510(c) .......................................................................... 4
   Section 541 ............................................................................ 10
   Section 544(b) ......................................................................... 19
   Section 547 ............................................................................ 19
   Section 547(i) ..................................................................... 15, 16
   Section 548 ............................................................................ 19
   Section 550 ................................................................... 4, 15, 19
   Section 550(a) ......................................................................... 15
   Section 550(a)(2) ...................................................................... 16
   Section 550(b) ......................................................................... 16
   Section 550(c) ................................................................ 14, 15, 16

**Other Authorities**

ALI-ABA Joint Review Committee for Article 9 of the UCC Meeting Notes (2009) ............... 5

Crastz, *Can A Claims Purchaser Receive Better Rights (or Worse Rights)
   Than Its Transferor in a Bankruptcy?*, 29 California Bankruptcy Journal 365, 373 (2007) ........ 5

Daniel Schechter, *Transferees of Claims Against Bankrupt Estates Do Not Necessarily
   Take Subject to Defenses Assertable Against Transferor*,
   2007 Commercial Finance Newsletter 68 (September 3, 2007) ............................. 5

iv

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

H.R.Rep. No. 109-31 (2005)................................................................................................ 15, 16

M. Bienstock, T. Karcher, *District Court Vacates And Remands Bankruptcy CourtRulings
On Equitable Subordination And Disallowance Of Claims In Hands Of Transferees*,
October 2007, available at http://www.weil.com/news/pubdetail.aspx?pub=8966 ........................ 5

U.S.Code Cong. & Admin.News 2005, pp. 88, 202-03 ................................................................ 16

Wright & Miller, 5 Fed.Prac.& Proc.Civ. § 1282 (2009) ................................................ 12

**Rules**

Federal Rules of Civil Procedure
    Rule 8................................................................................................................. 12
    Rule 8(d)............................................................................................................. 13
    Rule 8(d)(2)......................................................................................................... 12
    Rule 8(e)(2)..................................................................................................... 12, 13
    Rule 9(b).............................................................................................................. 7
    Rule 12(d)............................................................................................................ 8

**Treatises**

Collier on Bankruptcy-15th Ed. Rev. ¶ 506.06 (2009) ........................................................ 17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

58918.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA, 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# **INTRODUCTION**

Fenway's Motion to Dismiss ("Motion") the Third Amended Complaint ("TAC"), much like the Lehman Entities' own motion, reflects a refusal to acknowledge the allegations in the TAC itself. Yet Fenway's Motion also suffers from an additional defect not at issue in the Lehman Entities' motion: a refusal to acknowledge applicable law regarding both a successor's and principal's liability for the conduct of its predecessor and/or agent.

The TAC more than adequately alleges claims for equitable subordination against the Lehman Entities,[1] based on pre-petition conduct occurring both before and after the August 22, 2008 repurchase agreement ("Repo") with Fenway, as well as for post-petition conduct occurring after the November 2008 commencement of the Debtors' bankruptcies. There are also multiple bases for holding Fenway liable for the Lehman Entities' acts.

First, Fenway can be held liable for the Lehman Entities' pre-Repo acts as a successor. Fenwy argues that it is immune from such liability because it is a bona fide purchaser ("BFP"). However, as a matter of law, BFP status is not a defense to equitable subordination. Even if it were, it is an affirmative defense whose absence need not be alleged in the TAC. And even if such allegations were required, the allegations in the TAC are sufficient: Fenway is alleged to have willingly served as a conduit to help Lehman loan money to itself in a transaction designed to get toxic real estate loans off its books just weeks before its bankruptcy, just as the Lehman Entities were representing to Debtors their willingness and ability to provide funding.

Second, Fenway can also be held vicariously liable for the Lehman Entities' post-Repo acts as a principal. If Fenway's position is that the Lehman Entities are and have been its agents, it cannot avoid liability for the wrongful acts of its agents. The TAC alleges that subsequent to the August 2008 Repo, the Lehman Entities wrongfully refused to close their restructuring deal with Plaintiffs, refused to fund the Projects as promised, and took other steps designed to thwart the Debtors' bankruptcies. As for post-petition conduct, despite the Court's recent ruling that the

---

[1] Plaintiffs incorporate herein by reference the arguments made in their Opposition to the Lehman Entities' Motion to Dismiss the Third Amended Complaint filed January 26, 2010.

1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    Lehman Entities were Fenway's agents for purposes of filing the proofs of claims, they were still

2    found to have made misrepresentations on those proofs of claims.  In addition, LCPI still falsely

3    invoked its stay at least with regard to some of the loans sold to Fenway (the "Sold Loans").

4        As to the other causes of action alleged against Fenway, the Motion largely just reiterates or

5    incorporates by reference the same erroneous arguments made by the Lehman Entities.  The only

6    new argument Fenway makes is that the allegations of the transfers made to it are insufficient.  But

7    the TAC clearly alleges that the Sold Loans and accompanying liens were transferred to Fenway,

8    and identifies them with particularity.  Moreover, although Fenway criticizes the TAC's allegation

9    that Fenway is liable for preferential transfers "to the extent" it received them, such hypothetical

10   pleading is perfectly permissible.  Indeed, the Lehman Entities actively concealed the existence of

11   the Repo, or Fenway's ownership of the Sold Loans, until shortly before the TAC was filed.   The

12   Federal Rules of Civil Procedure acknowledge that a party that has not yet taken discovery may not

13   have the facts that are within the knowledge of the opposing party, and so permit such flexible

14   pleading.

15                        **SUMMARY OF ALLEGATIONS**

16       On August 25, 2008, the SunCal entities and the Lehman Entities signed the Settlement

17   Agreement which was to be the culmination of the parties' restructuring deal.  (TAC ¶ 167.)  Prior to

18   and through the signing of that agreement, the Lehman parties affirmed their willingness and ability

19   to go through with the restructuring and to pay for millions of dollars in work they had previously

20   authorized to be performed for the benefit of the Debtors' Projects.  (TAC ¶¶ 99, 113, 115-116, 167.)

21       Unbeknownst to SunCal or the Debtors, just three days earlier, on August 22, 2008, Fenway,

22   as "Buyer," and LCPI, as "Seller," entered into the Repo, pursuant to which Fenway purchased all of

23   LCPI's right, title and interest in the Sold Loans—seven of the fourteen loans at issue in this suit,

24   totaling over $1.5 billion dollars.  (TAC ¶¶ 118-119, 161).

25       The Repo was merely one step in a series of simultaneous transactions designed to allow

26   Lehman to obtain badly-needed liquidity from J.P. Morgan, which had to appear to be secured by

27   something other than the Sold Loans themselves (since the loans had been made to acquire and/or

28   develop California land—not the most attractive collateral in late 2008). (TAC ¶¶ 119, 167.)

2

1    Fenway was more than happy to facilitate this maneuver. (TAC ¶ 167). Accordingly, the

2    Sold Loans which Fenway acquired were simultaneously posted as collateral for a note issued to its

3    affiliate, Fenway Funding. (TAC ¶ 165). Fenway Funding simultaneously posted the proceeds of

4    that note as collateral for commercial paper notes ("CP Notes") issued to the parent Lehman entity,

5    ("LBHI" or "Lehman"). *Id.* Around the same time, Lehman pledged the CP Notes to secure certain

6    obligations owed to J.P. Morgan. *Id.* The net effect of this is that through a series of clandestine

7    transactions Lehman was able to convert the Sold Loans—which were considered to be toxic

8    assets—to commercial paper, which was ultimately pledged to J.P. Morgan in order to get the Sold

9    Loans off the books and to maintain liquidity from J.P. Morgan to help keep Lehman afloat.

10    On September 15, 2008—just three weeks after Fenway served as a conduit to effectively

11    "launder" the Sold Loans, and after the Lehman Entities were affirming to SunCal and Debtors their

12    willingness and ability to restructure those same loans—Lehman filed for bankruptcy. (TAC ¶ 121.)

13    Both the Lehman Entities and Fenway have been reticent about Fenway's role in these

14    transactions. After initially concealing from Debtors the sale of the Sold Loans to Fenway in August

15    2008, the Lehman Entities kept Fenway's identity and ownership of the loans secret in the litigation

16    until their hand was forced. On March 26, 2009, when the Debtors' counsel got wind that the

17    Lehman Entities may have transferred loans to third parties, they requested that the Lehman Entities

18    make a full disclosure. (TAC ¶¶ 157-158.) Yet the very next day, the Lehman Entities filed

19    multiple proofs of claim wherein they misrepresented that *they* were the "creditors" who owned the

20    Sold Loans. (TAC ¶¶ 157, 169-170.) Only after the Debtors served a subpoena on JP Morgan did

21    the Lehman Entities respond to Debtors' inquiry; and even then, they merely stated that "various

22    counterparties" (including Fenway) "may claim some interest" in the loans. (TAC ¶ 159.) Only

23    once JP Morgan produced documents was the Repo and the sale of the Sold Loans to Fenway

24    brought to light. (TAC ¶ 160.)

25    Fenway also did not come forward as the true owner of the Sold Loans when LCPI moved

26    for relief from stay and asserted *its* right—as "owner" of the Sold Loans—to foreclose on the

27    underlying properties owned by the Debtors. (TAC ¶¶ 153, 174-75.) The basis for LCPI's motion

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

3

1   was that its own automatic stay precluded these Debtors' ability to reorganize; but because non-

2   bankrupt Fenway was the owner of these loans, LCPI'stay was inapplicable. *Id.*

3                                                    **ARGUMENT**

4   **I.   The TAC States a Claim for Equitable Subordination Against Fenway**

5            Fenway argues that the TAC fails to state that it engaged in inequitable conduct, and so

6   cannot be held liable for equitable subordination. Motion at pp. 5-7. This completely misses the

7   point. Plaintiffs do not *need* to establish that Fenway engaged in inequitable conduct directed

8   toward Plaintiffs. As discussed below, Fenway's claims may be subordinated based on the

9   inequitable conduct of the Lehman Entities, even if the TAC does not allege that Fenway itself

10   committed inequitable conduct independent.

11            **A.   Fenway's Liability as Successor**

12            A claim may be equitably subordinated even if it is in the hands of a transferee that did not

13   itself engage in inequitable conduct:

14              a claim in the hands of a transferee is not immunized from subordination even though
                such transferee may have paid value for such claim and not have engaged in any
15              conduct that would otherwise subject the transferee to the remedy of equitable
                subordination.
16

17   *In re Enron Corp.*, 333 B.R. 205, 210-11 (Bankr.S.D.N.Y. 2005) ("*Enron I*"). Fenway does not

18   dispute this point. Instead, Fenway argues that, because it is purportedly a "bona fide, good faith

19   purchaser for value," it does not take a claim subject to defenses against the transferor. Motion at

20   7:20-8:9 (citing *In re Enron Corp.*, 379 B.R. 425 (S.D.N.Y. 2007) ("*Enron II*"). This argument fails

21   for at least three reasons.

22            First, the good faith transferee defense does not apply to the successor-owner of a claim in

23   bankruptcy. The *Enron I* court, after a detailed policy analysis, declined to extend the "good faith"

24   defense available to a subsequent transferee of property under Section 550 of the Bankruptcy Code

25   (dealing with avoided transfers) to transferees of claims under Section 510(c) (dealing with equitable

26   subordination). *Enron I*, 333 B.R. at 233-37. Other courts agree. *Lapis Enterprises, Inc. v. Int'l

27   Blimpie Corp.*, 445 N.Y.S.2d 574, 578 (1981) ("[T]he assignee takes the mortgage subject to the

28   mortgagor's action for fraud. *This is true even where the assignee is a bona fide purchaser for*

MILLER BARONESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

4

*value*.") (emphasis added); *Hammelburger v. Foursome Inn Corp.*, 446 N.Y.S.2d 917, 921 (1981)

("Though he be a bona fide holder, an assignee of a nonnegotiable bond and mortgage takes subject

to any defense that would have prevailed against his assignor.").[2]  Thus, Fenway is invoking an

inapplicable defense.

Second, a transferee's status as a bona fide purchaser, even if relevant here, is typically an

*affirmative defense* on which *Fenway* bears the burden.  As such, Plaintiffs need not allege any facts

regarding Fenway's good faith purchaser status or lack thereof.  The Second Circuit, Ninth Circuit

and numerous other courts agree on this point.  *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*,

155 F.3d 612, 615 (2nd Cir. 1998) ("In establishing the protected status of bona fide purchaser the

burden of proof is on the transferee."); *Natural Resources, Inc. v. Wineberg*, 349 F.2d 685, 688 n. 3

(9th Cir.1965); *Davis v. Elite Mortg. Services, Inc.*, 592 F.Supp.2d 1052, 1056 (N.D.Ill. 2009)

---

[2] *Enron II* is the sole case upon which Fenway relies.  (The unpublished opinion in *In re Enron Corp.*, No. 05-01025, 2007 WL 278-394 (S.D.N.Y., Sept. 24, 2007), was decided by the same judge just weeks after *Enron II*, and so is merely an extension of the same.)  But *Enron II* has been roundly criticized by commentators and academics.  ALI-ABA Joint Review Committee for Article 9 of the UCC Meeting Notes (2009) ("According to the [*Enron II*] court, a claim of a transferee who takes by sale is not subject to equitable subordination or disallowance under the Bankruptcy Code, while a claim that is taken by assignment is subject to these disabilities.  No such distinction appears in the Uniform Commercial Code."); Daniel Schechter, *Transferees of Claims Against Bankrupt Estates Do Not Necessarily Take Subject to Defenses Assertable Against Transferor*, 2007 Commercial Finance Newsletter 68 (September 3, 2007) ("Is there really such a sharp difference between an assignment and a sale?  The case law does not bear out that distinction, and the court never explains the difference."); Crastz, *Can A Claims Purchaser Receive Better Rights (or Worse Rights) Than Its Transferor in a Bankruptcy?*, 29 California Bankruptcy Journal 365, 373 (2007) ("The district court created a new conundrum for the claims trading industry by turning its decision on the sale versus assignment analysis—terms that the financial world has always used interchangeably.").

Even the Weil Gotshal firm, in a published article, criticized *Enron II* as being contrary to New York law.  M. Bienstock, T. Karcher, *District Court Vacates And Remands Bankruptcy Court Rulings On Equitable Subordination And Disallowance Of Claims In Hands Of Transferees*, October 2007, available at http://www.weil.com/news/pubdetail.aspx?pub=8966 ("[W]hile it appears the court's ruling that when claims are assigned they are assigned subject to defenses against the transferor . . . is consistent with applicable statutes and case law, the court's different holding for sales of claims appears inconsistent with applicable law.").  And, indeed, New York courts consistently uphold the principle that a transferee takes subject to any claims or defenses against the transferor.  *American Exp. Travel Related Services Co., Inc. v. SM Zako, Inc.*, 22 Misc.3d 1126(A) (N.Y. Supp. 2009); *Losner v. Cashline, L.P.*, 757 N.Y.S.2d 91, 93-94 (2003); *Trans-Resources, Inc. v. Nausch Hogan and Murray*, 298 A.D.2d 27, 746 N.Y.S.2d 701 (2002); *In re Estate of Pokrass*, 105 A.D.2d 659, 661 481 N.Y.S.2d 861, 864 (1984).

MILLER BARONESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

("Bona fide purchase is a valid affirmative defense for which the defendant bears the burden of proof."); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 507 (N.D.Ill. 1988) ("A plaintiff is not required to plead facts showing that the defendants are *not* bona fide purchasers of the property.") (original emphasis); *Evergreen Marine Corp. v. Division Sales, Inc.*, 2003 WL 1127759, *3 (N.D.Ill., Mar. 12, 2003) ("S & P has not alleged that the DS Entities fail to qualify as bona fide purchasers, but no such allegations are necessary. The right to protection as a bona fide purchaser is regarded as an affirmative defense…") (quotation omitted).  The TAC's inclusion of allegations showing that Fenway was not a bona fide purchaser cannot be deemed a concession that Plaintiffs were *required* as a matter of law to make such allegations.

Third, even assuming, *arguendo*, that there were any requirement to allege that Fenway was not a bona fide purchaser for value, the TAC does so.  Fenway's lack of good faith can be established by showing either actual or constructive knowledge. *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 535-36 (9th Cir. 1990) ("[C]ourts look to what the transferee objectively "knew or should have known" in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint."); *Enron I*, 333 B.R. at 234 (same); *In re Hardway Restaurant, Inc.*, 31 B.R. 322 (Bankr.S.D.N.Y.1983) (party claiming bona-fide purchaser status must show that it acquired property "in good faith without notice and for valuable consideration.") (New York law); *Oakdale Vill. Group v. Fong*, 43 Cal.App. 4th 539, 547, 50 Cal.Rptr.2d 810 (1996) (California law defines bona fide purchaser for value as one who has (1) given value (2) in good faith (3) without actual or constructive notice of another's rights).

Moreover, knowledge may be proven by circumstantial evidence and is generally a question for the trier of fact. *See e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 536 (6th Cir. 2000); *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1120-1121 (C.D. Cal. 2003).

Here, there are more than enough facts from which to infer, at the very least, constructive knowledge.  The TAC alleges that the Lehman Entities induced Plaintiffs to incur millions of dollars in third-party work through their authorizations and/or promises of payment for that work, and then refused to pay for the same when Lehman's own finances faltered.  The TAC further alleges that just

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**
58918.1

weeks before the parent Lehman entity filed for bankruptcy on September 15, 2008, and just days

before the Lehman Entities signed the agreements with Plaintiffs which were to consummate the

restructuring of Plaintiffs' loans on August 25, 2008, LCPI sold those loans to Fenway pursuant to

the August 22, 2008 Repo. Specifically, the TAC alleges: "LCPI and Fenway entered into this

transaction as part of a larger series of transactions designed to inject badly needed liquidity into the

Lehman corporate structure, while making it appear that this liquidity was secured by something

other than the Loans themselves." TAC ¶ 119; *see also id.* ¶ 167 ("[T]hese Lehman lenders were

apparently scrambling to obtain badly needed liquidity from J.P. Morgan (which, on information and

belief, needed to appear to be secured by something other than the Sold Loans themselves—*a*

*maneuver Fenway was more than happy to facilitate.*") (emphasis added).   The timing and

circumstances of the Repo are suspicious, to say the least.  This is sufficient to allege that Fenway

either knew, or at the least should have known, that the transfer of the loans was less than above-

board.[3]

Moreover, Fenway's role as a conduit in a string of virtually simultaneous transactions raises

questions not only as to Fenway's bona fides, but even as to whether it was a purchaser for value.

Although Fenway undoubtedly obtained legal title to the Sold Loans pursuant to the Repo, it is not at

all clear that Fenway was the entity that provided the consideration for those loans.  As alleged in the

TAC, on the same day that Fenway entered into the Repo with LCPI, (1) Fenway put the Sold Loans

up for collateral for a note issued to its affiliate Fenway Funding LLC ("Fenway Funding"); (2)

Fenway Funding put that note up for collateral for commercial paper notes ("CP Notes") issued to

the parent Lehman entity, Lehman Brothers Holdings, Inc. ("LBHI"); and (3) LBHI pledged the CP

Notes to secure obligations owed to JPMorgan. TAC ¶ 166.  The TAC also alleges that this series of

transactions was designed so that the Lehman Entities could "obtain badly needed liquidity from J.P.

---

[3] Fenway argues that Plaintiffs cannot allege its knowledge or intent "on information and belief." Motion at 6 n.2.  But Fenway cites no authority for the proposition that such intent must be pleaded with particularity when alleging lack of good faith, rather than fraud.  Moreover, even where fraud *is* alleged, Fed. R. Civ. P. 9(b) is explicit that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    Morgan." TAC ¶ 167. In short, the TAC raises genuine questions as to whether the money for the

2    Repo actually came from Fenway or from somewhere else.

### B.    Fenway's Liability As Principal

#### 1.    Vicarious Liability for Post-Repo, Pre-Petition Conduct

5    The TAC states a claim against Fenway not only as a *successor* whose claim may be

6    subordinated based on the Lehman Entities' *pre*-Repo inequitable conduct, but also as a *principal*

7    who is vicariously liable based on the Lehman Entities' *post*-Repo inequitable conduct. *In re Adler,*

8    *Coleman Clearing Corp.*, 277 B.R. 520, 566 (Bankr.S.D.N.Y. 2002) (inequitable conduct of

9    creditor's agent attributed to creditor so as to subordinate creditor's claim).

10    The Court recently held that the Lehman Entities were acting as Fenway's agents when they

11    filed the proofs of claims based on the Sold Loans.[4] The Court's ruling aside, Fenway has taken the

12    position that the Lehman Entities are and have been Fenway's authorized agents since the August

13    22, 2008 Repo, and that each of the actions they have undertaken in the Debtors' bankruptcy

14    proceeding have been authorized by Fenway. *See, e.g.,* June 18, 2009 Declaration of Irena

15    Goldstein, ¶ 7 (attached hereto) ("Fenway purchased loans governed by loan agreements under

16    which a Lehman entity serves as agent. Fenway has not terminated such entity's role as agent and

17    fully supports Lehman's efforts in the Debtors' cases in connection with the loans.").[5] Given this,

18    Fenway, as principal, would be vicariously liable for the wrongful conduct of its agents.

19    Here, the TAC alleges that much of the Lehman Entities' inequitable conduct occurred *after*

20    the August 22, 2008 Repo, and thus after title had already transferred to Fenway:

21    •    The Lehman Entities signed the Settlement Agreement on August 25, 2008, without
disclosing the Repo or the fact that they had just sold to Fenway the very obligations they
22    were supposedly about to assume and restructure. TAC ¶¶ 118-119, 161-167.

---

25    [4] Plaintiffs do not concede the correctness of this ruling, and have appealed it to the Ninth
Circuit Bankruptcy Appellate Panel.

26    [5] Fenway cannot complain about Plaintiffs' citation to this declaration, as Fenway itself
quotes it (without attribution) when it states that Fenway "has no 'skin in the game'" with respect to
27    this litigation. *Compare* Goldstein Decl., ¶ 6 *with* Motion at 1:11. Moreover, by citing to evidence
extrinsic to and nowhere referenced in the TAC, Fenway has invited this Court to allow an
28    opportunity for full discovery before ruling on the Motion. *See* Fed. R. Civ. P. 12(d).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

- In September 2008, the Lehman Entities refused to proceed with closing of the parties' restructuring and Settlement Agreement as they were contractually required to. *Id.* ¶¶ 120-126.

- Even after LBHI filed for bankruptcy on September 15, 2008, Lehman's Gilhool was still assuring SunCal and the Debtors that the Lehman Entities would continue to fund the Debtors' respective Projects. Yet the Lehman Entities continued to refuse to provide the promised funding. *Id.* ¶¶ 121-126.

- In or about late October or early November 2008, just as the Debtors were begging for funds to address the Projects' critical needs, Lehman ALI withdrew $3.4 million from two restricted accounts that were to be used for the needs of the Marblehead and Heartland Projects. *Id.* ¶¶ 127-128.

- In November 2008, the Lehman Entities repudiated the Restructuring Agreement and their prior promises of funding. Cook Reply Decl. *Id.* ¶¶ 126, 134.

- When certain of the Debtors began filing for bankruptcy in November 2008, Lehman ALI tried to foreclose on the Projects and avoid its obligations to Debtors' creditors, rushing to improperly record notices of default against five Projects—Century City, Torrance, Palm Springs Village, Oak Knoll and Delta Coves—that were not yet in bankruptcy. *Id.* ¶ 133.

- The same individuals that control Lehman ALI, OVC and Northlake Holdings also control the Lehman Equity Members. In November 2008, they induced the Lehman Equity Members to breach their fiduciary duties and pursue the lenders' interests at the expense of the Debtors and their creditors: they neither funded the Projects nor consented to the Debtors' bankruptcy filings, and so tried to assure foreclosures by the lenders. *Id.* ¶¶ 135-146.

Because Fenway was the principal at the time that these inequitable acts were undertaken by its agents, Fenway's claims may be subordinated on the basis of these acts.

## 2.    Vicarious Liability for Post-Petition Conduct

The above summary only includes the pre-petition inequitable conduct that occurred in the two and a half months between the Repo and the Debtors' November 2008 bankruptcies. But it is well established that equitable subordination can be premised upon *post*-petition inequitable conduct. *See In re 848 Brickell Ltd.*, 243 B.R. 142 (S.D.Fla. 1998) (secured creditor's protracted and abusive litigation tactics, which harmed the estate by causing it to incur about $400,000 in fees, justified equitable subordination); *In re Papercraft Corp.*, 247 B.R. 625 (Bankr.W.D.Pa. 2000); *In re Nutri/System of Florida Associates*, 178 B.R. 645, 658 (E.D.Pa. 1995).

Here, the TAC alleges pages and pages of post-petition inequitable conduct. *See* TAC ¶¶ 147-203. As discussed in Plaintiffs' Opposition to the Lehman Entities' Motion to Dismiss, even if the Lehman Entities were Fenway's agents when they filed the proofs of claims, they still made misrepresentations regarding the true owner of the Sold Loans on the proofs of claims themselves.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

9

1   And because a mere agency interest in property does not make that property part of a debtor's estate

2   under 11 U.S.C. § 541[6], LCPI still improperly invoked its automatic stay with regard to one or more

3   all of the Sold Loans.[7]  The Lehman Entities are alleged to have used their lack of candor to the

4   estates' detriment, by repeatedly and falsely invoking LCPI's (inapplicable) stay to impede these

5   Chapter 11 cases.  If the Lehman Entities were acting as Fenway's agents when they did all this, then

6   Fenway, as the Lehman Entities' principal, would have exposure for the harm they caused.

7        Although the Lehman Entities and Fenway may protest vigorously that they did nothing

8   wrong, this (at best) merely raises a dispute to be resolved through discovery.  It does not provide

9   grounds for granting Fenway's motion to dismiss.

10  **II.    The TAC States a Fraudulent Transfer Claim Against Fenway**

11       The only "new" assertion by Fenway with respect to the fraudulent transfer claim is that the

12  TAC alleges that the transfers were made to Lehman ALI, and does

> not allege, or even attempt to plead, that any of the property or funds purportedly
> transferred (fraudulently) to Lehman ALI were then, in turn, transferred to Fenway,
> much less prove a date on which any such alleged transfers were made or in what
> amount.

16  Mot. at 9:17-20.

17       The fraudulent transfer claims are premised on the fact that many of the Plaintiffs did not

18  receive reasonably equivalent value because they incurred loan obligations even though the

19  corresponding loan proceeds were provided to a related entity, rather than to the debtor itself.  *In re*

20  *Image Worldwide,* 139 F.3d 574, 580-82 (7th Cir.1998) (debtor's guaranty and pledge of assets to

21  secured line of credit in favor of an affiliate entity was a fraudulent transfer); *Smith v. Amer.*

22  *Founders Fin. Corp.*, 365 B.R. 647, 666-667 (S.D.Tex. 2007); *In re Marquis Prods.*, 150 B.R. 487,

23  492 (Bankr.D.Me.1993).  This is undisputedly a viable legal theory.

---

[6]  *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 83 (9th Cir. BAP 1994); *In re Warde Elec. Contracting, Inc.*, 308 B.R. 659, 664 (S.D.N.Y. 2004); *In re Community Associates, Inc.*, 173 B.R. 824, 830 (D.Conn. 1994); *In re Boyer*, 104 B.R. 497, 499 (Bankr.S.D.Fla. 1989).

[7]  Although the 9th Cir. BAP recently ruled that, *to the extent* LCPI had an ownership interest in the loans, Plaintiffs could not sue LCPI for equitable subordination without seeking relief from LCPI's stay, there has been no ruling that LCPI retained an interest in the Sold Loans.  In fact, to the contrary:  the Court held that the Sold Loans were in fact sold to Fenway pursuant to the Repo.

10

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

MILLER BARONESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    Paragraph 63 of the TAC sets forth the obligations incurred by each Plaintiff, including, for

2    each loan, the identity of the original Lehman lender, and the original loan date and amount.

3    Paragraphs 67-71, 280, 295, 307, 319 and 330 allege the precise amount of consideration received

4    by the respective Plaintiffs, which in all cases were either no loan proceeds at all or loan proceeds

5    substantially less than the obligations incurred.

6    The TAC is replete with allegations that seven "Sold Loans" were transferred to Fenway.

7    TAC ¶¶ 10, 39, 119, 159, 161-162, 167, 185, and 226.  Two of these Sold Loans—the SunCal

8    Communities I Loan, and the Marblehead/ Heartland Loan—are the subject of the fraudulent transfer

9    claims.

10    The SunCal Communities I Loan, and the Marblehead/ Heartland Loan, including the liens

11    associated therewith, *are* the "property" transferred to Fenway.  Paragraph 161 of the TAC alleges

12    the date of the transfer to Fenway: the August 22, 2008 Repo date.  Paragraph 161 further states the

13    alleged balance of each of the subject loans, and the identity of the transferor:

| Loan | Purported Lender | Alleged Balance |
|------|------------------|-----------------|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |

Fenway's assertion that the TAC failed to allege any transfers to it is simply wrong.

18    **III.    The TAC States a Preferential Transfer Claim Against Fenway**

19    **A.    Transfers to Fenway May Be Alleged Hypothetically**

20    Count Six alleges that certain preferential transfers were made to Lehman ALI, including the

21    following:

22    • "SunCal Delta Coves made pre-petition payments in the amount of
23    $6,195,440.46 to Lehman ALI (the 'Delta Coves Preferential Transfers')."
       TAC, ¶ 341.

24    • "SunCal Marblehead Heartland Master LLC made pre-petition transfers in the
25    amount of $3,390,280.37 to Lehman ALI ('Marblehead / Heartland Preferential
       Transfers')."  TAC, ¶ 365

26    The TAC further alleges that both of the underlying loans were transferred to Fenway on August 22,

27    2008, pursuant to the Repo:

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

11

| Loan | Purported Lender | Alleged Balance |
|------|------------------|-----------------|
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |

TAC ¶ 161.

Fenway contends that "in what appears to be an attempt to hedge their bets, plaintiffs make the tepid and baseless allegation that 'to the extent that Fenway was a transferee,' it was 'not a good faith transferee' (TAC ¶¶ 289, 328), thereby effectively conceding they don't know." Mot. at 9:28-10:1. What Fenway fails to mention is that just ten days before the TAC was filed, the Court ruled that the Lehman Entities had made misrepresentations on their proofs of claim that concealed the very existence of Fenway as the true owner of the Sold Loans. Since Plaintiffs had only recently learned of Fenway's involvement, and had not had the opportunity for discovery, they were uncertain whether Lehman ALI retained the Delta Coves or the Marblehead / Heartland Preferential Transfers, or whether such funds were transferred to Fenway. (Fenway and the Lehman Entities, of course, would know what really took place between them.) As a result, Plaintiffs have only been able to hypothetically allege that if Fenway is a transferee of these preferential transfers, it is liable thereunder. TAC ¶¶ 350 and 375.

Hypothetical pleading is perfectly permissible. FRCP 8, incorporated via Bankruptcy Rule 7008, expressly authorizes a claim to be stated in the alternative or hypothetically:

> *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim ... *alternatively or hypothetically*, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

FRCP 8(d)(2) (emphasis added). Such allegations are allowed because plaintiffs often will not be able to plead facts with certainty prior to the completion of discovery:

> Alternative and hypothetical pleading generally was not permitted under common law or code practice....Those who drafted Rule 8(e)(2) [now 8(d)(2)] sought to free federal procedure from this insistence on certainty in the pleadings. They realized that in a complex legal environment flexible pleading was essential to a full presentation of all relevant facts and legal theories at trial and the final settlement of disputes on their merits.

Wright & Miller, 5 Fed.Prac.& Proc.Civ. § 1282 (2009).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

1    Numerous courts have upheld such alternative or hypothetical pleading. *Miller v.*

2    *Webber*, 1997 WL 299447, *4 n. 5 (E.D.Pa. 1997) ("Plaintiff's hypothetical 'if-then' allegation

3    regarding [defendant's] knowledge of Mr. Crouche is permissible at this [pleading] juncture."); *In re*

4    *Sunrise Securities Litigation*, 793 F.Supp. 1306, 1312 (E.D.Pa. 1992) ("if-then, or hypothetical,

5    pleadings" are permissible under Rule 8(e)(2)); *General Acquisition, Inc. v. GenCorp Inc.*, 766

6    F.Supp. 1460, 1476-1477 (S.D.Ohio 1991) ("Simply because it is phrased as an "if-then" allegation

7    does not warrant dismissal."); *Taylerson v. American Airlines, Inc.*, 183 F.Supp. 882, 884 (S.D.N.Y.

8    1960); *Charles Rubenstein, Inc. v. Columbia Pictures Corp.*, 14 F.R.D. 401, 403 (D.Minn. 1953).

9    Even under the standard set forth in the recent Supreme Court decisions of *Ashcroft v. Iqbal*,

10    129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a plaintiff

11    may continue to plead a claim in the alternative or hypothetically under Rule 8(d). *See e.g., New*

12    *Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, 2009 WL 1515696, *4 (S.D.N.Y. Jun. 1, 2009)

13    (proposed complaint was sufficient where it made alternative allegations that the subject contracts

14    were either between plaintiff and defendant directly, or alternatively, between plaintiff and defendant

15    *through defendant's agent*); *Lexicon, Inc. v. Ace American Ins.*, 2009 WL 5207538, *4 (E.D.Ark.,

16    Dec. 31, 2009); *Smith v. Computer Task Group*, 568 F.Supp.2d 603, 612 (M.D.N.C. 2008).

17    In short, Fenway may not like the transfer allegations in the TAC, but it has not identified

18    any flaw that would warrant dismissal.

19    **B.    The TAC Adequately Pleads Fenway's Lack of Good Faith**

20    Since the allegation that Fenway was a transferee may be stated hypothetically, the allegation

21    that, "to the extent" it was a transferee, it was "not a good faith transferee," is also sufficient.

22    Fenway asserts that the allegation that Fenway is "not a good faith transferee" is a legal conclusion

23    devoid of further factual enhancements. Mot. at 10:22-24. However, Fenway ignores numerous

24    factual allegations—all of which are incorporated by reference (see TAC ¶ 340)—that support the

25    conclusion that Fenway is "not a good faith transferee," as discussed in Section I.A.

26    **C.    The TAC Need Not Plead the Preferential Transfers with Particularity**

27    Like the Lehman Entities, Fenway cites to two cases holding that a preference complaint must

28    allege the precise date and amount of each transfer, *In re Valley Media,* 288 B.R. 189, 192 (Bankr. D.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

13

1   Del. 2003) and *In re Lomas Fin. Corp.*, 1999 WL 33742299, *1 (Bankr.D.Del. 1999). Fenway

2   likewise fails to acknowledge the overwhelming weight of authority to the contrary. *See In re NM*

3   *Holdings Co., LLC*, 407 B.R. 232 (Bankr. E.D.Mich. 2009); *Gold v. Nova Industries,* 376 B.R. 194,

4   208 (Bankr. E.D.Mich.2007); *In re Ice Cream Liquidation,* 319 B.R. 324, 340-41 (Bankr. D.Conn.

5   2005); *In re Webvan Group,* 2004 WL 483580, *2 (Bankr.D.Del. 2004); *In re The IT Group*, 313 B.R.

6   370, 373 (Bankr.D.Del. 2004); *In re TW, Inc.*, 2005 WL 2296902, *3 (Bankr.D.Del. 2005).

7      Here, Count Six alleges that Delta Coves made $6,195,440.46 in preferential payments; and

8   that $3,390,280.37 in preferential payments were made on behalf of Marblehead and Heartland, all

9   to Lehman ALI and all within one year preceding the respective petition dates. TAC ¶¶ 341, 346,

10   365, 370. This is more than sufficient to state a "plausible" claim for preferential transfer under

11   *Twombly* and *Iqbal*.

12   **D.**    **Fenway, As Subsequent Transferee, Need Not Be An Insider**

13      Fenway asserts that the preference claim must be dismissed against it because it is not an

14   insider of Plaintiffs, and the TAC does not allege that the preferential transfers were made within 90

15   days of the petition date. Mot. at 11:15-10 (citing 11 U.S.C. § 550(c)).

16      Fenway is incorrect. The Marblehead/Heartland Preferential Transfers are expressly alleged

17   to have been made "in or about late October or early November 2008" (TAC ¶ 128), and so are

18   alleged to have been made within 90 days of Plaintiffs' November 2008 petition dates. TAC ¶ 130.

19   To this extent, Fenway's non-insider status is irrelevant.

20      Even with regard to any transfers made outside the 90-day window, Fenway may still be held

21   liable. Fenway invokes the 90-day limit under Section 550(c), but overlooks that that limit was

22   intended to restrict recovery from non-insiders of transfers that were made to a non-insider initial

23   transferee albeit *for the benefit* of an insider. Here, however, the transfers were initially made

24   directly *to* an insider—Lehman ALI. *See* TAC ¶¶ 341, 365 (payments made "to Lehman ALI"); *id.*

25   ¶¶ 345, 369 (alleging Lehman ALI's insider status). Fenway is alleged to be merely an "immediate

26

27

28

14

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   or mediate transferee of such initial transferee" under Section 550(a)(2).[8] TAC ¶¶ 350, 375. This is

2   simply not the situation Section 550(c) was designed to address.

3        Section 550(c) was enacted as part of the Bankruptcy Reform Act of 1994. The legislative

4   history reflects that that subsection—and later Section 547(i)[9]—was added specifically to override

5   the "trilateral" or "*Deprizio*" preference theory, so named for *In re V.N. Deprizio Constr. Co.*, 874

6   F.2d 1186 (7th Cir.1989), which dealt with the common situation of principals of a company

7   guaranteeing the company's debts. *See In re Conner Home Sales Corp.*, 190 B.R. 255, 259

8   (E.D.N.C. 1995) ("Congress amended § 550 of the Bankruptcy Code to specifically preclude

9   recovery based on the *Deprizio* line of cases."). Under *Deprizio*, because the principal-guarantor is

10  an insider of the borrower, any payments made by the borrower to the non-insider lender within a

11  year of the borrower's petition date could be deemed "for the benefit of" the insider, because they

12  reduced the guarantor-insider's exposure. *Deprizio*, 874 F.2d at 1190. Congress noted that

13  "*Deprizio* and cases similar to it 'had the effect of discouraging lenders from obtaining loan

14  guarantees, lest transfers to the lender be vulnerable to recapture by reason of the debtor's insider

15  relationship with the loan guarantor.'" *ABC-NACO, Inc. v. Bank of America N.A.*, 402 B.R. 816,

16  821 (N.D.Ill. 2009) (citing H.R.Rep. No. 109-31 at 143-44).

17       In enacting Section 550(c) and Section 547(i) which followed, Congress was concerned with

18  avoidance of transfers outside the 90-day window to non-insider banks that benefitted insider

19  guarantors of the debtor's debts:

---

20

21  [8] Section 550(a) provides:

22       (a) Except as otherwise provided in this section, to the extent that a transfer is avoided
     under section …547… , the trustee may recover, for the benefit of the estate, the property
     transferred, or, if the court so orders, the value of such property, from--

23       (1) the initial transferee of such transfer or the entity for whose benefit such transfer
     was made; or

24       (2) *any immediate or mediate transferee of such initial transferee.*

25  11 U.S.C.A. § 550(a) (emphasis added).

26       [9] 11 U.S.C. 547(i) provides:

27  If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year
     before the date of the filing of the petition, by the debtor to an entity that is not an insider

28  for the benefit of a creditor that is an insider, such transfer shall be considered to be
     avoided under this section only with respect to the creditor that is an insider.

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

Section 202 of the Bankruptcy Reform Act of 1994 addressed the *DePrizio* problem by inserting a new section 550(c) into the Bankruptcy Code to prevent avoidance or recovery from a noninsider creditor during the 90-day to one-year period even though the transfer *to the noninsider benefitted an insider creditor*. The 1994 amendments, however, failed to make a corresponding amendment to section 547, which deals with the avoidance of preferential transfers. As a result, a trustee could still utilize section 547 to avoid a preferential lien given to a noninsider bank, more than 90 days but less than one year before bankruptcy, if *the transfer benefitted an insider guarantor of the debtor's debt.* Accordingly, section 1213 of the Act makes a perfecting amendment to section 547[(i)] to provide that if the trustee avoids a transfer given by the debtor *to a noninsider for the benefit of an insider creditor* between 90 days and one year before filing, that avoidance is valid only with respect to the insider creditor.

H.R.Rep. No. 109-31, at 144 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 202-03 (quoted in *In re ABC-Naco, Inc.*, 331 B.R. 773, 778 (Bankr.N.D.Ill. 2005)).

Accordingly, the limitation set forth in Sections 547(i) and 550(c) are applicable to a preferential transfer where the *initial* transferee was a non-insider, but that transfer was made "for the benefit of a creditor that at the time of such transfer was an insider." 11 U.S.C. § 550(c).[10] Here, by contrast, there is no guarantor relationship between or among Fenway, Lehman ALI, or Plaintiffs. Fenway, the non-insider, is not alleged to have received transfers directly from Plaintiffs "for the benefit of" the insider, Lehman ALI.[11] Rather, the transfers were made directly to the insider, which subsequently passed them off to the non-insider. Section 550(c) was not meant for, and does not apply to, this situation.

## IV.  The TAC States a Claim for Section 506(d) Transfer Against Fenway

### A.  The TAC Alleges the Count Seven Liens Were Transferred to Fenway

Count Seven seeks to void certain liens securing the SunCal Communities I Loan, which LCPI sold to Fenway. TAC ¶¶ 378-381. Paragraph 380 specifies the liens Plaintiffs seek to void:

---

[10] Bolstering this conclusion is that fact that Section 550(b) expressly deals with limitations on recovery of preferences from immediate or mediate transferees under Section 550(a)(2). Section 550(c), by contrast, is silent on the issue, and the better reading is that it applies to non-insider initial transferees.

Moreover, from a policy perspective, if Fenway's reading of the statute were adopted, insider initial transferees who received preferences outside the 90-day window but within one year of the petition date could simply "park" the preferences with an affiliated non-insider.

[11] If any payments were made directly to Fenway, they necessarily would have been within 90 days of the petition date: the Repo occurred on August 22, 2008, and the last of the Plaintiffs' petition dates was November 19, 2009—eighty-nine days later. TAC ¶¶ 119, 130, 137.

OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

58918.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

"LCPI's liens (1) against SunCal I's allowed equity interests in SunCal Acton, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (2) against the SunCal III estate". TAC ¶ 380.

Fenway argues that the "complaint does not allege that the Claim Seven Liens were in fact transferred to Fenway." Mot. at 12:14-15. But Paragraph 161 explicitly alleges that the Sold Loans were transferred to Fenway:

> 161. ... On August 22, 2008, ... the parties entered into a repurchase transaction pursuant to which Fenway purchased all of LCPI's right, title and interest in the following loans (together, the "Sold Loans"):

| Loan | Purported Lender | Alleged Balance |
|------|------------------|-----------------|
| SunCal Communities I Loan | LCPI | $343,221,391... |

TAC ¶ 161. The TAC further alleges that LCPI sold "the Loans *and associated liens*" to Fenway. TAC ¶ 115 (emphasis added); *see also id.* ¶ 119 ("LCPI immediately turned around and sold all of its interest in those Loans *and liens* to a third party, Fenway...'") (emphasis added). This is more than sufficient.

Count Seven also alleges that the value of each of these liens is "zero." TAC ¶¶ 378 & 379. Accordingly, Count Seven adequately pleads that these liens securing the SunCal Communities I Loan, transferred to Fenway, are void under Section 506(d).

**B.      Lien Stripping is Permissible in Chapter 11 Cases**

Fenway argues that lien stripping is impermissible, citing *Dewsnup v. Timm*, 502 U.S. 410 (1992) and *In re 1441 Veteran Street Co.*, 144 F.3d 1288 (9th Cir. 1998). However, "[t]he great majority of post-*Dewsnup* decisions on the issue of 'lien stripping' have limited the *Dewsnup* holding to the chapter 7 context and have allowed the practice in cases under chapter 11, 12, and 13." Collier on Bankruptcy-15th Ed. Rev. ¶ 506.06 (2009). Indeed, the Ninth Circuit and lower courts therein have allowed lien-stripping in Chapter 11 cases. *In re Weinstein*, 227 B.R. 284, 292 (9th Cir.BAP 1998) ("We ... reject the argument that lien stripping under § 506(d) is not permitted in Chapter 11."); *In re Dever*, 164 B.R. 132, 145 (Bankr.C.D.Cal. 1994); *see also In re Zimmer*, 313 F.3d 1220, 1227 (9th Cir. 2002) (allowing lien stripping in Chapter 13 cases); *Lomas Mortgage U.S.A. v. Wiese*, 980 F.2d 1279, 1282 (9th Cir.1992), *vacated and remanded on other grounds,* 508

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**
58918.1

1  U.S. 958 (1993) ("Nowhere does *Dewsnup* suggest that its discussion of 'lien stripping' has any

2  impact on the bifurcation of secured claims from unsecured claims for the purposes of Chapter 13.").

3        As discussed in detail in the opposition to the Lehman Entities' motion, Fenway's citation to

4  *In re 1441 Veteran Street Co.*, 144 F.3d 1288 (9th Cir. 1998) is misleading, as that case merely held

5  that a pre-confirmation valuation will no longer be binding *if the reorganization fails*, but says

6  nothing about the validity of alleging a Section 506(d) claim pre-confirmation. *Id.* at 1290-92; *see In*

7  *re Akram*, 259 B.R. 371, 373 (Bankr.C.D.Cal. 2001) (recognizing limited scope of *Veteran* holding).

8      **C.**    **Section 506(d) Does Not Require the Disallowance of the Claim**

9        Fenway also asserts without authority that "Section 506(d) applies only when a claim has

10  been disallowed." Mot. at 12:22-23. But nothing in Section 506(d) requires a claim to be allowed or

11  disallowed prior to its invocation. Section 506(d) provides that "To the extent that a lien secures a

12  *claim* against the debtor that is not an allowed secured claim, such lien is void." Here, the subject

13  claims are not "allowed secured claims" *inter alia* because the value of the Lehman Entities' interest

14  in the collateral is zero. TAC ¶¶ 378-79.

15        In fact, in 1984, Congress expressly deleted the provision in Section 506(d) which formerly

16  required the court to determine the allowability of the claim prior to lien avoidance. *In re*

17  *Richardson*, 121 B.R. 546, 549 (Bankr.S.D.Ill. 1990); *Gaglia v. First Federal Sav. & Loan Ass'n*,

18  889 F.2d 1304, 1309 (3rd Cir. 1989) *abrogated on other grounds, Dewsnup*, 502 U.S. 410 (1992)

19  ("[Lender] argues that the claim that a lien secures must be disallowed before it can be avoided.

20  Whatever validity this position may have had under the earlier version of § 506(d), it is untenable

21  after the 1984 amendments.").

22        The allowance of a claim, and the valuation and stripping of the lien, are distinct, and that

23  valuation of an alleged secured claim is not dependent upon its allowance or disallowance. *In re*

24  *Jones*, 152 B.R. 155, 161 (Bankr. E.D.Mich. 1993) ("[T]he value of collateral securing a claim has

25  no bearing on the allowability of the claim itself."); *In re Pourtless*, 93 B.R. 23, 25

26  (Bankr.W.D.N.Y.1988) ("What was involved in this instance ... was not the allowance, validity, or

27  amount of Commonwealth's claim, but a determination of the value of its security. That

28  determination is governed by section 506 of the Code.")

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

1    Indeed, it would make no sense to require a claim to be disallowed as a condition to the

2    valuation of a claim under Section 506(d). If the claim is disallowed, then there would be no

3    purpose in seeking a valuation thereof. Fenway is asserting a proposition of law that was

4    legislatively overruled 25 years ago, and has no relevance here.

5    **V.    Count Eight States a Claim under Section 502(d) Transfer Against Fenway**

6        Fenway alleges that in Count Eight, "plaintiffs make no allegation specific to Fenway

7    whatsoever." Mot. at 12:25-26. Fenway neglects that in paragraph 386, "Plaintiffs repeat and

8    reallege each and every foregoing and subsequent allegation contained in the Complaint..."

9        To allege a claim under section 502(d), the plaintiff must allege that Fenway is an entity

10   "from which property is recoverable under section ... 550... or that is a transferee of a transfer

11   avoidable under section ... 544, ... 547, [or] 548..." Here, Count Five states claims under 11 U.S.C.

12   §§ 544(b) and 548 against Fenway. TAC, ¶¶ 276-290, and 327-339. Count Six states claims under

13   11 U.S.C. §§ 547 and 550 against Fenway. TAC, ¶¶ 341-352, and 365-376. Further, paragraph 388

14   alleges that Fenway has "not paid the amount, or turned over any such property for which [Fenway

15   is] liable..." Lastly, TAC alleges that Fenway is the holder of a claim. Paragraph 161 alleges that

16   the Sold Loans were transferred to Fenway. Accordingly, the TAC alleges that Fenway is the

17   "current owner" with respect to the claims arising from the Sold Loans. TAC, ¶ 226.

18       Thus, the TAC adequately pleads a cause of action under Section 502(d) against Fenway.

19                                    **CONCLUSION**

20       For the foregoing reasons, Plaintiffs respectfully request that Fenway's Motion be dismissed

21   in its entirety.

22

23   DATED: January 28, 2010          MILLER BARONDESS, LLP

24

25                          By _____
                               Louis R. Miller
26                             Attorneys for Plaintiffs

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**OPPOSITION TO FENWAY MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

58918.1

| In re:<br><br>PALMDALE HILLS PROPERTY, LLC;<br><br>Debtor(s). | CHAPTER  11<br>CASE NUMBER 8:08-BK-17206-ES<br><br>ADVERSARY CASE NUMBER 8:09-AP-01005-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1999 Avenue of the Stars, Suite 1000, Los Angeles CA 90067

A true and correct copy of the foregoing document(s) described **PLAINTIFFS' OPPOSITION TO FENWAY CAPITAL, LLC'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 28, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

&boxtimes; Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **January 28, 2010** I caused the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding to be served by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

&boxtimes; Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 28, 2010** I caused the following person(s) and/or entity(ies) to be served by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

&boxtimes; Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 28, 2010 | Selia Acevedo | s/Selia Acevedo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br><br>PALMDALE HILLS PROPERTY, LLC; | Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-BK-17206-ES<br><br>ADVERSARY CASE NUMBER 8:09-AP-01005-ES |
|---|---|---|

## SERVICE LISTS

### I.   Served by NEF

- Selia M Acevedo
  sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel
  @millerbarondess.com
- Joseph A Eisenberg     jae@jmbm.com
- Lei Lei Wang Ekvall
  lekvall@wgllp.com
- Alan J Friedman     afriedman@irell.com
- Christian J Gascou
  cgascou@gascouhopkins.com
- Kelly C Griffith
  bkemail@harrisbeach.com
- Jonathan M Hoff
  jonathan.hoff@cwt.com
- Christopher W Keegan
  ckeegan@kirkland.com,
  emilee@kirkland.com;alevin@kirkland.
  com;tshafroth@kirkland.com
- Kerri A Lyman     klyman@irell.com

- Hutchison B Meltzer
  hmeltzer@wgllp.com
- James M Miller
  jmiller@millerbarondess.com
- Henry H Oh     henry.oh@dlapiper.com,
  bambi.clark@dlapiper.com
- Sean A Okeefe
  sokeefe@okeefelc.com
- John E Schreiber     jschreiber@dl.com
- Steven M Speier
  Sspeier@Squarmilner.com,
  ca85@ecfcbis.com
- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov
- Christopher T Williams
  ctwilliams@venable.com,
  jcontreras@venable.com
- Dean A Ziehl     dziehl@pszjlaw.com,
  dziehl@pszjlaw.com

### II.   Served By U.S. Mail

n/a

### III.   Served by Personal Delivery, Facsimile Transmission or Email

BY PERSONAL DELIVERY (ATTORNEY SERVICE)

Courtesy Copy
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

BY EMAIL

Lehman Ali, Inc., Lehman Commercial Paper, Inc.,
OVC Holdings, Northlake Holdings, LV Pacific
Point
Weil Gostshal & Manges LLP
     edward.soto@weil.com
     elisa.lemmer@weil.com

shai.waisman@weil.com
allen.blaustein@weil.com
lauren.zerbinopoulos@weil.com

Pachulski Stang Ziehl & Jones LLP
     rpachulski@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                           **F 9013-3.1**

| In re:                               | CHAPTER 11 |
|                                      | CASE NUMBER 8:08-BK-17206-ES |
| PALMDALE HILLS PROPERTY, LLC;        | |
|                              Debtor(s). | ADVERSARY CASE NUMBER 8:09-AP-01005-ES |

dziehl@pszjlaw.com

Fenway Capital LLC
Dewey & LeBoeuf LLP
   rreinthaler@DeweyLeBoeuf.com
   clevy@DeweyLeBoeuf.com
   jschreiber@dl.com

Danske Bank A/S, London Branch
Venable LLP
   ccallari@venable.com
   bwhitwell@Venable.com
   ctwilliams@venable.com

Lehman Re Ltd
Cadwalader, Wickersham & Taft LLP
   jonathan.hoff@cwt.com
   liz.butler@cwt.com

DLA Piper

Hutchinson B. Meltzer
   hmeltzer@wgllp.com

betty.shumener@dlapiper.com

LB/L-Duc III Master LLP
Joseph A. Eisenberg
   jae@jmbm.com

Counsel for Chapter 11 Trustee Steven M. Speier
The Lobel Firm, LLP
   wlobel@thelobelfirm.com

General Insolvency Counsel for
Jointly Administered Debtors in Possession
Winthrop Couchot, P.C.
   pcouchot@winthropcouchot.com
   plianides@winthropcouchot.com
   sokeefe@winthropcouchot.com

John Sieger
   john.sieger@kattenlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 9013-3.1**