John E. Schreiber, SBN 261558
jschreiber@dl.com
DEWEY & LEBOEUF LLP
333 South Grand Street
Suite 2600
Los Angeles, California 90071
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

Richard W. Reinthaler (Admitted Pro Hac Vice)
rreinthaler@dl.com
Corinne D. Levy (Admitted Pro Hac Vice)
clevy@dl.com
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

ATTORNEYS FOR DEFENDANT
FENWAY CAPITAL, LLC

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, LLC,<br>AND ITS RELATED DEBTORS,<br>    Jointly Administered Debtors and<br>    Debtors-in-Possession<br><br>Affects:<br>☒ All Debtors<br>☐ Palmdale Hills Property, LLC<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows, LLC<br>☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers, LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br><br>☐ SunCal Communities III, LLC<br>☐ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF, LLC<br>☐ LB-L-SunCal Oak Valley, LLC | **CASE NO. 8:08-bk-17206-ES**<br>Jointly Administered with Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17224-ES;<br>8:08-bk-17225-ES; 8:08-bk-17227-ES<br>8:08-bk-17230-ES; 8:08-bk-17231-ES<br>8:08-bk-17236-ES; 8:08-bk-17240-ES<br>8:08-bk-17242-ES; 8:08-bk-17245-ES<br>8:08-bk-17246-ES; 8:08-bk-17548-ES<br>8:08-bk-17549-ES; 8:08-bk-17404-ES<br>8:08-bk-17407-ES; 8:08-bk-17408-ES;<br>8:08-bk-17409-ES; 8:08-bk-17458-ES;<br>8:08-bk-17465-ES; 8:08-bk-17470-ES;<br>8:08-bk-17472-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17588-ES;<br><br>**Adversary No. 8:09-ap-01005-ES**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE <u>THIRD AMENDED COMPLAINT</u>** |

1  ☐ SunCal Heartland, LLC
   ☐ LB-L-SunCal Northlake, LLC
2  ☐ SunCal Marblehead, LLC
   ☐ SunCal Century City, LLC
3  ☐ SunCal PSV, LLC
   ☐ Delta Coves Venture, LLC
4  ☐ SunCal Torrance, LLC
   ☐ SunCal Oak Knoll, LLC
5
   **ADVERSARY PROCEEDING**
6
   **Debtor-in-Possession Plaintiffs**:
7  PALMDALE HILLS PROPERTY, LLC,
   a Delaware limited liability company;
8  SUNCAL BEAUMONT HEIGHTS,
   LLC, a Delaware limited liability
9  company; SCC/PALMDALE, LLC, a
   Delaware limited liability company;
10 JOHANNSON RANCH, LLC, a
   Delaware limited liability company;
11 SUNCAL SUMMIT VALLEY, LLC, a
   Delaware limited liability company;
12 SUNCAL EMERALD MEADOWS,
   LLC, a Delaware limited liability
13 company; SUNCAL BICKFORD
   RANCH, LLC, a Delaware limited
14 liability company; ACTON ESTATES,
   LLC, a Delaware limited liability
15 company; SEVEN BROTHERS, LLC, a
   Delaware limited liability company; SJD
16 DEVELOPMENT CORP., a Delaware
   corporation; KIRBY ESTATES, LLC, a
17 Delaware limited liability company;
   NORTH ORANGE DEL RIO LAND,
18 LLC, a Delaware limited liability
   company; TESORO SF, LLC, a
19 Delaware limited liability company; SCC
   COMMUNITIES, LLC, a Delaware
20 limited liability company; SUNCAL
   COMMUNITIES I, LLC, a Delaware
21 limited liability company; SUNCAL
   COMMUNITIES III, LLC, a Delaware
22 limited liability company;

23 **Trustee Plaintiff:**
   STEVEN SPEIER, Chapter 11 Trustee,
24 on behalf of LB-L-SUNCAL OAK
   VALLEY, LLC, a Delaware limited
25 liability company; SUNCAL
   HEARTLAND, LLC, a Delaware limited
26 liability company; LB-L-SUNCAL
   NORTHLAKE, LLC, a Delaware limited
27 liability company; SUNCAL
   MARBLEHEAD, LLC, a Delaware
28 limited liability company; SUNCAL

1 | CENTURY CITY, LLC, a Delaware
limited liability company; SUNCAL
2 | PSV, LLC, a Delaware limited liability
company; DELTA COVES VENTURE,
3 | LLC, a Delaware limited liability
company; SUNCAL TORRANCE, LLC,
4 | a Delaware limited liability company;
and SUNCAL OAK KNOLL, LLC, a
5 | Delaware limited liability company,

6 |          Plaintiffs,

7 | v.

8 | LEHMAN ALI, INC., a Delaware
corporation; LEHMAN COMMERCIAL
9 | PAPER, INC., a Delaware corporation;
OVC HOLDINGS, LLC, a Delaware
10 | limited company; NORTHLAKE
HOLDINGS, LLC, a Delaware limited
11 | liability company; LV PACIFIC POINT,
LLC, a Delaware limited liability
12 | company; LEHMAN RE, LTD., a
Bermuda corporation; FENWAY
13 | CAPITAL, LLC, a Delaware limited
liability company; DANSKE BANK
14 | A/S, LONDON BRANCH, a United
Kingdom corporation,

15 |

16 |          Defendants.

1

## TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ................................................................................ ii

3

4
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION TO DISMISS THE THIRD AMENDED ADVERSARY COMPLAINT ..................... 1

5
PRELIMINARY STATEMENT ............................................................................ 1

6
ARGUMENT .................................................................................................... 2

7
      I.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR EQUITABLE

8
            SUBORDINATION ................................................................................ 2

9
           A.    Fenway's Claim is Not Subject to Equitable Subordination ..................... 3

10
                1.    Fenway is Not Tainted By Lehman's Alleged Bad Acts ............... 3

11
                2.    Plaintiffs Fail to Plead Facts Sufficient to Demonstrate that
                     Fenway Acted in Bad Faith and With Actual Knowledge ............... 5

12
                3.    Affirmative Defenses May Be Considered at the Pleadings

13
                     Stage ........................................................................................ 7

14
           B.    Fenway Is Not Liable As Principal ............................................. 8

15
     II.    PLAINTIFFS' FRAUDULENT TRANSFER CLAIM MUST BE
            DISMISSED ...................................................................................... 10

16
     III.   PLAINTIFFS' CLAIM TO AVOID AND RECOVER PREFERENTIAL

17
            TRANSFERS MUST BE DISMISSED .................................................. 12

18
     IV.   PLAINTIFFS' CLAIMS TO VOID LIENS AND DISALLOW CLAIMS
            AND LIENS MUST BE DISMISSED .................................................. 14

19
CONCLUSION ................................................................................................ 16

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ALA Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994) ............................................... 7

*In re AVI, Inc.*, 389 B.R. 721 (9th Cir. B.A.P. 2008) ............................................... 14

*In re Adler, Coleman Clearing Corp.*, 277 B.R. 520 (Bankr. S.D.N.Y. 2002) ............ 8, 9

*In re Bressman*, 327 F.3d 229 (3d Cir. 2003) ...................................................... 11

*Centro Medico Del Turabo v. Carmen Feliciano De Melecio*, 406 F.3d 1 (1st Cir. 2005) ............ 7

*In re Daisy Systems Corp.*, No. C-92-1845, 1993 WL 491309 (N.D. Cal. Feb. 3, 1993) .......... 10

*In re Enron Corp.*, 333 B.R. 205 (Bankr. S.D.N.Y. 2005) ....................................... 3, 4

*In re Enron Corp.*, 379 B.R. 427 (Bankr. S.D.N.Y. 2007) .................................. 3, 4, 5, 6

*In re Fedders N. America, Inc.*, 405 B.R. 52 (Bankr. D. Del. 2009) ............................ 6

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ........................................... 8

*Haley v. Corcoran*, No. WDQ-09-1338, 2009 U.S.Dist. LEXIS 91949 (D. Md. Oct. 2, 2009) ............ 7

*K&S P'ship v. Continental Bank, N.A.*, 952 F.2d 971 (8th Cir. 1991) ........................... 6

*Maribusan v. J.E. Tilton*, No. C 06-6632 WHA (PR), 2007 U.S.Dist. LEXIS 66039 (N.D. Cal. Aug. 28, 2007) ............ 7

*In re Palmdale Hills Property*, No. SA 08-17206-ES (9th Cir. B.A.P. Dec. 15, 2008) ............ 9

*In re SHC, Inc.*, 329 B.R. 438 (Bankr. D. Del. 2005) .............................................. 6

## STATE CASES

*Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580 (1981) ................................. 3, 5

*Lapis Enterprises, Inc. v. International Blimpie Corp.*, 445 N.Y.S.2d 574 (App. Div. 2d Dep't 1981) ............ 3, 5

## DOCKETED CASES

*Glonti v. Stevenson*, No. 08 cv 8960, 2009 WL 311293 (S.D.N.Y. Feb. 6, 2009) ............ 6

## FEDERAL STATUTES

11 U.S.C. § 550 ................................................................................................. 13, 14

**MISCELLANEOUS**

RICHARD I. AARON, 1 BANKRUPTCY LAW FUNDAMENTALS § 10:35 (2009) ................................ 14

1

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF MOTION TO DISMISS THE THIRD AMENDED ADVERSARY COMPLAINT**

2

3      Defendant Fenway Capital, LLC ("Fenway") hereby respectfully submits this reply

4   memorandum of points and authorities in support of its Motion to Dismiss the Third Amended

5   Adversary Complaint (the "complaint" or "TAC").

6                        **PRELIMINARY STATEMENT**

7      When all is said and done, Fenway is an inconsequential party in this complex

8   litigation:  It has no real economic interest in the outcome of this litigation or the underlying

9   Loans and is not alleged to have engaged in any inequitable conduct with respect to the debtors in

10   its own right.  Instead, the conduct that the debtors complain about was Fenway's entry into an

11   arms'-length repurchase transaction (the "Repo") with the Lehman Entities, pursuant to which it

12   purchased interests in certain term loans made to certain of the SunCal debtors (the "Sold

13   Loans"), as part of a commercial paper program – conduct, which at the end of the day, had *no*

14   impact on the debtor's estate.

15      Because plaintiffs are unable to point to a single inequitable act committed by

16   Fenway, they try to create the impression that Fenway's business is nefarious and/or that its entry

17   into the Repo transaction was somehow sinister.  In actuality, there is nothing off-color about

18   Fenway's business which is part of a valuable asset-backed commercial paper industry ("ABCP")

19   sized at approximately $650 billion at the time of the Repo transaction.  ABCP programs such as

20   Fenway issue commercial paper and use the proceeds thereof to purchase interests in its clients'

21   assets (such as collateralized loans), and that is precisely what was done here.

22      Nor, contrary to plaintiffs' assertions, was there anything "suspicious" about the

23   "timing" or "circumstances" of the Repo, and plaintiffs' suggestion that the Repo was somehow

24   designed to "launder" Lehman's toxic assets is preposterous.  The fact that Lehman entered into

25   the Repo when it was "badly" in need of liquidity is not surprising – indeed, at the time the Repo

26   was entered into, Lehman along with several other financial institutions were actively seeking

27   liquidity from ABCP conduits like Fenway.  There is no factual allegation (nor could there be)

28   that, at the time Fenway entered into the Repo, it knew anything about Lehman's then-ongoing

1    negotiations with SunCal, Lehman's arrangement with J.P. Morgan or the fact that Lehman

2    would file for bankruptcy the following month. There was, thus, nothing unusual about the Repo

3    or Fenway's agreement to enter into it when and how it did.

4             Plaintiffs also contend in their response to Fenway's motion to dismiss the TAC

5    that Fenway is liable for the Lehman Entities' alleged misdeeds on the grounds that this Court

6    previously held that certain of the Lehman Entities were acting as Fenway's agent when it filed

7    proofs of claim relating to the Sold Loans. The TAC, however, does not allege that the Lehman

8    Entities were acting as Fenway's agent when taking actions with respect to SunCal. (Indeed, as

9    this Court is well aware, the debtors strenuously argued that the Lehman Entities were <u>not</u>

10    Fenway's agents and are appealing this Court's decision.) The debtors cannot amend the TAC

11    through a response to a motion to dismiss and, thus, their arguments concerning Fenway's

12    liability as principal for actions taken by the Lehman Entities as agent should be ignored in their

13    entirety. Finally, the TAC fails to adequately set forth even the bare minimum grounds for

14    recovering transfers allegedly made to Fenway as either preferences or fraudulent conveyances,

15    or to avoid the liens securing the Sold Loans.

16             For these reasons and as set forth below, this Court should dismiss the TAC.

17    **ARGUMENT**

18    **I.    PLAINTIFFS HAVE FAILED TO STATE A**

       **CLAIM FOR EQUITABLE SUBORDINATION**

19

20             In its opening brief, Fenway established that (i) plaintiffs had failed to allege any

21    facts demonstrating that Fenway engaged in any misconduct as required to state a claim for

22    equitable subordination (let alone the "gross and egregious" misconduct required in the case of a

23    non-fiduciary, non-insider such as Fenway), (ii) to the extent plaintiffs were purporting to assert

24    an equitable subordination claim against Fenway based on the alleged misconduct of Lehman,

25    they had failed to adequately plead any such claim against Lehman and, thus, *a priori* against

26    Fenway as successor, and (iii) in any event, even if plaintiffs had pled a viable claim against

27    Lehman, Fenway, as purchaser of the Sold Loans, did not take claims subject to any defenses

28    2

1    plaintiffs may have against Lehman.

2          In response, plaintiffs essentially concede that Fenway itself did not engage in any

3    inequitable conduct.  (Plaintiffs' Opposition to Fenway's Motion to Dismiss the TAC ("Opp.") at

4    4 ("Fenway's claims may be subordinated based on the inequitable conduct of the Lehman

5    Entities, even if the TAC does not allege that Fenway itself committed inequitable conduct

6    independent [sic]").)    Nevertheless, they continue to argue that Fenway's claims may be

7    subordinated based solely on Lehman's alleged inequitable conduct under theories of successor

8    liability and/or vicarious liability arising from Fenway and Lehman's agency relationship.

9    Plaintiffs are wrong on both counts.

10    **A.    Fenway's Claim Is Not Subject To Equitable Subordination**

11          **1.    Fenway Is Not Tainted By Lehman's Alleged Bad Acts**

12          Fenway purchased the Sold Loans from Lehman in good faith, and plaintiffs do

13    not allege facts to the contrary.  Instead, plaintiffs contend that Fenway's claims on account of the

14    Sold Loans should be equitably subordinated because the "good faith transferee defense does not

15    apply to the successor-owner of a claim in bankruptcy." (Opp. at 5.)  In support of that argument,

16    plaintiffs rely principally upon *In re Enron Corp.*, 333 B.R. 205 (Bankr. S.D.N.Y. 2005) ("*Enron

17    I*") and two thirty-year old New York state court decisions that did not involve claims for

18    equitable subordination, *Lapis Enters., Inc. v. Int'l Blimpie Corp.*, 445 N.Y.S.2d 574 (App. Div.

19    2d Dep't 1981), and *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580 (1981).  Plaintiffs'

20    reliance upon these cases is misplaced.

21          As plaintiffs are undoubtedly aware, the bankruptcy court's decision in *Enron I*,

22    from which they block-quote to suggest that "a transferee is not immunized from subordination"

23    even though it may have paid value, was *expressly overruled* by the United States District Court

24    for the Southern District of New York in *In re Enron Corp.*, 379 B.R. 427 (Bankr. S.D.N.Y.

25    2007) ("*Enron II*") (relegated to a footnote in plaintiffs' brief).  While plaintiffs (and/or certain

26    legal commentators cited in their brief (Opp. at 5, n.2)) may not agree with or like the holding in

27

28                                              3

1   *Enron II*,[1] that does not change the fact that it overruled the *Enron I* decision on which they rely

2   and remains good law.[2]

3          In *Enron II,* the district court held that, contrary to the bankruptcy court's

4   conclusion, equitable subordination is a personal disability of a *claimant* and not an attribute of

5   the *claim*. *Enron II*, 379 B.R. at 439. As such:

6          > [U]nless there was a pure assignment (or other basis for the transferee to
           > step in the shoes of the transferor), as opposed to a sale of the claim, ***the***
7          > ***claim in the hands of the transferee is not subject to equitable***
           > ***subordination . . . based solely on the conduct of the transferor.***
8

9   *Id.* (emphasis added). In reaching this conclusion, the district court examined and relied upon the

10  legislative history behind the equitable subordination statute and the case law applying it

11  (including Second Circuit precedent), finding that "both demonstrate that Congress intended to

12  create a personal disability":

13         > The legislative history's various references to the requirement of
           > misconduct on the part of the "holder" of the claim demonstrate that
14         > ***Congress intended equitable subordination under section 510(c) to be***
           > ***specific to the individual who acted inequitably.*** For example, the
15         > legislative history states that "[t]o date, under existing law, a claim is
           > generally subordinated only if [the] holder of such claim is guilty of
16         > inequitable conduct, or the claim itself is of a status susceptible to
           > subordination, such as a penalty or a claim for damages arising from the
17         > purchase or sale of a security of the debtor." [citing 124 Cong. Rec.
           > 32398 (Rep. Edwards); *id.* at 33998 (Sen. DeConcini)]. In fact, Congress
18         > specifically rejected a broader wording of the statute that was proposed by
           > the House of Representatives, which provided for subordination "on
19         > equitable grounds." [citing H.R. 8200, 95th Cong. § 510 (1977)]. The
           > enacted version actually *limits* the scope of equitable subordination.

20  *Id.* (emphasis added) (bracketed citations appearing in footnote). Thus, the court found that

21  "Congress intended that the holder must be guilty of inequitable conduct before equitable

22

23         [1] Other legal commentators, of course, have endorsed the animating principle behind *Enron II.*
    *See, e.g.,* Adam J. Levitin, *Finding Nemo: Rediscovering the Virtues of Negotiability in the Wake of*
24  *Enron,* Columbia Business Law Review 83, 126 (2007) (the phrase "principles of equitable subordination"
    in Section 510(c) necessarily implies a defense for good faith purchasers).

25         [2] In any event, the rationale behind *Enron I* is inapplicable to this case. The court's holding in
    *Enron I* was premised on the fact that the proofs of claim at issue were transferred post-petition and the
26  transferee therefore had notice of the risks associated with such claims, including possible subordination.
    *Enron I*, 333 B.R. at 230, n.15. Here, Fenway received the Loans prior to the commencement of the
27  Debtors' bankruptcy cases. Accordingly, the primary justification for the holding in *Enron I* – even if had
    not been overruled – is inapplicable to Fenway.

28
                                            4

1    subordination can be imposed." *Id.* at 440 n.79.

2          Likewise, in analyzing case law at the time Section 510(c) was enacted and since,

3    the court found:

4          *[C]ourts routinely required misconduct on the part of the creditor*
           *asserting the claim before the court would equitably subordinate a*
5          *claim.* Indeed, as already mentioned above, Enron can point to no case,
           let alone a case pre-enactment, that applied equitable subordination to a
6          transferee of a claim based on the conduct of the transferor.

7                                          * * *

8          [Since the enactment of 510(c)], [c]ourts consistently have focused on the
           claimant, rather than the claim, for purposes of applying equitable
9          subordination. For example, the Second Circuit has stated that "equitable
           subordination is appropriate, *inter alia*, when the *subordinated claimant*
10         *has engaged in inequitable conduct that injures competing claimants."*
           *The Second Circuit thus recognized that the appropriate focus is on the*
11         *claimant, not the claim.*

12   *Id.* at 440-41 (emphasis added) (internal citations omitted).[3]

13         **2.    Plaintiffs Fail To Plead Facts Sufficient To Demonstrate**
                   **That Fenway Acted In Bad Faith And With Actual Knowledge**
14

15         Plaintiffs further contend that Fenway's status as a good faith purchaser is an

16   affirmative defense, and they are not required to allege in the TAC that Fenway was not a bona

17   fide purchaser for value ("BFP"), and even if they were required to make such allegations, the

18   TAC adequately does so. (Opp. at 4-8.) Again, plaintiffs are simply wrong.

19         *Enron II* makes clear that only a "*bad faith* purchaser" who had "*actual notice* of

20   inequitable conduct of the seller" may be subject to equitable subordination, *id.* at 442 (emphasis

21

22         [3] Neither of the other two decisions on which plaintiffs rely (*Lapis* and *Hammelburger*) is even
23   relevant to this case, much less mandates a different conclusion. Both are New York state court decisions
     from 1981 involving assignments under New York mortgage law, and neither even purports to bear on --
24   much less interpret – section 510(c) of the Bankruptcy Code. The *Lapis* court merely noted in *dicta* that a
     complaint alleging mortgage fraud could potentially proceed because, under New York law, a mortgage
25   may be canceled where there has been fraud in its procurement, notwithstanding the fact that the mortgage
     has been *assigned* to a bona fide and good faith purchaser for value. 445 N.Y.S. at 578 (emphasis added).
26   *Hammelburger*, for its part, arose in the context of a foreclosure action and likewise held that under New
     York mortgage law, "an *assignee* of a nonnegotiable bond or mortgage takes subject to any defense that
27   would have prevailed against his assignor." 54 N.Y.2d at 586 (emphasis added). In any event, the cases
     are not inconsistent with *Enron II*, which, as noted above, specifically distinguished between the liability
28   of a transferee who takes by assignment as opposed to a sale.

1   added), because, "[a]t bottom, equitable subordination is a drastic and unusual remedy" and, as

2   such, "it is important to apply section 510(c) narrowly." *Id.* at 443.   The *Enron II* court, in

3   distinguishing between a purchaser versus an assignee of a claim stated: "the burden and risk is

4   better carried by creditors as a whole in favor of the bona fide purchaser in the context of a sale,

5   but better carried by the assignee in favor of the creditors in the context of an assignment." 379

6   B.R. at 448.   The Repo effectuated a sale as set forth in this Court's Findings of Fact and

7   Conclusions of Law in Support of Order regarding Lehman Lenders' Authority to File Proofs of

8   Claim as Agents of Fenway Capital, LLC.   Accordingly, it is plaintiffs' burden to prove that

9   Fenway acted in bad faith and plaintiffs cannot skirt their obligation to properly plead bad faith

10   by arguing that it is an affirmative defense not ripe for adjudication on a motion to dismiss.

11        In this regard, plaintiffs do not even attempt to argue that Fenway was acting in

12   bad faith, had actual notice of Lehman's relationship with SunCal or otherwise engaged in

13   inequitable conduct.   On the contrary, they specifically argue that Fenway's "lack of good faith"

14   and BFP status "can be established by showing . . . *constructive* knowledge" of that relationship

15   (Opp. at 6) (emphasis added) and that Fenway can be liable for the alleged misconduct of Lehman

16   "even if the TAC does not allege that Fenway itself committed inequitable conduct" (Opp. at 4).

17   Under *Enron II* and other well-settled case-law, constructive knowledge is insufficient.[4]   Thus,

18   plaintiffs have failed to meet their pleading burden.

19        But, in any event, even if constructive knowledge were sufficient to show a lack of

20   good faith, plaintiffs have alleged no facts whatsoever from which one could infer a lack of good

21

---

22        [4] It is well-settled that constructive knowledge is insufficient in cases where, as here, heightened
pleading is required. *See, e.g., K&S P'ship v. Continental Bank, N.A.*, 952 F.2d 971, 977 (8th Cir. 1991)

23   (under federal securities laws, "knowledge may be shown by circumstantial evidence, or by reckless
conduct, but the proof must demonstrate actual awareness of the party's role in the fraudulent scheme");

24   *Glonti v. Stevenson*, No. 08 cv 8960, 2009 WL 311293, at *8 (S.D.N.Y. Feb. 6, 2009) ("Plaintiffs have
alleged only facts tending to show that defendants *should have* been alerted to. . . fraud. . . .   However,

25   New York courts have consistently held that constructive knowledge is insufficient to support a claim for
aiding and abetting common law fraud").   It is also well-settled that claims for equitable subordination

26   must be pled with particularity. *In re Fedders N. Am., Inc.*, 405 B.R. 52, 554 (Bankr. D. Del. 2009); *In re
SHC, Inc.*, 329 B.R. 438, 447 (Bankr. D. Del. 2005) ("Where equitable subordination is requested against

27   a non-insider. . . the plaintiff's burden is heavier. . . .   It must allege 'a more egregious level of misconduct.
. . .' It must do so with particularity.")

28

1  faith on Fenway's part or constructive knowledge of any alleged misconduct by the Lehman

2  Entities. Indeed, by their own allegations, Fenway entered into the Repo *before* Lehman and

3  SunCal entered into the Settlement Agreement and *before* Lehman filed for bankruptcy protection

4  – the acts that allegedly harmed SunCal. Thus, from Fenway's vantage point, there would have

5  been nothing "suspicious" about the "timing" of the Repo in August 2008. The fact that Lehman

6  solicited Fenway when it was in need of liquidity is hardly alarming – Fenway and its industry

7  counterparts exist for that very purpose (*i.e.* to provide liquidity). Likewise, plaintiffs' allegations

8  that the "circumstances" of the Repo are "suspicious" is entirely unfounded. There is no

9  allegation that the Repo was in any different from any other ordinary course transaction that

10  Fenway engaged in.

11

### 3.   Affirmative Defenses May Be Considered At The Pleadings Stage

13  Even if the BFP defense is an affirmative defense, based upon the fact that

14  plaintiffs only allege "constructive knowledge" of Lehman's purported bad acts, plaintiffs' own

15  allegations establish the defense because actual knowledge is required.   As a result, this Court

16  may, and should, consider an affirmative defense at the pleadings stage. *See, e.g., Centro Medico*

17  *Del Turabo v. Carmen Feliciano De Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) ("it is sometimes

18  permissible to grant a motion to dismiss based on an affirmative defense. . . when the pleader's

19  allegations leave no doubt. . .."); *ALA Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (stating

20  that a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense

21  "appears on its face"); *Maribusan v. J.E. Tilton*, No. C 06-6632 WHA (PR), 2007 U.S. Dist.

22  LEXIS 66039, at *1-*2 (N.D. Cal. Aug. 28, 2007) (stating that it is permissible to raise

23  affirmative defenses by motion to dismiss if the defense involves no disputed issues of fact); *see*

24  *also Haley v. Corcoran*, No. WDQ-09-1338, 2009 U.S. Dist. LEXIS 91949, at *12-*13 (D. Md.

25  Oct. 2, 2009) ("[a] grantee (or mortgagee) is presumed to act in good faith," so unless plaintiffs

26  allege facts showing that the mortgagee participated or should have known of the alleged fraud,

27  allegations are "insufficient to overcome the presumption of good faith and shift to [the

28

7

1    mortgagee] the burden of pleading and proving bona fide purchaser status").

2    **B.    <u>Fenway Is Not Liable As Principal</u>**

3    Plaintiffs argue that Fenway is vicariously liable for Lehman's alleged "post-Repo,

4    pre-petition" inequitable conduct vis-à-vis SunCal by virtue of the agency relationship between

5    Lehman and Fenway with respect to the Loans. (Opp. at 8.)  That conduct includes, among other

6    things, Lehman's negotiations with SunCal regarding the Settlement Agreement, its refusal to

7    proceed with closing the restructuring and Settlement Agreement, its refusal to provide funding as

8    allegedly promised and its withdrawal of funds from certain projects. (*Id.*)  Plaintiffs' argument is

9    specious for a number of reasons.

10    First and foremost, while this Court has held that the underlying loan agreements

11    relating to the Sold Loans authorized the Lehman Entities to act as Fenway's agents for the

12    purpose of filing proofs of claim and/or representing its interests relating to the Loans transferred

13    pursuant to the Repo in the bankruptcy proceedings,[5] such agency relationship is not raised in the

14    TAC as a basis upon which to equitably subordinate Fenway's claims.  Plaintiffs should not be

15    allowed to amend their complaint in their opposition to a motion to dismiss.  *Frederico v. Home*

16    *Depot*, 507 F.3d 188, 202 (3d Cir. 2007).  If they want to amend their complaint (yet again), they

17    should do it in the way prescribed by the Federal Rules.

18    Moreover, nothing in the loan agreements, MRA or related documents (or

19    anywhere else) suggests that the Lehman Entities were acting as Fenway's agents for *all* other

20    purposes and/or that Fenway would be liable for *any* conduct Lehman engaged in outside the

21    scope of that limited agency relationship.  Thus, contrary to plaintiffs' assertion, Fenway is not

22    liable for Lehman's alleged "post-Repo pre-petition inequitable conduct," none of which has

23    anything to do with Lehman acting on Fenway's behalf vis-à-vis the Loans in the bankruptcy

24    _____

25    [5] *See* December 21, 2009 Order Regarding Lehman Lenders' Authority To File Proofs Of Claim
As Agents Of Fenway Capital, LLC and Rule 3001(b) of the Federal Rules of Bankruptcy Procedure ("A
26    proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in
Rules 3004 and 3005"); January 28, 2010 Findings Of Fact And Conclusions Of Law In Support Of Order
27    Regarding Lehman Lenders' Authority To File Proofs Of Claim As Agents Of Fenway Capital, LLC, ¶
2.3.

28

1    proceedings and instead relates solely to Lehman's separate relationship with SunCal.[6]  Plaintiffs'

2    attempt to expand the narrow scope of the agency relationship between Fenway and the Lehman

3    Entities beyond (i) the terms of the loan agreements, Master Repurchase Agreement between

4    Fenway and the Lehman Entities and supporting documents, (ii) the parties' understanding, and

5    (iii) this Court's holding on the agency relationship between Lehman and Fenway, merely to suit

6    its interests is disingenuous and improper.

7          Plaintiffs' argument that Fenway is vicariously liable for Lehman's alleged post-

8    petition inequitable conduct (Opp. at 9) fails for the same reason.  If, and to the extent, Lehman

9    engaged in any misconduct in the course of representing Fenway's interests in the Loans in the

10   bankruptcy proceedings, plaintiffs assert no facts demonstrating that Fenway had knowledge of or

11   authorized such misconduct.  Moreover, as set forth by Lehman in its opening and reply briefs, it

12   is far from settled law that a creditor's post-petition conduct is grounds for the equitable

13   subordination of its pre-petition claim.  Furthermore, most of Lehman's conduct complained

14   about by plaintiffs (*i.e.*, invoking the automatic stay in its bankruptcy proceedings) was found

15   justifiable by the Bankruptcy Appellate Panel for the Ninth Circuit in its *In re Palmdale Hills*

16   *Property* decision. No. SA 08-17206-ES (9th Cir. B.A.P. Dec. 15, 2008).

17         Finally, when distilling the allegations set forth in the TAC against Fenway to their

18   essence, plaintiffs' focus is upon Fenway's commercial paper program and the Repo with

19   Lehman, neither of which impacted (let alone impaired the rights of) the plaintiffs or their

20   creditors in the least bit.  Plaintiffs' mud slinging should not be condoned.  The TAC should be

21   dismissed.

22   _____

23   [6] Accordingly, *In re Adler, Coleman Clearing Corp.*, 277 B.R. 520 (Bankr. S.D.N.Y. 2002), cited
     by plaintiffs to support the notion that vicarious liability may be triggered by an agent's conduct, is
     inapposite. In *Adler*, the creditor whose claims were equitably subordinated was found to have been a

24   knowing beneficiary of the agent's fraud, to have participated in the inequitable acts, and to have been an
     "insider." *Id.* at 523, 559, 565. Thus, under New York agency principles, the creditor's agents were

25   acting *within the scope of their agency authority* while committing the fraud. *Id.* at 560. In addition, the
     *Adler* court emphasized the fact that the creditor accepted the benefits of the fraudulent transactions and

26   profited from the agent's wrongful acts. *Id.* at 560-561. That is a far cry from the facts here where the
     alleged inequitable conduct is *outside* the scope of the agency relationship and plaintiffs do not and could

27   not allege that Fenway benefitted or profited in any way from the Lehman Entities' alleged inequitable
     conduct vis-à-vis SunCal.

28                                          9

## II.    PLAINTIFFS' FRAUDULENT TRANSFER CLAIM MUST BE DISMISSED

Plaintiffs spend a single page of their brief to address Fenway's various challenges to their purported fraudulent transfer claims (Opp. at 11), including the numerous pleading deficiencies Fenway highlighted in its motion.    None of those deficiencies are overcome by plaintiffs' reiteration of the same top-line conclusory allegations in the TAC that fail to satisfy Rule 9(b)'s heightened pleading requirements.    While the TAC is admittedly replete with conclusory allegations that parrot the elements of the fraudulent transfer statute, Fenway's point was that no *facts* were alleged to support any such assertions.    As set forth in its opening brief, and in Lehman's opening and reply briefs (the latter of which is incorporated herein), plaintiffs fail to adequately allege facts to support a showing of, among other things, a lack of reasonably equivalent value, the insolvency of the plaintiffs at the time of or as a result of the transfer and a pre-petition creditor.

In any event, plaintiffs do not dispute that Fenway was (if anything) a subsequent transferee of the alleged fraudulent transfers.    As such, under Section 550(b) of the Bankruptcy Code, plaintiffs' claim cannot succeed against Fenway so long as Fenway took "for value . . . in good faith, and without knowledge of the voidability of the transfer avoided."    *Id.*    It is plaintiffs' burden to demonstrate Fenway's lack of good faith in order for the purported transfers to be recoverable under section 550(b) of the Bankruptcy Code.    In *In re Daisy Systems Corp.*, the District Court for the Northern District of California stated that section 550(b) "enables a trustee to recover from someone who does not take directly from the debtor *if he can establish that the subsequent transferee acted in bad faith or had knowledge that the original transfer was voidable.*"    No. C-92-1845, 1993 WL 491309, at *14 (N.D. Cal. Feb. 3, 1993) (emphasis added). Accordingly, the court held that a plaintiff must adequately plead "the absence of good faith or lack of knowledge of the voidability of the transfer on the part of the transferee" in order to assert a valid claim.    *Id.*    The court specifically rejected the argument that section 550(b) "is analogous to the bona-fide purchaser rule in *Weiboldt Stores v. Schottenstein*, 131 Bankr. 488, 597 (Bankr. N.D. Ill. 1988), which is an affirmative defense and therefore need not be pleaded in the

10

1    complaint." *Id.* at \*15 n.4.

2    Similarly, in *In re Bressman*, the Third Circuit stated that a subsequent transferee

3    does not bear the burden of proof with respect to demonstrating its good faith under section

4    550(b). 327 F.3d 229, 236 (3d Cir. 2003). Specifically, the Third Circuit stated:

5    
6    It is not at all clear to us that "the language of the statute clearly places the
      burden of showing value, good faith, and lack of knowledge on the
      transferee as a defense. . ." Moreover, we agree with the *Nordic Village*
7    dissent that the Code treats initial transferees in a different manner than
      subsequent transferees. . . . As the dissent in *Nordic Village* put it:
8    

9    Although the Code makes clear that initial transferees are
      generally presumed to be on notice of the voidability of a
10   transfer... the Code also makes clear that subsequent
      transferees are not under such a severe disability. 11 U.S.C.
11   § 550(b). Such a dichotomy is rationally related to the fact
      that initial transferees will generally have knowledge and
12   therefore act in bad faith since they deal directly with the
      bankrupt. In contract, subsequent transferees are much more
13   likely to be innocent third parties. They have little ability to
      protect themselves by making cursory checks on their
14   transferor. Absent an express rule placing the burden of
      proof on subsequent transferees, *I believe the burden should
15   rest on the party seeking to recover the property, at least as
      to the issues of the subsequent transferee's good faith and
16   knowledge.*
17   

18   *Bressman*, 327 F.3d at 236 n.2 (quoting *In re Nordic Village, Inc.*, 915 F.2d 1049, 1055-56 (6th

19   Cir. 1990)) (emphasis added).

20   Here, there is not a single fact pled in the complaint that would suggest that, in

21   receiving the alleged fraudulent transfers, Fenway did not provide value, was not acting in good

22   faith and/or had knowledge of the voidability of the transfers. On the contrary, with respect to

23   value, the complaint expressly alleges that Fenway entered into the Repo to provide the Lehman

24   Entities "badly needed liquidity." TAC ¶ 119. Plaintiffs' deliberately ignore the fact that

25   securitization vehicles like Fenway (that make up a multi-trillion dollar market) provide valuable

26   services and are integral to the market as a whole. Regardless, making wild conclusory

27   statements is not the same as alleging facts necessary to support legal accusations.

28   
                                                    11

1    Moreover, there is nothing in the complaint to suggest that Fenway was not acting

2    in good faith. Indeed, other than the self-serving and unsupported statement that "to the extent

3    Fenway was a transferee of either of these [fraudulent] transfers, it was not a good faith

4    transferee" (TAC, ¶¶ 289, 338) – undoubtedly pled in an attempt to stave off dismissal on the

5    pleadings under Section 550(b) or 548(c) – there is not a single allegation (much less fact) in the

6    complaint that even bears on that issue. *See supra* Sec. I. Similarly, as discussed above,

7    plaintiffs have conceded that Fenway did not have actual knowledge, and the complaint does not

8    allege facts sufficient to show constructive knowledge (even assuming the latter were sufficient

9    for purposes of Section 550(b)). *Id.*

10   **III.   PLAINTIFFS' CLAIM TO AVOID AND RECOVER**
11   **PREFERENTIAL TRANSFERS MUST BE DISMISSED**

12   Plaintiffs devote almost six pages of their brief in defense of a preferential transfer

13   claim against Fenway for approximately $10 million of pre-petition payments allegedly made on

14   two of the Loans. (Opp. at 11-16.) Much of their argument centers around the inadequate,

15   factually devoid, so-called "hypothetical" pleading of the claim in the TAC, and does not call for

16   a response herein as the cursory nature of their allegations speaks for itself. It bears mentioning,

17   however, that, in trying to defend their inadequate pleading, plaintiffs' brief makes clear that they

18   did not allege that Fenway received any (much less all) of the alleged preferential payments. As

19   they cite and quote in their brief, the TAC alleges that SunCal Delta Coves made pre-petition

20   payments of $6,195,440.46 *to Lehman ALI* on the Delta Coves Loan, while SunCal Marblehead

21   Heartland Master LLC made pre-petition transfers of $3,390,280.37 *to Lehman ALI* on the

22   Marblehead Loan. (Opp. at 11 (quoting TAC ¶¶ 341, 356).) The only arguable nexus to Fenway

23   is an allegation that those loans were transferred to Fenway as part of the Repo. The TAC does

24   not allege, however, that, as part of that transfer – or any time thereafter – Fenway received the

25   $10 million or any portion thereof.

26   On a related note, the so-called "Preferential Payments" at issue do not represent

27   single, stand-alone payments of approximately $6.2 and $3.4 million that were made to Lehman

28

1   ALI and/or Fenway.   Rather, they represent cumulative totals of payments that were allegedly

2   made on the Loans within – and over the course of – a year prior to SunCal's bankruptcy filings.

3   As noted above, there are no allegations (nor is it the case) that Fenway received any payments

4   made to Lehman ALI prior to the time Fenway acquired an interest in the Loans as part of the

5   Repo.  As such, even assuming the payments were found to be preferential and Fenway could be

6   liable for some portion thereof, it would only be, at most, amounts that were paid *after* it entered

7   into Repo transaction and within 90 days of SunCal's filing.

8            Plaintiffs argue that Fenway may be liable with respect to transfers made outside

9   of the 90-day non-insider preference period because section 550(c) does not apply to Fenway.

10  (Opp. at 14-15.)[7]  Section 550(c) was enacted in response to the so-called "*Deprizio* problem,"[8]

11  where the trustee was able to recover from a non-insider a preferential transfer made for the

12  benefit of an insider during the period 90-days to one year prior to the bankruptcy filing.

13  Plaintiffs assert that because they are seeking to recover the alleged preferences from the

14  immediate or mediate transferee of amounts paid to an insider (as opposed to amounts paid for

15  the benefit of an insider), Fenway is not entitled to the protections of Bankruptcy Code Section

16  550(c).  This argument ignores the plain meaning of Section 550(c) and is based entirely on the

17  legislative history of Section 547(i) of the Bankruptcy Code, a wholly different section (albeit one

18  similarly enacted in response to the *Deprizio* problem).

19

20          [7] Section 550(c) of the Bankruptcy Code provides:

21              If a transfer made between 90 days and one year before the filing of the petition –
                (1) is avoided under section 547(b) of this title; and (2) was made for the benefit
22              of a creditor that at the time of such transfer was an insider; the trustee may not
                recover under subsection (a) from a transferee that is not an insider.
23

24  11 U.S.C. §550(c).  Section 550(a), in turn, provides that "to the extent that a transfer is avoided under
    section. . . 547. . . the trustee may recover. . . the property transferred. . . from. . . the initial transferee. . .
25  or any immediate or mediate transferee of such initial transferee."  11 U.S.C. §550(a).

26          [8] The *Deprizio* problem refers to courts interpreting section 547(b) to apply the one-year extended
    preference period to transfers to non-insider creditors if an insider benefitted from the transfer in some
27  way.  Congress noted that *Deprizio* and cases similar to it "had the effect of discouraging lenders from
    obtaining loan guarantees, lest transfers to the lender be vulnerable to recapture by reason of the debtor's
28  insider relationship with the loan guarantor."  *See* H.R. Rep. 103-835 at 45 (1994).

1    Under the plain meaning of Section 550(c), if a transfer made outside of the 90-

2    day preference period is avoided under Section 547(b), the Debtors may not recover from the

3    non-insider, in this case, Fenway.  Notably, Section 550(c) provides that "the trustee may not

4    recover. . . from a *transferee* that is not an insider."   11 U.S.C. §550(c) (emphasis added).

5    Congress knew how to distinguish "initial transferees" from "immediate or mediate transferees"

6    and could have limited Section 550(c) to non-insider initial transferees if it so chose.  *See, e.g.*, 11

7    U.S.C. 550(a).  However, it did not do so and Section 550(c) expressly applies to "transferees"

8    generally.  *See* H.R. Rep. 103-835 at 45 (1994) ("This section [550(c)] clarifies that non-insider

9    transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the

10    90-day statutory period").  That term includes and encompasses both initial and immediate or

11    mediate transferees.  *See, e.g.*, RICHARD I. AARON, THE AVOIDING POWERS OF THE TRUSTEE IN

12    BANKRUPTCY, 1 BANKRUPTCY LAW FUNDAMENTALS § 10:35 (2009) ("Bankruptcy Code § 550(c)

13    . . . bars recovery from any initial, immediate or mediate transferee who is not itself an insider");

14    *In re AVI, Inc.*, 389 B.R. 721, 732 (9th Cir. B.A.P. 2008) (noting that a trustee "may seek to

15    recover against any transferee, initial or immediate," subject to the limitations set forth in 550(c)).

16    Accordingly, contrary to plaintiffs' assertion, the relief available under Section 550(c) does not

17    apply only to non-insider initial transferees, but applies to mediate transferees such as Fenway.  In

18    any event, because, as noted above, Fenway can only even be conceivably liable for payments

19    made after it entered into the Repo on August 22, 2008 (which is, coincidentally, approximately

20    90 days from the filing of SunCal's petition), this issue may be largely academic.

21    Finally, under Section 550(b) of the Bankruptcy Code, plaintiffs' preference claim

22    against Fenway cannot succeed if it took the alleged preferential payments for value, in good faith

23    and without knowledge of their voidability.  *Id.*  For the same reasons set forth above in the

24    foregoing discussion on plaintiffs' fraudulent transfer claims, plaintiffs have failed to make a

25    showing that Fenway is not shielded by Section 550(b).

26    **IV.    PLAINTIFFS' CLAIMS TO VOID LIENS AND**

27    **DISALLOW CLAIMS AND LIENS MUST BE DISMISSED**

28    Plaintiffs argue only that their claim to void certain liens under Section 506(d) of

14

the Bankruptcy Code should be permitted to proceed because that statute does not require disallowance of the claim.   (Opp. at 19.)   On this distinct legal issue, Fenway adopts and incorporates herein by reference Lehman's argument at section VIII and IX of their reply brief.

With respect to plaintiffs' claim to disallow claims and liens under Section 502(d), plaintiffs effectively concede that they made no allegation specific to Fenway on this claim in the TAC and are relegated to relying on the catchall "Plaintiffs repeat and reallege each and every foregoing and subsequent allegation." (Opp. at 19.)  This is, of course, patently insufficient, and their purported attempt to substitute the TAC's pleading deficiencies by amalgamating various allegations in their brief is likewise impermissible and inadequate.   Moreover, and in any event, as plaintiffs acknowledge, their ability to state a claim against Fenway under Section 502(d) turns on their ability to state a claim against Fenway for fraudulent transfer.   Because, as set forth above, *supra*, Sec. II, they are unable to do so, this claim must fail.   Fenway adopts and incorporates herein by reference any additional arguments made on this claim in Lehman's reply brief.

## **CONCLUSION**

For the foregoing reasons and those set forth in Fenway's opening brief, and Lehman's brief in support of its Motion to Dismiss, Fenway respectfully requests that this Court dismiss the Third Amended Complaint as against it.

Date: February 4, 2010

DEWEY & LEBOEUF LLP

By:    /s/ John E. Schreiber
         John E. Schreiber
         333 South Grand Street
         Suite 2600
         Los Angeles, California 90071
         Telephone: (213) 621-6000
         Facsimile: (213) 621-6100

         Richard W. Reinthaler
         Corinne D. Levy
         DEWEY & LEBOEUF LLP
         1301 Avenue of the Americas
         New York, NY 10019
         Telephone: (212) 259-8000
         Facsimile: (212) 259-6333

         *Attorneys for Fenway Capital, LLC*

| In re: <br> PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, <br> Palmdale Hills Property, LLC, et al. v. Lehman ALI, Inc., et al. <br><br> Debtor(s). | CHAPTER 11 <br> CASE NUMBER 08-17206-ES <br> Adv. Case No. 09-01005- ES |
|---|---|

**NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Dewey & LeBoeuf, LLP, 333 South Grand Avenue, Suite 2600, Los Angeles, CA 90071.

A true and correct copy of the foregoing document described as **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 23, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On February 04, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/04/10 | Evelyn Leon | /s/ Evelyn Leon |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER 11 |
|---|---|
| PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, Palmdale Hills Property, LLC, et al. v. Lehman ALI, Inc., et al.<br><br>Debtor(s). | CASE NUMBER 08-17206-ES<br>Adv. Case No. 09-01005- ES |

## SERVICE BY NEF

Selia M Acevedo on behalf of Plaintiff Palmdale Hills Property Llc
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com; bprocel@millerbarondess.com

Joseph A Eisenberg on behalf of Defendant LB/L-Duc III Master LLC
jae@jmbm.com

Lei Lei Wang Ekvall on behalf of Interested Party Courtesy NEF
lekvall@wgllp.com

Alan J Friedman on behalf of Attorney – Irell & Manella Llp
afriedman@irell.com

Jonathan M Hoff on behalf of Interested Party Joint Provisional Liquidators of Lehman RE Ltd
jonathan.hoff@cwt.com

Christopher W Keegan on behalf of Interested Party Courtesy NEF
ckeegan@kirkland.com; emilee@kirkland.com; alevin@kirkland.com; tshafroth@kirkland.com

Hutchison B Meltzer on behalf of Interested Party Courtesy NEF
hmeltzer@wgllp.com

James M Miller on behalf of Plaintiff Palmdale Hills Property Llc
kmiller@millerbarondess.com

Henry H Oh on behalf of 3rd Party Plaintiff Joint Provisional Liquidators of Lehman RE Ltd
henry.oh@dlapiper.com; bambi.clark@dlapiper.com

Steven M Speier
sspeier@Squarmilner.com; ca85@ecfcbis.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Christopher T Williams on behalf of Defendant Danske Bank A/S London Branch
ctwilliams@venable.com; jcontreras@venable.com

Dean A. Ziehl on behalf of Creditor Lehman Commercial Paper Inc.
dziehl@pszilaw.com; dziehl@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br>Palmdale Hills Property, LLC, et al. v. Lehman ALI, Inc., et al.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 08-17206-ES<br>Adv. Case No. 09-01005- ES |
|---|---|

## Notice will not be electronically mailed to:

**ALM Painting, Inc.**
31551 Camino Capistrano #B
San Juan Capistrano, CA 92675

**AMEC Earth & Environmental, Inc.**
2020 Winston Park Drive
Suite 700
Oakville, ON, L6H 6X7

**AMEC Earth & Environmental, Inc.**
Agent for Service
Mark Luer
400 E. Sixth Street
Corona, CA 92879

**All American Asphalt**
c/o Agent for Service
Mark Luer
400 E. Sixth Street
Corona, CA 92879

**BNB Engineering, Inc.**
c/o Robert J. Mulvihill
Hart, King & Coldren
200 Sandpointe, Fourth Floor
Santa Ana, CA 92707

**Boudreau Pipeline Corporation**
Agent for Service
Alan J. Bourdeau
130 Klug Circle
Corona, CA 92880

**Bova Contracting Corporation**
c/o Agent for Service
Steve Stein
420 De Sola Terrace
Corona, CA 92625

**Bucilla Group Architecture, Inc.**
c/o Agent for Service
Gregory G. Bucilla
21 Siros
Laguna Niguel, CA 92677

**Cemex, Inc.**
c/o Agent for Service
CT Corp. System
818 West Seventh Street
Los Angeles, CA 90017

**Chino Grading, Inc.**
c/o Agent for Service
Theresa Crawford Tate
1290 E. Center Court Drive
Covina, CA 91724

**Construction Service, Inc.**
1320 N. Hancock
Unit A
Anaheim, CA 92807

**Contech Construction Productions, Inc.**
c/o Agent for Service
Mehran Jafarzadeh
631 Montague Avenue
San Leandro, CA 94577

**Excavating Engineers, Inc.**
c/o Agent for Service
Martin G. Smith
3712 S. Mission Road
Fallbrook, CA 92028

**JLS Concrete Pumping, Inc.**
c/o Agent for Service
CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

**JAG Utility Construction, Inc.**
c/o Agent for Service
James E. Gugino
1238 Keystone Way
Vista, CA 92083

**LV Pacific Point LLC**
2392 Morse Ave.
Irvine, CA 92614

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br>Palmdale Hills Property, LLC, et al. v. Lehman ALI, Inc., et al.<br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 08-17206-ES<br>Adv. Case No. 09-01005- ES |
| --- | --- |

JT Construction, Inc.
c/o Agent for Service
Scott I. Richards, Esq.
313 North Birch Street
Santa Ana, CA 92701

Lehman Ali Inc.
2392 Morse Ave.
Irvine, CA 92614

Mesa Pacific Construction, Inc.
c/o Agent for Service
Jeffrey W. Fohrman
One Park Plaza, Suite 600
Irvine, CA 92614

National Ready Mixed Concrete Co., A California
Corporation
c/o Agent for Service
CT Corp. System
818 West Seventh Street
Los Angeles, CA 90017

R.C. Berger Construction, Inc.
c/o Agent for Service
Ronald Berger
1591 Cherokee Road
Corona, CA 92881

SJD Partners, Ltd.
2392 Morse Ave.
Irvine, CA 92614

Tensar International Corporation
c/o Agent for Service
CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

Vaughan Trucking, LLC
c/o Agent for Service
Steven M. Vaughan
509 N. Main Street
Lake Elsinore, CA 92530-3823

Mark E McKane
Kirkland & Ellis LLP
555 California St.
San Francisco, CA 94104

Louis R Miller
1999 Ave of the Star Ste 1000
Los Angeles, CA 90067

Oak Leaf Lands Cape, Inc.
c/o Agent for Service
Dennis Buccola
2885 E. La Cresta
Anaheim, Ca 92806

SJD Development Corp.
2392 Morse Ave.
Irvine, CA 92614

Sierra Pacific Electrical Contracting
c/o Agent for Service
David Loop
2542 Avalon Street
Riverside, CA 92509

Tonka Tractor Rental, Inc.
c/o Agent for Service
Marty Smith
3712 S. Mission Road
Fallbrook, CA 92028

Vulcan Materials Company
c/o Agent for Service
The Prentice-Hall Corp. System, Inc.
2730 Gateway Oaks Drive #100
Sacramento, CA 95833

The Honorable Erithe A. Smith
U.S. Bankruptcy Court, Central District of Californ
411 West Fourth Street, Suite 5041
Santa Ana, California 92701-4593

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                              F 9013-3.1