1 | LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
2 | MARTIN PRITIKIN, State Bar. No. 210845
mpritikin@millerbarondess.com
3 | JAMES MILLER, State Bar No. 234267
jmiller@millerbarondess.com
4 | **MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
5 | Los Angeles, California 90067
Telephone:    (310) 552-4400
6 | Facsimile:    (310) 552-8400
Special Litigation Counsel for the Jointly
7 | Administered Debtors in Possession and Steven
M. Speier, the Chapter 11 Trustee

8

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA — SANTA ANA DIVISION

**CASE NO. 8:08-bk-17206-ES**

In re

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17224-ES;
8:08-bk-17225-ES; 8:08-bk-17227-ES;

PALMDALE HILLS PROPERTY, LLC, AND ITS
RELATED DEBTORS,

8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17240-ES;

Jointly Administered Debtors and
Debtors-in-Possession

8:08-bk-17242-ES; 8:08-bk-17245-ES;
8:08-bk-17246-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17404-ES;

Affects:

8:08-bk-17407-ES; 8:08-bk-17408-ES;

☐ All Debtors
☒ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☒ SunCal Summit Valley, LLC
☒ SunCal Emerald Meadows LLC
☒ SunCal Bickford Ranch, LLC
☒ Acton Estates, LLC
☐ Seven Brothers LLC
☒ SJD Partners, Ltd.
☒ SJD Development Corp.
☐ Kirby Estates, LLC
☒ SunCal Communities I, LLC
☒ SunCal Communities III, LLC
☒ SCC Communities LLC
☒ North Orange Del Rio Land, LLC
☒ Tesoro SF, LLC
☒ LB-L-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☒ LB-L-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☒ SunCal Century City, LLC
☒ SunCal PSV, LLC

8:08-bk-17409-ES; 8:08-bk-17458-ES;
8:08-bk-17465-ES; 8:08-bk-17470-ES;
8:08-bk-17472-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17588-ES

**Adversary No. 8:09-ap-01005-ES**

**FOURTH AMENDED ADVERSARY
PROCEEDING COMPLAINT FOR:**

1) **EQUITABLE SUBORDINATION,
11 U.S.C. §510(c);**

2) **FRAUDULENT INDUCEMENT;**

3) **AVOIDANCE AND RECOVERY OF
PREFERENTIAL TRANSFERS,
11 U.S.C §§ 547, 550;**

4) **AVOIDANCE AND RECOVERY OF
FRAUDULENT TRANSFERS,
11 U.S.C. §§ 544(b), 548; CAL. CIVIL
CODE §§ 3439.04, 3439.05;**

---

**FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1 ⊠ Delta Coves Venture, LLC
⊠ SunCal Torrance, LLC
2 ⊠ SunCal Oak Knoll, LLC

3 **ADVERSARY PROCEEDING**

4 **Debtor-In-Possession Plaintiffs**
5 PALMDALE HILLS PROPERTY, LLC, a Delaware
limited liability company; SUNCAL SUMMIT
6 VALLEY, LLC, a Delaware limited liability
company; SUNCAL EMERALD MEADOWS, LLC,
7 a Delaware limited liability company; SUNCAL
BICKFORD RANCH, LLC, a Delaware limited
8 liability company; ACTON ESTATES, LLC, a
Delaware limited liability company; SJD
9 PARTNERS, LTD., a California limited partnership;
SJD DEVELOPMENT CORP., a California
10 corporation; NORTH ORANGE DEL RIO LAND,
LCC, a Delaware limited liability company;
11 TESORO SF, LLC, a Delaware limited liability
company; SCC COMMUNITIES, LLC, a Delaware
12 limited liability company; SUNCAL
COMMUNITIES I, LLC, a Delaware limited liability
13 company; SUNCAL COMMUNITIES III, a
Delaware limited liability company;

14 **Trustee Plaintiff:**
15 STEVEN SPEIER, Chapter 11 Trustee, on behalf of
LB-L-SUNCAL OAK VALLEY, LLC, a Delaware
16 limited liability company; SUNCAL HEARTLAND,
LLC, a Delaware limited liability company; LB-L-
17 SUNCAL NORTHLAKE, LLC, a Delaware limited
liability company; SUNCAL MARBLEHEAD, LLC,
18 a Delaware limited liability company; SUNCAL
CENTURY CITY, LLC, a Delaware limited liability
19 company; SUNCAL PSV, LLC, a Delaware limited
liability company; DELTA COVES VENTURE,
20 LLC, a Delaware limited liability company;
SUNCAL TORRANCE, LLC, a Delaware limited
21 liability company; and SUNCAL OAK KNOLL,
LLC, a Delaware limited liability company,
22

23
                    Plaintiffs,
24 v.

25 LEHMAN ALI, INC., a Delaware corporation; OVC
HOLDINGS, LLC, a Delaware limited company;
26 NORTHLAKE HOLDINGS, LLC, a Delaware
limited company; LV PACIFIC POINT,
27 LLC, a Delaware limited liability company;
LEHMAN RE, LTD., a Bermuda corporation;
28 FENWAY CAPITAL. LLC. a Delaware limited

5) **VOIDING LIENS, 11 U.S.C. § 506(d);**

6) **DISALLOWANCE OF CLAIMS AND
   LIENS, 11 U.S.C. § 502(d); AND**

7) **PRESERVATION OF CLAIMS AND
   LIENS FOR DEBTORS' ESTATES,
   11 U.S.C. §551**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

1    liability company;

2                    Defendants.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ACTION ...................................................................................................1

II.  STATEMENT OF JURISDICTION AND VENUE ......................................................4

III.  PARTIES ..........................................................................................................................4

    A.  Plaintiffs.................................................................................................................4

        1.  Voluntary Debtor Plaintiffs.......................................................................4

        2.  The Trustee, on behalf of the Trustee Debtors .........................................5

    B.  Defendants .............................................................................................................7

IV.  FACTUAL ALLEGATIONS ...........................................................................................8

    A.  The SunCal-Lehman Venture ...............................................................................8

    B.  The Debtors and Projects at Issue ......................................................................11

    C.  The Disputed Lehman Loans at Issue .................................................................12

    D.  Lehman ALI and LCPI Saddle the Projects with Unnecessary Excessive Debt .........14

    E.  Lehman ALI's and LCPI's Promises to Fund the Plaintiff Debtors' Projects.............16

    F.  Lehman ALI and LCPI's Imposition of Control Over the Debtors and the Projects ..18

    G.  The Parties' Restructuring Agreement.................................................................19

    H.  The Projects Subject to the Restructuring Agreement.........................................22

    I.  Lehman ALI's Obligations to Fund Under the Restructuring Agreement .................24

    J.  Lehman ALI and LCPI Fail to Fund the Projects as Promised....................................24

    K.  Lehman ALI, LCPI, OVC and Northlake Holdings Secretly Shuffle Their
Interests in the Plaintiff Debtors' Loans ...........................................................26

    L.  Lehman ALI, LCPI, OVC and Northlake Holdings' Failure to Close and
Continued Refusal to Fund .................................................................................27

    M.  Lehman ALI's Withdrawal of Badly Needed Cash from the Projects ........................28

    N.  The Lehman Lenders' Refusal to Fund Necessitates Debtors' Bankruptcies.............29

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

i

O.   Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Block the Debtors' Bankruptcies ............................................................................................29

P.   Lehman ALI, OVC and Northlake Holdings' Manipulation of the Lehman Equity Members ....................................................................................................30

Q.   Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Thwart Debtors' Reorganization in Bankruptcy ..................................................................33

R.   Lehman ALI, LCPI, OVC and Northlake Holdings' Concealment of their Sale of the Loans at Issue ....................................................................................................35

S.   Lehman ALI, LCPI, OVC and Northlake Holdings' Repeated Assertion of Their "Ownership" of the Sold Loans ...................................................................39

   1.   Disputed Proofs of Secured Claims Filed by Lehman ALI, LCPI, OVC and Northlake Holdings Based on the Sold Loans ....................................39

   2.   Key Pleadings Filed By Lehman ALI, LCPI, OVC and Northlake Holdings Based On the Sold Loans ...................................................................40

      a.   Stay Relief Motions ..............................................................................40

      b.   Opposition to Sales Procedure Motion .................................................41

T.   LCPI's Improper Invocation of the Automatic Stay ......................................................41

   1.   New York Opposition to Priming Loan..........................................................42

   2.   Objection to Cash Collateral Motion ..............................................................42

   3.   "Emergency" Motion to Enforce Stay In New York ......................................43

   4.   Lehman ALI's Super-Priority Loan Resulting from LCPI's False Invocation of Its Stay ....................................................................................43

   5.   Intervention in Sales Procedures Motion ........................................................44

   6.   Stay Relief Motions .........................................................................................45

   7.   LCPI's Appeal from the Denial of its Stay Relief Motions.............................45

   8.   LCPI's Second Appeal.....................................................................................46

U.   Summary of Lehman ALI, LCPI, OVC and Northlake Holdings' Post-Petition Inequitable Conduct.......................................................................................................46

V.   Lehman ALI and LV Pacific Point's Fraudulent Acquisition of the Pacific Point Project ...........................................................................................................................47

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

W.    Summary of the Disputed Claims to Be Equitably Subordinated, and the
Associated Liens to Be Preserved for the Benefit of the Plaintiff Debtors' Estates....49

CAUSES OF ACTION ................................................................................................54

V.    FIRST CLAIM FOR RELIEF (Equitable Subordination, 11 U.S.C. §510(c)).........................54

VI.    SECOND CLAIM FOR RELIEF (Fraudulent Inducement – By SJD Partners against
LV Pacific Point) .....................................................................................................61

VII.    THIRD CLAIM FOR RELIEF (To Avoid and Recover Fraudulent Transfers – 11
U.S.C. §§ 544(b), 548, Cal. Civil Code §§ 3439.04 and 3439.05 – By SunCal Acton,
SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I, and SunCal III against
Fenway; by SunCal Del Rio, SunCal Tesoro and SCC Communities, and by the
Trustee on behalf of SunCal Oak Knoll and SunCal Torrance, against Lehman ALI;
and by the Trustee on behalf of SunCal Marblehead and SunCal Heartland against
Lehman ALI and Fenway) ..........................................................................................63

VIII.    FOURTH CLAIM FOR RELIEF (To Avoid and Recover Preferential Transfers – 11
U.S.C. § 547 – By the Trustee on behalf of SunCal Delta Coves against Lehman ALI
and Fenway, and on behalf of SunCal Century City against Lehman ALI) ...........................69

IX.    FIFTH CLAIM FOR RELIEF (To Void Liens – 11 U.S.C. § 506(d) – By SunCal I
and SunCal III against Fenway; and by SunCal Bickford against Lehman ALI)....................71

X.    SIXTH CLAIM FOR RELIEF (To Disallow Claims and Liens – 11 U.S.C. § 502(d)
—By by SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal
I, and SunCal III against Fenway; by SunCal Del Rio, SunCal Tesoro and SCC
Communities, and by the Trustee on behalf of SunCal Oak Knoll and SunCal
Torrance, against Lehman ALI; by the Trustee on behalf of SunCal Delta Coves,
SunCal Marblehead and SunCal Heartland against Lehman ALI and Fenway; and by
the Trustee on behalf of SunCal Century City against Lehman ALI) .....................................72

XI.    SEVENTH CLAIM FOR RELIEF (To Preserve Claims and Liens for the Respective
Debtors' Estates -- 11 U.S.C. §§ 551 and 541(a)(4) – Against All Defendants)....................73

XII.    PRAYER FOR RELIEF ............................................................................................73

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

iii

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# I.

## SUMMARY OF ACTION

1.      This case is about a major Wall Street financial institution, Lehman Brothers, which—through its wholly-owned and controlled subsidiaries, defendants herein—induced the plaintiffs' creditors to render services, perform work and issue surety bonds, and then stiffed them for hundreds of millions of dollars. With this action, the plaintiffs seek relief for the benefit of those creditors.

2.      The plaintiffs herein (collectively, the "Plaintiffs" or "Plaintiff Debtors")[1] are twenty-one of twenty-six debtors ("Debtors")[2] whose bankruptcy cases have been administratively consolidated before this Court. The Debtors are all direct or indirect subsidiaries of SCC Acquisitions, Inc. ("SCC"), which is the "parent" of a group of affiliated entities known collectively as the SunCal Companies, or "SunCal." SunCal is a California-based real estate developer.

3.      The causes of action alleged herein relate to SunCal's dealings with various affiliated entities which are all wholly owned and/or controlled by the Global Real Estate Group within Lehman Brothers Holdings, Inc. ("LBHI") (collectively, "Lehman"). These affiliates include

---

[1] They are: (i) Acton Estates LLC ("SunCal Acton"), SunCal Bickford Ranch LLC ("SunCal Bickford"), SunCal Emerald Meadows LLC ("SunCal Emerald"), Palmdale Hills Property LLC ("Palmdale Hills"), SJD Partners, Ltd. ("SJD Partners"), SJD Development Corp. ("SJD Development"), SunCal Summit Valley LLC ("SunCal Summit"), SCC Communities LLC ("SCC Communities"), SunCal Communities I LLC ("SunCal I"), SunCal Communities III LLC ("SunCal III"), North Orange Del Rio Land LLC ("SunCal Del Rio"), and Tesoro SF LLC ("SunCal Tesoro") (collectively, the "Voluntary Debtor Plaintiffs or "Voluntary Plaintiffs"); and (ii) LB/L-SunCal Oak Valley LLC ("SunCal Oak Valley"), LB/L-SunCal Northlake LLC ("SunCal Northlake"), SunCal Heartland LLC ("SunCal Heartland"), SunCal Marblehead LLC ("SunCal Marblehead"), SunCal PSV LLC ("SunCal PSV"), Delta Coves Venture LLC ("SunCal Delta Coves"), SunCal Torrance LLC ("SunCal Torrance"), and SunCal Oak Knoll LLC ("SunCal Oak Knoll") (collectively, the "Trustee Debtors").

To be precise, plaintiff Steven M. Speier, the Chapter 11 trustee ("Trustee") for the nine Trustee Debtors, is authorized to bring, and does bring, the claims herein on their behalf. References to the Trustee Debtors as "Plaintiffs" are made for readability, and should be understood, where applicable, to refer to the Trustee himself.

[2] There are five administratively consolidated Voluntary Debtors that are not currently named as Plaintiffs herein, for reasons explained below. They are: SunCal Beaumont Heights LLC ("SunCal Beaumont"), SunCal Johannson Ranch LLC ("SunCal Johannson"), Seven Brothers LLC ("Seven Brothers"), Kirby Estates LLC ("Kirby"), and SCC Palmdale LLC ("SCC Palmdale").

61767.3

1   defendants Lehman ALI, Inc. ("Lehman ALI"), OVC Holdings, Inc. ("OVC"), Northlake Holdings

2   LLC ("Northlake Holdings"), LV Pacific Point LLC ("LV Pacific Point"), and Lehman Re, Ltd.

3   ("Lehman Re") (collectively, the "Lehman Defendants").[3] They also include non-defendant affiliate

4   Lehman Commercial Paper, Inc. ("LCPI") (itself wholly owned by Lehman ALI).[4]

5       4.    Plaintiffs are also naming as a defendant herein Fenway Capital LLC ("Fenway"), as

6   successor to certain of the Lehman Defendants and to LCPI regarding certain loans at issue herein.

7   (Fenway is referred to collectively with the Lehman Defendants as "Defendants.").

8       5.    The Plaintiff Debtors are owners of, and/or have equity interests in other Debtors who

9   are owners of, nineteen real estate development projects located throughout California (the

10  "Projects"). As discussed in more detail below, after gaining control over the Debtors, certain of the

11  Lehman Defendants exercised that control to their own advantage, and to the detriment of the

12  Plaintiff Debtors and their creditors. They induced the Project-owning Plaintiff Debtors to incur

13  hundreds of millions dollars in debt through promises of payment—promises which they failed and

14  refused to fulfill.

15

16

17      [3] These affiliates also include, but are not limited to, non-defendants LBREP II/SunCal Land
    Fund Member LLC ("LBREP II/SCLFM"), LB/L-DUC III Master LLC ("LB/L-Duc Master"),
18  SCLV Northlake LLC ("SCLV Northlake"), SCLV Oak Valley LLC ("SCLV Oak Valley"), and SC
    Master Holdings II LLC ("SC Master Holdings") (collectively, the "Lehman Equity Members").
19
        [4] The claims against LCPI in the Third Amended Complaint were dismissed without
20  prejudice by this Court pursuant to the Ninth Circuit Bankruptcy Appellate Panel's ruling in *Lehman
    Commercial Paper, Inc. v. Palmdale Hills Property LLC*, BAP No. CC-09-1100-HPaMk (Dec. 15,
21  2009) (the "BAP Ruling"). The BAP Ruling held that, because LCPI *may have* some interest in the
    loans and liens at issue here, relief from stay would need to be obtained before suing LCPI.
22
        Plaintiffs are of the belief that the BAP ruling is irrelevant because LCPI has either sold all of
23  the loans and liens at issue, or has stipulated that its stay does not apply to them. In any event, the
    Debtors have appealed the BAP Ruling to the Ninth Circuit. If the BAP Ruling is reversed, and/or
24  relief from stay is obtained to pursue claims against LCPI, Plaintiffs reserve the right to further
    amend their complaint to re-name LCPI as a defendant.

25      LCPI was involved in much of the underlying conduct forming the basis for the causes of
    action in this complaint, and may well be named as a defendant in the future, as explained above.
26  Moreover, defendant Fenway is sued herein based on the conduct of LCPI (as well as that of
    Lehman ALI, OVC and Northlake Holdings). Accordingly, factual allegations regarding conduct by
27  LCPI remain in the complaint. However, no inference is intended to be drawn or should be drawn
    therefrom that LCPI is being or will be treated by Plaintiffs as a defendant in this action unless and
28  until the BAP Ruling is reversed and/or stay relief is obtained.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

6.    As to one Project in particular known as "Pacific Point," located in San Juan Capistrano, Defendants Lehman ALI and LV Pacific Point fraudulently induced the Project-owning Plaintiff Debtor, SJD Partners, to consent to a foreclosure and sale of the Project through their false promises of funding.

7.    Defendants' inequitable conduct has continued post-petition—including making repeated material misrepresentations to the Court and Debtors, and wasting vast amounts of the Plaintiff Debtors' time and money—to the detriment of all of the Plaintiff Debtors' creditors.

8.    Because of the Defendants' wrongdoing, not only have the Plaintiff Debtors' creditors' bills gone unpaid, the Projects themselves fell into a state of serious disarray.  They have encountered erosion, problems with dust, fire control, friable asbestos, unmonitored levees and partially constructed bridges, potential flooding and other serious health and safety hazards. Defendants have refused even to pay property taxes on the Projects, resulting in significant penalties and interest which have decreased the value of the Debtors' estates.  The Projects are further threatened with the loss of their governmental entitlements, which are critical to avoid disruptions in the development process and to maintain value.

9.    This lawsuit is to obtain redress for the Plaintiff Debtors' creditors by way of:

(a) equitably subordinating the Defendants' claims in the Projects;

(b) setting aside the foreclosure of the Pacific Point property and returning it to its rightful owner, SJD Partners;

(c) avoiding and recovering fraudulent and preferential transfers made to Defendants;

(d) declaring void Defendants' liens that are not supported by value; and

(e) disallowing Defendants' claims and liens, and preserving those claims and liens for the benefit of the Plaintiff Debtors' estates.

10.    This adversary proceeding is filed against defendants who are not in the bankruptcy proceedings involving LBHI in New York.

11.    Plaintiffs reserve the right to seek relief from stay to name any and all other Lehman-

3

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    related entities, agents and/or individuals as defendants as necessary, and/or to name other

2    defendants as necessary, to obtain and effectuate full and complete relief for the creditors.

3                                                 II.

4                         **STATEMENT OF JURISDICTION AND VENUE**

5            12.     The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28

6    U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (F), (H), (K), and (O), and 1334.

7            13.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409, in that this

8    civil proceeding arises under title 11 of the United States Code, and arises in and relates to a

9    bankruptcy case pending in the district, and the claims alleged herein arose in this district.

10           14.     The causes of action alleged herein are all "core" proceedings to be heard and

11   determined by the Bankruptcy Court pursuant to 28 U.S.C. §§ 157 and 1334(b).   To the extent that

12   any claim is determined to be a non-core proceeding that is related to a case under title 11 under this

13   Court's jurisdiction pursuant to 28 U.S.C. § 157(c)(1), Plaintiffs consent to an entry of final order or

14   judgment on the non-core matters by this Court pursuant to 28 U.S.C. § 157(c)(2).

15                                                III.

16                                            **PARTIES**

17   *A.*     ***Plaintiffs***

18           *1.*     ***Voluntary Debtor Plaintiffs***

19           15.     Plaintiff SunCal Acton is the owner of the "Acton Estates" Project.

20           16.     Plaintiff SunCal Bickford is the owner of the "Bickford Ranch" Project.

21           17.     Plaintiff SunCal Del Rio owns CFD bonds proceeds on the "Del Rio" Project.

22           18.     Plaintiff SunCal Emerald is the owner of the "Emerald Meadows" Project.

23           19.     Plaintiff SCC Communities is the owner of the "Joshua Ridge" Project.

24           20.     Plaintiff SJD Partners is the former owner of the Pacific Point Project.

25           21.     Plaintiff SJD Development is the holder of an interest in SJD Partners, the owner of

26   the Pacific Point Project.

27           22.     Plaintiff Palmdale Hills is the owner of the "Ritter Ranch" Project.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

                                                 4
                    **THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

23.    Plaintiff SunCal Summit is the owner of certain parcels of the "Summit Valley" Project, and is the holder of interests in Debtors Seven Brothers and Kirby, the owners of certain other parcels of the Summit Valley Project.

24.    Plaintiff SunCal Tesoro is the owner of the "Tesoro Burnham" Project.

25.    Plaintiff SunCal I is the holder of interests in SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit.

26.    Plaintiff SunCal III is associated with the Acton, "Beaumont Heights," Bickford Ranch, Emerald Meadows, "Johannson Ranch," and Summit Valley Projects.

**2.    _The Trustee, on behalf of the Trustee Debtors_**

27.    The Trustee is authorized to bring, and hereby does bring, claims on behalf of the following Trustee Debtors:

(a)    SunCal Century City, former owner of the "Century City" Project;

(b)    SunCal Torrance, owner of the "Del Amo" Project;

(c)    SunCal Delta Coves, owner of the "Delta Coves" Project;

(d)    SunCal Heartland, owner of the "Heartland" Project;

(e)    SunCal Marblehead, owner of the "Marblehead" Project;

(f)    SunCal Northlake, owner of the "Northlake" Project;

(g)    SunCal Oak Knoll, owner of the "Oak Knoll" Project;

(h)    SunCal Oak Valley, owner of the "Oak Valley" Project; and

(i)    SunCal PSV, owner of the "Palm Springs Village" Project.

28.    All of the Plaintiff Debtors are Delaware limited liability companies, except for SJD Partners, a California limited partnership, and SJD Development, a California corporation.

29.    Five of the twenty-six administratively-consolidated Debtors are not currently named as plaintiffs in this action. As to four of the Debtors, this is because none of the Defendants herein has filed proofs of claim against these Debtors, since the Defendants' loans are allegedly secured by other Debtors' interests in these Debtors, but not in property of these Debtors directly. These four Debtors are:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

5

        (a)    SunCal Johannson, owner of the Johannson Ranch Project;

        (b)    SunCal Beaumont, owner of the Beaumont Heights Project;

        (c)    Seven Brothers, owner of certain parcels of the Summit Valley Project; and

        (d)    Kirby, owner of certain other parcels of the Summit Valley Project.

Plaintiffs reserve the right to amend their complaint to add these Debtors as plaintiffs in this adversary proceeding, including, but not limited to, in the event that substantive consolidation is granted

      30.    The fifth non-plaintiff Debtor, SCC Palmdale, is the holder of an interest in Plaintiff Debtor Palmdale Hills (itself the owner of the Ritter Ranch Project). LCPI made the $95 million "SCC Palmdale Loan" to Debtor SCC Palmdale. The SCC Palmdale Loan is not currently "at issue" because, unlike the other two loans made by LCPI—the SunCal Communities I Loan and the Ritter Ranch Loan (described below)—it is undisputed that LCPI did not sell this loan to defendant Fenway. Fenway is sued herein based on (among other things) LCPI's conduct with regard to the other two LCPI Loans, but only LCPI itself could be sued with regard to the SCC Palmdale Loan.

      31.    Plaintiffs are of the belief that suing LCPI with regard to the SCC Palmdale Loan would not violate LCPI's automatic stay, because LCPI has already stipulated that its stay does not apply to that Loan, as reflected in the Lehman Entities' First Amended Disclosure Statement in the underlying bankruptcy proceedings [D.E. 710, at p.71].[5] However, in order to avoid any suggestion that Plaintiffs are contravening this Court's ruling that LCPI cannot be named as a defendant herein without obtaining relief from stay, SCC Palmdale has been removed as a named plaintiff herein. Should the BAP Ruling on which the Court relied is reversed, stay relief be granted, and/or substantive consolidation be granted, Plaintiffs reserve the right to amend their complaint to add SCC Palmdale as a plaintiff.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

---

[5] The Lehman Entities also represented to counsel for the Debtors that they would file the stipulation, but apparently have not yet done so.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

*B.*   ***Defendants***

32.   On information and belief, Defendant Lehman ALI is a Delaware corporation with its principal place of business in New York, New York, is a wholly-owned subsidiary of the parent Lehman entity, LBHI. Lehman ALI is not in bankruptcy.

33.   On information and belief, Defendant OVC is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI. OVC has purported to be the assignee of Lehman ALI's loan to Plaintiff SunCal OakValley and of the associated lien on the Oak Valley Project. It is not in bankruptcy.

34.   On information and belief, Defendant Northlake Holdings is a Delaware limited liability company, and is a wholly-owned subsidiary of LBHI. Northlake has purported to be the assignee of Lehman ALI's loan to Plaintiff SunCal Northlake and of the associated lien on the Northlake Project. It is not in bankruptcy.

35.   OVC and Northlake are being sued both in their capacity as successors to Lehman ALI, and for their own wrongdoing.

36.   On information and belief, Defendant LV Pacific Point is a Delaware limited liability company with its principal place of business in Orange County, California, and is a wholly-owned subsidiary of LBHI. LV Pacific Point has purported to be the assignee of Lehman ALI's interest in the second priority deed of trust on the Pacific Point Project formerly owned by Plaintiff SJD Partners and of the associated lien. LV Pacific Point foreclosed on, and was the purchaser upon foreclosure of, the Pacific Point Project. LV Pacific Point is being sued both in its capacity as a successor to Lehman ALI, and for its own wrongdoing.

37.   On information and belief, defendant Lehman Re is a Bermuda corporation with its principal place of business in New York, New York, and is a wholly-owned subsidiary of LBHI. On information and belief, Lehman Re is the transferee of some or all of Lehman ALI and/or LV Pacific Point's interests in the Pacific Point First and/or Pacific Point Second Loan (described below) to SJD Development and SJD Partners, and of the associated liens on the Pacific Point Project.

38.   On information and belief, Defendant Fenway is a Delaware limited liability

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

7

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

company.  Fenway is the transferee of loans to Plaintiffs SunCal Acton, SunCal Bickford, SunCal

Delta Coves, SunCal Emerald, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal

Oak Valley, SunCal PSV, Palmdale Hills, SunCal Summit, SunCal I and SunCal III, and of the

associated liens on the Acton Estates, Bickford Ranch, Delta Coves, Emerald Meadows, Heartland,

Marblehead, Northlake, Oak Valley, Palm Springs Village, Ritter Ranch and Summit Valley

Projects, and/or other assets of these Plaintiff Debtors, including SunCal I's interests in SunCal

Beaumont and SunCal Johannson, and SunCal Summit's interests in Seven Brothers and Kirby.

## IV.

## FACTUAL ALLEGATIONS

### A.    *The SunCal-Lehman Venture*

39.    SunCal is a family-owned and -operated California real estate business, and is the

direct or indirect parent of each of the Debtors.  SunCal is a highly-experienced and successful

developer in business for over 70 years.  It manages virtually all aspects of real estate development,

from acquiring properties and obtaining governmental entitlements to construction and build-out,

culminating in the sale of lots to merchant builders.  SunCal has gained an expertise in these matters,

and has formed relationships with many governmental entities and businesses throughout California.

40.    The land development process is inherently capital intensive due to the size and costs

of the assets being acquired, the front-loaded capital requirements, and the length of time between

the initial acquisition and the ultimate realization of profits.

41.    The acquisition and development of SunCal projects are typically financed through

some combination of debt, mezzanine or "mezz" debt (secured by an equity ownership interest in the

entity that owns the property), and/or equity contributions.

42.    SunCal historically financed its projects with loans and/or equity from a number of

different sources.  However, beginning over a decade ago, an increasing number of SunCal's

projects were financed by Lehman, as Mark Walsh ("Walsh"), the head of Lehman's Global Real

Estate Group, began cultivating a business relationship with Bruce Elieff, CEO and owner of the

SunCal parent entity, SCC.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

43.   In 1997, Lehman made its first investment with SunCal via a $20 million mezzanine loan to Plaintiff Debtor SJD Partners on the Pacific Point Project. As Lehman worked with SunCal on additional projects, a pattern emerged: Lehman's investments were structured with some type of participation by Lehman in the profitability of the projects, either as an equity partner, pursuant to a contingent interest loan that contains a profit participation component, or through a mezz loan with significant return.

44.   Lehman also provided debt financing on a number of SunCal projects, but typically only when Lehman was also a participant in the profitability of the project.

45.   When Lehman participated as a lender on SunCal projects, it was, with rare exceptions, always through Defendants Lehman ALI and/or LCPI.

46.   Soon after its initial investment, Lehman invested in several more projects with SunCal. Each of these early SunCal-Lehman projects proved to be highly profitable for Lehman, with some projects yielding a return on investment of over a hundred percent.

47.   Based on these results, Lehman accelerated its debt and equity participation in SunCal projects. By 2003, Lehman had partnered with SunCal on approximately fifteen projects. By 2007, that number had grown to over forty.

48.   By 2006, Lehman's distributions on its mezzanine and equity investments with SunCal exceeded its contributions by over a hundred million dollars.

49.   Lehman generated quarterly projections regarding the profitability of its investments with SunCal extending out through the year 2015. Lehman anticipated earning at least $2 billion in profits on $4 billion in debt and equity investments over the course of its relationship with SunCal. Lehman thus accelerated its debt participation further. Between 2005 and 2007, Lehman ALI and/or LCPI lent or contributed over $2 billion to the Debtors.

50.   Given Lehman's past and projected profitability, Lehman continued to seek an even closer and more exclusive relationship with SunCal. And SunCal acquiesced, allowing Lehman to take an increasing role in its Projects and finance an increased share of SunCal's business.

51.   For example, in or about 2005, SunCal allowed Lehman—at Lehman's urging—to

9

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   participate in $50 million in gains realized from sales in connection with the "Heritage Fields"

2   project. This generated in excess of $22 million to Lehman, without Lehman having to make any

3   capital investment. SunCal did so without any kind of agreement with Lehman, purely for

4   relationship purposes.

5        52.    There were other instances, such as the College Park and Summerwind projects,

6   where SunCal allowed Lehman to participate—even though others were offering more favorable

7   terms—for the sake of maintaining and building its relationship with Lehman. (LCPI financed the

8   Summerwind project.) Lehman pressured SunCal not to go with DE Shaw on the Century City

9   Project, even though Shaw was offering better terms. Similarly, Lehman pressed SunCal not to use

10   Goldman Sachs on the Marblehead Project. (Both the Century City and Marblehead Projects were

11   financed by Lehman ALI, and both are at issue in this action.)

12       53.    It was not just SunCal that brought Lehman in on projects; the partnership went both

13   ways. Lehman brought SunCal in to develop and manage (and effectively rescue) two large projects

14   that Lehman was already involved in: Terra Lago and Delta Coves (the latter of which is at issue in

15   this suit, and was financed by debt from Lehman ALI.).

16       54.    So close was the SunCal-Lehman relationship that in 2007, Lehman even financed an

17   approximately $40 million unsecured option purchase in connection with the Delta Shores Project—

18   something that would be unheard of from a mere arm's length "lender."

19       55.    In furtherance of Lehman's desire for greater exclusivity, in August 2006, SunCal,

20   through its subsidiary SunCal Communities II, LLC ("SunCal II"), and Lehman, through its wholly-

21   owned and controlled subsidiary, LBREP II/SCLFM, entered into the Operating Agreement of the

22   Lehman SunCal Real Estate Fund LLC (the "Lehman SunCal Fund"). Lehman SunCal Fund is the

23   parent of Plaintiff Debtors SunCal Century City, SunCal Oak Knoll, SunCal Del Amo and SunCal

24   PSV, which own, respectively, the Century City, Oak Knoll, Del Amo and Palm Springs Village

25   Projects at issue in this suit.

26       56.    The purpose of the Lehman SunCal Fund agreement was to make Lehman, with

27   limited exceptions, the exclusive provider of financing for SunCal projects. Under that agreement,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

61767.3

1  "SunCal and its Affiliates shall make available for purchase by the Company (i.e., the Lehman

2  SunCal Fund), and the Company shall have the right of first refusal to purchase . . . all Proposed

3  Properties . . . which are sourced by or brought to SunCal . . . ."   Thus, with limited exceptions,

4  SunCal and its affiliates were prohibited from making any investments in real property not in

5  compliance with the provisions of the Fund.

6      57.   By 2007, Lehman was by far SunCal's biggest source of funding.  Sixty percent of

7  SunCal's total financing came from Lehman.  Two out of every three SunCal projects were financed

8  by Lehman.  Seventy percent of SunCal's debt financing came from loans from Lehman ALI or

9  LCPI.

10  **B.     _The Debtors and Projects at Issue_**

11     58.   Whenever Lehman ALI or LCPI provided financing for SunCal projects, the

12  respective lending entities obtained liens on each property as security for their loans, and/or obtained

13  pledges of equity interests in the SunCal-affiliated entities owning such properties.

14     59.   This lawsuit involves disputes regarding eleven Projects associated with twelve

15  Voluntary Debtor Plaintiffs ("Voluntary Projects"), and nine Projects associated with nine Trustee

16  Debtor Plaintiffs ("Trustee Projects," and collectively with the Voluntary Projects, the "Projects").[6]

17     60.   The Plaintiff Debtors, the Projects they are associated with, and the Defendants who

18  originally made the loan to each Plaintiff Debtor are as follows:

19

20

21

22

23

24

25

26

27

28

[6] The Voluntary Debtor Plaintiffs were able to file voluntary bankruptcies in the first instance, because they did not have Lehman Equity Members whose consents were required for filing.  By contrast, involuntary petitions were initially filed against the Trustee Debtors, and only later were orders for relief entered and the Trustee appointed.

11

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

61767.3

| VOLUNTARY DEBTOR PLAINTIFFS | | |
|---|---|---|
| **Plaintiff Debtor** | **Associated Project** | **Original Lender(s)** |
| SunCal Acton | Acton Estates | LCPI |
| SunCal Bickford | Bickford Ranch | LCPI |
| | | Lehman ALI |
| SunCal Del Rio | Del Rio | Lehman ALI |
| SunCal Emerald | Emerald Meadows | LCPI |
| SCC Communities | Joshua Ridge | Lehman ALI |
| SJD Partners | Pacific Point | Lehman ALI |
| SJD Development | Pacific Point | Lehman ALI |
| Palmdale Hills | Ritter Ranch | LCPI |
| SunCal Summit | Summit Valley (including parcels owned by Seven Brothers and Kirby) | LCPI |
| SunCal Tesoro | Tesoro Burnham | Lehman ALI |
| SunCal I | Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Summit Valley | LCPI |
| SunCal III | Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Summit Valley | LCPI |

| TRUSTEE DEBTOR PLAINTIFFS | | |
|---|---|---|
| **Plaintiff Debtor** | **Associated Project** | **Original Lender(s)** |
| SunCal Century City | Century City (10000 Santa Monica) | Lehman ALI |
| SunCal Delta Coves | Delta Coves | Lehman ALI |
| SunCal Heartland | Heartland | Lehman ALI |
| SunCal Marblehead | Marblehead | Lehman ALI |
| SunCal Northlake | Northlake | Lehman ALI |
| SunCal Oak Knoll | Oak Knoll | Lehman ALI |
| SunCal Oak Valley | Oak Valley | Lehman ALI |
| Sun Cal PSV | Palm Springs Village | Lehman ALI |
| SunCal Torrance | Del Amo | Lehman ALI |

## C.    *The Disputed Lehman Loans at Issue*

61.    The loans at issue in this lawsuit (the "Loans")[7] are as follows:

---

[7] Many of the Loans were amended one or more times in regard to the amount loaned and/or the Projects providing security for the Loans, among other things.  Also, proceeds from some of the later Loans were used to pay down outstanding amounts owing on earlier Loans.  Thus, the table does not necessarily reflect the total funds provided on the Projects.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

12

61767.3

| LEHMAN LOAN | ORIGINAL LENDER | PLAINTIFF DEBTOR(S) | LOAN DATE | LOAN AMOUNT |
|---|---|---|---|---|
| Pacific Point Second Loan | Lehman ALI | SJD Partners | May 1997 | $20,000,000 |
| Bickford Second Loan | Lehman ALI | SunCal Bickford | May 25, 2005 | 30,000,000 |
| Northlake Loan | Lehman ALI | SunCal Northlake | September 9, 2005 | 100,000,000 |
| SunCal Communities I Loan | LCPI | SunCal Acton SunCal Bickford SunCal Emerald SunCal Summit SunCal I SunCal III | November 17, 2005 | 395,313,713.37 |
| Pacific Point First Loan | Lehman ALI | SJD Partners SJD Development | February 16, 2006 | 125,000,000 |
| Oak Valley Loan | Lehman ALI | SunCal Oak Valley | May 23, 2006 | 120,000,000 |
| Century City Loan | Lehman ALI | SunCal Century City | August 11, 2006 | 120,000,000 |
| Oak Knoll / Torrance Loan | Lehman ALI | SunCal Oak Knoll SunCal Torrance | November 30, 2006 | 167,700,000 |
| Ritter Ranch Loan | LCPI | Palmdale Hills | February 8, 2007 | 264,000,000 |
| PSV Loan | Lehman ALI | SunCal PSV | February 12, 2007 | 90,000,000 |
| Delta Coves Loan | Lehman ALI | SunCal Delta Coves | April 20, 2007 | 236,000,000 |
| Marblehead / Heartland Loan | Lehman ALI | SunCal Marblehead SunCal Heartland | October 6, 2007 | 316,061,300 |
| Interim Loan | Lehman ALI | SCC Communities SunCal Tesoro SunCal Del Rio | October 31, 2007 | 20,000,000 |
| TOTAL | | | | $2,004,075,013.37 |

62.    Each of the above loans is secured by an alleged first-priority deed of trust in real property owned by the respective Debtors, with the following exceptions:

(a)    The Pacific Point Second Loan is secured by an alleged second-priority deed of trust on the Pacific Point Project previously owned by Plaintiff SJD Partners.

(b)    The Bickford Second Loan is secured by an alleged second priority deed of trust on the Bickford Project owned by Plaintiff SunCal Bickford.

(c)    The SunCal Communities I Loan is secured by (1) alleged first-priority deeds of trust on the Acton Estates, Bickford Ranch, and Emerald Meadows Projects owned by Plaintiffs SunCal Acton, SunCal Bickford, and SunCal Emerald, respectively, (2) alleged pledges of Plaintiff SunCal I's interests in SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit; and (3) alleged pledges of Plaintiff SunCal Summit's interests in Seven Brothers and Kirby.

(d)    The Pacific Point First Loan is secured by an alleged first-priority deed of trust on the Pacific Point Project previously owned by Plaintiff SJD Partners, as well as an

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400  FAX:(310) 552-8400

13

61767.3

1    alleged pledge of SJD Development's interest in Plaintiff SJD Partners.

2         (e)    The Ritter Ranch Loan is secured by an alleged first-priority deed of trust on

3    all real property and an alleged first priority lien on all personal property owned by Plaintiff

4    Palmdale Hills.

5         (f)    The Interim Loan is secured by alleged first-priority deeds of trust on the

6    Joshua Ridge and the Tesoro Burnham Projects owned by Plaintiffs SCC Communities and

7    SunCal Tesoro, respectively, and an alleged first-priority lien on the net proceeds of the Del

8    Rio CFD Bonds owned by Plaintiff SunCal Del Rio.

9    **D.    _Lehman ALI and LCPI Saddle the Projects with Unnecessary Excessive Debt_**

10        63.    In late 2005, around the same time that Lehman was negotiating to become SunCal's

11   exclusive financing partner, LCPI made the "SunCal Communities I Loan" to Plaintiffs SunCal I,

12   SunCal III, SunCal Acton, SunCal Bickford, SunCal Emerald, and SunCal Summit, the claimed

13   outstanding amount of which is $343,221,391.

14        64.    Based on the SunCal Communities I Loan, LCPI has filed identical proofs of claim

15   for $343,221,391 against the estates of Plaintiffs SunCal I, SunCal III, SunCal Acton, SunCal

16   Bickford, SunCal Emerald, and SunCal Summit.[8]

17        65.    The proceeds from the SunCal Communities I Loan Agreement were used in part to

18   fund the Acton Estates, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch,

19

20   [8] Although Debtors SunCal Beaumont or SunCal Johannson received some of the funds from
this Loan, LCPI did not file claims against these Debtors as it has no alleged lien on their property,

21   but rather has an alleged lien on SunCal I's interest in these Debtors. Similarly, LCPI did not file
claims against Debtors Seven Brothers or Kirby, as it has no alleged lien on their property, but rather

22   has an alleged lien on SunCal Summit's equity interest in these Debtors. Accordingly, these four
Debtors are not currently named as plaintiffs herein. Should the Debtors' estates be substantively

23   consolidated, Plaintiffs reserve the right to amend their complaint to add these Debtors as plaintiffs.

24   LCPI also filed a $120 million proof of secured claim against Debtor SCC Palmdale based on
the SCC Palmdale Loan. Although this Loan was made to SCC Palmdale, and although it was

25   secured by SCC Palmdale's interest in Plaintiff Palmdale Hills, the entire Loan proceeds were used
by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve

26   either SCC Palmdale or Palmdale Hills. LCPI thus burdened SCC Palmdale with $120 million in
debt for which it got no benefit. Should the BAP Ruling on which the Court relied for dismissal of

27   LCPI be reversed, stay relief be granted, and/or substantive consolidation be granted, Plaintiffs
reserve the right to amend their complaint to add SCC Palmdale as a plaintiff.

28

14

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    and Summit Valley Projects. However, the funds advanced under this Loan were distributed such

2    that some Debtors received a large portion of the funds, while others received little or none at all.

3        66.    Specifically, the following Plaintiffs received the following amounts: SunCal Acton

4    ($380,069); SunCal Bickford ($174,570,287); SunCal Emerald ($44,763,858); SunCal Summit

5    ($9,925,373).[9] Plaintiffs SunCal I and SunCal III each received *nothing* for their $343 million in

6    indebtedness.

7        67.    Each of these Plaintiffs was saddled with a $343 million loan obligation, even though

8    each received only a fraction of that amount, if anything. By structuring the collateral for this Loan

9    in this matter, LCPI ensured that it would enjoy a security interest in the full value of the entire pool

10    of the properties—even in a good market in which Project values may have increased. At the same

11    time, LCPI effectively shifted its credit risk to other creditors, even though neither these Plaintiffs

12    nor their other creditors obtained any benefit in exchange for bearing this additional risk.

13        68.    Lehman ALI similarly cross-collateralized several Loans among multiple Plaintiffs

14    and Projects so as to shift its credit risk to other creditors and increase its control over the Plaintiffs:

15        (a)    The Oak Knoll/Torrance Loan was cross-collateralized by the Oak Knoll

16    Project and the Del Amo Project. Lehman ALI filed identical proofs of claim arising from

17    this Loan against Plaintiffs SunCal Oak Knoll and SunCal Torrance in the amount of

18    $158,141,365. However, the loan proceeds received by SunCal Oak Knoll was only

19    $103,575,426, and by SunCal Torrance only $45,185,350.

20        (b)    The Marblehead/Heartland Loan was cross-collateralized by the Marblehead

21    Project and the Heartland Project. Lehman ALI has filed identical proofs of claim arising

22    from this Loan against Plaintiffs SunCal Heartland and SunCal Marblehead in the amount of

23    $354,325,126. However, the loan proceeds received by SunCal Marblehead was only

24    $258,843,352, and by SunCal Heartland only $49,594,848.

25        (c)    The Interim Loan was secured by alleged first-priority deeds of trust on the

26    Joshua Ridge and Tesoro Projects, and an alleged first-priority lien on the proceeds of the Del

27

28        [9] Non-plaintiff Debtors SunCal Beaumont and SunCal Johannson received $42,030,925 and
$14,636,674, respectively.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

15

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

Rio CFD Bonds owned by SunCal Del Rio. Lehman ALI has filed identical proofs of claim arising from this Loan against Plaintiffs SCC Communities, SunCal Tesoro, and SunCal Del Rio in the amount of $23,795,013. However, none of the proceeds from the Interim Loan were used to fund any of these Plaintiffs' Projects.

**E.      _Lehman ALI's and LCPI's Promises to Fund the Plaintiff Debtors' Projects_**

69.      For years prior to 2007, the SunCal-Lehman partnership thrived, and the parties prospered in their venture together. As of the start of 2007, Lehman projected making billions in profits over the ensuing years from its relationship with SunCal. However, in or about 2007, the real estate market experienced a downturn, and many of the Projects declined significantly in value.

70.      Beginning in or about the summer of 2007, SunCal's CEO, Bruce Elieff, and its President, Stephan Elieff, who were also authorized agents of each of the Plaintiff Debtors, had high-level discussions with Lehman representatives—including Walsh, as well as Paul Hughson ("Hughson") and Frank Gilhool ("Gilhool"), Managing Directors of Global Real Estate—to address these developments.

71.      Each of these individuals at Lehman had both apparent and actual authority to act and make representations on behalf of both Lehman ALI, in its capacity as lender to the nine Trustee Debtors and Plaintiffs SunCal Bickford, SJD Partners, SJD Development, SunCal Del Rio, SCC Communities, and SunCal Tesoro; and LCPI, in its capacity as the lender to SunCal Bickford and the remaining Voluntary Debtor Plaintiffs. (Gilhool would later sign key agreements with SunCal and the Debtors as the authorized signatory on behalf of not only LBHI, but also Lehman ALI, LCPI, and other Lehman Defendants.)

72.      In their dealings with SunCal, Walsh and the other Lehman executives generally made no distinction between the debt and equity interests, or between Projects financed by Lehman ALI debt and Projects financed by LCPI debt. As the financing partner in the parties' venture, Lehman would determine which Lehman entity would provide funding on which Projects, and would dictate the form that the funding would take, according to whatever suited Lehman's needs.

73.      The SunCal principals, on behalf of the Debtors, expressed to the Lehman executives,

16

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

in their capacity as agents of Lehman ALI and LCPI, that Loans on the Projects were out of balance, and that SunCal would not be able to finance its operations or manage the Projects without assistance. SunCal suggested shutting down or at least slowing development of the Projects.

74.    On information and belief, it was not in Lehman ALI or LCPI's interest for SunCal to discontinue development activities, even though SunCal would not be able to move forward without additional funds. On information and belief, Projects with out-of-balance loans and/or slowed or halted construction would be harder for Lehman ALI or LCPI to market or syndicate, and these lenders' parent, LBHI, would likely be forced to report lower Project values on its books. On information and belief, Lehman ALI and LCPI wanted to create the appearance that they would recoup all, or a substantial portion, of their multi-billion dollar investment in the SunCal Projects, at least in part to prop up LBHI's weakening stock price for the benefit of the securities markets and to entice potential investors that LBHI was pursuing to fortify its own faltering finances.

75.    Walsh, on behalf of Lehman ALI and LCPI, instructed SunCal's Bruce Eileff not to slow down or stop work. He assured SunCal and the Debtors that Lehman ALI and LCPI would provide the necessary funding to pay vendors and keep development of their Projects moving forward, and that they would restructure the Debtors' Loans.

76.    Similarly, in numerous telephone conversations between Gilhool and SunCal personnel, including SCC's COO, Frank Faye ("Faye"), and its General Counsel, Bruce Cook ("Cook") (who were also officers of each of the Debtors), in 2007 and 2008, Gilhool assured SunCal that Lehman ALI and LCPI were committed to funding the debts and obligations of the Projects and the work they directed to be performed; that funding would be forthcoming; and that SunCal and the Debtors should continue to have contractors undertake work to develop and preserve the value in the Projects.

77.    In reliance on these representations, SunCal and the Debtors continued to move forward with the Projects and incurred substantial expenses in hiring contractors to maintain and/or develop them and to deal with public health and safety issues.

78.    Substantially all of the unsecured creditor claims and mechanic's lien claims that

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

17

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

1   have been filed against each of the Plaintiff Debtors' estates are obligations that Lehman ALI or

2   LCPI authorized the Plaintiff Debtors to incur and promised to provide funding for and/or promised

3   to assume.[10]  A list of the unsecured creditors that have filed proofs of claims against each of the

4   Plaintiff Debtors, and the amounts of their claims, is included in Appendix A hereto.  A list of

5   mechanic lien claims filed against each of the Plaintiff Debtors, and the amounts of their claims, is

6   included in Appendix B hereto.

7   **F.     _Lehman ALI and LCPI's Imposition of Control Over the Debtors and the Projects_**

8       79.     Prior to the market downturn, Lehman afforded its partner SunCal substantial

9   discretion to use its expertise to manage development of the Projects. SunCal, primarily via the

10  Debtors, would contract with third-party vendors to perform grading, health and safety compliance,

11  construction, landscaping, and other necessary services on the Project sites, and would coordinate

12  with municipalities for easements, entitlements and other requirements to proceed with development.

13  SunCal and the Debtors would conduct periodic budget meetings with Lehman ALI and LCPI to

14  discuss anticipated expenses over the next quarter; SunCal and the Debtors would submit to Lehman

15  ALI or LCPI documentation of expenses incurred on a monthly basis; and the applicable Lehman

16  lender, Lehman ALI and/or LCPI, in the regular course would remit payment to SunCal and the

17  Debtors so that the third-party vendors could be paid.

18      80.     However, beginning in or about 2007, Lehman ALI and LCPI became much more

19  "hands on" in scrutinizing—and approving—budgets and expenses. On periodic conference calls,

20  SunCal would explain what Project payables had to be paid and what work had to be performed on

21  the Projects, and Lehman ALI or LCPI would have to give pre-authorization before any work could

22  occur or expenses be incurred.  Lehman ALI and LCPI would unilaterally dictate what future work

23  would proceed, and also decided what payables were "urgent" and what other payables could be

24

25

26      [10] Pursuant to a settlement between the Trustee, on behalf of SunCal Century City, and
former defendant Danske Bank A/S, London Branch ("Danske"), whereby Danske took ownership

27  of the Century City property and paid $5.3 million in full satisfaction of the Century City Loan and
all claims based thereon, the Trustee is no longer pursuing a claim for equitable subordination on

28  behalf of SunCal Century City, or any other claims against Danske.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1  deferred. Lehman ALI and LCPI thereby effectively took over not only financial control of the

2  respective Debtors' Projects, but ultimate management control as well.

3      81.   Lehman ALI and LCPI had not only input on, but importantly, veto power over any

4  expenditure undertaken on the Projects. Lehman ALI and LCPI thus made SunCal, the Debtors and

5  their creditors dependent on their willingness to continue financing the Projects, and so Lehman ALI

6  and LCPI were in full control of the Projects.

7      82.   Lehman ALI and LCPI also used their control to impose onerous financing terms that

8  did not benefit the Debtors.

9      83.   For example, when SunCal initially approached Lehman ALI and LCPI about the

10  Projects' financial difficulties, they assured SunCal of immediate financing to cover operating

11  expenses, starting out at the $20 to $25 million range per month, and increasing from there.

12  However, only one such loan of $20 million (the October 2007 Interim Loan from Lehman ALI) was

13  made, as what was supposed to be "quick" financing got bogged down in Lehman ALI's extensive

14  documentation.

15      84.   Moreover, Lehman ALI insisted that SunCal put up security, previously

16  unencumbered, to secure that financing, although that was not originally contemplated. In that

17  connection, SunCal put up the interests of SunCal Del Rio, SCC Communities, and SunCal Tesoro

18  in the Del Rio, Joshua Ridge and Tesoro Projects, respectively, as security for the Loan.

19      85.   In addition, at the last minute, Lehman ALI decided to specify exactly what the $20

20  million could be used for, whereas all the way through the discussions, the money was simply to

21  assist SunCal in meeting its operating expenses, as SunCal determined. Ultimately, Lehman ALI

22  kept the funds and only disbursed them after it had approved the disbursements, most of which went

23  to pay expenses of the Ritter Ranch Project, not any of SunCal Del Rio's, SCC Communities', or

24  SunCal Tesoro's encumbered Projects.

25  **G.**    _The Parties' Restructuring Agreement_

26      86.   SunCal and the Debtors continued to work with the contractors and develop the

27  Projects in reliance on a promised overall "work out" or restructuring of the Projects and of the

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1   Loans and/or liens held by Lehman ALI and LCPI, as well as an assumption of SCC's and Elieff's

2   indemnity liability on surety bonds covering work that had been done and was being done on the

3   Projects. (SCC and Elieff had agreed to be indemnitors on the bonds in reliance on the relationship

4   with Lehman and on the parties' mutual understanding that, although the Debtors were technically

5   the primary obligors on the bonds, Lehman ALI and LCPI were, in effect, the primary financial

6   obligors, were well aware of the work that was required by the Projects' respective municipalities to

7   be performed and bonded in order for development to proceed, and agreed to be responsible for

8   payment of that work.)

9       87.     It was contemplated as of the October 2007 Interim Loan that a restructuring

10  agreement would be entered into shortly, by no later than January or February of 2008. However,

11  implementation was again dragged out due in large part to Lehman's extensive documentation.

12      88.     In the meantime, until a restructuring agreement was entered into, Lehman ALI and

13  LCPI stopped paying vendor payables, nor would they pay any management fees of SunCal

14  Management LLC, which was managing each of the Debtors' Projects.

15      89.     As the restructuring was pushed further and further out and Lehman ALI and LCPI

16  continued to refuse to provide funding—despite their prior assurances—SunCal was effectively

17  drained of liquidity, and so the Debtors became even more desperate and more dependent on

18  Lehman ALI and LCPI financing.

19      90.     Lehman ALI and LCPI used the Debtors' vulnerability to their advantage in

20  negotiating a restructuring agreement that was tipped heavily in Lehman's favor. (They also

21  specifically exploited the fact that SCC and Bruce Elieff were indemnitors on millions of dollars

22  worth of surety bonds that covered work being done on the Debtors' Projects, including work that

23  Lehman ALI and LCPI had specifically authorized and agreed to pay for. If Lehman ALI and LCPI

24  did not pay for this work as promised, SCC, and Elieff personally, would be exposed to massive

25  bond liability. Hughson, in his capacity as an agent of, among others, Lehman ALI and LCPI,

26  directly threatened Bruce Elieff that if SunCal did not agree to what the Lehman parties wanted, they

27  would leave Elieff "hung out on the bonds.")

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

91.     For example, Lehman had indicated that it was open to suggestions from SunCal regarding the terms of a restructuring agreement.  SunCal proposed that, particularly given the long and profitable history of the parties' venture together, the restructuring should take into account a reasonable view of the values of the properties, so that Lehman ALI and LCPI would at least in part share the burden of the market downturn.

92.     In response, Lehman became irate and countered with what was essentially a take-it-or-leave-it offer.  Under the counter-proposal, (1) Lehman ALI and LCPI would be paid in full for every dollar that they had invested with SunCal that had not been returned, including interest on those amounts, default interest, and penalty fees; (2) Lehman would recoup all money that it had put in as equity in certain projects; and (3) Lehman would receive a 15% return on all funds contributed (both debt and equity) until they were returned—all without regard to the value of the properties.  For the most part, this is how the restructuring agreement was ultimately structured.

93.     Similarly, when the restructuring agreement was finally entered into in late May 2008, SunCal sought to have its management fees reimbursed as of February 1, 2008, the date by which the restructuring agreement should have and would have been entered into but for Lehman's delays.  Lehman ALI and LCPI refused, and in fact insisted upon a waiver of all past management fees, with only management fees from May 15, 2008 onward being payable, at reduced rates.

94.     Lehman ALI and LCPI also required that SunCal pledge $33 million of its equity interest in the four Lehman SunCal Fund projects (Century City, Del Amo, Oak Knoll and Palm Springs Village) as partial consideration for Lehman ALI and LCPI's satisfaction of existing debt on the other Projects subject to the restructuring agreement.  SunCal did not believe these Projects (and Palm Springs Village in particular) should have to be included as collateral to secure the restructuring of the other Projects.  Instead, SunCal felt that LBREP II/SCLFM, the Lehman equity member in the Lehman SunCal Fund, should cover the Fund Projects' expenses, as there was plenty of capital yet to be called to fund the existing debts and other needs of these Projects, per the terms of the Fund's Operating Agreement.  (Lehman had committed to contributing up to $600 million in equity through the Fund, but had contributed only a fraction of that amount.)  But Lehman ALI and

21

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

61767.3

1  LCPI insisted, and SunCal had no choice but to acquiesce.

2      95.    Finally, on May 23, 2008, SunCal and certain of the Debtors entered into an omnibus

3  "Restructuring Agreement" with LBHI, Lehman ALI and other Lehman-controlled entities. (LCPI,

4  for reasons known to Lehman ALI and LCPI, was not a signatory to the Restructuring Agreement,

5  although it was a signatory to the subsequent "Settlement Agreement" signed in August 2008.)

6  Lehman's Gilhool signed the Restructuring Agreement on behalf of each of these entities.

7      96.    The Restructuring Agreement was designed to culminate in a closing ("Closing")

8  with the parties entering into a Settlement Agreement, the form of which was attached to the

9  Restructuring Agreement. Under the Settlement Agreement, new Lehman-controlled entities (each

10  with "SCLV" in its name, for "SunCal-Lehman Venture") would take title to the properties, assume

11  Debtors' debt obligations to Lehman ALI and LCPI and assume bond obligations previously owed

12  by SunCal, Elieff and the Debtors. These SCLV entities—along with what was purported by

13  Lehman ALI and LCPI to be a substantial-net-worth Lehman-related entity—were also to provide

14  indemnifications to SunCal and the Debtors. The Settlement Agreement was signed by the SunCal

15  and Lehman parties on August 25, 2008. But as explained below, the Lehman parties did not close.

16  **H.**    **_The Projects Subject to the Restructuring Agreement_**

17      97.    As originally executed in May 2008, the Restructuring Agreement applied to twelve

18  of the twenty Projects (as well as several other projects not at issue in this lawsuit): (1) Acton

19  Estates; (2) Beaumont Heights; (3) Bickford Ranch; (4) Emerald Meadows; (5) Heartland; (6)

20  Johannson Ranch; (7) Marblehead; (8) Northlake; (9) Oak Valley; (10) Pacific Point; (11) Ritter

21  Ranch; and (12) Summit Valley. The Plaintiff Debtors that owned and/or held equity interests in the

22  owners of these Projects were signatories to the May 2008 agreement.[11]

23

---

24      [11] Specifically, the Restructuring Agreement was entered into by, among others, the

25  "Borrowers," "Grantors" and "Pledgors," as defined in Annex 1 thereto. The "Borrowers" included
Plaintiffs SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD

26  Partners, Palmdale Hills, SunCal I, SunCal III, and SunCal Bickford.
    The "Grantors" included Plaintiffs SunCal Marblehead, SunCal Heartland, SunCal

27  Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SunCal Bickford, SunCal Acton,
SunCal Summit and SunCal Emerald, and Debtors SunCal Beaumont and SunCal Johannson.

28      The "Pledgors" included Plaintiffs SunCal I, SunCal Summit and SJD Development.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

22

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

98.     Between May and August 2008, four additional projects were added to the
Restructuring Agreement by agreement of the parties: (1) Del Rio; (2) Joshua Ridge; (3) Palm
Springs Village; and (4) Tesoro Burnham.  Accordingly, the Plaintiffs associated with these
Projects—SunCal Del Rio, SCC Communities, SunCal PSV, and SunCal Tesoro—became parties to
the Restructuring Agreement as amended.  These Plaintiff Debtors were signatories to the August
25, 2008 Settlement Agreement, along with the Debtors associated with the original twelve Projects,
as "Borrowers" and/or "Grantors."

99.     Lehman ALI at first held the Delta Coves Project out from the Restructuring
Agreement, apparently because of the problems it was having with a separate participant in that
Project.  But later in the summer, Lehman ALI indicated that it wanted that Project added as well.
SunCal and SunCal Delta Coves provided Lehman ALI information as to management fees, budgets,
and the like with respect to that Project being part of the restructuring.  But Delta Coves was not
formally added to the Restructuring or Settlement Agreement by the time that the parent Lehman
entity, LBHI, filed for bankruptcy and Lehman ALI, LCPI and the other Lehman entities stopped
moving forward with Closing.

100.    Thus, four Projects were not formally added to the Restructuring Agreement—
Century City, Delta Coves, Oak Knoll and Del Amo; and the four Debtors associated with these
Projects—SunCal Century City, SunCal Delta Coves, Suncal Oak Knoll and SunCal Torrance—
were not signatories to the Settlement Agreement.  Lehman ALI was the lender on each of these
Projects, three of which were part of the Lehman SunCal Fund.

101.    However, even as to these four Projects, Lehman ALI engaged in the same course of
conduct that it had regarding the other Projects regarding representations of funding.  Lehman ALI
encouraged SunCal and these four Plaintiff Debtors to continue developing these Projects, and made
assurances of payment.  Later, Lehman ALI approved all expenses, told these Plaintiffs what work to
move forward with, and promised it would pay for such work.  These Plaintiffs performed
substantial work and incurred millions in third-party debt in reliance on Lehman ALI's promises of
payment.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

23

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

*I.* ***Lehman ALI's Obligations to Fund Under the Restructuring Agreement***

102. Pursuant to the Restructuring Agreement, Lehman ALI, "as the Lender with respect to each Loan," committed, among other things, to: (1) make advances under existing loans to fund the continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the accrued outstanding subcontractor payables, i.e., to make sure that the Projects' creditors were paid for their work; and (3) to Close the transaction, whereby related Lehman entities would assume the debt and obligations of the Projects.

103. SunCal and the Plaintiff Debtors signed the Restructuring Agreement with Lehman ALI with the understanding that Lehman ALI was by that point the entity that held the various first trust deeds and/or pledged interests on all of the Projects subject to the Restructuring Agreement, and that this was the reason why Lehman ALI, and not LCPI, was the signatory as "Lender."

104. In any event, even after the Restructuring Agreement was signed, Lehman continued to make no distinction between LCPI-financed Projects and Lehman ALI-financed projects, and continued promises of financing emanated from the same Lehman representatives.

105. SunCal and the Debtors believed and relied on Lehman ALI's and LCPI's promises to maintain the long-term value of the Projects and that Lehman ALI and LCPI intended to act in good faith to continue with those Projects.

106. And it appeared—at least for a short while—that might be the case. Lehman ALI arranged for a third party, Radco, to settle outstanding contractor payables. On information and belief, Radco was provided some limited funding and authority to negotiate settlements, and did in fact do so with some creditors. (Funding for settlements on Lehman ALI- and LCPI-funded Projects came from the same source—loan proceeds from Lehman.) Lehman ALI and LCPI also provided approval for new work on the Projects, and Lehman ALI provided payment for some of it. But this funding was minimal and soon stopped.

*J.* ***Lehman ALI and LCPI Fail to Fund the Projects as Promised***

107. In the summer of 2008, SunCal and the Debtors were unaware that Lehman was facing a looming financial crisis or that an LBHI bankruptcy was impending. However, Lehman's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

1  concealed liquidity problems were impacting Lehman ALI's and LCPI's conduct.

2      108.    About a month prior to LBHI filing for bankruptcy in September 2008, Lehman ALI

3  withdrew funding and settlement authority from Radco, and so halted the process of resolving

4  millions of dollars of outstanding contractor payables on the Projects subject to the Restructuring

5  Agreement. This was work that Lehman ALI and/or LCPI had previously authorized and directed

6  SunCal to undertake, but that Lehman ALI later refused to pay for. The contractors would not

7  perform new work unless they received payment for work already done. The halting of Radco's

8  efforts further impeded development of the Projects and also impeded Plaintiffs' ability to deal with

9  public health and safety issues. Radco ultimately ended up resolving only a fraction of the total

10  outstanding payables.

11      109.    On information and belief, Lehman ALI arranged for these negotiations to occur at

12  least in part so it could maintain the appearance that the Projects would be funded and their value

13  maintained, so that LBHI would not have to write-down the Projects' values on its balance sheet.

14      110.    Even as Lehman ALI was pulling back Radco's authority to fund, Lehman ALI's and

15  LCPI's Gilhool continued to assure SunCal personnel, including Faye and Cook, that Lehman ALI

16  and LCPI were committed to funding the Project obligations and paying for lender-authorized work,

17  that the funds were coming, and that SunCal and the Debtors should continue work on the Projects.

18      111.    Lehman ALI also failed to provide the funding promised on the four Projects that

19  were not made part of the Restructuring Agreement.

20      112.    At an August 25, 2008 meeting to sign closing documents for the Restructuring

21  Agreement held in Los Angeles—just days after most of the Loans and associated liens had secretly

22  been sold to Fenway—the Lehman parties announced that they wanted to push the Closing date out

23  another month to September 30, 2008, ostensibly in order to obtain a few additional (and easily

24  obtainable) third party consents. SunCal, still believing that the Lehman parties owned the Loans

25  and were acting in good faith, agreed to the extension to September 30, 2008.

26      113.    Cook, among others, on behalf of SunCal and the Debtors, and Gilhool, on behalf of

27  Lehman ALI, LCPI, and the other Lehman parties, signed hundreds of pages of settlement

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

25

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1   documents at the August 25 meeting, including the Settlement Agreement itself. Specifically,

2   Gilhool signed the settlement documents on behalf of, among others, OVC and Northlake

3   Holdings—Lehman affiliates that had apparently been assigned the Oak Valley and Northlake Loans

4   and associated liens at some point after the Restructuring Agreement was entered into. OVC and

5   Northlake Holdings were controlled and represented by the same individuals within Lehman that

6   represented and controlled Lehman ALI. These Lehman entities succeeded to Lehman ALI's

7   respective obligations to Plaintiffs SunCal Oak Valley and SunCal Northlake.

8        114.    Weil, Gotshal & Manges, the attorneys for Lehman ALI, LCPI, OVC and Northlake

9   Holdings (and who are also their bankruptcy counsel), took all of the original signed settlement

10   documents with them, claiming that they would provide copies to SunCal and the Debtors and that

11   the Closing would occur shortly thereafter. (Despite months of requests, Lehman ALI, LCPI, OVC

12   and Northlake Holdings only recently produced these signature pages in response to formal

13   discovery requests.)

14   **K.    _Lehman ALI, LCPI, OVC and Northlake Holdings Secretly Shuffle Their Interests in the_**

15        **_Plaintiff Debtors' Loans_**

16        115.    As discussed in more detail below, unbeknownst to SunCal or the Debtors at the time,

17   on or just prior to August 22, 2008—days before Lehman ALI, LCPI, OVC and Northlake Holdings

18   signed the Settlement Agreement and related documents that were to culminate in Closing—Lehman

19   ALI transferred a number of its Loans and liens on the Projects to LCPI. OVC and Northlake

20   apparently likewise transferred the Oak Valley and Northlake Loans and associated liens,

21   respectively, to LCPI.

22        116.    LCPI immediately turned around and sold all of its interest in those Loans and liens

23   to a third party, Fenway, pursuant to an August 22, 2008 repurchase agreement, or "Repo."[12]

24   Lehman ALI, LCPI, OVC and Northlake Holdings did not disclose to SunCal or the Debtors that

25

26   ───────────────

27   [12] A standard Repo consists of a two-part transaction. The first part consists of the transfer of
specified property by one party, the seller, to another party, the buyer, in exchange for cash. The
28   second part consists of the contemporaneous agreement by the seller to repurchase the property at
the original price, plus an agreed upon amount of interest, on a specified future date.

1   they were selling to third parties the very obligations they were supposedly about to assume and

2   restructure. On information and belief, LCPI and Fenway entered into this transaction as part of a

3   larger series of transactions designed to inject badly needed liquidity into the Lehman corporate

4   structure, while making it appear that this liquidity was secured by something other than the Loans

5   themselves.

6   **L.     _Lehman ALI, LCPI, OVC and Northlake Holdings' Failure to Close and Continued_**

7   **_Refusal to Fund_**

8   117.    On information and belief, the additional third-party consents required for Closing of

9   the Restructuring Agreement and Settlement Agreement had been obtained (or could have been but

10  for the Lehman parties' refusal to pursue them in good faith) by about the first week of September

11  2008, and thus all conditions precedent to closing had been met. Yet Lehman ALI, LCPI, OVC and

12  Northlake Holdings and the other Lehman entities took no steps to proceed with Closing.

13  118.    On September 15, 2008, LBHI filed a voluntary petition in bankruptcy court in the

14  Southern District of New York. Notwithstanding the bankruptcy, Gilhool was still assuring SunCal

15  and the Debtors that Lehman ALI, LCPI, OVC and Northlake Holdings would continue to fund the

16  Plaintiff Debtors' respective Projects so as to avoid harm and damage to them and to ensure that

17  Plaintiffs' creditors were paid.

18  119.    As the end of September approached, SunCal and the Debtors became greatly

19  concerned that Lehman ALI, LCPI, OVC, Northlake Holdings and the other Lehman parties were

20  still not doing anything to facilitate closing. On September 29, 2008, counsel for SunCal and the

21  Debtors sent Weil Gotshal a notice indicating that they were prepared to close, and that all

22  conditions precedent to Closing had been satisfied. Lehman ALI, LCPI, OVC and Northlake

23  Holdings did not provide a definitive response for weeks.

24  120.    In the meantime, the Projects required work. Even if no new construction or

25  development was to be undertaken, significant sums had to be spent on site security, erosion

26  prevention, property taxes and other measures in order to prevent the Projects from becoming a

27  public safety hazard, and in order to prevent losing valuable entitlements, accruing penalties and

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

1  fines, and other losses to the Projects.

2      121.    SunCal and the Debtors repeatedly requested that Lehman ALI, LCPI, OVC and

3  Northlake Holdings provide funding to pay for critical health and safety and value preservation

4  measures on the Projects.  Between October 9 and November 4, 2008, SunCal's general counsel

5  Cook sent Robert Brusco, an authorized agent of Lehman ALI, LCPI, OVC and Northlake Holdings,

6  nearly two dozen letters practically begging them to provide promised funding to address critical

7  needs on the Projects as promised.

8      122.    These letters raised issues such as potential and/or actual public exposure to asbestos,

9  flooding, wind damage, looters and vandals, soil erosion and wildfires, in addition to demands from

10  third-party vendors for payment for services and threats to discontinue service.  Cook's letters

11  attached reports from governmental inspectors, and photographs documenting site conditions that

12  posed a threat to public safety or that could subject the Projects to fines and penalties.  Cook's letters

13  were in addition to the myriad of correspondence, from employees of SunCal and the Debtors who

14  were working on the Projects to Lehman ALI, LCPI, OVC and Northlake Holdings employees,

15  requesting payment for previously approved payables or funding for other particular urgent needs.

16      123.    Despite Lehman ALI, LCPI, OVC and Northlake Holdings' assurances of their intent

17  to proceed with funding the Projects, the Debtors' request that Lehman ALI, LCPI, OVC and

18  Northlake Holdings address their critical financial needs fell on deaf ears.  Lehman ALI, LCPI, OVC

19  and Northlake Holdings repeatedly requested detailed budgets regarding the needs of the Projects,

20  reinforcing the impression that they were willing and able to fund—budgets which SunCal and the

21  Debtors repeatedly and promptly provided.  Lehman ALI, LCPI, OVC and Northlake Holdings

22  repeatedly promised the funding would be forthcoming.  But the funds never materialized.  In

23  November 2008, Brusco, on behalf of Lehman ALI, LCPI, OVC and Northlake Holdings, delivered

24  a message that these Lehman lenders were unwilling to fund the Projects and that they intended to

25  foreclose on all of the Projects.

26  **M.    _Lehman ALI's Withdrawal of Badly Needed Cash from the Projects_**

27      124.    At the same time that Lehman ALI, LCPI, OVC and Northlake Holdings were

28

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    stringing SunCal along, promising that funding would be forthcoming but refusing to provide it,

2    Lehman ALI was also secretly stripping the Projects of cash.

3         125.    SunCal Marblehead Heartland LLC, the parent of Debtors SunCal Marblehead and

4    SunCal Heartland, held approximately $3.4 million in two restricted accounts that were to be used

5    for the needs of the Marblehead and Heartland Projects.  Unbeknownst to Debtors, in or about late

6    October or early November 2008—precisely when the Debtors were begging that Lehman ALI

7    provide promised funding—Lehman ALI withdrew the money in those accounts, and then closed the

8    accounts.  SunCal Marblehead and Heartland did not learn about the withdrawal or account closures

9    until they requested updated bank statements from the financial institution holding the accounts.

10   **N.**    ***The Lehman Lenders' Refusal to Fund Necessitates Debtors' Bankruptcies***

11        126.    In late October 2008, SunCal indicated to Lehman ALI, LCPI, OVC and Northlake

12   Holdings that if they continued to refuse to provide critical funding, the Debtors associated with the

13   Projects would have no choice but to file for bankruptcy.

14        127.    Finally, with creditor demands, fines and penalties and other expenses mounting, and

15   no financial assistance forthcoming from Lehman ALI, LCPI, OVC or Northlake Holdings, the

16   Voluntary Debtors filed for bankruptcy on November 6, 7, and 19, 2008.  When the Lehman Equity

17   Members in the Trustee Debtors refused to provide consents to the Trustee Debtors' voluntary

18   Chapter 11 filings, certain creditors filed involuntary petitions against them beginning on

19   November 12, 2008.

20        128.    There are now over 230 vendors and bonding companies claiming over $365 million

21   in work and improvements that they provided on the Projects or are required to have performed.  (A

22   list of the unsecured creditors can be found at Appendix A, and mechanic lien claimants at Appendix

23   B.)  Substantially all of these sums are due to work done or bonded at Lehman ALI, LCPI, OVC

24   and/or Northlake Holdings' behest, which they subsequently failed to pay for as promised.

25   **O.**    ***Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Block the Debtors'***

26        ***Bankruptcies***

27        129.    Lehman ALI, LCPI, OVC and Northlake Holdings responded to the initial SunCal

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1 | bankruptcies with a flurry of activity to try to foreclose on the Projects and avoid their obligations to

2 | Debtors' creditors.

3 |     130.    On November 12, the same day as the first of the SunCal involuntary bankruptcy

4 | filings, Lehman ALI rushed to improperly record notices of default against five Projects—Century

5 | City, Torrance, Palm Springs Village, Oak Knoll and Delta Coves—that were not yet in bankruptcy.

6 | Even aside from disputing the merits of the claimed defaults, these recordings were improper

7 | because no prior notice of default had been sent out, the contents of the notices were inadequate, and

8 | no opportunity was given to the equity members in these Projects to make contributions to avoid any

9 | default.

10 |     131.    On November 13, 2008, Lehman ALI, LCPI, OVC and Northlake sent SunCal and

11 | the Debtors a letter repudiating the Restructuring and Settlement Agreement and their prior promises

12 | of continued funding.

### P.     *Lehman ALI, OVC and Northlake Holdings' Manipulation of the Lehman Equity Members*

15 |     132.    On information and belief, Lehman ALI, and OVC and Northlake Holdings as

16 | successors to Lehman ALI's role as lender to SunCal Oak Valley and SunCal Northlake, also used

17 | their control over the Lehman Equity Members in the nine Trustee Debtors to promote the lenders'

18 | interests at the expense of the Trustee Debtors or their creditors.

19 |     133.    For each of the nine Trustee Projects, Lehman held an equity interest through a

20 | (nominally) separate Lehman Equity Member in addition to extending a loan through Lehman ALI.

21 | A SunCal equity member and Lehman Equity Member were either members in the Trustee Debtor

22 | directly, or in the parent entity that wholly owned the Trustee Debtor, as follows[13]:

---

[13] For Marblehead and Heartland, the SunCal and Lehman Equity Members were members in the "grandparent" (which wholly owned the parent entity that wholly owned the Debtors):

| Project | Debtor | Parent Entity | Grandparent Entity | SunCal Equity Member in Grandparent | Lehman Equity Member in Grandparent |
|---------|--------|---------------|--------------------|-----------------------------------|------------------------------------|
| Heartland | SunCal Heartland | SunCal Marblehead Heartland LLC | SunCal Master JV LLC | SCC JV Ventures LLC | SC Master Holdings |
| Marblehead | SunCal Marblehead | SunCal Marblehead Heartland LLC | SunCal Master JV LLC | SCC JV Ventures LLC | SC Master Holdings |

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Project | Debtor | Parent Entity | SunCal Equity Member In Debtor (or Parent) | Lehman Equity Member In Debtor (or Parent) |
|---------|--------|---------------|---------------------------------------------|----------------------------------------------|
| Century City | SunCal Century City | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Delta Coves | Suncal Delta Coves | Delta Coves Master JV LLC | SunCal Delta Coves LLC | LB/L-DUC Master |
| Northlake | SunCal Northlake | N/A | SCC/Northlake, LLC | SCLV Northlake |
| Oak Knoll | SunCal Oak Knoll | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Oak Valley | SunCal Oak Valley | N/A | SCC/Oak Valley, LLC | SCLV Oak Valley |
| Palm Springs Village | SunCal PSV | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |
| Torrance (Del Amo) | SunCal Torrance | Lehman SunCal Fund | SunCal II | LBREP II/SCLFM |

134.    For Oak Valley and Northlake, the applicable Lehman Equity Members ostensibly had management and control over the Debtors, SunCal Oak Valley and SunCal Northlake, including control over whether to file for bankruptcy. For the other Trustee Projects, the Debtors could not file for bankruptcy without the consent of the respective Lehman Equity Members, which refused to provide such consent. Accordingly, all of the Trustee Projects were initiated as involuntary bankruptcies (on November 12, 14, and 19, 2008).

135.    While Lehman ALI, OVC and Northlake Holdings left the Trustee Debtors no viable alternative to bankruptcy with their refusals to fund, the Lehman Equity Members, for their part, sat by silently and did nothing to try to prevent the Lehman lenders from foreclosing. They did not contribute penny one. This is particularly galling as it relates to the Lehman SunCal Fund Projects, because under the parties' operating agreement, the Lehman Equity Member on these Projects, LBREP II/SCLFM, had a capital commitment obligation for $600 million, which it never came close to satisfying.

136.    On November 18, 2008, after creditors of some of the Trustee Projects filed involuntary petitions in order to stay foreclosure proceedings on the Projects, the Lehman Equity Members sent the Trustee Debtors (or their parents)[14] virtually identical letters stating that the

SC Master Holdings transferred its equity interest in SunCal Master JV LLC to SCC JV Ventures LLC in May 2009. The allegations of insider status against Lehman ALI via its affiliation with and/or control of the Lehman Equity Members extend to SC Master Holdings as well, but the other allegations regarding the Lehman Equity Members' breaches of their fiduciary duties do not.

[14] Specifically, SCLV/Northlake sent its letter to Plaintiff Debtor SunCal Northlake regarding the Northlake Project; SCLV/Oak Valley LLC sent its letter to Plaintiff Debtor SunCal Oak Valley

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    SunCal equity members had no authority to consent to an order for relief from stay, nor make any

2    decision on behalf of the Trustee Debtors.

3        137.    The same parties within Lehman that controlled Lehman ALI, OVC and Northlake

4    Holdings—Walsh and his associates within the Global Real Estate Group—had and exercised

5    complete control over the Lehman Equity Members as well.  The Lehman lenders' control of the

6    Lehman Equity Members did not cease when the parent Lehman entity, LBHI, filed for bankruptcy

7    in September 2008; the only thing that changed was the identity of the individuals running the show.

8        138.    After declaring bankruptcy, LBHI's leadership was taken over by its "restructuring

9    consultants," Alvarez & Marsal ("A & M").  A & M is in control not only of bankrupt Lehman

10    entities such as LBHI and LCPI, but also the non-bankrupt Lehman lenders (Lehman ALI, OVC, and

11    Northlake Holdings), as well as the non-bankrupt Lehman Equity Members.

12        139.    Thus, when Lehman repudiated the Restructuring Agreement on November 12, 2008,

13    it did so on behalf of LCPI and non-bankrupt Lehman ALI, OVC and Northlake Holdings in a letter

14    by Gerald Pietroforte, one of two "Key A & M Contacts" in charge of Lehman's Real Estate "Asset

15    Recovery Plan, Dispositions, and Pledged Collateral Issues."

16        140.    Similarly, on November 18, 2008, A & M's Jeff Fitts—the other "Key A & M

17    Contact"—sent the letters on behalf of each of the Lehman Equity Members refusing to consent to

18    voluntary bankruptcy filings by the Trustee Debtors.

19        141.    On information and belief, A & M and its asset recovery professionals involved in the

20    Lehman-SunCal projects, Messrs. Fitts and Pietroforte, do not have in-depth hands-on experience or

21    expertise in developing large-scale master-planned residential communities, as are involved here.

22    On the other hand, SunCal and its cadre of experienced land development professionals have a very

23    high level of expertise and experience based on many years and literally thousands of hours—

24    including on the Projects at issue in this case.

25

26

27    regarding the Oak Valley Project; LBREP II/SCLFM sent its letter to SunCal II regarding the
      Century City, Del Amo, and Palm Springs Village Projects; and LB/L-DUC Master sent its letter to

28    SunCal Delta Coves LLC regarding the Delta Coves Project.

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

142.    Common sense and fiduciary duties require the Lehman Equity Members and their asset recovery professionals to pursue the course of action best suited to enhancing the value of the Projects and maximizing the recovery to creditors. Instead, on information and belief, A & M is seeking to oust the Debtors and take over ongoing Projects—without paying for the millions in work that the Lehman ALI, LCPI, OVC and Northlake Holdings induced—and then trying to "re-invent the wheel," not only to churn fees for itself, but also to retain any upside in the Projects for itself at the expense of creditors.

143.    The Lehman Equity Members are using their control of the joint SunCal/Lehman Trustee Debtors not to benefit those entities or the Projects they represent, or to meet fiduciary duties to creditors, but solely to facilitate the interests of Lehman ALI, OVC and Northlake Holdings to effectuate foreclosures and avoid their obligations to creditors, and the interests of A & M itself.

**Q.    _Lehman ALI, LCPI, OVC and Northlake Holdings' Attempts to Thwart Debtors' Reorganization in Bankruptcy_**

144.    Once their efforts to prevent the Debtors from filing for bankruptcy failed, Lehman ALI, LCPI, OVC and Northlake Holdings tried everything in their power to delay and hinder the maintenance of value in the Projects or the successful reorganization of the respective Debtors. The goal of these actions was to ensure that there would be no option other than a foreclosure by Lehman ALI, LCPI, OVC and Northlake Holdings, leaving nothing for the unsecured creditors who were induced to provide goods and services for the Projects, or to guarantee such goods and services, by these Lehman lenders.

145.    As for LCPI, the only one of these four entities that is in bankruptcy, it has fraudulently and deceitfully invoked its own automatic stay to try to impede the bankruptcies of Plaintiff Debtors Palmdale Hills, SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I and SunCal III (as well as Debtors SunCal Beaumont, SunCal Johannson and SCC Palmdale).

146.    These defendants' actions have delayed recovery to the Debtors' respective creditors, increased the claims against the Debtors' estates, increased the cost of administering their

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    bankruptcies, and jeopardized the value of the Debtors' principal assets—the Projects themselves.

2        147.    The following is a summary of some of the more significant actions Lehman ALI,

3    LCPI, OVC and Northlake Holdings have taken to impede the Debtors' bankruptcies:

4        148.    LCPI filed for bankruptcy in the Southern District of New York on October 5, 2008.

5    In November 2008, LCPI refused to consent to (and subsequently opposed a motion seeking) relief

6    from its automatic stay to allow the Debtors to, among other things, obtain a priming loan to pay

7    creditors or preserve value in the Projects (even though it did not own the relevant loans).

8        149.    In January 2009, Debtors Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal

9    Bickford, SunCal Emerald, SunCal Johannson, and SunCal Summit filed a motion to use cash

10    collateral for their Projects' critical needs (the "Cash Collateral Motion"). Lehman ALI and LCPI

11    objected to the Cash Collateral Motion, and LCPI again (falsely) invoked its automatic stay. In

12    response, these Debtors took the motion off calendar.

13        150.    Around the same time, LCPI moved for relief from stay in the bankruptcy

14    proceedings of Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,

15    Palmdale Hills, SCC Palmdale and SunCal I (and non-plaintiff Debtor SCC Palmdale) to foreclose

16    on the SunCal Communities I Loan, Ritter Ranch Loan and SCC Palmdale Loan; and Lehman ALI

17    moved for relief from stay in the bankruptcy of SunCal Bickford to foreclose on the Bickford

18    Second Loan (collectively, the "Stay Relief Motions"). Ironically, LCPI and Lehman ALI argued

19    that they should be permitted to foreclose because of, among other things, Debtors' inability to

20    preserve value in the Projects. LCPI also argued that these Debtors could not defend against its Stay

21    Relief Motions, because its own purported automatic stay prevented them from seeking to equitably

22    subordinate LCPI's claims.

23        151.    In February 2009, Lehman ALI, OVC and Northlake Holdings opposed the "Sales

24    Procedures Motion" brought by SCC Communities, SunCal Del Rio, SunCal Tesoro, and the

25    Trustee, which sought an order approving overbid procedures relating to the proposed sale of the

26    Joshua Ridge, Del Rio, Tesoro Burnham, and nine Trustee Projects to D.E. Shaw. (That motion was

27    since amended to include only the sale of the Trustee Debtors' nine properties.)

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

34
**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

152.   In March 2009, LCPI asserted—both before this Court and in New York—that the Sales Procedures Motion violated its automatic stay. LCPI also appealed the orders denying its Stay Relief Motions and holding that the Sales Procedures Motion did not violate LCPI's automatic stay, thus forcing the Debtors to incur the time and cost of defending those rulings before the Ninth Circuit Bankruptcy Appellate Panel.

153.   The irony is, many of the actions that Lehman ALI, LCPI, OVC and Northlake Holdings took to hinder or delay the progress of the Debtors' bankruptcy proceedings were based on lies: their continued ownership of each of the Loans at issue and the applicability of LCPI's stay.

**R.    _Lehman ALI, LCPI, OVC and Northlake Holdings' Concealment of their Sale of the Loans at Issue_**

154.   Lehman ALI, LCPI, OVC and Northlake Holdings filed proofs of claims in the Debtors' bankruptcy proceedings, and have continuously represented that they owned the obligations set forth in the Loans and, consequently, that they are "creditors" of the Debtors. The Debtors did not question the veracity of this representation—until Danske appeared before the Court on March 25, 2009 and disclosed that it held all right, title and interest in the $120 million Century City Loan to SunCal Century City and the associated lien, pursuant to an assignment from Lehman ALI. Prior to this appearance, Lehman ALI, LCPI, OVC and Northlake Holdings had been contending that they, collectively, were the holders of all of the Loans, including the Century City Loan.

155.   Based upon this disclosure, the Debtors requested, by letter of March 26, 2009, that Lehman ALI, LCPI, OVC and Northlake Holdings disclose whether any of the remaining Loans had been transferred to third parties. Lehman ALI, LCPI, OVC and Northlake Holdings ignored this request for several weeks, and only responded after the Debtors had propounded a third-party subpoena on J.P. Morgan (who they believed may have been the transferee of various Loans) noticed for April 17, 2009.

156.   In a letter dated April 15, 2009, Lehman ALI, LCPI, OVC and Northlake Holdings finally admitted that the Loans secured by liens against no less than fifteen out of the twenty

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

1    Projects[15] were subject to Repos; they further admitted that the "various counterparties" to these

2    agreements (primarily Fenway and/or J.P. Morgan) "may claim some interest" in these Loans.

3    However, Lehman ALI, LCPI, OVC and Northlake Holdings did not disclose what "interest" these

4    counterparties "may claim," and they did not provide the Debtors any of the documentation relating

5    to these claimed interests.

6        157.   It was not until J.P. Morgan produced documents in response to the subpoena on

7    April 28, 2009 that the Debtors obtained confirmation of what was only hinted at in Lehman ALI,

8    LCPI, OVC and Northlake Holdings' April 15 letter—that these Lehman lenders relinquished all

9    right, title and interest in the seven "Sold Loans" (defined below) prior to the Debtors' petition

10   dates.[16]

11       158.   The documents produced in discovery revealed that on August 22, 2008, Fenway, as

12   "Buyer," and LCPI, as "Seller," entered into a *Master Repurchase Agreement* (the "MRA").  On the

13   same date, the parties entered into a repurchase transaction pursuant to which Fenway purchased all

14   of LCPI's right, title and interest in the following loans (together, the "Sold Loans"):

| Loan | Purported Lender | Alleged Balance |
|---|---|---|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | $88,257,340 |
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Oak Valley Loan | OVC | $141,630,092 |
| Northlake Loan | Northlake Holdings | $123,654,777 |
| TOTAL | | $1,544,363,964 |

20

21       159.   This repurchase transaction was governed by the terms of the MRA, which states:

22   "All of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date."  As

23

24

25   [15] They are: Acton Estates, Beaumont Heights, Bickford Ranch, Delta Coves, Emerald Meadows,
     Heartland, Johannson Ranch, Marblehead, Northlake, Oak Valley, Pacific Point, Palm Springs
26   Village, Ritter Ranch, Summit Valley, and 10000 Santa Monica (aka Century City).

     [16] On or about May 27, 2009, the Lehman lenders produced documents in response to Debtors' first
27   set of requests for production.  This production was substantially similar to, although in key respects
     less inclusive than, what J.P. Morgan produced.  Thus, the Lehman lenders, A & M, and their
28   attorneys continue their course of deception and concealment.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1  this Court ruled on June 30, 2009, this was a sale in which title passed to Fenway. After this

2  transaction, LCPI served solely as the "hold-in-custody-agent" of the Sold Loans for Fenway.

3      160.    Under the MRA documents, LCPI, as hold-in-custody agent, "shall not take any

4  action (aside from actions in accordance with instructions from Buyer) in respect of the Purchased

5  Securities or Additional Purchased Securities," save for certain limited exceptions that either never

6  applied or ceased to apply once LCPI filed for bankruptcy and defaulted in fall 2008.

7      161.    Moreover, the MRA states that LCPI's custodial duties cannot be assigned or

8  transferred without the consent of Fenway. LCPI's limited custodial rights were never transferred to

9  Lehman ALI, Northlake Holdings or OVC.

10      162.    In summary, under the MRA, LCPI has no interest in the Sold Loans and is barred

11  from taking any action with respect thereto. Lehman ALI, OVC and Northlake have no rights in the

12  Sold Loans whatsoever.

13      163.    The Sold Loans serve as collateral for a "Series 2008-2 Note" issued by Fenway to its

14  affiliate, Fenway Funding, LLC ("Fenway Funding"), on August 22, 2008. The proceeds of the

15  Series 2008-2 Note serve as collateral for certain commercial paper notes ("CP Notes") that were

16  issued by Fenway Funding on August 22, 2008 and acquired by LBHI. Around the same time,

17  LBHI pledged the CP Notes to secure certain obligations owed to JP Morgan.

18      164.    The LCPI-Fenway Repo was not a good faith, arm's length transaction. According to

19  the deposition testimony of Irena Goldstein, Fenway's attorney and its designated person most

20  knowledgeable, "it was basically at the end of the day one Lehman entity owing money to another

21  Lehman entity through Fenway as a conduit." Ms. Goldstein also testified that Lehman had an

22  ownership interest in Fenway's "program manager," Hudson Castle Group, Inc. ("Hudson"), at the

23  time of the Repo. Moreover, Hudson principals had been longstanding Lehman employees prior to

24  Hudson's formation.

25      165.    Notably, LCPI "repo'd" the Sold Loans to Fenway on August 22, 2008—just days

26  before the August 25, 2008 meeting at which Lehman ALI, LCPI, OVC and Northlake signed the

27  Settlement Agreement with SunCal in their capacity as "Lenders." Thus, while these Lehman

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   lenders were apparently scrambling to obtain badly needed liquidity from J.P. Morgan (which, on

2   information and belief, needed to appear to be secured by something other than the Sold Loans

3   themselves—a maneuver Fenway was more than happy to facilitate), they were indicating to SunCal

4   and the Debtors that they fully intended to perform and expected that they would perform their

5   obligations under the Restructuring and Settlement Agreement. Moreover, they were still

6   encouraging SunCal and the Debtors to move forward with development of the Projects, and

7   assuring them that payment would be forthcoming.

8       166.    The 2,300-page report recently released by the court-appointed examiner in LBHI's

9   bankruptcy proceeding in New York confirms that the convoluted transactions of which the Fenway

10  Repo was a part were designed to, among other things, help Lehman obtain badly needed liquidity

11  while concealing the true nature of the collateral. According to that report, Lehman "created"

12  Fenway, "by securitizing … or funding … its own illiquid corporate and commercial real estate

13  loans." When J.P. Morgan realized, in mid-September 2008, what the Fenway security that had been

14  pledged to it by LCPI really was, "JPMorgan concluded that Fenway was worth practically nothing

15  as collateral," and immediately demanded an additional $5 billion dollars in cash collateral—the last

16  business day before Lehman collapsed.

17      167.    On Sunday, September 14, 2008, just hours before Lehman filed for bankruptcy,

18  Fenway got Lehman's global treasurer, Paolo Tonucci, to sign an agreement purporting to

19  "terminate" the Repo agreement and returning ownership of the Sold Loans to LCPI. (Mr. Tonucci

20  had signed the Repo agreement on behalf of LCPI.) Apparently, Lehman wanted to undo this

21  manipulation but was unable to do so because it had already pledged the CP Notes to JPMorgan.

22  Fenway's attorney and PMK, Ms. Goldstein, testified in deposition that she found it "amazing that

23  [Tonucci] had signed anything on September 14th given what was going on at Lehman Brothers at

24  the time," and that "no one has explained to me, nor will they and probably should they, what was

25  the state of the [T]reasurer's mind when he signed this termination agreement."

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1  **S.**   ***Lehman ALI, LCPI, OVC and Northlake Holdings' Repeated Assertion of Their***

2  ***"Ownership" of the Sold Loans***

3      168.    Despite the fact that Fenway owned the Sold Loans for months prior to Debtors'

4  bankruptcy filings, Lehman ALI, LCPI, OVC and Northlake Holdings filed numerous proofs of

5  claim and pleadings in the Debtors' bankruptcy cases—virtually all of which were designed to

6  thwart Debtors' reorganization—in which they purported to own the Sold Loans.

7      **1.**   ***Disputed Proofs of Secured Claims Filed by Lehman ALI, LCPI, OVC and***

8  ***Northlake Holdings Based on the Sold Loans***

9      169.    On March 27, 2009—*after* Debtors had asked Lehman ALI, LCPI, OVC and

10  Northlake Holdings to come clean about the current ownership of the Loans— Lehman ALI, LCPI,

11  OVC and Northlake Holdings filed thirteen proofs of secured claims based on the Sold Loans. They

12  include the following (some clams are duplicative as they are based on cross-collateralized loans):

| DISPUTED PROOFS OF CLAIM FILED BY LEHMAN CLAIMANTS BASED ON SOLD LOANS | | | | |
|---|---|---|---|---|
| Claimant | Sold Loan | POC No. | Debtor | Claim Amount |
| LCPI | SunCal Communities I Loan | 6 | SunCal Acton | $343,221,391 |
| LCPI | SunCal Communities I Loan | 16 | SunCal Bickford | $343,221,391 |
| LCPI | SunCal Communities I Loan | 7 | SunCal Emerald | $343,221,391 |
| LCPI | SunCal Communities I Loan | 12 | SunCal Summit | $343,221,391 |
| LCPI | SunCal Communities I Loan | 1 | SunCal I | $343,221,391 |
| LCPI | SunCal Communities I Loan | 2 | SunCal III | $343,221,391 |
| LCPI | Ritter Ranch Loan | 65 | Palmdale Hills | $287,252,096 |
| Lehman ALI | Delta Coves Loan | 21 | SunCal Delta Coves | $206,023,142 |
| Lehman ALI | Marblehead/Heartland Loan | 9 | SunCal Heartland | $354,325,126 |
| Lehman ALI | Marblehead/Heartland Loan | 21 | SunCal Marblehead | $354,325,126 |
| Lehman ALI | SunCal PSV Loan | 12 | SunCal PSV | $88,257,340 |
| Northlake Holdings | Northlake Loan | 6 | SunCal Northlake | $123,654,777 |
| OVC | Oak Valley Loan | 16 | SunCal Oak Valley | $141,630,092 |

22      170.    On the Official Form for each of these proofs of claims, under "Name of Creditor (the

23  person or other entity to whom the debtor owes money or property)," Lehman ALI, LCPI, OVC or

24  Northlake Holdings, as applicable, listed itself, and did not note that it was acting in an agency

25  capacity for Fenway or anyone else. However, as this Court held, Lehman ALI, LCPI, OVC and

26  Northlake Holdings were not the "creditors" who could file proofs of claims. While the attachments

27  to each proof of claim stated that the Lehman claimant was "agent for the lenders" under the

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  applicable Loan agreement (which in every case was originally Lehman ALI or LCPI), they did not

2  state who the current "lenders" were, and never made reference to Fenway, the MRA, or any transfer

3  of any interest in the Sold Loans. Each of these proofs of claim—along with the attachments—was

4  prepared by A & M's Gerald Pietroforte (as "Managing Director" of each Lehman lender) and/or by

5  Weil Gotshal, and each was signed by Pietroforte.

6      171.    Given the transfer of the seven Sold Loans to Fenway, the transfer of the Century

7  City Loan to Danske, and the transfer of the Pacific Point First Loan to Lehman Re (discussed

8  below), the only proofs of claim filed by the Lehman claimants that are based on Loans that may not

9  have been transferred are the following (most are duplicative based on cross-collaterlized Loans):

| PROOFS OF CLAIM FILED BY LEHMAN CLAIMANTS NOT BASED ON SOLD LOANS | | | | |
|-------------------------------------------------------------------|------|------|------|------|
| Claimant | Loan | POC No. | Debtor | Claim Amount |
| LCPI | SCC Palmdale Loan | 1 | SCC Palmdale | $119,664,305 |
| Lehman ALI | Bickford Second Loan | 17 | SunCal Bickford | $56,494,059 |
| Lehman ALI | Oak Knoll/Torrance Loan | 12 | SunCal Oak Knoll | $158,141,365 |
| Lehman ALI | Oak Knoll/Torrance Loan | 4 | SunCal Torrance | $158,141,365 |
| Lehman ALI | Interim Loan | 9 | SCC Communities | $23,795,013 |
| Lehman ALI | Interim Loan | 14 | SunCal Del Rio | $23,795,013 |
| Lehman ALI | Interim Loan | 7 | SunCal Tesoro | $23,795,013 |

16      172.    As Lehman ALI and LCPI have acknowledged in pleadings filed with this Court, the

17  Bickford Second Loan has no value because it is subordinate to the SunCal Communities I Loan,

18  and the SCC Palmdale Loan has no value because it is secured by a pledge of SCC Palmdale's

19  equity interest in Palmdale Hills. Only Lehman ALI's Oak Knoll/Torrance Loan and the Interim

20  Loan are supported by any value.

21      173.    Thus, LCPI has no security interest in any of the proofs of claim it filed with this

22  Court. Lehman ALI has a security interest only in the Oak Knoll/Torrance Loan and the Interim

23  Loan. OVC and Northlake Holdings have no interest in any of the Loans whatsoever.

24      **2.    _Key Pleadings Filed By Lehman ALI, LCPI, OVC and Northlake Holdings Based_**

25          **_On the Sold Loans_**

26          **a.    Stay Relief Motions**

27      174.    In the brief filed by Lehman ALI and LCPI in support of their Stay Relief Motions,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400