1   Lehman ALI and LCPI alleged that they were entitled to foreclose because, among other things,

2   *their* interests in Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal

3   Summit, Palmdale Hills, and SunCal I's properties were not adequately protected.

4       175.   The loans that formed the primary basis of LCPI's Stay Relief Motions—totaling

5   $619 million of the $649 million at issue—were the Ritter Ranch Loan and the SunCal Communities

6   I Loan, ostensibly still owned by LCPI. In fact, these Sold Loans were transferred to Fenway five

7   months before the Stay Relief Motions were filed. Accordingly, the factual assertion of ownership

8   underlying LCPI's Stay Relief Motions was and is false.

9       176.   In fact, the only Loans on which the Stay Relief Motions were premised that were not

10   Sold Loans were Lehman ALI's Bickford Second Loan and LCPI's SCC Palmdale Loan. But as

11   noted above, these Loans were not secured by any value. Thus, the only Loans with regard to which

12   Lehman ALI and LCPI were the real parties in interest who could seek a foreclosure were Loans

13   with no value, making their Stay Relief Motions moot in their entirety.

14       **b.**    **Opposition to Sales Procedure Motion**

15       177.   The Sale Procedures Motion includes a provision disallowing Lehman ALI's, OVC's,

16   and Northlake Holdings' credit bid rights. On February 25, 2009, Lehman ALI, OVC and Northlake

17   Holdings filed an objection to the Sale Procedures Motion that referred to the "Lehman Lenders'

18   collateral," the "Lehman Lenders rights to credit bid," and the "liens held by the Lehman Lenders."

19       178.   However, due to the August 22, 2008 MRA, OVC and Northlake Holdings have no

20   legal or beneficial interest in the Oak Valley or Northlake Projects, respectively. Likewise, Lehman

21   ALI has no interest in the following Trustee Debtors' Projects:  Palm Springs Village, Delta Coves,

22   Marblehead, Heartland or Century City (the last of which was separately assigned to Danske).

23   Accordingly, except with respect to Lehman ALI's interest in the Oak Knoll / Torrance Loan,

24   Lehman ALI, OVC and Northlake Holdings have no basis to oppose the Sale Procedure Motion.

25   **T.**   *LCPI's Improper Invocation of the Automatic Stay*

26       179.   Because property that a debtor holds as a mere custodian for another, without any

27   beneficial interest, is not deemed "property" of the debtor's estate, efforts by Debtors SunCal Acton,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal Johannson, SunCal Summit,

2    Palmdale Hills, and SunCal I to use cash or otherwise deal with personal or real property securing

3    the Sold Loans does not implicate LCPI's automatic stay—and never has since the inception of these

4    Debtors' bankruptcy proceedings.

5        180.    Nevertheless, LCPI has filed numerous pleadings (or even procedurally improper

6    "letter briefs") with this Court—as well as with the bankruptcy court in its own bankruptcy in New

7    York, and even with the Ninth Circuit Bankruptcy Appellate Panel—in which it asserted that the

8    automatic stay in its bankruptcy precluded these Debtors from taking certain actions in their

9    proceedings. LCPI's assertions were based on its purported ownership of the Sold Loans. These

10   pleadings include the following:

11       ***1.    New York Opposition to Priming Loan***

12       181.    In November 2008, LCPI opposed Debtors' motion filed in New York seeking relief

13   from LCPI's stay so that Debtors could administer their estates and, among other things, obtain a

14   priming loan to address the Projects' critical needs. In (successfully) opposing that motion, LCPI

15   asserted that its automatic stay applied to the Debtors' efforts to deal with all of the Projects—even

16   those encumbered by Sold Loans.

17       ***2.    Objection to Cash Collateral Motion***

18       182.    Given that Debtors could not obtain a priming loan due to LCPI's opposition, Debtors

19   Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal Emerald, SunCal

20   Johannson, and SunCal Summit sought funding to preserve their Projects' value via the Cash

21   Collateral Motion. LCPI had not raised the issue of its stay in opposing a cash collateral motion in

22   related proceedings before this Court, nor in repeated discussions with the Court and Debtors'

23   counsel.

24       183.    Nevertheless, LCPI filed an objection to the Cash Collateral Motion in which it

25   asserted that Debtors' attempt to use cash collateral to preserve value in the Projects constituted a

26   "flagrant disregard of [its] automatic stay."

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

### 3.    *"Emergency" Motion to Enforce Stay In New York*

184.    Not content with opposing the Cash Collateral Motion before this Court, LCPI, two business days before the Cash Collateral Motion was to be heard, filed a motion in its own proceedings in New York wherein it contended that it held a lien on the subject cash, and that the use of the funds proposed in the Cash Collateral Motion would violate its automatic stay. Counsel for the moving Debtors was even threatened with sanctions for bringing the Cash Collateral Motion. In response, the Cash Collateral Motion was taken off calendar.

185.    In fact, the only Loan potentially secured by a lien against the cash that the Debtors were seeking to use was the Ritter Ranch Loan, one of the Sold Loans. Accordingly, all right, title and interest in this Loan and the associated lien is held by Fenway, which was not (and is not) in a bankruptcy proceeding. As such, LCPI's stay was not applicable. LCPI and its counsel falsely asserted LCPI's ownership to the Court and the Debtors.

### 4.    *Lehman ALI's Super-Priority Loan Resulting from LCPI's False Invocation of Its Stay*

186.    Because LCPI first opposed Debtors' effort to obtain approval from the New York Court for a priming loan, and then opposed the Cash Collateral Motion, in April 2009, four Voluntary Debtor Plaintiffs (SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills) and the Trustee on behalf of eight of the Trustee Debtors (all except SunCal Torrance) were ultimately forced to stipulate to loans from Lehman ALI totaling $1.7 million to address the Projects' critical needs. Pursuant to the parties' stipulation and the Court's order, Lehman ALI's loan was granted super-priority status.

187.    The source of the money that Lehman ALI "loaned" to these Debtors was cash in Plaintiff Debtor Palmdale Hills' account. This was the very same money that was sought to be used via the Cash Collateral Motion—money which was subject to disputed liens. Had LCPI not falsely invoked its stay and had the Cash Collateral Motion been granted, Debtors could have avoided repayment of those sums in the event that equitable subordination was granted. However, because of LCPI's false invocation of its stay and the resulting withdrawal of the Cash Collateral Motion,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    Lehman ALI managed, just a few months later, to endow the loan of these same funds with super-

2    priority status, and thus ostensibly not subject to Plaintiffs' equitable subordination action.

3        188.    Thus, Lehman ALI effectively turned a $1.7 million loan subject to defenses into a

4    super-priority loan as a result of LCPI's lie regarding the applicability of its stay.

5    **5.    *Intervention in Sales Procedures Motion***

6        189.    The Sales Procedures Motion was originally filed February 18, 2009, and was

7    originally set to be heard on Tuesday, March 10, 2009. Although Lehman ALI, OVC, and Northlake

8    Holdings filed an opposition, LCPI did not. This was not surprising, given that the Debtors—

9    although they had contemplated a sale of all of the Projects since November—specifically tailored

10   the Sales Procedures Motion to apply to a proposed sale of Projects on which LCPI did not purport

11   to be the lender, in order to avoid any accusation that the Debtors were violating LCPI's purported

12   automatic stay.

13       190.    However, on the afternoon of Sunday, March 8, 2009, counsel for LCPI emailed

14   Debtors' counsel, threatening that LCPI would seek sanctions in New York for Debtors' purported

15   "flagrant violation" of its automatic stay, unless the moving Debtors withdrew the Sales Procedures

16   Motion by 10:00 a.m. the next morning, March 9.

17       191.    On March 9, 2009, LCPI also e-mailed to this Court and the bankruptcy court in New

18   York a "letter brief" which asserted that the Sales Procedures Motion, among other things,

19   "threaten[s] LCPI's property interests." This letter brief attached the motion for sanctions that LCPI

20   intended to file in New York.

21       192.    In response to LCPI's threat, on March 9, 2009, the Trustee, SCC Communities,

22   SunCal Del Rio, and SunCal Tesoro filed emergency motions seeking an order finding that the

23   automatic stay in LCPI's bankruptcy case did not apply to the Sale Procedures Motion. (LCPI

24   responded with another e-mail directly to the New York bankruptcy court.)

25       193.    On March 10, 2009, the Court granted the moving Debtors' emergency motions,

26   holding that the automatic stay in the LCPI bankruptcy case did not apply to the Sales Procedures

27   Motion.

28

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

194.    Had LCPI admitted all along that its automatic stay did not apply, Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, Palmdale Hills and SunCal Summit, and Debtors SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby could have joined in the Sales Procedures Motion when it was originally filed. Thus, LCPI's false invocation of its stay delayed by months a proposal by these Debtors to sell the Acton Estates, Bickford Ranch, Beaumont Heights, Emerald Meadows, Johannson Ranch, Ritter Ranch, and Summit Valley Projects. This has delayed or diminished the prospect of recovery by the creditors of these Debtors who provided goods or services or guaranteed the work to be performed on these Projects.

### 6.    *Stay Relief Motions*

195.    As noted above, LCPI's Stay Relief Motions were premised entirely on Sold Loans (with the exception of the SCC Palmdale Loan admittedly supported by no value). LCPI argued in those Motions that the subject Debtors could not submit a feasible plan because their plan was premised on equitable subordination, and they could not seek to equitably subordinate LCPI's claims without violating LCPI's purported automatic stay. This contention was false.[17]

### 7.    *LCPI's Appeal from the Denial of its Stay Relief Motions*

196.    The Court denied the Stay Relief Motions, ruling that LCPI's purported stay did not apply to Debtors' efforts to equitably subordinate LCPI's claims (because Debtors were defending against affirmative conduct by LCPI, not because the Loans were not LCPI's property). LCPI appealed the Court's ruling, and so has continued to falsely assert its stay, this time in the Ninth Circuit BAP. The moving Debtors have already had to file a lengthy opposition to LCPI's appeal, and have now been forced to appeal the BAP Ruling to the Ninth Circuit.

---

[17] Although the BAP Ruling held that Plaintiffs could not pursue a claim for equitable subordination against LCPI without seeking relief from stay, the BAP Ruling did *not* find that any of the Loans at issue *were* property of LCPI's bankruptcy estate. Rather, the BAP Ruling noted that *to the extent* that any of the Loans constitute property of LCPI's bankruptcy estate, obtaining stay relief would be required. No court—including this one—has ever found that LCPI retained any ownership interest in any, let alone all, of the Sold Loans.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

### 8. *LCPI's Second Appeal*

197.    The Court also granted an order allowing the Plaintiffs to file a second amended complaint in this adversary proceeding naming LCPI as a defendant. LCPI baselessly appealed that ruling to the BAP as well. The BAP clerk determined—only after briefing from both sides—that the ruling was interlocutory and not immediately appealable.

### U. *Summary of Lehman ALI, LCPI, OVC and Northlake Holdings' Post-Petition Inequitable Conduct*

198.    On information and belief, Lehman ALI, LCPI, OVC and Northlake Holdings were intentionally vague in their proofs of claim about the identity of the current owners of the Sold Loans, both in order to conceal the existence of the Fenway Repo itself, and so as to "justify" LCPI having repeatedly invoked its inapplicable stay. Lehman ALI also took advantage of this ambiguity in securing super-priority status for its $1.7 million "loan." But for Danske's appearance and the Debtors' subsequent pursuit of discovery, the truth regarding the owners of the Sold Loans might never have been revealed.

199.    Lehman ALI, LCPI, OVC and Northlake Holdings' conduct of making repeated misrepresentations to this Court regarding their ownership of the Loans and the applicability of LCPI's automatic stay has wasted many hundreds, if not thousands, of hours of the Plaintiff Debtors' and the counsel's time (not to mention the Court's), delaying the progress of the bankruptcy proceedings and wasting estate assets, to the detriment of all of the Debtors' creditors.

200.    Lehman ALI, LCPI, OVC and Northlake Holdings' stubborn refusal to allow the Debtors to use funds to pay for the Projects' critical needs have increased the claims against the Debtors' estates. For example, Lehman ALI, LCPI, OVC and Northlake Holdings refused even to pay property taxes on the Projects. As a result, tax penalties have mounted and continue to increase. Because these tax claims have priority over unsecured and mechanic liens claims, the Lehman defendants' conduct in letting these claims mount has made it even less likely that there will be funds available to pay for the less prioritized claims.

201.    The delays Lehman ALI, LCPI and OVC have caused in work being performed on

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1  the Projects post-petition (as well as pre-petition) have also increased the claims against the Debtors'

2  bonding companies, which have in turn increased the bond companies' claims against the Debtors.

3      202.    The delays the Lehman lenders have caused in the administration of the Debtors'

4  bankruptcies has also jeopardized the value of the Projects—the primary source of recovery for all

5  creditors—through mounting fines, penalties, erosion, deterioration of work already performed, the

6  failure to pay property taxes, and potential loss of entitlements, among other things.

7      203.    Because of this extensive post-petition inequitable conduct, Defendants' alleged

8  secured claims should be equitably subordinated not only to the general unsecured claims and

9  mechanics' lien claims against the respective Plaintiff Debtors (substantially all of which are based

10  on work induced by Defendants), but to the priority and administrative claims of the respective

11  Plaintiff Debtor's estate as well.

12  **V.    _Lehman ALI and LV Pacific Point's Fraudulent Acquisition of the Pacific Point Project_**

13      204.    Defendants' inequitable conduct regarding the Pacific Point Project was particularly

14  egregious.

15      205.    Pacific Point is a 200 plus acre development in a prime location overlooking the

16  Pacific Ocean in San Juan Capistrano, California.  At the time of the Restructuring and Settlement

17  Agreement, the Pacific Point property was owned by Plaintiff SJD Partners.

18      206.    Pacific Point was among the Projects included in the Restructuring and Settlement

19  Agreement.  SJD Partners was identified in Annex I to the Restructuring Agreement as both a

20  "Borrower" and "Grantor," and SJD Development was identified as a "Pledgor."

21      207.    Although the Restructuring and Settlement Agreements contemplated that at Closing,

22  the Debtors would transfer title to the Projects to new Lehman entities, the parties' agreement was

23  structured somewhat differently with regard to the Pacific Point Project.

24      208.    Specifically, pursuant to the Restructuring Agreement, and as detailed in the

25  Settlement Agreement incorporated thereto, SunCal, SJD Partners and SJD Development agreed not

26  to interfere with Lehman ALI's (or its designee's) foreclosure on the Pacific Point property, and the

27  new Lehman entity, LV Pacific Point, would acquire the property upon foreclosure.  In consideration

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  for this, Lehman ALI and LV Pacific Point agreed to (a) assume SJD Partners' and SJD

2  Development's outstanding accounts payable for Pacific Point third-party vendors, (b) assume SJD

3  Partners', SJD Developments' and others' bond liability in connection with the Pacific Point Project,

4  and (c) pay for millions of dollars worth of work that Lehman ALI had authorized.

5       209.    On or about August 25, 2008, the Settlement Agreement was signed by the SunCal

6  parties, including SJD Partners and SJD Development.  It was signed by Frank Gilhool as authorized

7  signatory on behalf of both Lehman ALI and LV Pacific Point.

8       210.    All conditions for Closing had been met by the date for which Closing was scheduled.

9       211.    As a signatory to the Settlement Agreement, LV Pacific Point was supposed to and

10  agreed to acquire the property subject to the above obligations.

11       212.    On August 28, 2008, LV Pacific Point foreclosed on Pacific Point, and title was

12  transferred to LV Pacific Point at the foreclosure sale.

13       213.    However, neither Lehman ALI nor LV Pacific Point assumed the liabilities and

14  obligations as promised, to the detriment of the creditors of the estates of SJD Partners and SJD

15  Development and the bond indemnitors.

16       214.    The City of San Juan Capistrano even executed an estoppel certificate for the benefit

17  of SJD Partners and Lehman ALI—at Lehman ALI's request—on August 26, 2008, two days before

18  the foreclosure.  That certificate stated, among other things, that the "Acquiring Entity [LV Pacific

19  Point] shall by operation of law become the legal successor-in-interest to Developer [SJD Partners]"

20  under SJD Partners' agreements with the City. That certificate further provided that there existed no

21  breaches, defaults, or claims under SJD Partners' agreements with the City.

22       215.    Despite this estoppel certificate, demands have been made by the City and/or other

23  creditors—even after the estoppel was signed—against SunCal, Elieff, SJD Partners and SJD

24  Development.  Neither Lehman ALI nor LV Pacific Point has undertaken to assume any of those

25  obligations.

26       216.    In fact, on information and belief, in early September 2008—just days after the

27  foreclosure, and just days before LBHI filed for bankruptcy—Lehman ALI secretly transferred much

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    or all of its interest in the Pacific Point First Loan and the first-priority deed of trust on the property

2    to a separate Lehman-affiliated entity, Lehman Re. Lehman ALI and/or LV Pacific Point may have

3    transferred some or all of their interests in the Pacific Point Second Loan and associated lien to

4    Lehman Re as well.

5        217.    The timing of these maneuvers by these Lehman entities confirms that Lehman ALI

6    and LV Pacific Point never intended to fulfill their promises to assume the millions in Pacific Point

7    obligations even at the time they made such promises. LBHI filed for bankruptcy on September 15,

8    2008. On information and belief, Lehman ALI and LV Pacific Point knew as of the August 28, 2008

9    Pacific Point foreclosure that they would not be in a position to fulfill, and would not be fulfilling,

10   their funding obligations to SunCal, SJD Partners and SJD Development.

11       218.    As a result of LV Pacific Point's foreclosure and Lehman ALI's and LV Pacific

12   Point's failure to fulfill their payment obligations, SJD Partners no longer owns any real property,

13   but has unsecured claims of approximately $50 million, including bond claims of approximately $34

14   million. Moreover, due to the deterioration of construction projects, unpaid taxes, fines, and

15   penalties resulting from Lehman ALI and LV Pacific Point's conduct, this exposure continues to

16   grow.

17       219.    Had SunCal, SJD Partners and SJD Development known that Lehman ALI and LV

18   Pacific Point had no intent to honor their promised obligations, they never would have agreed to

19   cooperate with a foreclosure. Instead, SJD Partners could have filed for bankruptcy earlier,

20   precluded a foreclosure and successfully reorganized the Project.

21       220.    Accordingly, the parties' agreement should be rescinded, the foreclosure should be

22   set aside and/or a constructive trust should be imposed upon LV Pacific Point, and the property

23   should be returned to its rightful owner, SJD Partners.

24   **W.    _Summary of the Disputed Claims to Be Equitably Subordinated, and the Associated Liens_**

25       **_to Be Preserved for the Benefit of the Plaintiff Debtors' Estates_**

26       221.    As to each Plaintiff, the following is a summary of the Defendants' disputed secured

27   claims which Plaintiffs seek to equitably subordinate, as well as the mechanics liens, priority and

28

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

administrative claims, and general unsecured claims to which Plaintiffs seek to subordinate them:

| DEBTOR | DEFENDANTS' DISPUTED SECURED CLAIMS | MECHANIC LIEN CLAIMS | PRIORITY AND ADMIN. CLAIMS | GENERAL UNSECURED CLAIMS |
|---|---|---|---|---|
| Palmdale Hills | $287,252,096 | $1,006,435 | $499,970 | $33,027,677 |
| SunCal Bickford | $343,221,391 (Bickford 1st) | $3,477,120 | $345,221 | $10,146,825 |
| | $56,494,059 (Bickford 2nd) | | | |
| SunCal Acton | (Same as Bickford 1st) | $0 | $59,242 | $1,428,250 |
| SunCal Emerald | (Same as Bickford 1st) | $1,293,935 | $188,695 | $7,878,901 |
| SunCal Summit | (Same as Bickford 1st) | $16,827 | $48,018 | $1,076,053 |
| SunCal I | (Same as Bickford 1st) | $0 | $0 | $0 |
| SunCal III | (Same as Bickford 1st) | $0 | $0 | $459 |
| SCC Communities | $23,795,013 | $0 | $27,072 | $32,813 |
| SunCal Del Rio | (Same as SCC Communities) | $0 | $261,542 | $8,242,033 |
| SunCal Tesoro | (Same as SCC Communities) | $0 | $119,563 | $170,969 |
| SunCal Oak Knoll | $158,141,365 | $4,794,529 | $874,609 | $1,041,373 |
| SunCal Torrance | (Same as SunCal Oak Knoll) | $0 | $160,914 | $203,838 |
| SunCal Delta Coves | $206,023,142 | $372,535 | $448,061 | $35,192,631 |
| SunCal Heartland | $354,325,126 | $1,552,794 | $231,873 | $30,774,591 |
| SunCal Marblehead | (Same as SunCal Heartland) | $1,406,209 | $740,382 | $109,697,964 |
| SunCal Northlake | $123,654,777 | $0 | $421,783 | $911,296 |
| SunCal Oak Valley | $141,630,092 | $1,662,309 | $138,443 | $29,605,482 |
| SunCal PSV | $88,257,340 | $2,316,430 | $315,213 | $21,892,343 |
| SJD Development | $120,110,237 | $0 | $0 | $368,362 |
| SJD Partners | (Same as SJD Development) | $0 | $244,090 | $51,265,349 |
| Total | $1,902,904,608 | $17,898,123 | $5,124,691 | $342,405,373 |

222.    The following should be noted regarding the above chart:

(a)    Plaintiffs have not completed their investigation as to which claims are allowed.

(b)    Administrative claims are ongoing.

(c)    Certain proofs of claims filed against Palmdale Hills, among other Debtors, appear to be misfiled and relate to other Debtors.

(d)    Certain disputed claims, such as duplicative claims, have been deducted from the figures above.  For example, the Debtors have assumed surety bond claims according to the bond claims arising from the particular Debtors' Projects.  The bond issuers (Arch Insurance Co. and Bond Safeguard Insurance Co.) have asserted various bond obligor claims against the Debtors in the approximate amount of $230 million ($155 million by Arch and $75 million by Bond Safeguard).  The bond issuers assert that their claims are joint and several against all of the Debtors, which the Debtors dispute as lacking consideration and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

fraudulent conveyances to the extent that such Bond Claims do not arise from or exceed the amount of Bond Claims attributed to the Project of each Debtor. Thus, the $0 in unsecured claims listed against SunCal I do not reflect the contingent bond claims.

(f)     Plaintiffs believe that $368,362 in unsecured claims filed against Plaintiff SJD Development should have been filed against Plaintiff SJD Partners. However, even if those claims are correctly characterized, SJD Development would still be a plaintiff on the cause of action for equitable subordination, because of the contingent bond claims asserted against it.

(g)     LV Pacific Point foreclosed upon and obtained the Pacific Point Project prior to Plaintiff SJD Partner's bankruptcy filing. Lehman ALI has filed an unliquidated claim against SJD Partners that is contingent upon the unwinding or invalidation of the foreclosure sale. If the Court grants the requested relief and restores title in the Pacific Point Project to SJD Partners, then to the extent that any of these Defendants assert claims against SJD Partners or SJD Development, and/or attempt to enforce their liens, those claims should be subordinated and those liens preserved for the benefit of and transferred to SJD Partners' or SJD Development's estates, as applicable.

(h)     Real property tax claims against the Plaintiff Debtors of $19,165,086 and other secured claims against certain Debtors have not been listed, as they are not subject to the disputed secured claims, and would not be affected by subordination under this action. However, Plaintiffs contend that Defendants' claims should be equitably subordinated to the other claims identified herein to the extent that Defendants have caused these tax claims to be filed and/or to increase through their wrongful conduct.

223.    As to each Plaintiff on the equitable subordination claim, the following summarizes the original and apparent current lender on each disputed Loan, the outstanding amount claimed by Defendants with regard to the Loan, and the total amount of the claims to which Debtors seek to subordinate the Defendants' claims pursuant to 11 U.S.C. § 510(c)(1):

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

| PLAINTIFF DEBTOR | LOAN | ORIGINAL LENDER | CURRENT OWNER OF CLAIM[18] | DISPUTED SECURED CLAIMS THAT PLAINTIFFS SEEK TO SUBORDINATE | TOTAL CLAIMS TO BE GIVEN PRIORITY |
|---|---|---|---|---|---|
| Palmdale Hills | Ritter Ranch | LCPI | Fenway | $287,252,096 | $34,534,082 |
| SunCal Bickford | SunCal Communities I | LCPI | Fenway | $343,221,391 (Bickford 1st) | $13,969,166 |
| | Bickford Second | Lehman ALI | Lehman ALI | $56,494,059 | |
| SunCal Acton | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $1,487,492 |
| SunCal Emerald | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $9,360,531 |
| SunCal Summit | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $1,140,898 |
| SunCal I | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $0 |
| SunCal III | SunCal Communities I | LCPI | Fenway | (see Bickford 1st) | $459 |
| SCC Communities | Interim | Lehman ALI | Lehman ALI | $23,795,013 | $59,885 |
| SunCal Del Rio | Interim | Lehman ALI | Lehman ALI | (see SCC Communities) | $7,951,739 |
| SunCal Tesoro | Interim | Lehman ALI | Lehman ALI | (see SCC Communities) | $289,860 |
| SunCal Oak Knoll | Oak Knoll/ Torrance | Lehman ALI | Lehman ALI | $158,141,365 | $6,711,183 |
| SunCal Torrance | Oak Knoll/ Torrance | Lehman ALI | Lehman ALI | (see SunCal Oak Knoll) | $364,751 |
| SunCal Delta Coves | Delta Coves | Lehman ALI | Fenway | $206,023,142 | $36,013,227 |
| SunCal Heartland | Marblehead/ Heartland | Lehman ALI | Fenway | $354,325,126 | $32,559,258 |
| SunCal Marblehead | Marblehead/ Heartland | Lehman ALI | Fenway | (see SunCal Heartland) | $111,852,555 |
| SunCal Northlake | Northlake | Lehman ALI | Fenway | $123,654,777 | $1,333,679 |
| SunCal Oak Valley | Oak Valley | Lehman ALI | Fenway | $141,630,092 | $31,406,234 |
| SunCal PSV | PSV | Lehman ALI | Fenway | $88,257,340 | $24,523,986 |
| SJD Partners | Pacific Point First | Lehman ALI | Lehman Re | $120,110,237 (Pac Pt 1st) | $51,265,349 |
| | Pacific Point Second | Lehman ALI | LV Pacific Point and/or Lehman Re | (contingent claim) | |
| SJD Development | Pacific Point First | Lehman ALI | Lehman Re | (see Pac Pt 1st) | |
| **Total** | | | | **$1,902,904,608** | **$365,428,187** |

224.    As to each Plaintiff on the equitable subordination claim, the following summarizes
the disputed Loans and associated lien that Plaintiffs seek to transfer to and preserve for the benefit
of their respective estates pursuant to 11 U.S.C. § 510(c)(2). The alleged holder, alleged security
and the alleged amounts outstanding are taken from the disputed proofs of secured claims ("POCs")
that have been filed; as noted in the above table, many of these liens now belong to the claimants'
successors:

---

[18] In the event that the Court determines that Lehman ALI, OVC and Northlake, and not
Fenway, still have claims to be subordinated with regard to the applicable Sold Loans, they are
named herein as defendants as to those Sold Loans, and nothing about this table should be construed
as a waiver of Debtors' right to equitably subordinate those Defendants' claims.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| LOAN(S) | ALLEGED HOLDER | PLAINTIFF DEBTOR(S) | ALLEGED SECURITY | ALLEGED OUTSTANDING AMOUNT |
|---|---|---|---|---|
| SunCal Communities I Loan | Fenway (as successor to LCPI) | SunCal I SunCal III SunCal Acton SunCal Emerald SunCal Bickford SunCal Summit | (a) Alleged first-priority deeds of trust on the Bickford, Acton Estates and Emerald Meadows Projects; (b) alleged pledges of SunCal I's interests in SunCal Acton, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (c) alleged pledges of SunCal Summit's interests in Seven Brothers and Kirby. | Identical $343,221,391 POC No. 1 asserted against SunCal I; No. 2 against SunCal III; No. 6 against SunCal Acton; No. 7 against SunCal Emerald; No. 16 against SunCal Bickford; and No. 12 against SunCal Summit |
| Ritter Ranch Loan | Fenway (as successor to LCPI) | Palmdale Hills | Alleged first-priority deed of trust on all real and an alleged first priority lien on all personal property owned by Palmdale Hills. | $287,252,096 POC No. 65 asserted against Palmdale Hills |
| Bickford Second Loan | Lehman ALI | SunCal Bickford | Alleged second priority deed of trust on the Bickford Ranch Project. | $56,494,059 POC No. 17 asserted against SunCal Bickford |
| Interim Loan | Lehman ALI | SCC Communities, SunCal Tesoro and SunCal Del Rio | Alleged first-priority deeds of trust on the Joshua Ridge and the Tesoro Projects, and an alleged first-priority lien on the net proceeds of the Del Rio CFD Bonds. | Identical $23,795,013 POC No. 9 asserted against SCC Communities; No. 14 against SunCal Del Rio; No. 7 against SunCal Tesoro |
| Pacific Point First Loan | Lehman ALI | SJD Partners SJD Dev'pment. | Alleged first priority deed of trust on the Pacific Point Project, and alleged pledge of SJD Development's interest in SJD Partners. | Identical $120,110,237 POC No. 2 asserted against SJD Dev'pment; No. 23 against SJD Partners |
| Pacific Point Second Loan | Lehman ALI | SJD Partners | Alleged second priority deed of trust on the Pacific Point Project | Unliquidated contingent POC No. 24 asserted against SJD Partners |
| Oak Knoll/ Torrance Loan | Lehman ALI | SunCal Oak Knoll and SunCal Torrance | Alleged first-priority deeds of trust on the Oak Knoll Project and the Del Amo Project. | Identical $158,141,365 POC No. 12 asserted against SunCal Oak Knoll; No. 4 against SunCal Torrance |
| PSV Loan | Lehman ALI | SunCal PSV | Alleged first-priority deed of trust on the Palm Springs Village Project. | $88,257,340 POC No. 12 asserted against SunCal PSV |
| Delta Coves Loan | Lehman ALI | Delta Coves | Alleged first-priority deed of trust on the Delta Coves Project. | $206,023,142 POC No. 21 asserted against SunCal Delta Coves |
| Marblehead/ Heartland Loan | Lehman ALI | SunCal Marblehead; SunCal Heartland | Alleged first-priority deeds of trust on the Marblehead and the Heartland Projects. | Identical $354,325,126 POC No. 9 asserted against SunCal Heartland; No. 21 against SunCal Marblehead |
| Oak Valley Loan | OVC | SunCal Oak Valley | Alleged first-priority deed of trust on the Oak Valley Project. | $141,630,092 POC No. 16 asserted against SunCal Oak Valley |
| Northlake Loan | Northlake Holdings | SunCal Northlake | Alleged first-priority deed of trust on the Northlake Project. | $123,654,777 POC No. 6 asserted against SunCal Northlake |
| TOTAL | | | | $1,902,904,638 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1

## CAUSES OF ACTION

2

### V.

3

### FIRST CLAIM FOR RELIEF

4

### (Equitable Subordination, 11 U.S.C. §510(c))

| By | Against |
| --- | --- |
| SunCal Acton | Fenway |
| SunCal Bickford | Lehman ALI, Fenway |
| SunCal Del Rio | Lehman ALI |
| SunCal Emerald | Fenway |
| SunCal I | Fenway |
| SunCal III | Fenway |
| SCC Communities | Lehman ALI |
| SJD Partners | Lehman ALI, LV Pacific Point, Lehman Re |
| SJD Development | Lehman ALI, Lehman Re |
| Palmdale Hills | Fenway |
| SunCal Summit | Fenway |
| SunCal Tesoro | Lehman ALI |
| Trustee o/b/o SunCal Delta Coves | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Heartland | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Marblehead | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Northlake | Northlake Holdings, Fenway |
| Trustee o/b/o SunCal Oak Knoll | Lehman ALI |
| Trustee o/b/o SunCal Oak Valley | OVC, Fenway |
| Trustee o/b/o Sun Cal PSV | Lehman ALI, Fenway |
| Trustee o/b/o SunCal Torrance | Lehman ALI |

225.   Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

### *Lehman ALI and LCPI*[19]

226.   LCPI has or purports to have disputed claims against Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald, Palmdale Hills, SunCal Summit, SunCal I and SunCal III.

227.   Lehman ALI has or purports to have disputed claims against Plaintiffs SunCal Bickford, SunCal Del Rio, SCC Communities, SJD Partners, SJD Development, SunCal Tesoro, and

---

[19]   Allegations regarding LCPI are applicable to defendant Fenway, and should not be regarded as an indication that LCPI is currently being treated as a Plaintiff herein.

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Trustee Debtors SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Oak Knoll,

2  SunCal PSV, and SunCal Torrance.

3       228.  Plaintiffs are informed and believe, and on that basis allege, that Lehman ALI is an

4  affiliate of an insider of each of the Trustee Debtors, and thus is a statutory insider under 11 U.S.C.

5  §101(31). On information and belief, LBHI has had a 100% ownership interest in both Lehman ALI

6  and LCPI, until recently, when Lehman ALI itself acquired a 100% interest in LCPI. (Thus, LBHI

7  still indirectly has a 100% ownership interest in LCPI.) At the same time, LBHI wholly owns the

8  Lehman Equity Members, which themselves have at least a 50% ownership interest in the Trustee

9  Debtors and are therefore insiders of the Trustee Debtors. Accordingly, under 11 U.S.C. §101(2),

10  Lehman ALI is an insider of the Trustee Debtors.

11       229.  Even aside from Lehman ALI's status as a statutory insider, Lehman ALI and LCPI

12  exerted actual control over all of the Debtors, and so are also non-statutory insiders under the law.

13       230.  Lehman ALI and/or LCPI have partnered with SunCal and the Debtors for over a

14  decade. Lehman ALI and LCPI have been Debtors' primary source of credit for years. SunCal

15  granted Lehman a first right of refusal on most of SunCal's projects going forward. Thus, over the

16  past several years, SunCal and the Debtors have been almost entirely dependent on Lehman ALI and

17  LCPI for financing. SunCal and the Debtors effectively became the management and development

18  arm of the Lehman real estate lenders, rather than independent developers that received outside

19  funding.

20       231.  Beginning in or about 2005, if not earlier, Lehman ALI and LCPI exercised their

21  control over SunCal and the Debtors by insisting that many of their loans be cross-collateralized

22  among multiple Projects, many of which received little or none of the loan proceeds. This made

23  SunCal and the Debtors even more dependent on Lehman ALI and LCPI and to the terms that they

24  dictated. They also exercised their control by withholding promised funding in order to induce

25  SunCal and the Debtors to concede to onerous terms.

26       232.  At least after 2007, Lehman ALI and LCPI asserted management control as well.

27  Debtors' management had to vet expenses with Lehman ALI and LCPI and get their approval before

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

55

1    they could expend any funds to develop the Projects, and had conference calls or meetings with

2    Lehman ALI and LCPI personnel on as much as a weekly basis or more for this purpose.

3        233.    In some instances, such as on the Delta Coves Project owned by Plaintiff SunCal

4    Delta Coves, Lehman ALI bypassed SunCal as the ostensible Project manager and dealt with third-

5    party contractors directly; Lehman ALI also tried to exercise control over SunCal staff directly,

6    bypassing SunCal's management structure.

7        234.    Lehman ALI and/or LCPI also controlled decisions regarding which creditors would

8    get paid, and Lehman ALI engaged Radco to negotiate such payments for the sixteen Projects

9    subject to the Restructuring Agreement.

10        235.    Lehman ALI and/or LCPI have engaged in a variety of pre- and post-petition

11    inequitable conduct, including the following:

        •    LCPI cross-collateralized loans among multiple Debtors, including Plaintiffs
        SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I and SunCal III,
        some of whom received little or no benefit, so as to shift its lending risks to unsecured
        creditors and make SunCal and the Debtors even more unlikely to be able to elude its
        domination and control.  SCC Palmdale likewise got nothing for its indebtedness.

        •    Lehman ALI similarly cross-collateralized loans, for the same purpose and to
        the same effect, on the Marblehead and Heartland Projects owned by Plaintiffs SunCal
        Marblehead and SunCal Heartland, respectively; the Del Amo and Oak Knoll Projects owned
        by Plaintiffs SunCal Torrance and SunCal Oak Knoll, respectively; and the Del Rio, Joshua
        Ridge, and Tesoro Burnham Projects owned by Plaintiffs SunCal Del Rio, SunCal Tesoro
        and SCC Communities, respectively.

        •    Lehman ALI and LCPI induced SunCal and each of the Plaintiff Debtors to
        incur massive additional indebtedness on each of the Projects, through representations that
        they would cover vendor payables and pay for third-party work they authorized, including
        work that was required by municipalities to be performed and bonded, and through promises
        of an overall restructuring of all of the Projects.

        •    Lehman ALI made similar promises of funding and inducements with regard
        to the three Projects—Delta Coves, Del Amo and Oak Knoll—that were not formally made
        part of the parties' Restructuring Agreement.

        •    Lehman ALI dragged out the effectuation of the Restructuring Agreement, so
        as to make SunCal and the subject Debtors even more cash-strapped and more desperate for
        funds to pay creditors, in order to induce them to accept onerous terms.

        •    After pressuring and threatening Debtors to enter into the onerous
        Restructuring Agreement, Lehman ALI then failed to provide required funding under the
        Restructuring Agreement, thereby preventing Debtors' ability to pay creditors and develop
        and maintain the Projects, including addressing central health and safety issues, and exposing
        the bond companies and the bond indemnitors to liability for work performed and being
        performed.  Lehman ALI also failed to provide promised funding as to the four Projects not

56

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000    LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

subject to the Restructuring Agreement.

• Lehman ALI and LCPI surreptitiously transferred their liens and loans on at least fifteen of the Projects to Lehman affiliates or third parties in order to stave off a Lehman liquidity crisis, at the same time that they were signing restructuring settlement documents with the Debtors and purporting to be willing and able to proceed to Closing of the Settlement Agreement.

• Lehman ALI (along with LV Pacific Point) fraudulently induced SJD Partners and SJD Development to consent to LV Pacific Point's foreclosure of the Pacific Point Project by promising to cover bond and vendor obligations and pay for lender-authorized work, when it knew that an LBHI bankruptcy was looming and that payment would not be forthcoming.

• Lehman ALI and LCPI refused and failed to proceed to Closing of the Settlement Agreement when they were contractually required to do so.

• Lehman ALI and LCPI repudiated the Restructuring Agreement without cause. Lehman ALI also repudiated its funding obligations regarding the four non-covered Projects.

• Lehman ALI improperly filed notices of default on properties—Del Amo, Delta Coves, Oak Knoll, and Palm Springs Village—that were not yet in bankruptcy.

• Lehman ALI induced the Lehman Equity Members in Trustee Debtors SunCal Delta Coves, SunCal Oak Knoll, SunCal PSV, and SunCal Torrance to breach their fiduciary duties to these Trustee Debtors and their creditors in favor of their lender-affiliate, by refusing to fund the Projects, refusing to consent to bankruptcy filings, or take any other steps to avoid a lender foreclosure.

• LCPI and Lehman ALI filed their respective proofs of claim against the estates of Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, Palmdale Hills, SunCal I, SunCal III, SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal PSV, and SunCal Oak Valley, in which they purported to own Sold Loans which LCPI had actually sold to Fenway pre-petition. They at least in part did so for the purpose of "justifying" LCPI's repeated false invocation of its automatic stay.

• LCPI brought its Stay Relief Motions against Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald Meadows, SunCal Summit, Palmdale Hills, and SunCal I to foreclose on their Projects; Lehman ALI filed the Stay Relief Motion in the SunCal Bickford proceeding to foreclose on the Bickford Ranch Project; and both Lehman Lenders objected to virtually every action the Debtors have taken in their efforts to reorganize the Projects—all without disclosing the true owner of the Loans at issue.

• LCPI repeatedly invoked its automatic stay to prevent the Debtors from obtaining a priming loan, using cash collateral, or otherwise obtaining funds to address the Projects' critical needs and preserve the value of the Projects (which are LCPI's own purported collateral), and to justify its Stay Relief Motions. In fact, as LCPI well knew, LCPI's automatic stay was not and has never been applicable.

• LCPI's conduct also forced Plaintiffs SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills, and all of the Trustee Debtors all except SunCal Torrance, to accede to a $1.7 million super-priority "loan" from Lehman ALI that was really a release of the same funds sought to be accessed via the Cash Collateral Motion.

57

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

• LCPI even invoked its stay to oppose the Sales Procedures Motion, which has only involved Lehman ALI-financed Projects. LCPI's false assertion of its automatic stay is what induced Debtors to leave LCPI-financed Projects out of the proposed sale in the first place, even though they had intended to include them.

236. Lehman ALI and LCPI's inequitable conduct has caused and continues to cause damage not only to the Plaintiff Debtors but to all of their creditors as well. Lehman ALI and LCPI's course of conduct of making repeated assurances of funding, drawing out the process, and ultimately refusing to provide needed funding caused them to take on additional third-party debt that they could not pay, increased the fees, penalties and interest assessed against the Debtors, and deepened the Debtors' insolvency, including their exposure to bond claims. Their actions forced the Debtors into bankruptcy, but they have done everything in their power to prevent bankruptcy filings, and to thwart or delay Debtors' reorganization efforts once their bankruptcies began, so as to avoid any outcome other than a foreclosure that leaves nothing for unsecured creditors. They have impeded steps by the Debtors to preserve value in the Projects. They have made and continue to make the Debtors' bankruptcies more time-consuming, expensive and burdensome through their lack of candor and obstructionist tactics. All this has worked to the detriment of the Debtors' respective creditors, diminishing their prospects for recovery.

## *LV Pacific Point*

237. LV Pacific Point, along with Lehman ALI, represented in the Settlement Agreement that it would assume Pacific Point accounts payable and bond obligations, and pay for work authorized by Lehman ALI, in exchange for SunCal, SJD Partners and SJD Development's consent to a foreclosure. On information and belief, Lehman ALI and LV Pacific Point knew as of the August 2008 Settlement Agreement and foreclosure that, due to LBHI's own financial crisis, they would not be assuming these obligations upon foreclosure as promised. But for these defendants' fraud, LV Pacific Point would not have obtained Plaintiffs' consent to the foreclosure, and SJD Partners would continue to own the property. This inequitable conduct has harmed all of the other creditors of SJD Partners (as well as SJD Development), not only because SJD Partners was induced to incur third-party debt it could not pay, but because it no longer has the Pacific Point property to satisfy these creditors' claims. As noted below, this Court should invalidate the foreclosure and

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1  restore the Pacific Point property to SJD Partners. To the extent that Lehman ALI and/or LV Pacific

2  Point have claims and liens against SJD Partners or SJD Development, their claims should be

3  equitably subordinated to the claims of the other creditors of these Debtors, and those liens should be

4  preserved for the benefit of and transferred to these Debtors' estates.

5      238.    Even aside from its own inequitable conduct, to the extent that LV Pacific Point is or

6  purports to be a successor to Lehman ALI's loans and liens on the Pacific Point Project, it holds

7  claims that are equally subject to equitable subordination, and its liens equally subject to transfer to

8  SJD Partners' estate, as if it were Lehman ALI.

9  ***OVC and Northlake***

10     239.    To the extent that OVC Holdings and Northlake Holdings are or purport to be

11  transferees of Lehman ALI's loans to Plaintiffs SunCal Oak Valley and SunCal Northlake and the

12  liens on the Oak Valley and Northlake Projects, respectively, and to the extent that their claims have

13  not been transferred to Fenway, they hold claims that are equally subject to equitable subordination,

14  and their liens equally subject to transfer to the estates.

15     240.    Not only does a transferee take a claim subject to all defenses that could be raised

16  against the transferor, but OVC and Northlake Holdings' claims, if any, are also subject to equitable

17  subordination based on their own insider status and own inequitable conduct.

18     241.    Like Lehman ALI, OVC Holdings and Northlake Holdings are statutory insiders. On

19  information and belief, LBHI has had a 100% ownership interest in both OVC and Northlake

20  Holdings. At the same time, LBHI wholly owns the Lehman Equity Members in SunCal Oak Valley

21  and SunCal Northlake, which themselves have at least a 50% ownership interest in SunCal Oak

22  Valley and SunCal Northlake, respectively.

23     242.    OVC and Northlake Holdings' inequitable conduct includes the following:

24      •       As evidenced by, among other things, recent joint correspondence on behalf
of Lehman ALI, LCPI, OVC and Northlake Holdings, these four entities are controlled by
25  the same people within Lehman. OVC Holdings and Northlake Holdings became successors
to Lehman ALI's liens and loans with knowledge of the former's inequitable conduct, and as
26  part of a scheme to usurp the Oak Valley and Northlake Projects without assuming the
previously promised obligations.

27      •       OVC and Northlake Holdings have purported to step into Lehman ALI's
28  shoes as the lenders on the Oak Valley and Northlake Projects, but they did nothing to fulfill

59

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

61767.3

Lehman ALI's obligation as the "Lender" under the Restructuring Agreement.

• They apparently surreptitiously transferred the Oak Valley and Northlake Loans to LCPI so that LCPI could sell them to Fenway under a Repo, in order to stave off a Lehman liquidity crisis, at the same time that they were signing restructuring settlement documents with SunCal Oak Valley and SunCal Northlake and purporting to be willing and able to proceed to Closing.

• They signed but refused to proceed toward Closing of the Settlement Agreement.

• They induced the Lehman Equity Members in SunCal Oak Valley and SunCal Northlake to refuse to fund their Projects, and to refuse to put these Debtors in bankruptcy, in order to avoid any outcome other than a foreclosure to benefit the lenders, in violation of the Lehman Equity Members' fiduciary duties, and to the detriment of the interests of SunCal Oak Valley and SunCal Northlake and their respective creditors.

• They filed pleadings and proofs of claim with this Court in the estates of SunCal Oak Valley and SunCal Northlake based on their purported ownership of Sold Loans, without disclosing that LCPI had sold those Loans to a third party pre-petition, at least in part in order to "justify" LCPI's repeated false invocation of its automatic stay.

243.    This inequitable conduct has harmed the other creditors of SunCal Oak Valley and SunCal Northlake, respectively, as described above.

**_The Other Successor Lenders_**

244.    To the extent that Fenway is the transferee of Lehman ALI, LCPI, OVC or Northlake Holdings' loans and associated liens on any of the Projects based on any of the Sold Loans, Fenway holds claims that are subject to equitable subordination, and its liens subject to transfer to the Plaintiff Debtors' respective estates. Not only does a transferee take a claim subject to all defenses that could be raised against the transferor, but, on information and belief, Fenway purchased the Sold Loans with knowledge that its transaction was part of an effort by LCPI to obtain liquidity for LBHI from JP Morgan that appeared to be collateralized by something other than the Sold Loans. Fenway is liable as an insider for claims relating to loans held by insiders Lehman ALI, LCPI, OVC or Northlake Holdings, and/or for acts of inequitable conduct undertaken by these entities on Fenway's behalf.

245.    To the extent that Lehman Re is the transferee of Lehman ALI's and/or LV Pacific Point's loans and liens on the Pacific Point Project formerly owned by Plaintiff SJD Partners, and to the extent that Lehman Re has purported claims against SJD Partners or SJD Development, Lehman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Re holds claims that are equally subject to equitable subordination, and its liens equally subject to

2   transfer to these Debtors' estates.  Not only does a transferee take a claim subject to all defenses that

3   could be raised against the transferor, but, on information and belief, Lehman Re accepted the

4   transfer with knowledge that it was part of an effort by Lehman ALI and LV Pacific Point to avoid

5   their obligations to SJD Partners, SJD Development and their creditors.  Lehman Re is liable as an

6   insider for claims relating to loans held by insider Lehman ALI.

7        246.    By reason of the foregoing, Plaintiffs are entitled to equitably subordinate the

8   respective Defendants' secured claims against the respective Plaintiff Debtors to the general

9   unsecured claims, mechanic's lien claims, and priority and administrative claims against the

10  respective Debtors, and to preserve the Defendants' liens for the benefit of the respective Debtors'

11  estates.  The total value of the claims to be equitably subordinated will be proven at trial, but is at

12  least $365 million.  Equitable subordination under the circumstances will achieve a result that is

13  consistent with the purposes of the Bankruptcy Code.

## VI.

### SECOND CLAIM FOR RELIEF

#### (Fraudulent Inducement –

#### By SJD Partners against LV Pacific Point)

18       247.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

19  contained in the Complaint, and further allege as follows:

20       248.    Lehman ALI and LV Pacific Point represented under the terms of the May 23, 2008

21  Restructuring Agreement, and under the August 25, 2008 Settlement Agreement, that Lehman ALI

22  and/or LV Pacific Point would assume the millions of dollars in outstanding accounts payable for

23  Pacific Point third-party vendors and millions in bond obligations, as well as pay for work

24  authorized by Lehman ALI to be performed.

25       249.    Frank Gilhool signed the Settlement Agreement as an authorized signatory of both

26  Lehman ALI and LV Pacific Point.

27       250.    Lehman ALI and LV Pacific Point made these representations for the purpose of

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    inducing SunCal, SJD Development and SJD Partners, then the owner of the Pacific Point property,

2    to consent to LV Pacific Point foreclosing upon the property.  These representations in fact induced

3    Plaintiffs' consent.

4         251.    These representations were false.  LV Pacific Point foreclosed upon and took

5    ownership of the Pacific Point property; but LV Pacific Point and Lehman ALI have left millions in

6    outstanding payables and bond liabilities on which Plaintiffs remain exposed.

7         252.    Indeed, despite obtaining—at Lehman ALI's request—an estoppel certificate from

8    the City of San Juan Capistrano days before the foreclosure, which stated that there had been no

9    breaches of any agreements with the City by SJD Partners, it is SunCal, SJD Partners and SJD

10   Development, and not Lehman ALI or LV Pacific Point, that have been facing millions of dollars of

11   vendor and bond claims, even for amounts arising after the estoppel certificate was signed.

12        253.    On information and belief, just days after the August 28, 2008 foreclosure, Lehman

13   ALI and/or LV Pacific Point transferred their liens on the property to Lehman Re. The parent

14   Lehman entity, LBHI, filed for bankruptcy just days later, on September 15, 2008.

15        254.    On information and belief, Lehman ALI and LV Pacific Point did not intend to honor

16   their promises to cover the payables and bond obligations when they executed the Settlement

17   Agreement, obtained the estoppel certificate, and effectuated the foreclosure in late August 2008.

18   Gilhool's superiors within Lehman who were in charge of Lehman ALI and LV Pacific Point,

19   including Walsh, knew of and authorized or directed the representations being made by him, and the

20   transactions being entered into through him.  Yet at the time, they knew that Lehman's liquidity

21   crisis was acute, and knew that neither Lehman ALI nor LV Pacific Point would provide the

22   promised payment.

23        255.    But for Lehman ALI and LV Pacific Point's wrongdoing, LV Pacific Point would not

24   have obtained Plaintiffs' consent to the foreclosure, and would not have obtained title to the

25   property.  Rather, SJD Partners would continue to own the property, and the Pacific Point property

26   would still be part of its bankruptcy estate.

27        256.    Because SJD Partners' consent was fraudulently induced by Lehman ALI and LV

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    Pacific Point, this Court should rescind the parties' agreement to the extent that SJD Partners

2    consented to the foreclosure and sale of the Pacific Point property; invalidate the foreclosure sale

3    and/or impose a constructive trust upon the Pacific Point property; and direct LV Pacific Point to

4    transfer title back to its rightful owner, SJD Partners.

5       257.    As noted above, once the Pacific Point property is restored to its rightful owner,

6    claims based on the Pacific Point Second Loan, and any associated liens held by the Defendants,

7    should be equitably subordinated pursuant to 11 U.S.C. §510(c) to the claims of the other creditors

8    of SJD Partners and/or SJD Development, and those liens should be preserved for the benefit of and

9    transferred to those Debtors' estate.

10                    **VII.**

11             <u>**THIRD CLAIM FOR RELIEF**</u>

12    **(To Avoid and Recover Fraudulent Transfers – 11 U.S.C. §§ 544(b), 548, Cal. Civil Code §§**

13    **3439.04 and 3439.05 – By SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,**

14      **SunCal I, and SunCal III against Fenway; by SunCal Del Rio, SunCal Tesoro and SCC**

15      **Communities, and by the Trustee on behalf of SunCal Oak Knoll and SunCal Torrance,**

16         **against Lehman ALI; and by the Trustee on behalf of SunCal Marblehead and SunCal**

17                 **Heartland against Lehman ALI and Fenway)**

18       258.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

19    contained in the Complaint, and further allege as follows:

20    ***SunCal Communities I Loan***

21       259.    LCPI filed identical proofs of secured claims against SunCal I (No. 1), SunCal III (No.

22    2), SunCal Acton (No. 6), SunCal Emerald (No. 7), SunCal Bickford (No. 16), and SunCal Summit

23    (No. 12) arising from the SunCal Communities I Loan Agreement in the amount of $343,221,391.

24       260.    A UCC Financing Statement was recorded by LCPI against SunCal I's interest in

25    SunCal Acton, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal

26    Bickford on November 22, 2005.  A UCC Financing Statement was recorded by LCPI against

27    SunCal Summit's interest in Seven Brothers and Kirby on December 12, 2006.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

261.  A deed of trust was recorded by LCPI against the property owned by SunCal Bickford on August 25, 2006.  A deed of trust was recorded by LCPI against the property owned by Acton Estates on January 6, 2007.  A deed of trust was recorded by LCPI against the property owned by SunCal Emerald on July 19, 2007.

262.  The incurrence of the foregoing obligations and the transfers of interests are referred to herein as the "SunCal Communities I Transfers."

263.  The funds advanced under the SunCal Communities I Loan Agreement were such that some of these Debtors received more and others received less funds:  SunCal Acton ($380,069), SunCal Emerald ($44,763,858), SunCal Beaumont ($42,030,925), SunCal Johannson ($14,636,674), SunCal Bickford ($174,570,287) and SunCal Summit ($9,925,373).  SunCal I and SunCal III never received any of these funds or any other consideration for the $343,221,391 proofs of secured claim filed against them.

264.  LCPI's documentation under the SunCal Communities I Loan Agreement reduces the amounts owing by the Debtors by any portion that constitutes a fraudulent conveyance.

265.  LCPI's $343,221,391 proof of secured claim gives rise to a fraudulent conveyance claim in favor of SunCal Acton's estate against LCPI in the amount of $342,841,322; in favor of SunCal Emerald's estate against LCPI in the amount of $298,457,533; in favor of SunCal Bickford's estate against LCPI in the amount of $168,651,104; in favor of SunCal Summit's estate against LCPI in the amount of $333,296,018; in favor of SunCal I's estate against LCPI in the amount of $343,221,391; and in favor of SunCal III's estate against LCPI in the amount of $343,221,391.

266.  The SunCal I Loan Agreement Transfers are transfers as that term is defined in 11 U.S.C. § 101(54).

267.  The SunCal I Loan Agreement Transfers were made for the benefit of LCPI.

268.  These Debtors became insolvent as a result of the SunCal Communities I Loan Transfers.

269.  These Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with such Debtors were an unreasonably

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1  small capital in relation to the business or transaction.

2      270.   These Debtors received less than the reasonably equivalent value in exchange for such

3  transfer.

4      271.   The SunCal Communities I Loan Transfers were made at a time when there existed at

5  least one creditor of each of these Debtors who holds an unsecured claim that is allowable under 11

6  U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

7      272.   To the extent that Fenway was a transferee of the SunCal Communities I Loan

8  Transfers, it was not a good faith transferee.

9      273.   Plaintiff Debtors SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit,

10  SunCal I, and SunCal III are therefore entitled to set aside the SunCal Communities I Loan

11  Transfers, including the liens, pursuant to 11 U.S.C. §§ 544(b), 548 and Cal. Civil Code §§ 3439.04

12  and 3439.05.

13  ***Oak Knoll/Torrance Loan***

14      274.   Lehman ALI filed identical proof of secured claim No. 12 against SunCal Oak Knoll

15  and proof of secured claim No. 4 against SunCal Torrance arising from the Oak Knoll/Torrance

16  Loan Agreement in the amount of $158,141,365.

17      275.   Deeds of trust were recorded by Lehman ALI against the properties owned by SunCal

18  Torrance and SunCal Oak Knoll on December 30, 2005 and March 30, 2006, respectively.

19      276.   The incurrence of the foregoing obligations and the transfers of interests are referred to

20  herein as the "SunCal Oak Knoll/SunCal Torrance Transfers."

21      277.   The Oak Knoll/Torrance Loan Agreement was cross-collateralized by the Oak Knoll

22  Project and the Del Amo Project. The loan proceeds received by SunCal Oak Knoll was

23  $103,575,426 and the loan proceeds received by SunCal Torrance was $45,185,350.

24      278.   This lending arrangement, as structured, creates a fraudulent conveyance claim in

25  favor of SunCal Oak Knoll against Lehman ALI in the amount of $54,565,939, and in favor of

26  SunCal Torrance against Lehman ALI in the amount of $112,956,015.

27      279.   The SunCal Oak Knoll/SunCal Torrance Transfers are transfers as that term is defined

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

in 11 U.S.C. § 101(54).

280.   These Transfers were made for the benefit of Lehman ALI.

281.   SunCal Oak Knoll and SunCal Torrance received less than a reasonably equivalent value in exchange for the SunCal Oak Knoll/SunCal Torrance Transfers.

282.   These Debtors became insolvent as a result of the SunCal Oak Knoll/SunCal Torrance Transfers.

283.   These Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with such Debtors were an unreasonably small capital in relation to the business or transaction.

284.   The SunCal Oak Knoll/SunCal Torrance Transfers were made at a time when there existed at least one creditor of each of these Debtors who holds an unsecured claim that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

285.   The Trustee, on behalf of SunCal Torrance and SunCal Oak Knoll, is therefore entitled to set aside the SunCal Oak Knoll/SunCal Torrance Transfers, including the liens, pursuant to 11 U.S.C. §§ 544(b), 548 and Cal. Civil Code §§ 3439.04 and 3439.05.

### *Interim Loan*

286.   Lehman ALI has filed identical proof of secured claim No. 9 against SCC Communities, proof of secured claim No. 7 against SunCal Tesoro, and proof of secured claim No. 14 against SunCal Del Rio arising from the Interim Loan Agreement in the amount of $23,795,013.

287.   Deeds of trust were recorded against the properties owned by SunCal Tesoro and SCC Communities on November 2, 2007. The Interim Loan Agreement is also allegedly secured by an alleged first-priority lien on the proceeds of the SunCal Del Rio CFD Bonds.

288.   The incurrence of the foregoing obligations and the transfers of interests are referred to herein as the "Interim Loan Transfers."

289.   None of the proceeds from the Interim Loan Agreement were used to fund SCC Communities, SunCal Tesoro or SunCal Del Rio. Consequently, SunCal Del Rio, SunCal Tesoro

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  and SCC Communities each have fraudulent conveyance claims against Lehman ALI arising from

2  the identical proofs of secured claims filed against them arising from the Interim Loan Agreement in

3  the amount of 23,795,013.

4      290.  The Interim Loan Agreement Transfers are transfers as that term is defined in 11

5  U.S.C. § 101(54).

6      291.  The Interim Loan Agreement Transfers were made for the benefit of Lehman ALI.

7      292.  SCC Communities, SunCal Tesoro and SunCal Del Rio received less than a reasonably

8  equivalent value in exchange for the Interim Loan Agreement Transfers.

9      293.  These Debtors became insolvent as a result of the Interim Loan Agreement Transfers.

10     294.  These Debtors were engaged in business or a transaction, or were about to engage in

11  business or a transaction, for which any property remaining with such Debtors were an unreasonably

12  small capital in relation to the business or transaction.

13     295.  These Transfers were made at a time when there existed at least one creditor of each of

14  these Debtors who holds an unsecured claim that is allowable under 11 U.S.C. § 502 or that is not

15  allowable only under 11 U.S.C. § 502(e).

16     296.  Plaintiffs SCC Communities, SunCal Tesoro and SunCal Del Rio are therefore entitled

17  to set aside the Interim Loan Agreement Transfers, including the liens, pursuant to 11 U.S.C. §§

18  544(b), 548 and Cal. Civil Code §§ 3439.04 and 3439.05.

19  ***Marblehead / Heartland Loan***

20     297.  Lehman ALI filed identical proof of secured claim No. 9 against SunCal Heartland and

21  No. 21 against SunCal Marblehead in the amount of $354,325,126 based on the Marblehead/

22  Heartland Loan Agreement.

23     298.  Deeds of trust were recorded by Lehman ALI against the properties owned by SunCal

24  Marblehead and SunCal Heartland on October 4, 2007.

25     299.  The incurrence of the foregoing obligations and the transfers of interests are referred to

26  herein as the "SunCal Marblehead/SunCal Heartland Transfers."

27     300.  The Marblehead/Heartland Loan Agreement was cross-collateralized by the

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    Marblehead Project and the Heartland Project. The loan proceeds received by SunCal Marblehead

2    was $258,843,352 and the loan proceeds received by SunCal Heartland was $49,594,848.

3        301.   This lending arrangement, as structured, creates a fraudulent claim in favor of SunCal

4    Marblehead against Lehman ALI in the amount of $95,481,774, and in favor of SunCal Heartland

5    against Lehman ALI in the amount of $304,730,278.

6        302.   The SunCal Marblehead/SunCal Heartland Transfers are transfers as that term is

7    defined in 11 U.S.C. § 101(54).

8        303.   The SunCal Marblehead/SunCal Heartland Transfers were made for the benefit of

9    Lehman ALI.

10        304.   These Debtors became insolvent as a result of the SunCal Marblehead/SunCal

11    Heartland Transfers.

12        305.   These Debtors were engaged in business or a transaction, or were about to engage in

13    business or a transaction, for which any property remaining with such Debtors were an unreasonably

14    small capital in relation to the business or transaction.

15        306.   These Debtors received less than the reasonably equivalent value in exchange for the

16    SunCal Marblehead/SunCal Heartland Transfers.

17        307.   The SunCal Marblehead/SunCal Heartland Transfers were made at a time when there

18    existed at least one creditor of each of these Debtors who holds an unsecured claim that is allowable

19    under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

20        308.   To the extent that Fenway was a transferee of the SunCal Marblehead/SunCal

21    Heartland Transfers, it was not a good faith transferee.

22        309.   The Trustee, on behalf of SunCal Marblehead and SunCal Heartland, is therefore

23    entitled to set aside the SunCal Marblehead/SunCal Heartland Transfers, including the liens,

24    pursuant to 11 U.S.C. §§ 544(b), 548 and Cal. Civil Code §§ 3439.04 and 3439.05.

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

# VIII.

## FOURTH CLAIM FOR RELIEF

### (To Avoid and Recover Preferential Transfers – 11 U.S.C. § 547 –

### By the Trustee on behalf of SunCal Delta Coves against Lehman ALI and Fenway, and on

### behalf of SunCal Century City against Lehman ALI)

310.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

***Delta Coves***

311.    SunCal Delta Coves made pre-petition payments in the amount of $6,195,440.46 to Lehman ALI (the "Delta Coves Preferential Transfers"). The Delta Coves Preferential Transfers were to or for the benefit of Lehman ALI within the meaning of 11 U.S.C. § 547.

312.    The Delta Coves Preferential Transfers were made for, or on account of, an antecedent debt owed by Delta Coves to Lehman ALI before the Delta Coves Preferential Transfers were made.

313.    Delta Coves was insolvent throughout such period.

314.    Lehman ALI was a creditor of Delta Coves at the time of the Delta Coves Preferential Transfers within the meaning of 11 U.S.C. § 101(10).

315.    Lehman ALI was an insider of Delta Coves within the meaning of 11 U.S.C. § 101(31).

316.    The Delta Coves Preferential Transfers were made within the year preceding Delta Cove's involuntary proceeding.

317.    The Delta Coves Preferential Transfers were made at a time that the Delta Cove Loan Agreement was undersecured.

318.    Lehman ALI asserts that the Delta Coves Project has a fair market value of $25,200,000.

319.    Lehman ALI submitted an alleged proof of a secured claim against SunCal Delta Coves of $206,023,142 (proof of secured claim No. 21).

320.    To the extent that Fenway was a transferee of the Delta Coves Preferential Transfers, it

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1    was not a good faith transferee.

2        321.  As a result of the Delta Coves Preferential Transfers, Lehman ALI received more than

3    it would have received if:  (i) this case was a case under chapter 7 of the Bankruptcy Code; (ii) the

4    Delta Coves Preferential Transfers had not been made; and (iii) Lehman ALI received payment of

5    such antecedent debt under the provisions of the Bankruptcy Code.

6        322.  The Trustee, on behalf of SunCal Delta Coves, is entitled to avoid the Delta Coves

7    Preferential Transfers, pursuant to 11 U.S.C. § 547(b).

8    ***Century City***

9        323.  SunCal Century City made pre-petition transfers in the amount of $10,628,948.64 to

10    Lehman ALI (the "Century City Preferential Transfers").  The Century City Preferential Transfers

11    were to or for the benefit of Lehman ALI within the meaning of 11 U.S.C. § 547.

12        324.  The Century City Preferential Transfers were made for, or on account of, an antecedent

13    debt owed by SunCal Century City to Lehman ALI before such Transfers were made.

14        325.  SunCal Century City was insolvent throughout such period.

15        326.  Lehman ALI was a creditor of SunCal Century City at the time of the Century

16    City Preferential Transfers within the meaning of 11 U.S.C. § 101(10).

17        327.  Lehman ALI was an insider of SunCal Century City within the meaning of 11

18    U.S.C. § Section 101(31).

19        328.  The Century City Preferential Transfers were made within the year preceding SunCal

20    Century City's involuntary proceeding.

21        329.  The Century City Preferential Transfers were made at a time that the SunCal Century

22    City Loan Agreement was undersecured.

23        330.  Lehman ALI asserts that the 10,000 Santa Monica Project has a fair market value of

24    $50,900,000.

25        331.  As a result of the Century City Preferential Transfers, Lehman ALI received more than

26    it would have received if:  (i) this case was a case under chapter 7 of the Bankruptcy Code; (ii) the

27    Century City Preferential Transfers had not been made; and (iii) Lehman ALI received payment of

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

70

**THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT**

61767.3

1   such antecedent debt under the provisions of the Bankruptcy Code.

2        332.   The Trustee, on behalf of SunCal Century City, is entitled to avoid the Century City

3   Preferential Transfers pursuant to 11 U.S.C. § Section 547(b).

4                                        **IX.**

5                            **FIFTH CLAIM FOR RELIEF**

6   **(To Void Liens – 11 U.S.C. § 506(d) – By SunCal I and SunCal III against Fenway; and by**

7                        **SunCal Bickford against Lehman ALI)**

8        333.   Plaintiffs repeat and reallege each and every foregoing and subsequent allegation

9   contained in the Complaint, and further allege as follows:

10  *SunCal Communities I Loan*

11       334.   The value of LCPI's interest in SunCal I's equity interests in SunCal Acton, SunCal

12  Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford is zero.

13       335.   The value of LCPI's interest in SunCal III's non-existent interests is zero.

14       336.   Therefore, LCPI's liens (1) against SunCal I's equity interests in SunCal Acton,

15  SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and

16  (2) against the SunCal III estate are void pursuant to 11 U.S.C. § 506(d).

17       337.   To the extent that Fenway is the transferee of these liens, they are equally as void,

18  pursuant to 11 U.S.C. § 506(d), as if they were still in the hands of LCPI.  Fenway is not in

19  bankruptcy and has no applicable automatic stay.

20  *Bickford Second Loan*

21       338.   The value of Lehman ALI's interest in the second priority deed of trust on the

22  Bickford Ranch Project is zero.

23       339.   Therefore, Lehman ALI's second priority lien against the Bickford Ranch Project

24  owned by SunCal Bickford is void pursuant to 11 U.S.C. § 506(d).

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## X.

## SIXTH CLAIM FOR RELIEF

### (To Disallow Claims and Liens – 11 U.S.C. § 502(d) —

By by SunCal Acton, SunCal Bickford, SunCal Emerald, SunCal Summit, SunCal I, and

SunCal III against Fenway; by SunCal Del Rio, SunCal Tesoro and SCC Communities, and by

the Trustee on behalf of SunCal Oak Knoll and SunCal Torrance, against Lehman ALI; by the

Trustee on behalf of SunCal Delta Coves, SunCal Marblehead and SunCal Heartland against

Lehman ALI and Fenway; and by the Trustee on behalf of SunCal Century City against

Lehman ALI)

340.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

341.    Defendants are entities from which property is recoverable under 11 U.S.C. §§ 542, 543, 550 or 553, or are transferees of one or more avoidable transfers under 11 U.S.C. §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a).

342.    Defendants have not paid the amount, or turned over any such property for which Defendants are liable under 11 U.S.C. §§ 522(i), 542, 543, 550, or 553.

343.    Pursuant to Section 502(d) of the Bankruptcy Code, the Defendants' claims are disallowable and the liens associated with such claims are avoidable.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

THIRD AMENDED ADVERSARY PROCEEDING COMPLAINT

61767.3

## XI.

## SEVENTH CLAIM FOR RELIEF

### (To Preserve Claims and Liens for the Respective Debtors' Estates -- 11 U.S.C. §§ 551 and 541(a)(4) – Against All Defendants)[20]

344.    Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

345.    Pursuant to 11 U.S.C. § 551 and 541(a)(4), any fraudulent transfer or preferential transfer that is avoided pursuant to 11 U.S.C. §§ 544(b), 547 or 548, any lien found to be void under 11 U.S.C. § 506(d), and any claim or lien subject to subordination under 11 U.S.C. § 510(c) should be preserved for the benefit of and/or transferred to the respective Debtor's estate.

## XII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court enter a judgment against Defendants as follows:

1.    For equitable subordination of the Defendants' claims against the Plaintiff Debtors to the unsecured creditors claims, mechanic lien claims, and priority and administrative claims against the respective Plaintiff Debtors' estates; and for the preservation of any liens held by the Defendants for the benefit of, and transfer to, the respective Plaintiff Debtors' estates;

2.    for: (a) an order rescinding the agreement among SJD Partners, Lehman ALI and LV Pacific Point regarding the foreclosure and sale of the Pacific Point property, invalidating the

---

[20] In the March 8, 2010 oral ruling on the Lehman Entities' and Fenway's respective motions to dismiss the Third Amended Complaint, the Court held that the Ninth Claim for Relief (currently the Seventh Claim) to preserve claims and liens was dismissed "for the reasons stated in the motion." The Lehman Entities' motion to dismiss contained a single line of argument regarding the Ninth Claim (at 52:27-28): "As discussed, the Plaintiffs have failed to state claims for which relief can be granted. Thus, Claim Nine must be dismissed." Their reply brief did not mention the Ninth Claim, and Fenway's moving papers merely incorporated by reference the Lehman Entities' briefing.

As Defendants acknowledged, the viability of the cause of action to preserve claims and liens is entirely derivative of the other causes of action. In this Fourth Amended Complaint, the Plaintiffs have removed any causes of action which were dismissed from the Third Amended Complaint, and retained the others. Accordingly, Plaintiffs are asserting the cause of action to preserve claims and liens only as to other causes of action that have already been ruled viable.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

73

1 | foreclosure sale of the Pacific Point property to LV Pacific Point, and/or imposing a constructive

2 | trust on LV Pacific Point directing it to transfer title of the Pacific Point property back to SJD

3 | Partners; and (b) equitable subordination of any claims Lehman ALI, LV Pacific Points and/or

4 | Lehman Re may have against SJD Partners and/or SJD Development to the unsecured creditors

5 | claims, mechanic lien claims, and priority and administrative claims against these Debtors' estates;

6 | and for the preservation of any liens held by these Defendants for the benefit of, and transfer to,

7 | these Debtors' estates;

8 |        3.       for avoidance and recovery of the above-alleged preferential transfers pursuant to

9 | Sections 547 and 550(a) of the Bankruptcy Code;

10 |       4.       for avoidance and recovery of the above-alleged fraudulent transfers pursuant to

11 | Sections 544(b) and 548 of the Bankruptcy Code, and Sections 3439.04 and 3439.05 of the

12 | California Civil Code;

13 |       5.       for a finding that the above-specified liens are void pursuant to 11 U.S.C. § 506(d);

14 |       6.       for the disallowance of Defendants' claims and avoidance of the Defendants' liens

15 | pursuant to 11 U.S.C. § 502(d);

16 |       7.       for the preservation of Defendants' claims and liens for the respective Debtor's estate

17 | pursuant to 11 U.S.C. § 551 and 541(a); and

18 |       8.       For such other and further relief as this Court may, in its discretion, deem just and

19 | proper, including, without limitation, attorneys' fees, costs and interest, as appropriate.

20 |

21 | Dated: March 26, 2010                          **MILLER BARONDESS LLP**

22 |

23 |                                                By: _____

24 |                                                Louis R. Miller
                                                   Martin Pritikin
25 |                                                Brian Procel
                                                   Special Litigation Counsel for the Jointly
26 |                                                Administered Debtors in Possession and
                                                   Steven M. Speier, the Chapter 11 Trustee

27 |

28 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

## APPENDIX A

| Debtor | Creditor | Proof of Claim # | Claim Amount |
|---|---|---|---|
| **Acton Estates, LLC** | | | |
| | SunCal Management, LLC | POC #2 | $ 44,173.26 |
| | SCC Acquisitions, Inc. | POC #3 | $ 3,000.00 |
| | SunCal Management, LLC | POC #4 | $ 59,241.68 |
| | Bond Safeguard Insurance Company and Lexon Insurance Company Insurance Company | POC #7 | $ 1,290,000.00 |
| | SCC Acquisitions, Inc. | POC #8 | $ 1,290,000.00 |
| | Bruce Elieff | POC #9 | $ 1,290,000.00 |
| | Arch Insurance Company | POC #10 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Rohm Insurance Agency | POC #11 | $ 14,150.00 |
| **SunCal Bickford Ranch, LLC** | | | |
| | Cook's Portable Toilets & Septic | POC #1 | $ 2,743.21 |
| | Hertz Equipment Rental Corp. | POC #2 | $ 25.51 |
| | Ecorp Consulting, Inc. | POC #3 | $ 23,211.60 |
| | MHM Engineers & Surveyors | POC #5 | $ 8,916.67 |
| | Land Architecture, Inc. | POC #6 | $ 100,245.39 |
| | Fehr & Peers Associates, Inc.Associales, Inc | POC #7 | $ 1,123.22 |
| | Far West Construction, Inc. | POC #8 | $ 72,602.47 |
| | BIA Riverside Sign Program | POC #9 | $ 5,175.00 |
| | Kiewit Pacific Co. | POC #10 | $ 1,868,357.50 |
| | SunCal Management, LLC | POC #11 | $ 321,103.03 |
| | SCC Acquisitions, Inc. | POC #12 | $ 3,000.00 |
| | SunCal Management, LLC | POC #13 | $ 324,769.28 |
| | ARB, Inc. | POC #15 | $ 1,052,272.82 |
| | SunCal Master Venture Member, LLC | POC #18 | $ 20,451.40 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #19 | $ 2,500,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #20 | $ 327,548.00 |
| | Pierce's Security | POC #21 | $ 53,919.09 |
| | Arch Insurance Company | POC #22 | $155,423,657(contingent) $131,588,73 (liquidated) |
| | Rohm Insurance Agency | POC #23 | $ 4,095.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #24 | $ 2,827,548.00 |
| | SCC Acquisitions, Inc. | POC #25 | $ 2,827,548.00 |
| | Bruce Elieff | POC #26 | $ 2,827,548.00 |
| | Murray Smith & Associates Engineering | POC #27; POC #31 | $ 77,107.11 |
| | Independent Construction Co. | POC #28 | $ 117,209.80 |
| | Marques Pipeline, Inc. | POC #29; POC #30 | $ 330,118.00 |
| | MacKay & Somps Civil Eng | POC #32 | $ 14,851.80 |
| **SunCal Torrance Properties, LLC** | | | |
| | SunCal Management, LLC | POC #1 | $ 148,578.54 |
| | SunCal Management, LLC | POC #2 | $ 160,914.00 |
| | MWW Group Inc | POC #5 | $ 42,019.25 |
| | Arch Insurance Company | POC #6 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **North Orange Del Rio Land, LLC** | | | |
| | Trench Shoring Company | POC #1 | $ 1,072.50 |
| | Debby Cobb Consulting | POC #2 | $ 415.00 |
| | Carmen A. Morinello | POC #3 | $ 110,000.00 |
| | Elfend & Associates, Inc. | POC #4 | $ 225,000.00 |
| | Matthew Cunningham dba Pacific Strategies | POC #5 | $ 30,000.00 |
| | Econolite Control Products | POC #6 | $ 21,932.51 |
| | SunCal Management, LLC | POC #7 | $ 2,242,240.45 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #8 | $ 3,060,045.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #9 | $ 250,100.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #10 | $ 2,809,945.00 |
| | Bova Contracting Corporation | POC #11 | $ 275,918.33 |
| | SunCal Management, LLC | POC #12 | $ 213,668.78 |
| | SCC Acquisitions, Inc. | POC #15 | $ 3,159,945.00 |
| | Bruce Elieff | POC #16 | $ 3,159,945.00 |
| | Fuscoe Engineering, Inc. | POC #17 | $ 279,974.18 |
| | Hillcrest Contracting, Inc. | POC #18; POC #24 | $ 295,166.93 |
| | Arch Insurance Company | POC #19 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Summers Murphy & Partners, Inc. | POC #20 | $ 59,350.00 |
| | All American Asphalt | POC #21 | $ 124,037.20 |
| | Rohm Insurance Agency | POC #22 | $ 32,075.00 |
| | City of Orange | POC #23 | $ 47,818.75 |

| Debtor | Creditor | Proof of Claim # | Claim Amount |
|---|---|---|---|
| **Delta Coves Venture, LLC** | | | |
| | BKF Engineers | POC #1; POC #15 | $ 121,266.64 |
| | Hertz Equipment Rental Corporation | POC #2 | $ 25,444.15 |
| | Top Grade Construction, Inc. | POC #3; POC #17 | $ 250,000.00 |
| | Pacific Gas and Electric Company | POC #4 | $ 4,208.49 |
| | Howard Construction | POC #5 | $ 2,866.00 |
| | Bellingham Marine Industries, Inc. | POC #6 | $ 2,822,157.16 |
| | SunCal Management, LLC | POC #7 | $ 1,084,858.63 |
| | MBH Architects, Inc. | POC #8 | $ 97,091.24 |
| | Environmental Foresight, Inc. | POC #9 | $ 34,903.70 |
| | Weston/Mason Marketing, Tom Weston, President | POC #11 | $ 32,525.76 |
| | Gibson & Skordal, LLC | POC #12 | $ 586.50 |
| | vanderToolen Associates | POC #13; POC #24 | $ 15,028.09 |
| | Development Planning & Financing Group, Inc. | POC #14 | $ 6,428.00 |
| | Contra Costa County | POC #16 | $ 609,221.68 |
| | Rose Associates Landscape Architects, Inc. | POC #18 | $ 64,617.14 |
| | SunCal Management, LLC | POC #19 | $ 448,061.00 |
| | SCC Acquisitions, Inc. | POC#22 | $ 27,555,855.00 |
| | Bruce Elieff | POC #23 | $ 27,555,855.00 |
| | Arch Insurance Company | POC #25 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Luce Forward Hamilton & Scripps LLP | POC #26; POC #27 | $ 20,069.07 |
| | Rohm Insurance Agency | POC #28 | $ 270,225.00 |
| | Jackson DeMarco Tidus & Peckenpaugh | POC #29 | $ 1,890.00 |
| | Fanelli Development Co | POC #30 | $ 46,380.23 |
| | | | |
| **SunCal Emerald Meadows Ranch, LLC** | | | |
| | Zeiser Kling Consultants | POC #1 | $ 8,984.27 |
| | Hillwig - Goodrow, LLC | POC #2 | $ 3,860.00 |
| | O'Reilly Public Relations | POC #3 | $ 967.90 |
| | SCC Acquisitions, Inc. | POC #4 | $ 15,777.78 |
| | SunCal Management, LLC | POC #5 | $ 174,624.56 |
| | SunCal Master Venture Member, LLC | POC #8 | $ 14,071.10 |
| | Arch Insurance Company | POC #10 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | David Sandoval | POC #11 | $ 500,000.00 |
| | Moses Green | POC #12 | $ 500,000.00 |
| | Hall & Foreman, Inc. | POC #13 | $ 288,631.72 |
| | Life Church of God in Christ | POC #14 | $ 6,055,000.00 |
| | Proactive Engineering Consultants, Inc. | POC #15; POC #16 | $ 991,315.27 |
| | Rubidoux 60, LLC and EMR Residential Properties, LLC | POC #17 | Unknown |
| | | | |
| **SunCal Heartland, LLC** | | | |
| | Stantec Consulting, Inc. | POC #1; POC #22 | $ 971,341.56 |
| | HD Supply Construction Supply, LTD., dba HD Supply White Cap Construction Supply | POC #2 | $ 44,310.80 |
| | SunCal Management, LLC | POC #3 | $ 397,455.41 |
| | SCC Acquisitions, Inc. | POC #4 | $ 24,065.05 |
| | SunCal Management, LLC | POC #6 | $ 227,269.85 |
| | Pinnick, Inc. | POC #8 | $ 563,159.02 |
| | SunCal Master Venture Member, LLC | POC #10; POC #12 | $ 1,512.80 |
| | SCC JV Ventures, LLC | POC #11 | $ 3,093.28 |
| | Utility Specialists SW, Inc. | POC #13; POC #14 | $ 3,787.50 |
| | Skyview Imaging | POC #15 | $ 525.00 |
| | Arch Insurance Company | POC #16 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Stantec Consulting, Inc. | POC #17 | $ 39,459.53 |
| | Dennis M. McCoy & Sons | POC #18 | $ 941,960.00 |
| | SCC Acquisitions, Inc. | POC #19 | $ 28,947,440.00 |
| | Bruce Elieff | POC #20 | $ 28,947,440.00 |
| | Hall & Foreman, Inc. | POC #21; POC #23 | $ 1,175.60 |
| | Waterforce, Inc. | POC #24 | $ 113,750.00 |
| | Jackson DeMarco Idus & Peckenpaugh | POC #25 | $ 3,445.50 |
| | | | |
| **SunCal Johannson Ranch, LLC** | | | $ 75.45 |
| | SCC Acquisitions, Inc. | POC #1 | $ 9,417.65 |
| | SunCal Management, LLC | POC #2 | $ 25,598.23 |
| | SunCal Management, LLC | POC #3 | $ 34,101.28 |
| | Arch Insurance Company | POC #5 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | | | |
| **SCC Communities, LLC** | | | |
| | Southern Cal. Geotechnical | POC #1 | $ 7,550.49 |
| | SunCal Management, LLC | POC #2 | $ 21,804.39 |
| | SCC Acquisitions, Inc. | POC #3 | $ 1,000.00 |

| Debtor | Creditor | Proof of Claim No. | Claim Amount |
|---|---|---|---|
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #4 | $ 25,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #5 | $ 12,500.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #6 | $ 12,500.00 |
| | SunCal Management, LLC | POC #7 | $ 27,072.52 |
| | SCC Acquisitions, Inc. | POC #8 | |
| | Arch Insurance Company | POC #10 | $155,423,657 (contingent) $131,588.73 (liquidated) |

## SunCal Marblehead, LLC

| Debtor | Creditor | Proof of Claim No. | Claim Amount |
|---|---|---|---|
| | Outdoor Dimensions | POC #1 | $ 57,247.88 |
| | Stantec Consulting, Inc. | POC #2; POC #25 | $ 39,459.53 |
| | TriMax Systems, Inc. | POC #3 | $ 75,286.70 |
| | Bulako Utility Design, Inc. | POC #4 | $ 6,250.00 |
| | Creekside Development, Inc. | POC #5 | $ 780,000.00 |
| | Glenn Lukos Associates, Inc. | POC #6; POC #24 | $ 1,733.34 |
| | California Barricade Rentals, Inc. | POC #7 | $ 5,992.00 |
| | Debby Cobb Consulting, Inc. | POC #8 | $ 2,618.64 |
| | BR South Coast Private Security | POC #9 | $ 38,446.80 |
| | BNB Engineering, Inc. | POC #10; POC #37 | $ 1,608,722.64 |
| | SunCal Management, LLC | POC #11 | $ 1,799,805.75 |
| | SCC Acquisitions, Inc. | POC #12 | $ 4,000.00 |
| | Coastal Living | POC #13 | $ 11,268.00 |
| | Brion Jeannette Architecture | POC #14 | $ 106,481.00 |
| | Security Signal Devices | POC #15 | $ 42,088.00 |
| | Design Alliance | POC #16 | $ 27,943.18 |
| | Steiny and Company, Inc. | POC #17 | $ 259,775.29 |
| | SunCal Management, LLC | POC #18 | $ 591,973.05 |
| | Golden State Fence Co | POC #19 | $ 74,337.00 |
| | SCC JV Ventures, LLC | POC #22 | $ 27,307.61 |
| | SunCal Master Venture Member, LLC | POC #23 | $ 110,151.48 |
| | Bee Busters, Inc. | POC #26 | $ 300.00 |
| | Villa San Clemente, LLC | POC #27 | $ 13,233,103.00 |
| | RMF Contracting, Inc. dba R&M Electrical Contracting | POC #28 | $ 315,591.83 |
| | The Jasper Companies, Inc. | POC #29 | $ 165,260.29 |
| | MediaMax Network LLC | POC #30 | $ 55,155.48 |
| | S & S Seeds, Inc. | POC #31 | $ 15,493.56 |
| | Horticultural Specialists, Inc. | POC #32 | $ 13,000.00 |
| | Horticultural Specialists, Inc. | POC #33 | $ 54,480.20 |
| | Arch Insurance Company | POC #34 | $155,423,657 (contingent) $131,588.73 (liquidated) |
| | Roddan Paolucci Roddan Advertising | POC #35; POC #38 | $ 427,489.63 |
| | Kirk Negrete, Inc., dba United Steel Placers | POC #36 | $ 270,058.42 |
| | RBF Consulting | POC #39 | $ 132,180.70 |
| | SCC Acquisitions, Inc. | POC #40 | $ 56,510,018.00 |
| | Bruce Elieff | POC #41 | $ 56,510,018.00 |
| | R.J. Noble | POC #42; POC #50; POC #58 | $ 175,030.81 |
| | City of San Clemente | POC #43, POC #51; POC #59 | $ 39,971,734.00 |
| | Jag Construction | POC #44; POC #52 | $ 178,047.68 |
| | Lucast Consulting | POC #45; POC #53 | $ 22,809.26 |
| | Orange County Striping Service, Inc. | POC #46; POC #54 | $ 11,752.27 |
| | RH Masonry, Inc. | POC #47; POC #55 | $ 169,592.00 |
| | Savala Equipment Company, Inc. | POC #48; POC #56 | $ 34,440.00 |
| | Rockey Murata Landscaping, Inc. | POC #60 | $ 285,643.04 |

## LB/L - SunCal Northlake, LLC

| Debtor | Creditor | Proof of Claim No. | Claim Amount |
|---|---|---|---|
| | SunCal Management, LLC | POC #1 | $ 896,009.98 |
| | SCC Acquisitions, Inc. | POC #2 | $ 6,617.65 |
| | Southern California Edison Company | POC #3 | $ 34.48 |
| | SunCal Management, LLC | POC #4 | $ 421,783.35 |
| | Northlake Holdings, LLC | POC #6 | $ 123,654,776.88 |

## SunCal Oak Knoll, LLC

| Debtor | Creditor | Proof of Claim No. | Claim Amount |
|---|---|---|---|
| | RGA Environmental, Inc. | POC #1 | $ 75,817.45 |
| | BKF Engineers | POC #2,#9 & #19 | $308,817.34 |
| | Aboricultural Specialties, Inc. dba The Professional Tree Care Co. | POC #3 | $ 93,925.01 |
| | CST Environmental, Inc. | POC #4 | $ 4,318,169.56 |
| | A-1 Enterprises | POC #5 | $ 1,250.00 |
| | Lamphier Gregory | POC #6 | $ 13,543.08 |
| | SunCal Management, LLC | POC #7 | $ 462,392.96 |
| | Pacific Gas & Electric Company | POC #8 | $ 1,148.52 |
| | SunCal Management, LLC | POC #10 | $ 874,609.00 |
| | Fehr & Peers | POC #13 | $ 3,560.00 |
| | Ralph Osterling Consultants, Inc. | POC #14 | $ 11,688.00 |
| | Tasini & Associates | POC #15 | $ 20,000.00 |
| | WRA, Inc. | POC #16 | $ 27,450.19 |

| Debtor | Creditor | Proof of Claim # | Claim Amount |
|--------|----------|------------------|--------------|
| | Philip Williams & Associates, Ltd. | POC #17, #18, #27 | $ 42,728.00 |
| | ENGEO, Incorporated | POC #20 | $ 55,825.91 |
| | SWA Group | POC #21 & #22 | $ 32,584.54 |
| | Environmental Science Associates | POC #25 | $ 24,234.39 |
| | Pacific Gas & Electric Company | POC #26 | $ 235.96 |
| | Rohm Insurance Agency | POC #28 | $ 8,560.00 |
| | East Bay Municipal Utility District | POC #29 | $ 21,948.36 |
| **LB/L - SunCal - Oak Valley, LLC** | | | |
| | Outdoor Dimensions | POC #1 | $ 170,819.50 |
| | Stantec Consulting, Inc. | POC #2 | $ 174,572.17 |
| | HD Supply Construction Supply, LTD., dba HD Supply White Cap Construction Supply | POC #3 | $ 52,806.70 |
| | Kevin L. Crook Architect, Inc. | POC #4 | $ 65,340.00 |
| | Glenn Lukos Associates, Inc. | POC #5 & #18 | $ 15,469.81 |
| | SunCal Management, LLC | POC #6 | $ 1,163,688.91 |
| | SCC Acquisitions, Inc. | POC #7 | $ 5,300.00 |
| | Weston Mason Marketing | POC #8 | $ 7,721.41 |
| | Pacific Soils Engineering, Inc. | POC #10 & #21 | $ 97,569.13 |
| | SunCal Management, LLC | POC #11 | $ 132,568.22 |
| | Pinnick, Inc. | POC #12 | $ 30,752.71 |
| | Pinnick, Inc. | POC #14 | $ 968,987.04 |
| | SCC Acquisitions, Inc. | POC #15 | $ 4,476.99 |
| | OVC Holdings, LLC | POC #16 | $ 141,630,091.63 |
| | SunCal Master Venture Member, LLC | POC #17 | $ 1,398.23 |
| | Utility Consultants of Orange County | POC #19 | $ 5,650.00 |
| | Cal West Underground, Inc. | POC #20 | $ 4,374.60 |
| | Skyview Imaging | POC #22 | $ 1,025.00 |
| | Hillcrest Contracting, Inc | POC #23 | $ 136,567.43 |
| | Arch Insurance Company | POC #24 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | MacKenzie Landscape | POC #25 | $ 121,297.00 |
| | All American Asphalt | POC #26 | $ 60,355.48 |
| | Rohm Insurance Agency | POC #27 | $ 182,774.00 |
| | Pacific Soils Engineering Inc. | POC #28 | $ 153,910.10 |
| | SCC Acquisitions, Inc. Inc | POC #29 | $ 26,167,563.15 |
| | Bruce Elieff | POC #30 | $ 26,167,563.15 |
| | Los Angeles Times | POC #31 & #33 | $ 39,295.00 |
| | Los Angeles Times | POC #32 & #34 | $ 4,315.00 |
| | Proactive Engineering Consultants, Inc. | POC #35 & #36 | $ 260,685.20 |
| | Nissho of California, Inc. | POC #37 | $ 42,570.00 |
| | Waterforce Inc. | POC #38 | $ 20,893.30 |
| | Jackson DeMarco Tidus & Peckenpaugh | POC #39 | $ 19,383.02 |
| | Corporation Service Company | POC # 40 | $ 56.49 |
| **SJD Development Corp.** | | | |
| | SCC Acquisitions | POC #3 | $ - |
| | MWW Group Inc. | POC #5 | $ 42,019.25 |
| | Arch Insurance Company | POC #6 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **SJD Partners, Ltd.** | | | |
| | Hunsaker & Associates - Irvine | POC #1 | $ 373,205.33 |
| | Palmieri, Tyler, Wiender, Wilhelm & Waldron LLP | POC #2; POC #5; POC #45; POC #46 | $ 7,080.17 |
| | KTGY Group, Inc. | POC #3 | $ 8,295.36 |
| | Utility Consultants of Orange | POC #4; POC #9 | $ 15,550.00 |
| | Contracting Engineers, Inc | POC #6 | $ 12,227.50 |
| | C.I. Printing Inc., dba Color Image Printing, Inc. | POC #7 | $ 22,127.70 |
| | Culbertson, Adams & Associates | POC #8 | $ 19,751.66 |
| | Gary L. Vogt & Associates | POC #10 | $ 2,250.00 |
| | Scoop Reprint Source | POC #11 | $ 5,215.38 |
| | Daren Saunders Photography | POC #12 | $ 1,131.21 |
| | GCI Associates, Inc. | POC #13 | $ 641.42 |
| | Dexter Wilson Engineering, Inc | POC #14 | $ 10,418.37 |
| | HomeBuyers Guide Real Estate Inc. | POC #15 | $ 69,900.00 |
| | Creekside Development, Inc. | POC #16 | $ 3,663,332.72 |
| | Centex Homes | POC #17 | $ 3,771,678.07 |
| | SunCal Management, LLC | POC #18 | $ 1,386,189.57 |
| | SCC Acquisitions, Inc. | POC #19 | $ 27,166.61 |
| | Boudreau Pipeline Corporation | POC #20 | $ 899,840.47 |
| | SunCal Management, LLC | POC #22 | $ 198,926.00 |
| | SunCal Master Venture Member, LLC | POC #25 | $ 45,164.31 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #26 | $ 319,287.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #27 | $ 343,468.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #28 | $ 378,797.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #29 | $ 114,291.00 |

| Debtor | Creditor | POC/SGE #4 | Claim Amount |
|---|---|---|---|
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #30 | $ 710,192.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #31 | $ 476,943.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #32 | $ 364,676.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #33 | $ 262,073.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #34 | $ 1,639,486.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #35 | $ 1,537,973.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #36 | $ 434,156.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #37 | $ 763,671.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #38 | $ 219,070.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #39 | $ 70,005.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #40 | $ 83,952.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #41 | $ 78,031.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #42 | $ 7,712,119.00 |
| | SCC Acquisitions, Inc. | POC #43 | $ 37,472,869.00 |
| | Bruce Elieff | POC #44 | $ 37,472,869.00 |
| | Arch Insurance Company | POC #47 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Summers Murphy & Partners, Inc | POC #48 | $ 8,350.00 |
| | 5th Gear, LLC | POC #49 | $ 97,531.77 |
| | All American Asphalt | POC #50 | $ 245,870.91 |
| | Halladay & Mim Mack, Inc. | POC #51 | $ 44,611.21 |
| | Voss, Cook & Thel, LLP | POC #52 | $ 205,322.98 |
| | Chino Grading, Inc. | POC #53 | $ 282,044.14 |
| | Ron Martin & Associates, Inc. | POC #54 | $ 35,217.09 |
| | Rohm Insurance Agency | POC #56 | $ 109,185.00 |

## SunCal PSV, LLC

| Debtor | Creditor | POC/SGE #4 | Claim Amount |
|---|---|---|---|
| | Desert Publications | POC #1 | $ 10,385.00 |
| | SunCal Management, LLC | POC #2 | $ 520,753.13 |
| | SCC Acquisitions, Inc. | POC #3 | $ 22,977.13 |
| | Brudvik, Inc. | POC #4 | $ 48,984.54 |
| | Larry Jacinto Construction, Inc. | POC #5; POC #24 | $ 212,663.76 |
| | MOM Publications, Inc. dba New Homes Magazine | POC #6 | $ 10,383.93 |
| | SunCal Management, LLC | POC #7 | $ 206,329.30 |
| | SCC Acquisitions, Inc. | POC #8 | $ 18,612.37 |
| | Williams + Paddon Architects + Planners, Inc | POC #9 | $ 64,084.38 |
| | Williams + Paddon Architects + Planners, Inc | POC #10 | $ 9,713.64 |
| | SCC Acquisitions, Inc. | POC #11 | $ 17,993.01 |
| | SunCal Master Venture Member, LLC | POC #13 | $ 72,278.26 |
| | SCC Acquisitions, Inc. | POC #14 | $ 18,405,548.00 |
| | Bruce Elieff | POC #15 | $ 18,405,548.00 |
| | Desert Water Agency | POC #16 | $ 53,443.92 |
| | AP Medallion Gold LLC dba Golf Ventures West, LLC | POC #17 | $ 4,072.97 |
| | Martin Excavation, Inc. | POC #18 | $ 1,762.50 |
| | West Coast Turf | POC #19 | $ 263,262.04 |
| | High Tech Irrigation, Inc. | POC #20 | $ 50,526.39 |
| | Griffin Structures, Inc. | POC #21; POC #22 | $ 80,001.60 |
| | The Collaborative West, Inc. | POC #23 | $ 79,547.50 |
| | Southern California Edison Company | POC #25 | $ 243.89 |
| | Southern California Edison Company | POC #26 | $ 23,881.82 |
| | HSA Design Group | POC #27 | $ 8,767.92 |
| | Arch Insurance Company | POC #28 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | 5th Gear, LLC | POC #29 | $ 136,356.73 |
| | Rohm Insurance Agency | POC #30 | $ 183,883.00 |
| | Stormwater Compliance Specialists, Inc. | POC #31; POC #37 | $ 21,840.00 |
| | Swanilon Inc., dba The Land Stewards | POC #32; POC #38 | $ 23,024.04 |
| | Pacific Masonry Walls Inc | POC #33; POC #39 | $ 314,061.23 |
| | Simplot Partners (J.R. Simplot Company) | POC #34; POC #40 | $ 3,467.88 |
| | Palm Springs Pump, Inc | POC #35; POC #41 | $ 18,158.59 |
| | Desert Pipeline Inc | POC #36; POC #42; POC #47 | $ 469,784.09 |
| | MSA Consulting, Inc. | POC #43 | $ 666,897.27 |
| | Nissho of California, Inc. | POC #44 | $ 1,858,428.02 |
| | Jackson, DeMarco, Tidus & Peckenpaugh | POC #45 | $ 52,234.50 |
| | Oliphant Golf, Inc. | POC #46 | $ 456,476.47 |
| | Protection One | POC #48 | $ 2,194.19 |

## Palmdale Hills Property, LLC

| Debtor | Creditor | POC/SGE #4 | Claim Amount |
|---|---|---|---|
| | Asphalt Professionals | POC #1; POC #46 | $ 35,529.13 |
| | Pinnacle Land Surveying, Inc | POC #2 | $ 66,051.00 |
| | Inland Blueprint Inc. dba IB Reprographics | POC #3; POC #21 | $ 2,320.77 |
| | Greg Norman Golf Course Design | POC #4 | $ 211,490.01 |
| | A.G.I. Geotechnical, Inc. | POC #5 | $ 20,045.81 |
| | The Corporation Int Rate Mgmt | POC #6 | $ 112,500.00 |
| | Geo Consultants, Inc. | POC #7 | $ 10,080.00 |
| | Glumac | POC #8 | $ 2,662.40 |
| | KTGY Group, Inc. | POC #9 | $ 49,998.82 |

| Debtor | Creditor | Reference No. | Claim Amount |
|---|---|---|---|
| | Lim & Nascimento Engineering | POC #10; POC #45 | $ 1,830.00 |
| | Patricia I. Volkerts Trust dated August 7, 2000 | POC #11 | $ 871,703.19 |
| | SJD Partners, Ltd. | POC #13 | $ 12,584.00 |
| | Stantec Consulting | POC #14; POC #58 | $ 134,297.23 |
| | HD Supply Construction Supply, LTD., dba HD Supply White Cap Construction Supply | POC #15 | $ 14,893.18 |
| | Charles Skaggs | POC #16 | $ 6,096.25 |
| | Glenn Lukos Associates, Inc. | POC #17; POC #18;POC #36 | $ 1,216.78 |
| | Glenn Lukos Associates, Inc. | POC #19 | $ 11,326.13 |
| | Scott E. McDaniel | POC #20 | $ 535,000.00 |
| | So. & Associates Engineers | POC #22 | $ 15,485.00 |
| | SunCal Management, LLC | POC #23 | $ 1,379,367.84 |
| | SCC Acquisitions, Inc. | POC #24 | $ 3,000.00 |
| | Warmington Homes California | POC #25 | $ 1,771,232.88 |
| | Palmieri, Tyler, Wiender, Wilhelm & Waldron LLP | POC #26 | $ 91,034.50 |
| | Western Oilfields Supply Co. Inc. dba Rain for Rent | POC #27 | $ 2,160.11 |
| | Linscott, Law & Greenspan Engnrs | POC #28 | $ 608.50 |
| | Arleen Logan | POC #29 | $ 668,250.00 |
| | Amec Earth and Environmental | POC #30 | $ 17,906.39 |
| | Klassen Corporation | POC #31 | $ 306,350.99 |
| | Hewitt & O'Neil LLP | POC #32; POC #92 | $ 12,584.00 |
| | Sierra Cascade Construction | POC #33 | $ 550,677.29 |
| | Greg Norman Golf Course Design | POC #34 | $ 218,259.21 |
| | Dou Family Trust; Hsu Chih Chang Trust | POC #35 | $ 3,173,499.50 |
| | Glenn Lukos Associates, Inc. | POC #37 | $ 7,924.19 |
| | Ugalde Trucking Co., Inc. | POC #38 | $ 6,520.00 |
| | GCI Associates, Inc. | POC #39 | $ 641.42 |
| | Andy Gump | POC #40 | $ 11,183.08 |
| | Wood Rogers, Inc. | POC #41 | $ 34,119.11 |
| | GeoTeck, Inc. | POC #42 | $ 17,749.00 |
| | Cooks Portable Toilets & Septic, LLC | POC #43 | $ 2,743.21 |
| | HMK Engineers | POC #44 | $ 26,688.85 |
| | Zeiser KLing Consultants. Inc | POC #47 | $ 8,984.27 |
| | Asphalt Professionals | POC #48 | $ 75,188.52 |
| | Bova Contracting Group | POC #49; POC #58 | $ 1,155,533.39 |
| | Cal-State Rent A Fence | POC #50; POC #100 | $ 1,679.72 |
| | Staats Construction, Inc. | POC #51 | $ 166,105.82 |
| | Pierce's Security | POC #52 | $ 53,919.09 |
| | Roddan Paolucci Roddan Advertising | POC #53 | $ 78,083.50 |
| | Arch Insurance Company | POC #54 | $155,423,857 (contingent) $131,588.73 (liquidated) |
| | Southland Framers, Inc. | POC #55; POC #67; POC #68 | $ 177,801.98 |
| | Jeanette C. Justus Associate | POC #57 | $ 28,428.59 |
| | SunCal Management, LLC | POC #59 | $ 409,020.27 |
| | Bethel Island Municipal Improvement District | POC #61 | $ 2,000,000.00 |
| | Pinnick, Inc. | POC #62 | $ 30,752.71 |
| | Pinnick, Inc. | POC #63 | $ 936,234.33 |
| | Pinnick, Inc. | POC #64 | $ 563,159.02 |
| | Summers/Murphy & Partners, I | POC #66 | $ 54,375.00 |
| | Urban CrossRoads, Inc. | POC #69 | $ 14,320.00 |
| | Outdoor Sales, Inc. | POC #70 | $ 785,282.57 |
| | Rohm Insurance Agency | POC #71 | $ 97,621.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #72 | $ 1,784,700.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #73 | $ 6,353,850.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #74 | $ 150,700.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #75 | $ 3,414,300.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #76 | $ 240,750.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #77 | $ 649,500.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #78 | $ 3,160,650.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #79 | $ 4,122,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #80 | $ 784,050.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #81 | $ 37,950.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #82 | $ 18,500.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #83 | $ 5,900.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #84 | $ 13,000.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #85 | $ 3,549,700.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #86 | $ 573,400.00 |
| | Bond Safeguard Ins. Co. & Lexon Ins. Co. | POC #87; POC #103 | $ 24,859,950.00 |
| | Lennar Centex Del Rio Partners LLC | POC #88 | $ 3,063,489.30 |
| | The City of Palmdale | POC #89 | Unknown |
| | SCC Acquisitions, Inc. | POC #90 | $ 27,991,947.00 |
| | Bruce Elieff | POC #91 | $ 27,991,947.00 |
| | Chameleon Design, Inc. | POC #93; POC #99 | $ 48,240.00 |
| | Jag Construction | POC #96 | $ 163,018.12 |
| | County of San Bernardino | POC #97 | $ 504,245.23 |
| | AMEC Earth & Environmental, Inc. | POC #98 | $ 195,576.53 |
| | Cheryl R. Mims | POC #101 | $ 136,228.12 |
| | Wallace Kuhl & Associates, Inc. | POC #102 | $ 11,379.39 |

| Debtor | Identifier | Proof of Claim | Claim Amount |
|---|---|---|---|
| | Southern California Edison Company | POC #104 | $ 43.66 |
| | Franchise Tax Board | POC #105 | $ 7,517.99 |
| **SunCal Communities I, LLC** | | | |
| | Arch Insurance Company | POC #1 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **SunCal Communities III, LLC** | | | |
| | Verizon California Inc. | POC #1 | $ 459.40 |
| | Arch Insurance Company | POC #3 | $155,423,657(contingent) $131,588.73 (liquidated) |
| **SunCal Summit Valley, LLC** | | | |
| | Hunsaker & Associates - Irvine | POC #1 | $ 126,940.25 |
| | Development Planning Solutions | POC #2 | $ 12,420.54 |
| | LSA Associates, Inc. | POC #3 | $ 6,985.67 |
| | Arthur Riggs | POC #4 | $ 801,900.00 |
| | Arleen Logan | POC #5 | $ 668,250.00 |
| | Charles E. Skaggs | POC #6 & #14 | $ 6,096.25 |
| | SunCal Management, LLC | POC #7 | $ 7,436.33 |
| | SCC Acquisitions, Inc. | POC #8 | $ 2,500.00 |
| | Pacific Soils Engineering, Inc. | POC #9 | $ 18,827.00 |
| | SunCal Management, LLC | POC #10 | $ 42,027.08 |
| | SunCal Master Venture Member LLC | POC #13 | $ 5,991.40 |
| | Arch Insurance Company | POC #15 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Summers/Murphy & Partners | POC #16 | $ 7,600.00 |
| | Cheltimalie Enterprises, a California Partnership | POC #17 | $ 1,388,156.25 |
| **Tesoro SF, LLC** | | | |
| | Glenn Lukos Associates, Inc. | POC #1 | $ 11,326.13 |
| | SCC Acquisitions, Inc. | POC #3 | $ 4,866.69 |
| | SunCal Management, LLC | POC #4 | $ 104,510.06 |
| | SunCal Management, LLC | POC #5 | $ 118,891.12 |
| | Arch Insurance Company | POC #8 | $155,423,657(contingent) $131,588.73 (liquidated) |
| | Rohm Insurance Company | POC #9 | $ 8,560.00 |

*Note: The above list does not include certain contingent claims filed by SCC Acquisitions, Inc. Some claims listed may have been filed*

**APPENDIX B**

**Mechanic Lien Claims to Which Debtors Seek to Equitably Subordinate Defendants' Alleged Secured Claims (from Debtors' Second Amended Disclosure Statement)**

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by Asphalt Professionals against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | Palmdale Hills 1 and 46 |
| The Holder of the asserted Mechanic Lien Claim held by Sierra Cascade Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | Palmdale Hills 33 |
| The Holder of the asserted Mechanic Lien Claim held by Staats Construction. Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | Palmdale Hills 51 |
| The Holder of the asserted Mechanic Lien Claim held by Southland Farmers, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | Palmdale Hills 55, 67 and 68 |
| The Holder of the asserted Mechanic Lien Claim held by Pinnick, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $1,530,146. | Palmdale Hills 62, 63 and 64 |
| The Holder of the asserted Mechanic Lien Claim held by Chamelon Design Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $73,600. | Palmdale Hills 93, 99 |
| The Holder of the asserted Mechanic Lien Claim held by Hall & Foreman, Inc. against the Emerald Meadows Project in the amount of $287,727. | SunCal Emerald 13 |
| The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Emerald Meadows Project in the amount of $991,315. | SunCal Emerald 15 and 16 |
| The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $14,893. | Palmdale Hills 15 |
| The Holder of the asserted Mechanic Lien Claim held by MHM Engineers against the Bickford Ranch Project in the amount of $8,916. | SunCal Bickford 5 |
| The Holder of the asserted Mechanic Lien Claim held by Land Architecture against the Bickford Ranch Project in the amount of $100,245. | SunCal Bickford 6 |

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by Kiewit Pacific Co. against the Bickford Ranch Project in the amount of $1,868,357. | SunCal Bickford 10 |
| The Holder of the asserted Mechanic Lien Claim held by ARB, Inc. against the Bickford Ranch Project in the amount of $1,052,272. | SunCal Bickford 15 |
| The Holder of the asserted Mechanic Lien Claim held by Independent Construction against the Bickford Ranch Project in the amount of $117,209. | SunCal Bickford 28 |
| The Holder of the asserted Mechanic Lien Claim held by Marques Pipeline, Inc. against the Bickford Ranch Project in the amount of $330,118. | SunCal Bickford 29 and 30 |
| The Holder of the asserted Mechanic Lien Claim held by Pacific Soils Engineering against the portion of the Summit Valley Project owned by Summit Valley in the amount of $16,827. | SunCal Summit 9 |
| The Holder of the disputed asserted Mechanic Lien Claim held by Hertz Equipment Rental Corporation against the Delta Coves Project in the amount of $25,444. | SunCal Delta Coves 2 |
| The Holder of the asserted Mechanic Lien Claim held by MBH Architects against the Delta Coves Project in the amount of $97,091. | SunCal Delta Coves 8 |
| The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Heartland Project in the amount of $47,675. | SunCal Heartland 2 |
| The Holder of the asserted Mechanic Lien Claim held by Pinnik, Inc. against the Heartland Project in the amount of $563,159. | SunCal Heartland 8 |
| The Holder of the asserted Mechanic Lien Claim held by Dennis M. McCoy & Sons against the Heartland Project in the amount of $941,960. | SunCal Heartland 16 |
| The Holder of the asserted Mechanic Lien Claim held by Trimax Systems, Inc. against the Marblehead Project in the amount of $75,286. | SunCal Marblehead 3 |
| The Holder of the asserted Mechanic Lien Claim held by Butsko Utility Design, Inc. against the Marblehead Project in the amount of $6,250. | SunCal Marblehead 4 |
| The Holder of the asserted Mechanic Lien Claim held by Dennis RMF Contracting, Inc. against the Marblehead Project in the amount of $264,749. | SunCal Marblehead 28 |
| The Holder of the asserted Mechanic Lien Claim held by The Jasper Companies against the Marblehead Project in the amount of $165,260. | SunCal Marblehead 29 |
| The Holder of the asserted Mechanic Lien Claim held by Kirk Negrete, Inc. dba United Steel Placers against the Marblehead Project in the amount of $270,056. | SunCal Marblehead 38 |

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by RBF Consulting against the Marblehead Project in the amount of $125,093. | SunCal Marblehead 39 |
| The Holder of the asserted Mechanic Lien Claim held by RJ Noble Co. against the Marblehead Project in the amount of $175,030. | SunCal Marblehead 42, 50 and 58 |
| The Holder of the asserted Mechanic Lien Claim held by Orange County Stripping Services against the Marblehead Project in the amount of $4,400. | SunCal Marblehead 46 and 54 |
| The Holder of the asserted Mechanic Lien Claim held by Savala Equipment Co. Inc. against the Marblehead Project in the amount of $34,440. | SunCal Marblehead 48 and 56 |
| The Holder of the asserted Mechanic Lien Claim held by Rockey Murata Landscaping against the Marblehead Project in the amount of $285,643. | SunCal Marblehead 60 |
| The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Oak Valley Project in the amount of $52,806. | SunCal Oak Valley 3 |
| The Holder of the asserted Mechanic Lien Claim held by Pinnik Inc. against the Oak Valley Project in the amount of $966,987. | SunCal Oak Valley 12 and 14 |
| The Holder of the asserted Mechanic Lien Claim held by Hillcrest Contracting Inc. against the Oak Valley Project in the amount of $136,567. | SunCal Oak Valley 23 |
| The Holder of the asserted Mechanic Lien Claim held by MacKenzie Landscape against the Oak Valley Project in the amount of $121,297. | SunCal Oak Valley 25 |
| The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Oak Valley Project in the amount of $60,355. | SunCal Oak Valley 26 |
| The Holder of the asserted Mechanic Lien Claim held by Los Angeles Times against the Oak Valley Project in the amount of $43,610. | SunCal Oak Valley 31 and 32 |
| The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Oak Valley Project in the amount of $280,685. | SunCal Oak Valley 35 and 36 |
| The Holder of the asserted Mechanic Lien Claim held by Brudvik Inc. against the Palm Springs Village Project in the amount of $43,365. | SunCal PSV 4 |
| The Holder of the asserted Mechanic Lien Claim held by Larry Jacinto Construction Inc. against the Palm Springs Village Project in the amount of $212,663. | SunCal PSV 5 and 24 |
| The Holder of the asserted Mechanic Lien Claim held by William + Paddon Architects + Planners Inc. against the Palm Springs Village Project in the amount of $73,798. | SunCal PSV 9 and 10 |

| Claimant | Claim Nos. |
|---|---|
| The Holder of the asserted Mechanic Lien Claim held by Southern California Edison against the Palm Springs Village Project in the amount of $23,861. | SunCal PSV 26 |
| The Holder of the asserted Mechanic Lien Claim held by Pacific Masonry Walls, Inc. against the Palm Springs Village Project in the amount of $314,061. | SunCal PSV 33 and 39 |
| The Holder of the asserted Mechanic Lien Claim held by J.R. Simplot Company against the Palm Springs Village Project in the amount of $3,467. | SunCal PSV 34 and 40 |
| The Holder of the asserted Mechanic Lien Claim held by Desert Pipeline Inc. against the Palm Springs Village Project in the amount of $469,784. | SunCal PSV 36, 42 and 47 |
| The Holder of the asserted Mechanic Lien Claim held by MSA Consulting against the Palm Springs Village Project in the amount of $666,897. | SunCal PSV 43 |
| The Holder of the asserted Mechanic Lien Claim held by Jackson DeMarco against the Palm Springs Village Project in the amount of $52,234. | SunCal PSV 45 |
| The Holder of the asserted Mechanic Lien Claim held by Oliphant Gold, Inc. against the Oak Knoll Project in the amount of $456,476. | SunCal Oak Knoll 46 |
| The Holder of the asserted Mechanic Lien Claim held by RGA Environmental, Inc. against the Oak Knoll Project in the amount of $75,617. | SunCal Oak Knoll 1 |
| The Holder of the asserted Mechanic Lien Claim held by BKF Engineers against the Oak Knoll Project in the amount of $308,817. | SunCal Oak Knoll 2 and 19 |
| The Holder of the asserted Mechanic Lien Claim held by CST Environmental Inc. against the Oak Knoll Project in the amount of $4,316,169. | SunCal Oak Knoll 4 and 9 |

| In re:<br><br>PALMDALE HILLS PROPERTY, LLC;<br><br><div align="right">Debtor(s).</div> | CHAPTER 11<br>CASE NUMBER 8:08-BK-17206-ES<br><br>ADVERSARY CASE NUMBER 8:09-AP-01005-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1999 Avenue of the Stars, Suite 1000, Los Angeles CA 90067

A true and correct copy of the foregoing document(s) described **FOURTH AMENDED ADVERSARY PROCEEDING COMPLAINT FOR: 1) EQUITABLE SUBORDINATION, 11 U.S.C. §510(c); 2) FRAUDULENT INDUCEMENT; 3) AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS, 11 U.S.C §§ 547, 550; 4) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, 11 U.S.C. §§ 544(b), 548; CAL. CIVIL CODE §§ 3439.04, 3439.05; 5) VOIDING LIENS, 11 U.S.C. § 506(d); 6) DISALLOWANCE OF CLAIMS AND LIENS, 11 U.S.C. § 502(d); AND 7) PRESERVATION OF CLAIMS AND LIENS FOR DEBTORS' ESTATES, 11 U.S.C. §551**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 26, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

<div align="right">☒ Service information continued on attached page</div>

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **March 26, 2010** I caused the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding to be served by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

<div align="right">☒ Service information continued on attached page</div>

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 26, 2010** I caused the following person(s) and/or entity(ies) to be served by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

<div align="right">☒ Service information continued on attached page</div>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 26, 2010 | Selia Acevedo | s/Selia Acevedo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br><br>PALMDALE HILLS PROPERTY, LLC;<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-BK-17206-ES<br><br>ADVERSARY CASE NUMBER 8:09-AP-01005-ES |
|---|---|

## SERVICE LISTS

### I.   Served by NEF

- Selia M Acevedo
  sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel
  @millerbarondess.com
- Joseph A Eisenberg   jae@jmbm.com
- Lei Lei Wang Ekvall
  lekvall@wgllp.com
- Alan J Friedman   afriedman@irell.com
- Christian J Gascou
  cgascou@gascouhopkins.com
- Kelly C Griffith
  bkemail@harrisbeach.com
- Jonathan M Hoff
  jonathan.hoff@cwt.com
- Christopher W Keegan
  ckeegan@kirkland.com,
  emilee@kirkland.com;alevin@kirkland.
  com;tshafroth@kirkland.com
- Kerri A Lyman   klyman@irell.com

- Hutchison B Meltzer
  hmeltzer@wgllp.com
- James M Miller
  jmiller@millerbarondess.com
- Henry H Oh   henry.oh@dlapiper.com,
  bambi.clark@dlapiper.com
- Sean A Okeefe
  sokeefe@okeefelc.com
- John E Schreiber   jschreiber@dl.com
- Steven M Speier
  Sspeier@Squarmilner.com,
  ca85@ecfcbis.com
- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov
- Christopher T Williams
  ctwilliams@venable.com,
  jcontreras@venable.com
- Dean A Ziehl   dziehl@pszjlaw.com,
  dziehl@pszjlaw.com

### II.   Served By U.S. Mail

n/a

### III.   Served by Personal Delivery, Facsimile Transmission or Email

#### BY PERSONAL DELIVERY (ATTORNEY SERVICE)

Courtesy Copy
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

#### BY EMAIL

Lehman Ali, Inc., Lehman Commercial Paper, Inc.,
OVC Holdings, Northlake Holdings, LV Pacific
Point
Weil Gostshal & Manges LLP
    edward.soto@weil.com

elisa.lemmer@weil.com
shai.waisman@weil.com
allen.blaustein@weil.com
lauren.zerbinopoulos@weil.com

Pachulski Stang Ziehl & Jones LLP

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    F 9013-3.1

| In re: | | CHAPTER 11 |
| --- | --- | --- |
| PALMDALE HILLS PROPERTY, LLC; | | CASE NUMBER 8:08-BK-17206-ES |
| | Debtor(s). | ADVERSARY CASE NUMBER 8:09-AP-01005-ES |

rpachulski@pszjlaw.com
dziehl@pszjlaw.com

Fenway Capital LLC
Dewey & LeBoeuf LLP
    rreinthaler@DeweyLeBoeuf.com
    clevy@DeweyLeBoeuf.com
    jschreiber@dl.com

Lehman Re Ltd
Cadwalader, Wickersham & Taft LLP
    jonathan.hoff@cwt.com
    liz.butler@cwt.com

DLA Piper
    betty.shumener@dlapiper.com

Counsel for Chapter 11 Trustee Steven M. Speier
The Lobel Firm, LLP
    wlobel@thelobelfirm.com

General Insolvency Counsel for
Jointly Administered Debtors in Possession
Winthrop Couchot, P.C.
    pcouchot@winthropcouchot.com

plianides@winthropcouchot.com
sokeefe@winthropcouchot.com

Counsel for the Voluntary Debtors' Committee
Irell & Manella, LLP
    afriedman@irell.com
    klyman@irell.com

Counsel for the Trustee Debtors' Committee
Weiland, Golden, Smiley, Wang Ekvall & Strok , LLP
    lekvall@wgllp.com
    hmeltzer@wgllp.com

Office of the United States Trustee
Michael Hauser
    michael.hauser@usdoj.gov


John Sieger - john.sieger@kattenlaw.com

Atty for Bond Safeguard & Lexon -
mea@amclaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1